UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.  R.P. Small Corp.,<br>        Plaintiff,<br><br>v.<br><br>1.  Ruchir A. Kadakia,<br>        Defendant. | Case No.   19-cv-271-JED-JFJ<br>Jury Trial Demanded |

## COMPLAINT

Comes now Plaintiff, R.P. Small Corp. ("RPS" or "Plaintiff") for its Complaint and claims against the Defendant, alleges and states as follows:

## PARTIES

1.      R.P. Small Corp. ("RPS") is an Illinois corporation with its principal place of business located in Tulsa, Oklahoma.

2.      The Defendant, Ruchir A. Kadakia ("Kadakia" or "Defendant"), is an individual currently domiciled in Fairfield County, Connecticut.

3.      The acts, events, and transactions complained of herein occurred by virtue of the execution of promissory notes, deemed executed in Tulsa County, Oklahoma, and the damages suffered by RPS as a result of Defendant's breach of contract, and non-payment of the notes, occurred in Tulsa County, Oklahoma.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action and the parties, pursuant to 28 U.S.C. § 1332, as this is an action between a citizen of a state and a citizen of a foreign state where the matter in controversy exceeds the amount of $75,000, exclusive of interests and costs.

1

5.     Venue is proper in this judicial district under 28 U.S.C. § 1391, in that a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district.

6.     The Promissory Note and Guarantee Agreement underlying this Complaint were negotiated and entered into in Oklahoma, and the Note contains jurisdiction-consent provisions for the State of Oklahoma.

## FACTUAL ALLEGATIONS

7.     On or around March 14, 2014, Tethys Trading LLC and RPS entered into a Promissory Note ("Note"), dated March 27, 2014.  *See* Exhibit B.

8.     As agreed, Kadakia signed and executed a personal guaranty (the "Guaranty") to Plaintiff on or around that same date, March 14, 2014.

9.     Pursuant to the Guaranty, Kadakia agreed to be joint and severally liable for breach of the Note. *See* Exhibit A, at ¶ 17.

10.    On or around March 17, 2015, an extension to the Maturity Date was granted on the original Note for a period of twelve (12) months after March 27, 2015 to March 27, 2016. *See* Exhibit C.

11.    According to the Personal Guaranty that was executed by Kadakia, he guaranteed the "full, prompt, and unconditional payment when due, of the Borrower's (Tethys) Obligations due and owing to the Lender (RP Small Corp)." *See* Exhibit A, at p. 1.

12.    Kadakia, as a Guarantor, also agreed to "immediately pay or perform the [Borrower's Obligations]."  The Guaranty specifically states: "[T]his Guaranty Agreement [is] an absolute, irrevocable and unconditional guaranty of full payment and performance and not a guaranty of collection." *See* Exhibit A.

## I.  FIRST CAUSE OF ACTION – BREACH OF GUARANTY

13. RPS realleges all of the foregoing allegations.

14. As of March 27, 2016, payments on the Promissory Note were not made as provided for in the Promissory Note.

15. Kadakia is in breach of the terms of the personal guaranty on the promissory note because he has not paid the amount due to RPS.

16. Kadakia currently owes RPS the sum total of six million dollars, plus interest, of $2,502,000 for a total of $8,502,000, calculated as provided for in the Promissory Note at 10% interest per annum. *See* Exhibit B, at ¶13 and Exhibit D.

### PRAYER

WHEREFORE, RPS respectfully requests this Court grant the relief set forth in this Complaint, specifically:

1. A judgment declaring and finding the Defendant Kadakia has breached its repayment obligation on the promissory note identified herein.

2. An award of damages in favor of RPS and against Defendant for Breach of Personal Guaranty of Promissory Note in the sum of $6,000,000 plus interest of $2,502,000, for a total of $8,502,000, plus prejudgment interest to be calculated under the laws of the State of Oklahoma.

3. Attorney fees and the costs of litigation pursuant to the terms of the promissory note serving as the underlying basis for RPS's claims.

4. Such further relief to which RPS is entitled.

Dated: May 20, 2019

Respectfully Submitted,

By: /s/ Brent Blackstock
R. Brent Blackstock, OBA No. 00839
Lacey L. Shirley, OBA 33269
Mid-Continent Tower, Suite 500
401 S. Boston Ave.
Tulsa, OK 74103
(918) 383-0777 (918) 699-0300 (fax)
*Counsel for Plaintiff*

# GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (this "Guaranty Agreement"), is made as of the 24 day of March, 2014, by **Ruchir A. Kadakia** ("Guarantor") in favor of R.P. Small Corp., an Illinois corporation (the "Lender").

**RECITALS**:

WHEREAS, Tethys Trading, LLC, an Oklahoma limited liability company (the "Borrower"), made a certain promissory note, dated as of the date hereof (the "Note"), in favor of the Lender, pursuant to which the Lender made a loan to the Borrower in the amount of Six Million Dollars ($6,000,000.00) Dollars, together with interest thereon (the "Loan"); and

WHEREAS, the Note is secured by, among other things, certain Accounts Receivable and other collateral identified in the Pledge and Security Agreement, dated as of the date hereof (the "Borrower Collateral"), from the Borrower to the Lender; and

WHEREAS, as a condition precedent to the making of the Loan, *inter alia*, the Lender has required that the Guarantor, who has an equity ownership interest, whether direct or indirect, in the Borrower, and thus will directly or indirectly benefit from the Loan, unconditionally enter into and execute this Guaranty Agreement, hereby guaranteeing the full, prompt and unconditional payment when due of the Loan, and the full and complete performance of all other obligations of the Borrower with respect to the Loan (the "Borrower's Obligations"); and

WHEREAS, the Guarantor has determined that the execution, delivery and performance of this Guaranty Agreement directly benefits, and is in the best interests of, the Guarantor; and

WHEREAS, all words and terms not defined herein shall have the respective meanings and be construed herein as provided in the Note and Pledge and Security Agreement;

THEREFORE, in consideration of the Loan made to the Borrower and with knowledge that the Lender would not make the Loan but for the promises of the Guarantor hereunder, the Guarantor, hereby absolutely and unconditionally, represents, warrants and covenants as follows:

1. The Guarantor hereby irrevocably guaranties the full, prompt and unconditional payment when due, of the Borrower's Obligations due and owing to the Lender, when and as the same shall become due, whether at the stated maturity date, by acceleration or otherwise, and the full, prompt, and unconditional performance of each and every term and condition of any transaction to be kept and performed by the Borrower under the Note. This Guaranty Agreement is a primary obligation of the Guarantor and shall be a continuing inexhaustible Guaranty Agreement. In the event any of the Borrower's Obligations shall not be paid or performed according to their terms, the Guarantor shall immediately pay or perform the same, this Guaranty Agreement being an absolute, irrevocable and unconditional guaranty of full payment and performance and not a guaranty of collection.
2. The Guarantor waives all defenses based upon surety or impairment of collateral, including without limitation, any actions or defenses identified generally or specifically under the Uniform Commercial Code or other body of law governing sureties or guarantors, waives notice of acceptance of this Guaranty Agreement and notice of any of the Borrower's Obligations to which it may apply, and waives notice of default, non-payment, partial payment, presentment, demand,

protest, notice of protest or dishonor and all other notices to which the Guarantor might otherwise be entitled, or which might be required by law and required to be given by the Lender.

3. The obligations of the Guarantor hereunder shall be unconditional and absolute and, without limiting the generality of the foregoing, shall not be released, discharged, be a defense to or otherwise affected by:

   (a) any extension, renewal, settlement, indulgence, compromise, waiver or release of or with respect to any of the Borrower's Obligations or any part thereof or any agreement relating thereto, or with respect to any obligation of any other guarantor of the Borrower's Obligations, whether (in any such case) by operation of law or otherwise, or any failure or omission to enforce any right, power or remedy with respect to any of the Borrower's Obligations or any part thereof or any agreement relating thereto, or with respect to any obligation of any other guarantor of any of the Borrower's Obligations;

   (b) any modification or amendment of or supplement to the Note, including, without limitation, any such amendment which may increase the amount of the Borrower's Obligations guaranteed hereby;

   (c) any release, surrender, compromise, settlement, waiver, subordination or modification, with or without consideration, of any collateral securing the Borrower's Obligations or any part thereof, any other guaranties with respect to the Borrower's Obligations or any part thereof, or any other obligation of any person or entity with respect to the Borrower's Obligations or any part thereof, or any non-perfection or invalidity of any direct or indirect security for any of the Borrower's Obligations;

   (d) any acceptance by the Lender of additional security to act as collateral for the Borrower's Obligations;

   (e) any change in the structure or ownership of the Borrower or any other guarantor of any of the Borrower's Obligations, or any solvency, bankruptcy, reorganization, or other similar proceeding affecting the Borrower or any other guarantor of any of the Borrower's Obligations, or any of their respective assets or any resulting release or discharge of any obligation of the Borrower any guarantor of any of the Borrower's Obligations;

   (f) the existence of any claim, set-off or other rights which the Guarantor may have at any time against the Borrower, any other guarantor of any of the Borrower's Obligations, the Lender or any other person, whether in connection herewith or in connection with any unrelated transactions;

   (g) the enforceability or validity of the Borrower's Obligations or any part thereof or the genuineness, enforceability or validity of any agreement relating thereto or with respect to any collateral securing the Borrower's Obligations or any part thereof, or any other invalidity or unenforceability relating to or against the Borrower or any other guarantor of any of the Borrower's Obligations, for any reason related to the Note or any provision of applicable law or regulation purporting to prohibit the payment by the Borrower or any other guarantor of any of the Borrower's Obligations;

   (h) the failure of the Lender to take any steps to perfect and maintain any security interest in, or to preserve any rights to, any security or collateral for any of the Borrower's Obligations, if any;

   (i) any borrowing or grant of a security interest by the Borrower, debtor-in-possession, under Section 364 of the United States Bankruptcy Code;

   (j) the disallowance, under Section 502 of the United States Bankruptcy Code, of all or any portion of the claims of the Lender for repayment of all or any part of any of the Borrower's Obligations;

- (k) the failure of any other guarantor to sign or become party to this Guaranty Agreement or any amendment, change, or reaffirmation hereof; or
- (l) any other act or omission to act or delay of any kind by the Borrower, any other guarantor of any of the Borrower's Obligations, the Lender or any other person or any other circumstance whatsoever which might, but for the provisions of this Section constitute a legal or equitable discharge of the Guarantor's obligations hereunder.

4. Upon the occurrence of an Event of Default (as such term is defined in the Note), the Lender shall be immediately entitled to enforce the obligations of the Guarantor hereunder.
5. The Lender may at any time before or after an Event of Default exercise its right to set-off all or any portion of the Borrower's Obligations owed to it against any liability or indebtedness of the Lender to the Borrower or the Guarantor (whether owed by the Borrower or the Guarantor or alone or in conjunction with any other person or entity, provided that the Borrower or the Guarantor has a beneficial interest therein) without prior notice to the Borrower or Guarantor.
6. The Guarantor hereby waives any right or claim of right to cause a marshalling of the Borrower's assets or to cause the Lender to proceed against any of the security or collateral held by the Lender before proceeding against the Guarantor, and the Guarantor hereby waives any and all legal requirement that the Lender shall institute any action at law or in equity against the Borrower, or anyone else, with respect to the Note or with respect to any other documents, agreements or instruments executed by the Borrower or with respect to any security held by the Lender, as a condition precedent to bringing any action against the Guarantor upon this Guaranty Agreement.
7. Until repayment and performance of all of the Borrower's Obligations, the Guarantor hereby irrevocably waives and relinquishes any and all statutory, contractual, common law, equitable or other claims and rights (a) to seek reimbursement, contribution, indemnification, set-off or other recourse from or against the Borrower in connection with any payments made by the Guarantor under this Guaranty Agreement and (b) to be subrogated to the Lender's rights under the Note upon the Guarantor's performance under this Guaranty Agreement.
8. This Guaranty Agreement is made and shall continue as to any of the Borrower's Obligations to the Lender without regard to the existence of other collateral or security or guaranties, if any, or to the validity or effectiveness of any or all thereof; and any or all such collateral and security and guaranties may, from time to time, without notice to or consent of the Guarantor, be sold, released, surrendered, exchanged, settled, compromised, waived, subordinated or modified, with or without consideration, on such terms and conditions as may be acceptable to the Lender without in any manner affecting or impairing the liability of the Guarantor. The Guarantor's obligations under this Guaranty Agreement shall extend to any and all monies advanced by the Lender pursuant to the Note.
9. If claim is ever made upon the Lender for repayment or recovery of any amount or amounts received by the Lender in payment for, or on account of, any of the Borrower's Obligations, and the Lender repays all or part of said amount by reason of (a) any judgment, decree or order of any court or administrative body having jurisdiction over the Lender or any of its property, or (b) any settlement or compromise of any such claim effected by the Lender with any such claimant (including the Borrower), then, and in such event, the Guarantor agrees that any such judgment, decree, order, settlement or compromise shall be binding upon him, notwithstanding the cancellation of any note or any other instrument evidencing any of the Borrower's Obligations, and the Guarantor shall be and remain liable to the Lender hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by the Lender.
10. Settlement of any claim by the Lender against the Borrower, whether in any proceeding or not, and whether voluntary or involuntary, shall not reduce the amount due under the terms of this

Guaranty Agreement except to the extent of the amount paid by the Borrower in connection with the settlement.

11. No delay on the part of the Lender in exercising any of its rights, powers or privileges or partial or single exercise thereof under the Note, this Guaranty Agreement or any other document made to or with the Lender by the Borrower shall operate as a waiver of any such privileges, powers or rights. No waiver of any of its rights hereunder, and no modification or amendment of this Guaranty Agreement, shall be deemed to be made by the Lender unless the same shall be in writing, duly signed on behalf of the Lender, by a duly authorized officer, and each such waiver, if any, shall apply only with respect to the specific instance involved, and shall in no way impair the rights of the Lender or the obligations of the Guarantor to the Lender in any other respect at any other time.

12. All rights, powers and remedies afforded to the Lender by reason of this Guaranty Agreement are separate and cumulative remedies and no one of such remedies whether or not exercised by the Lender shall be deemed to exclude any of the other remedies available to the Lender nor prejudice availability of any other legal or equitable remedy which the Lender may have with respect to the Loan.

13. This Guaranty Agreement shall be governed by and construed in accordance with the laws of the State of Oklahoma without reference to principles of conflicts of law, except to the extent that the validity or perfection of the security interest granted hereunder, or remedies hereunder, in respect of any particular collateral are governed by the laws of another jurisdiction. The fact that any part of this Guaranty or the Note may not be enforced will not affect the enforceability of the rest of such documents. The Guarantor irrevocably submits to the exclusive jurisdiction of any federal or state court located in the State of Oklahoma with respect to any proceedings relating to this Guaranty or the Note, and irrevocably agrees not to assert any objection to venue in such court or any claim of inconvenient forum. The Guarantor irrevocably consents to service of process by mailing of such process by registered or certified mail, postage prepaid, at its address set forth below.

14. This Guaranty Agreement shall be binding upon and inure to the benefit of and be enforceable by all parties hereto and their respective successors, assigns, heirs, administrators, executors and legal representatives.

15. All notices and other communications relating to this Guaranty shall be made in writing and delivered to the Borrower at 954 West Washington Blvd., Suite 250, Chicago, Illinois 60607, and delivered to the Lender at 1585 E. 22nd St., Tulsa, OK 74114-1305, or such other place as the Lender shall designate in writing, with a copy to the Guarantor at the address indicated on the signature page below. Any such notice shall be deemed effective (i) when delivered, if delivered personally or by email or facsimile transmission, (ii) two (2) days after delivered (properly addressed and all fees paid) for overnight delivery service to a courier that regularly provides such service and regularly obtains executed receipts evidencing delivery, or (iii) five (5) days after deposited (properly addressed and stamped for first-class delivery) in the United States mail.

16. In case of any proceedings to collect any liabilities from the Guarantor, the Guarantor shall pay all costs and expenses of every kind for collection, sale or delivery, including reasonable attorney's fees, and after deducting such costs and expenses from the proceeds of sale or collection, the Lender may apply any residue to the liabilities of the Guarantor who shall continue to be liable for any deficiency, with interest at the Note Rate (as such term is defined under the Note).

17. This Guaranty shall be binding upon the Guarantor and the heirs, legal representatives, successors and assigns of the Guarantor. If more than one party shall execute this Guaranty, the term

17. ..."Guarantor" shall mean all parties executing this Guaranty, and all such parties shall be jointly and severally obligated hereunder.
18. In all references herein to any parties, persons, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.
19. The Guarantor hereby acknowledges and agrees that the Guarantor shall have the sole responsibility for obtaining from the Borrower such information concerning the Borrower's financial condition and business operations as the Guarantor may require, and that the Lender has no duty at any time to disclose to the Guarantor any information relating to the business operations or financial condition of the Borrower.
20. THE GUARANTOR HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION NOW EXISTING OR HEREAFTER ARISING RELATING TO THE LOAN, THIS GUARANTY AGREEMENT, THE NOTE OR ANY DEALINGS OR TRANSACTIONS RELATED THERETO AND THE GUARANTOR AGREES THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY.
21. THE GUARANTOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. THE GUARANTOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER, IN THE EVENT OF LITIGATION, WILL NOT SEEK TO ENFORCE THE FOREGOING WAIVER. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR THE LENDER TO ACCEPT THIS GUARANTY AGREEMENT AND MAKE THE LOAN.

INTENDING TO BE BOUND, the Guarantor has caused this Guaranty Agreement to be duly executed and delivered, all as of the day and year first above written.

**Guarantor:**

_/s/ Ruchir A. Kadakia_

**Ruchir A. Kadakia**
**94 Deer Plain Dr.**
**Spring, TX 77389**

# **PROMISSORY NOTE**

$6,000,000.00                                                                                     March 27, 2014
Tulsa, Oklahoma

      FOR VALUE RECEIVED, **TETHYS TRADING, LLC**, an Oklahoma limited liability company ("Maker"), promises to pay to the order of R.P. Small Corp. or successors and assigns ("Payee"), at Payee's address at 1585 E. 22nd St., Tulsa, OK 74114-1305, the principal amount of up to Six Million Dollars ($6,000,000.00), plus interest thereon at the rates set forth below (collectively the "Note Rate"). The Note Rate shall apply to the outstanding principal amount of this Note received by Maker from Payee or used by Maker as set forth below. Interest shall be payable monthly beginning on the 30th day following the date of this Note and every 30 days thereafter. Principal and all accrued and unpaid interest shall be due and payable on or before March ____, 2015 (hereafter the "Maturity Date"). This Note may be paid at any time without penalty or additional interest.

      The foregoing notwithstanding, Maker may extend the Maturity Date for four (4) successive 12-month periods, upon written notice to Payee not less than five (5) days prior to the end of the then-impending Maturity Date or the applicable extension period, so long as Maker is then not in default under the terms of this Note. If one or more extensions occur, the other terms and conditions of this Note shall remain in full force and effect during such extension or extensions.

      The purpose of this Note is to fund, in whole or in part, margin requirements for Maker's trades in Distillates-Light Ends. The proceeds of this Note shall be placed by Maker, upon initial receipt, in a segregated account maintained at Morgan Stanley, and such proceeds shall not be co-mingled with any of Maker's own funds until they are removed from such segregated account, the notice of which shall be made by Maker to Payee as of the date on which such funds are removed from such segregated account. While the proceeds of this Note are maintained in such segregated account, the outstanding principal amount of this Note maintained in such account shall accrue interest at the rate of 6% *per annum*, which interest shall be payable by Maker to Payee as set forth herein. From and after the date on which the principal amount of this Note is removed by Maker from such segregated account and used with any margin requirement for its business, such amount so removed from such account shall then accrue interest at the rate of 10% *per annum*, payable in accordance with the terms hereof.

      The amounts due under this Note shall be secured by that certain Pledge and Security Agreement executed by Maker (as debtor) in favor of Payee (as secured party) by which Maker pledges to Payee Maker's accounts receivable resulting in any transaction by which Maker uses the proceeds of this Note to fund margin requirements as discussed herein.

      Interest on the principal amount of this Note shall be calculated on the basis of the actual number of days elapsed in the period for which the calculation is being made based on 360-day year. On the Maturity Date, all principal and interest shall be due and payable without notice or demand.

      The interest payable upon the indebtedness evidenced by this Note shall not at any time

exceed the maximum rate of interest permitted under the laws of the State of Oklahoma for loans of the type and character evidenced by this Note.

All payments under this Note shall be made in lawful currency of the United States of America at Payee's residence or office (as set forth above).

From time to time the Maturity Date of this Note may be extended or this Note may be renewed, in whole or in part, or a new note of different form may be substituted for this Note and/or the rate of interest may be changed, or changes may be made in consideration of loan extensions, and Payee, from time to time, may waive or surrender, either in whole or in part, any rights, guarantees, security interests or liens given for the benefit of Payee in connection with payment of this Note or any security therefor; but no such occurrences shall in any manner affect, limit, modify or otherwise impair any rights, guaranties or security of Payee not specifically waived, released or surrendered in writing, nor shall any maker, guarantor, endorser or any person who is or might be liable hereon, either primarily or contingently, be released from liability by reason of the occurrence of any such event. Payee, from time to time, shall have the unlimited right to release any person who might be liable hereon, and such release shall not affect or discharge the liability of any other person who is or might be liable hereon.

In the event that John E. Meyer, Jr. either resigns from his position as, is removed from his position of, or ceases to serve as sole Manager of Maker, Payee may, at its option, without further notice or demand, declare this Note in default and all indebtedness due and owing hereunder shall be due and payable immediately.

If (a) any payment required by this Note is not made within five (5) business days after the due date and receipt by Maker of Notice from Payee, (b) any default occurs under any other instrument related hereto or under the provisions of any security agreement, pledge agreement or other document or agreement which provides security for the indebtedness evidenced by this Note, or (c) Maker applies for or consents to the appointment of a receiver, trustee, or liquidator of itself or of all or a substantial part of its assets, or admits in writing its inability to pay its debts as they fall due, or makes a general assignment for the benefit of creditors, or is adjudicated a bankrupt or insolvent, or a petition or other proceeding (voluntary or otherwise) is filed by or with respect to Maker in which a reorganization or an arrangement with Maker's creditors is sought or by which any creditor of Maker or Maker itself seeks to take advantage of any insolvency, bankruptcy, reorganization, arrangement, or other similar proceeding, Payee may, at its option, without further notice or demand, declare this Note in default and all indebtedness due and owing hereunder shall be due and payable immediately. In the event of a default, the entire balance (principal and interest) shall be due and payable immediately. All makers, endorsers, guarantors and sureties hereby severally waive protest, presentment, demand, and notice of protest and nonpayment in case this Note or any payment due hereunder is not paid when due; and they agree to any renewal of this Note or to any extension, acceleration or postponement of the time of payment, or any other indulgence, to any substitution, exchange or release of collateral and to the release of any party or person primarily or contingently liable, without prejudice to Payee and without notice to any maker, endorser, guarantor or surety. Maker hereof, and any guarantor, endorser, surety or any other person who is or may become liable hereon shall, on demand, pay all costs of collection, including reasonable attorney fees incurred by Payee in attempting to enforce payment of this Note and for defending the validity of any

document securing this Note.

      This Note is given for an actual loan of money for business purposes and not for personal, agricultural or residential purposes, and is executed and delivered in the State of Oklahoma and shall be governed by and construed in accordance with the laws of the State of Oklahoma. The state or federal courts sitting within Tulsa, Oklahoma shall have exclusive jurisdiction over any disputes which arise hereunder and the parties acknowledge that venue is proper only in such courts.

                                      **TETHYS TRADING, LLC, an Oklahoma limited liability company**

                              By: _____
                                    John E. Meyer, Jr., Manager

Exhibit C

## NOTICE OF MATURITY DATE EXTENSION

March 17, 2015

**Via Email and Certified Mail – Return Receipt Requested**

R.P. Small Corp.
Attn: Richard Small, President
1585 E. 22nd St.
Tulsa, OK 74114-1305
rsmall29@cox.net

      This Notice to R.P. Small Corp. is for the purpose of extending the Maturity Date of that certain Promissory Note dated March 27, 2014 executed by Tethys Trading, LLC ("Maker") to the order and in favor of R.P. Small Corp. ("Payee"). Maker hereby extends the Maturity Date for a period of twelve (12) months from and after March 27, 2015, and such new Maturity Date shall be March 27, 2016. All other terms and conditions of the Promissory Note shall remain in full force and effect.

"MAKER"

TETHYS TRADING, LLC, an Oklahoma
limited liability company

By: _____
John E. Meyer, Jr.
Manager

cc:    Via Email and Mail
       Brent Blackstock, Attorney for Payee
       Hartman, Blackstock & Moore
       PO Box 700690
       Tulsa, OK 74170
       brent@brentblackstock.com

       R. Jay Chandler, Attorney for Maker

Exhibit D

**Tethys Promissory Note**
**Interest Accrued since April 2014**

| Date | | interest each mo | Total Due by Month |
|---|---|---|---|
| | $6,000,000.00 | $50,000 | $6,050,000 |
| 4/1/2014 | $6,000,000.00 | $100,000 | $6,100,000 |
| 5/1/2014 | $6,000,000.00 | $150,000 | $6,150,000 |
| 6/1/2014 | $6,000,000.00 | $200,000 | $6,200,000 |
| 7/1/2014 | $6,000,000.00 | $250,000 | $6,250,000 |
| 8/1/2014 | $6,000,000.00 | $300,000 | $6,300,000 |
| 9/1/2014 | $6,000,000.00 | $350,000 | $6,350,000 |
| 10/1/2014 | $6,000,000.00 | $400,000 | $6,400,000 |
| 11/1/2014 | $6,000,000.00 | $450,000 | $6,450,000 |
| 12/1/2014 | $6,000,000.00 | $500,000 | $6,500,000 |
| 1/1/2015 | $6,000,000.00 | $550,000 | $6,550,000 |
| 2/1/2015 | $6,000,000.00 | $600,000 | $6,600,000 |
| 3/1/2015 | $6,000,000.00 | $650,000 | $6,650,000 |
| 4/1/2015 | $6,000,000.00 | $700,000 | $6,700,000 |
| 5/1/2015 | $6,000,000.00 | $750,000 | $6,750,000 |
| 6/1/2015 | $6,000,000.00 | $800,000 | $6,800,000 |
| 7/1/2015 | $6,000,000.00 | $850,000 | $6,850,000 |
| 8/1/2015 | $6,000,000.00 | $900,000 | $6,900,000 |
| 9/1/2015 | $6,000,000.00 | $950,000 | $6,950,000 |
| 10/1/2015 | $6,000,000.00 | $1,000,000 | $7,000,000 |
| 11/1/2015 | $6,000,000.00 | $1,050,000 | $7,050,000 |
| 12/1/2015 | $6,000,000.00 | $1,100,000 | $7,100,000 |
| 2015 tax benefit | | $248,000 | |
| 1/1/2016 | $6,000,000.00 | $852,000 | $6,852,000 |
| cash payment applied to interest | | $300,000 | |
| | $6,000,000.00 | $552,000 | $6,552,000 |
| 2/1/2016 | $6,000,000.00 | $602,000 | $6,602,000 |
| 3/1/2016 | $6,000,000.00 | $652,000 | $6,652,000 |
| 4/1/2016 | $6,000,000.00 | $702,000 | $6,702,000 |
| 5/1/2016 | $6,000,000.00 | $752,000 | $6,752,000 |
| 6/1/2016 | $6,000,000.00 | $802,000 | $6,802,000 |
| 7/1/2016 | $6,000,000.00 | $852,000 | $6,852,000 |
| 8/1/2016 | $6,000,000.00 | $902,000 | $6,902,000 |
| 9/1/2016 | $6,000,000.00 | $952,000 | $6,952,000 |
| 10/1/2016 | $6,000,000.00 | $1,002,000 | $7,002,000 |
| 11/1/2016 | $6,000,000.00 | $1,052,000 | $7,052,000 |
| 12/1/2016 | $6,000,000.00 | $1,102,000 | $7,102,000 |
| 1/1/2017 | $6,000,000.00 | $1,152,000 | $7,152,000 |
| 2/1/2017 | $6,000,000.00 | $1,202,000 | $7,202,000 |
| 3/1/2017 | $6,000,000.00 | $1,252,000 | $7,252,000 |
| 4/1/2017 | $6,000,000.00 | $1,302,000 | $7,302,000 |
| 5/1/2017 | $6,000,000.00 | $1,352,000 | $7,352,000 |
| 6/1/2017 | $6,000,000.00 | $1,402,000 | $7,402,000 |
| 7/1/2017 | $6,000,000.00 | $1,452,000 | $7,452,000 |
| 8/1/2017 | $6,000,000.00 | $1,502,000 | $7,502,000 |
| 9/1/2017 | $6,000,000.00 | $1,552,000 | $7,552,000 |
| 10/1/2017 | $6,000,000.00 | $1,602,000 | $7,602,000 |
| 11/1/2017 | $6,000,000.00 | $1,652,000 | $7,652,000 |
| 12/1/2017 | $6,000,000.00 | $1,702,000 | $7,702,000 |
| 1/1/2018 | $6,000,000.00 | $1,752,000 | $7,752,000 |
| 2/1/2018 | $6,000,000.00 | $1,802,000 | $7,802,000 |
| 3/1/2018 | $6,000,000.00 | $1,852,000 | $7,852,000 |
| 4/1/2018 | $6,000,000.00 | $1,902,000 | $7,902,000 |
| 5/1/2018 | $6,000,000.00 | $1,952,000 | $7,952,000 |
| 6/1/2018 | $6,000,000.00 | $2,002,000 | $8,002,000 |
| 7/1/2018 | $6,000,000.00 | $2,052,000 | $8,052,000 |
| 8/1/2018 | $6,000,000.00 | $2,102,000 | $8,102,000 |
| 9/1/2018 | $6,000,000.00 | $2,152,000 | $8,152,000 |
| 10/1/2018 | $6,000,000.00 | $2,202,000 | $8,202,000 |
| 11/1/2018 | $6,000,000.00 | $2,252,000 | $8,252,000 |
| 12/1/2018 | $6,000,000.00 | $2,302,000 | $8,302,000 |
| 1/1/2019 | $6,000,000.00 | $2,352,000 | $8,352,000 |
| 2/1/2019 | $6,000,000.00 | $2,402,000 | $8,402,000 |
| 3/1/2019 | $6,000,000.00 | $2,452,000 | $8,452,000 |
| 4/1/2019 | $6,000,000.00 | $2,502,000 | $8,502,000 |
| total interest due | | $2,502,000 | |
| total balance due | | | $8,502,000 |