**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**(1) R.P. SMALL CORP.**

**Plaintiff,**

**v.**

**(1) RUCHIR A. KADAKIA,**

**Defendant.**

**and**

**(1) RUCHIR A. KADAKIA, individually and derivatively on behalf of Tethys Trading, LLC,**

**Counterclaimant and Third-Party Plaintiff,**

**v.**

**(2) R.P. SMALL CORP., an Illinois corporation,**

**Counterclaim Defendant,**

**and**

**(1) JOHN E. MEYER, JR.;**
**(2) ROBERT FINNEGAN;**
**and**
**(3) TETHYS SUPPLY AND MARKETING, LLC;**
**(4) TETHYS CAPITAL, LLC;**
**(5) TETHYS TRADING, LLC;**
**(6) TETHYS ENERGY, LLC;**
**(7) TETHYS BIOFUELS, LLC;**
**(8) TETHYS LATIN AMERICA, LLC;**
**(9) TETHYS PARTNERS, LLC;**
**(10) TETHYS DERIVATIVES, LLC; and**
**(11) TETHYS SHIPPING, LLC,**
**each an Oklahoma limited liability company;**
**and**
**(12)JOHN DOES and JANE DOES 1 to 10;**

**Third-Party Defendants.**

**Case No. 19-cv-271-JED-JFJ**

**VERIFIED AMENDED ANSWER AND AFFIRMATIVE DEFENSES, AND COUNTERCLAIM AND THIRD-PARTY COMPLAINT OF RUCHIR A. KADAKIA**

Defendant Ruchir Kadakia (at times, "Defendant" or "Kadakia") submits the following for his Amended Answer to the Plaintiff's Complaint. The responses in the numbered paragraphs below correspond to the allegations in the paragraph with the same number in the Complaint. All allegations not expressly admitted are denied.

**AS TO "PARTIES"**

1. Defendant is without sufficient information to admit or deny the allegations in Paragraph 1 of the Complaint.

2. With respect to the allegations in Paragraph 2 of the Complaint, Defendant admits that he is an individual but denies the remaining allegations.

3. With respect to the allegations in Paragraph 3 of the Complaint, the allegation as to the "deemed" execution location of the Promissory Note at issue in the action is a legal conclusion to which no response is required but to the extent a response is required Defendant is without sufficient information to admit or deny that allegation. Defendant further states that only a single Promissory Note is involved in the claim asserted by Plaintiff against him, and the terms of that Promissory Note speak for themselves. Defendant is without sufficient information to admit or deny the allegation of damages suffered by Plaintiff, and Defendant denies that he is in breach of contract or responsible for any decisions that the actual party to the Promissory Note, Tethys Trading, LLC, made in regard to whether or not Tethys Trading would make timely payments on the Promissory Note. Defendant is without sufficient information to admit or deny the remaining allegations in Paragraph 3.

**AS TO "JURISDICTION AND VENUE"**

4. With respect to the allegations in Paragraph 4 of the Complaint, Defendant does not contest jurisdiction in this Court.

5. The allegations in Paragraph 5 of the Complaint constitute a legal conclusion to which no response is required, but to the extent a response is required the Defendant states that he does not contest venue in this Court.

6. With respect to the allegations in Paragraph 6 of the Complaint, Defendant states that the terms of the Promissory Note and Guaranty Agreement speak for themselves.

**AS TO "FACTUAL ALLEGATIONS"**

7. With respect to the allegations in Paragraph 7 of the Complaint, Defendant admits that Plaintiff and Tethys Trading LLC entered into a written Promissory Note in 2014. Defendant states that the terms of that Promissory Note speak for themselves and Defendant is without sufficient information to admit or deny whether the document attached as Exhibit B to the Complaint is a true and correct copy of the Promissory Note.

8. With respect to the allegations in Paragraph 8 of the Complaint, Defendant admits that he executed a Personal Guaranty in favor of Plaintiff but is without sufficient information to admit or deny whether the document attached as Exhibit A to the Complaint is a true and correct copy of the Personal Guaranty Defendant executed.

9. With respect to the allegations in Paragraph 9 of the Complaint, Defendant states that the terms of the Personal Guaranty speak for themselves and he is without sufficient information to admit or deny whether the document attached as Exhibit A to the Complaint is a true and correct copy of the Personal Guaranty Defendant executed.

10. Defendant is without sufficient information to admit or deny the allegations in Paragraph 10 or the authenticity of the document attached as Exhibit C to the Complaint.

11. With respect to the allegations in Paragraph 11 of the Complaint, Defendant states that the terms of the Personal Guaranty he executed speak for themselves and Defendant is without sufficient information to admit or deny whether the document attached as Exhibit A to the Complaint is a true and correct copy of the Personal Guaranty Defendant executed.

12. With respect to the allegations in Paragraph 12 of the Complaint, Defendant states that the terms of the Personal Guaranty he executed speak for themselves and Defendant is without sufficient information to admit or deny whether the document attached as Exhibit A to the Complaint is a true and correct copy of the Personal Guaranty Defendant executed.

**AS TO "FIRST CAUSE OF ACTION – BREACH OF GUARANTY"**

13. Defendant repeats his answers to the earlier allegations of the Complaint, including paragraphs 1 through 12.

14. With respect to the allegations in Paragraph 14 of the Complaint, Defendants denies that payments were not made on the Promissory Note. Defendant further states that to the best of his knowledge and information, John E. Meyer, Jr. (at times, "Meyer"), in his capacity as manager of Tethys Trading, LLC ("Tethys Trading"), caused the transfer of millions of dollars of cash from one or more accounts of Tethys Trading to the segregated Tethys Trading account referenced in the Promissory Note between Tethys Trading and Plaintiff [the "Segregated Account"]. Thereafter, Meyer – the sole manager of Tethys Trading with signature authority with respect to the Segregated Account – caused the transfer of most, if not all, of the remaining millions of dollars of cash on deposit with Tethys Trading to one or more companies in the Tethys Group in which Plaintiff held ownership interests and/or financial interests. Upon

information and belief, and subject to facts to be elicited in discovery, these transfers were done with the knowledge and active collaboration and agreement of Plaintiff and its principal and chief executive officer, Richard P. Small (at times, "Richard") and/or second officer/manager, Norma T. Small (the wife of Richard), if such transfers were not done under their direction. Additionally, upon information and belief, under swap agreements and/or other agreements, Plaintiff received material economic, equity and/or financial benefits that were treated as on-account principal or interest payments with respect to the referenced promissory note of Tethys Trading to Plaintiff, or which the Court should deem as such.

14. The allegations of Paragraph 15 of the Complaint are denied.

15. The allegations of Paragraph 16 of the Complaint are denied.

**AS TO "PRAYER"**

Defendant denies that Plaintiff is entitled to the relief requested in the paragraph that begins with "WHEREFORE" and that appears under the subheading "Prayer."

**AFFIRMATIVE DEFENSES**

1. Plaintiff's claims are barred under the doctrine of waiver.

2. Plaintiff's claims are barred under the doctrine of equitable estoppel.

3. Plaintiff's claims are barred by the doctrine of accord and satisfaction.

4. Plaintiff's claims are barred by the doctrine of novation.

5. The claims and relief sought by Plaintiff are barred by the doctrine of unclean hands.

6. Plaintiff's claims are barred under the provisions of 15 O.S. § 338.

7. Plaintiff's claims are barred by the doctrine of laches.

8. Plaintiff's claims are barred by the doctrine of election of remedies.

9. Plaintiff's claims are barred by modification and discharge of contract.

10. Plaintiff's claims are barred by Plaintiff's breach of contract and resulting discharge of contract.

11. Plaintiff's claims are barred or limited by the doctrine of set-off.

12. Plaintiff is barred from maintaining this action, or barred from any relief sought in this action, based upon the doctrines of ratification and/or release.

13. To the extent that Plaintiff has a right under law or contract which has been violated or breached, or has suffered any injury, any such wrong or harm is the proximate result of Plaintiff's own actions or the actions of one or more third-parties over whom Defendant has exercised no control.

Defendant reserves the right to amend and/or supplement their Answer and Affirmative Defenses, based upon facts that may be uncovered through discovery and investigation. In asserting these Affirmative Defenses, Defendant does not admit, and the Affirmative Defenses herein should not be construed to imply, that Defendant bears the burden of production or burden of persuasion with respect to the assertions contained herein.

WHEREFORE, Defendant Ruchir A. Kadakia respectfully requests that the Court grant a judgment of "no cause" in favor of Defendant on all claims within the Complaint, and grant to Defendant an award of costs and counsel fees, and all such other relief to Defendant allowable under law and equity.

**COUNTERCLAIM AND THIRD-PARTY COMPLAINT OF RUCHIR A. KADAKIA**

For his Counterclaim and Third-Party Complaint of Defendant/Counterclaim Plaintiff Ruchir A. Kadakia (referred to hereafter as "Counterclaimant", "Third-Party Plaintiff", or "Kadakia") against Counterclaim Defendant R.P. Small Corp. ( "Small Corp.") and Third-Party

Defendants John E. Meyer, Jr., Robert Finnegan, Tethys Supply and Marketing, LLC, Tethys Capital, LLC, Tethys Biofuels, LLC, Tethys Latin America, LLC, Tethys Partners, LLC, Tethys Derivatives, LLC, Tethys Shipping, LLC, and John Does and Jane Does 1 to 10, Kadakia states as follows:

*Facts Common to All Counts of Counterclaim and Third-Party Complaint*

**The Parties**

1. Counterclaimant Kadakia is a citizen of the State of Texas, with a residential address of 2031 Westcreek Lane, Apartment 1716, Houston, Texas 77027.

2. Small Corp. is an Illinois corporation with its principal place of business in Tulsa, Oklahoma.

3. Third-Party Defendant John E. Meyer, Jr. (at times, "Meyer") is, upon information and belief, a citizen of the State of Illinois, with a mailing address as Managing Member, Tethys Trading, LLC, 954 W. Washington Boulevard, Suite 250, Chicago, Illinois 60607.

4. Third-Party Defendant Robert Finnegan (at times, "Finnegan") is, upon information and belief, a citizen of the State of Illinois, with a mailing address to the attention of Tethys Trading, LLC, 954 W. Washington Boulevard, Suite 250, Chicago, Illinois 60607.

5. Each of Third-Party Defendants Tethys Trading, LLC ("Tethys Trading"), Tethys Supply and Marketing, LLC ("Tethys Supply and Marketing"), Tethys Capital, LLC ("Tethys Capital"), Tethys Energy, LLC ("Tethys Energy"), Tethys Biofuels, LLC ("Tethys Biofuels"), Tethys Latin America, LLC ("Tethys Latin America"), Tethys Partners, LLC ("Tethys Partners"), Tethys Derivatives, LLC ("Tethys Derivatives"), and Tethys Shipping, LLC ("Tethys Shipping") [collectively referred to as the "Tethys Group"], is an Oklahoma limited liability

company, with a mailing address c/o the managing member, John E. Meyer, Jr. 954 W. Washington Boulevard, Suite 250, Chicago, Illinois 60607.

6. John Doe 1 through John Doe 10, and Jane Doe 1 through Jane Doe 10, are natural persons, and non-natural persons recognized under law, whose identity is not presently known and who are, upon information and belief, the recipients or additional or other recipients – direct or indirect – of assets of Tethys Trading, LLC which were illegally and wrongfully transferred at the direction of Meyer and Finnegan with the purposes of secreting assets and defrauding creditors other than Small Corp.

**Jurisdiction and Venue**

7. The Court has subject matter jurisdiction over the Counterclaim and Third-Party Complaint, pursuant to 28 U.S.C. §1332, as the Counterclaim and the Third-Party Claims are each an action by a citizen of a foreign state against a citizen of a different foreign state, and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

8. Counterclaim Defendant Small Corp. is subject to the personal jurisdiction of this Court as (a) Small Corp. itself has invoked the jurisdiction of this Court by commencing the instant action against Kadakia in this Court; (b) according to Small Corp.'s allegations in the Complaint (at paragraph 1), Small Corp. maintains a principal place of business in Tulsa, Oklahoma; and (c) Small Corp. is presently, and at other times relevant to this action has been, an owner of membership units in Tethys Trading and other companies within the Tethys Group which were created under, and are expressly subject to (under written operating agreements), the laws of the State of Oklahoma.

9. Third-Party Defendants Meyer and Finnegan are subject to the personal jurisdiction of this Court as they have engaged, actively and on a protracted basis, in the business, operations

and management, as Managing Member(s) or otherwise, of the limited liability companies comprising Third-Party Defendant Tethys Group, each of which was formed in the State of Oklahoma (and themselves are subject to the exercise of personal jurisdiction by this Court).

10. Third Party Defendants John Doe 1 through John Doe 10 and Jane Doe 1 through Jane Doe 10 are subject to the personal jurisdiction of this Court by virtue of either (a) their status as citizens of the State of Oklahoma, or (b) their conduct is such as to render it reasonable and foreseeable that they would be haled into a judicial forum located within the State of Oklahoma.

**Nature of Counterclaim and Third-Party Complaint**

11. The Counterclaim and Third-Party Complaint arise out of a wrongful scheme orchestrated by Third-Party Defendants Meyer and Finnegan, in their capacities as official or unofficial Managers of Tethys Trading and other entities within the Tethys Group, with the knowledge and consent, if not active participation, of Counterclaim Defendant Small Corp., to engage in fraudulent transfers of assets of Tethys Trading for the purposes of secreting, transferring, disposing of and relocating Tethys Trading assets beyond the reach of Tethys Trading's creditors.

**History of the Tethys Entities**

12. Prior to the formation of the various Tethys-denominated entities, Kadakia held various positions with different companies in the energy industry, including managing portfolios of commodities investments centered on oil, gas and power.

13. The energy brand known as "Tethys" was originated by Jeffrey Hodgson ("Hodgson"). In or about 2011, Hodgson met Meyer. Shortly thereafter, Hodgson and Meyer formed a limited liability company known as "Tethys Energy, LLC," which was in the business

of financing "upstream" ventures – lending against oil and gas that was in the ground with the view of funding either exploration and production/monetization.

14. Hodgson and Kadakia met around the same time that Hodgson met Meyer. Hodgson and Kadakia quickly developed trust in each other and discussed forming a business that would focus on trading in oil or gas commodities; ultimately, they started a business that was initially known as "Tethys Oil," but later became more formally known as Tethys Trading, LLC.

15. The combination of Kadakia's creativity and Hodgson's organized thought processes and articulate manner was the synergy that fueled Tethys Oil and ultimately its successor Tethys Trading. Approximately twelve (12) months after Kadakia and Hodgson began working together under the "Tethys Oil" name, Hodgson introduce Kadakia to Meyer. Hodgson envisioned a "Tethys"-branded family of entities that covered a wide gamut of energy and commodities trading. Meyer purportedly had relationships with financiers whose funding would be necessary to meet trading margin calls and back letters of credit required to secure trading positions.

16. Kadakia recognized that Tethys Oil would need expertise in the physical movement of oil from one location to the next (*e.g.*, loading oil in tankers and related net/gross conversions taking into account the change in oil volume as temperatures rise or fall). In the second quarter of 2013, Kadakia met Robert Finnegan, who was introduced to Kadakia as a graduate of the Merchant Marine Academy who had spend significant time working on oil tankers.

17. Tethys Trading was formed on or about July 30, 2013 as an Oklahoma limited liability company; and as memorialized in a written Operating Agreement of Tethys Trading effective July 30, 2013, each of Kadakia, Hodgson, Meyer and an entity named "Legasea" (with Finnegan initially holding voting rights and shortly later receiving the membership units) each received 25 voting Membership Units, representing a twenty-five (25) percent equity and voting

stake, in Tethys Trading. Tethys Trading was initially funded by a loan of $100,000 from Kadakia, and a loan of $1.8 million of Meyer, to Tethys Trading. Both loans were satisfied by Tethys Trading in or around the Fall of 2013.

18. Meyer instantly exerted his seniority, and dominant personality and will over the younger, less experienced, and compliant Kadakia and Hodgson as it related to Tethys Trading. Meyer demanded and received complete control over management and operations of Tethys Trading. The initial Operating Agreement of Tethys Trading, which was prepared by Meyer's personal attorney, was drafted and signed with little or no negotiation (as Kadakia and Hodgson proceeded without representation of counsel). The initial Operating Agreement of Tethys Trading vested extensive and significant management and operational authority in the hands of Meyer, as the sole Manager of Tethys Trading:

(a) Under Section 6.01. of the Operating Agreement, Meyer was appointed as initial Manager – a position of authority and control which he has never relinquished.

(b) Under Section 6.01. of the Operating Agreement, Meyer could only be removed as Manager by the unanimous vote of all Members until Meyer (and the John E. Meyer Family, LLC) has "in the reasonable business judgment of John E. Meyer, Jr. been paid in full by each of the other Members of the Company and that all obligations have been fulfilled, regarding any debt or expenses due to John E. Meyer, Jr. …" (including Meyer's loan of $1.8 Million at fifteen (15%) percent interest which he made at or around formation of Tethys Trading, for which he demanded and extracted inordinate return including equity warrants and a favorable fee agreement, and which was satisfied in any within three (3) months of operations).

(c) As Manager, Meyer was vested with conducting all of the business and affairs of the Company under Section 6.01. of the Operating Agreement; "Any third person may rely

absolutely upon the act, deed, and/or signature of the Managers [Meyer] as being the act of the Company and no person shall be obliged or privileged to inquire into or to otherwise ascertain whether the act of the Managers [Meyer] has been duly authorized under the terms of the Agreement.

(d) Section 6.02. of the Operating Agreement granted extraordinary power to Meyer and to Meyer alone (and to no other Member absent Meyer's approval), "in his sole discretion and authority and with no other approval necessary …" to borrow money in any amount; to dispose of Company Property, even outside of the ordinary course of business, to enter into any contract in any amount, and to compromise any claim in any amount.

18. Meyer saw to it that he, and he alone, had signature authority over all of Tethys Trading's bank accounts, including the segregated accounts of Tethys Trading at Morgan Stanley in which loan proceeds of the Fussle Note and Small Corp. Note (addressed below) were disbursed to and on deposit.

19. Within a month of its formation, Tethys Trading was immersed in carrying on the business of a PEMEX/Shell distillates contract, which Kadakia had developed with Hodgson while the two were operating as Tethys Oil. Starting at the end of August 2013, Tethys Trading began shipping 900,000 barrels of diesel oil a month – 3 shiploads of a standard mid-ranged tanker, with each shipload representing 12.6 million gallons of diesel. The PEMEX/Shell distillates contract was a one (1)-year contract; it was enormous in all respects, representing three (3%) percent of United States distillates exports during the term of the contract. It produced roughly $6 million in profits for Tethys Trading during its one (1)-year term.

20. By approximately mid-2014, Meyer, Finnegan, and Kadakia formed as co-members other Tethys-denominated limited liability companies (and re-formed Tethys Energy to include

Kadakia and Finnegan as members along with original member Meyer). To the extent that these other entities conducted any business, they were virtually entirely focused on trading or financing oil and gas and energy products/projects other than diesel oil (distillates).

**Meyer Manufactures Issues and Forces Reduction in Hodgson's Equity Interests**

21. Shortly before Christmas 2013, Meyer manufactured an issue with Hodgson with the view of reducing Hodgson's equity interests in Tethys Trading. Meyer complained that Hodgson had not paid a personal loan to Meyer of $30,000 or less (a loan involving no collateral). Meyer bullied and pressured Hodgson, challenging Hodgson's contributions to Tethys Trading and financial wherewithal to be a member.

22. Meyer forced Hodgson to relinquish approximately fourteen (14%) percent of his equity (reducing his equity stake in Tethys Trading to approximately eleven (11%) percent) even though Hodgson committed to repay, and did repay, the personal loan to Meyer. Hodgson received nothing in return for his equity reduction, despite the fact that a few months later Tethys Trading was valued at $12.5 million.

**Tethys Trading Secures Financing from Reinhold Fussle and R.P. Small Corp.; R.P. Small Corp. Acquires Equity in Tethys Trading and Other Tethys Entities**

23. In the Summer and Fall of 2013 Tethys Trading sought debt funding in order to finance margin requirements associated with the PEMEX/Shell contract and related transactions.

24. An acquaintance of Hodgson, Reinhold Fussle (at times, "Fussle"), expressed interest in extending a loan to Tethys Trading. Fussle and Tethys Trading ultimately closed on a loan in the principal amount of $500,000.00. This loan was memorialized by a written Promissory Note dated January 17, 2014 in the principal amount of $500,000.00 (plus interest at varying rates stated in the Note) [the "Fussle Note"], which was secured by a certain written Pledge and Security Agreement between Tethys Trading as debtor and Fussle as creditor.

25. The stated purpose of the Fussle Note "… is to fund, in whole or part, margin requirements for Maker's Distillates-Light Ends." The Fussle Note further states that "The proceeds of this Note shall be placed by Maker, upon initial receipt, in a segregated account maintained at Morgan Stanley, and such proceeds shall not be co-mingled with any of Maker's own funds until they are removed from such segregated account, the notice of which shall be made by Maker to Payee as of the date on which such funds are removed from such segregated account."

26. After closing and funding of the Fussle Note, Tethys Trading secured additional funding in the form of a $6 million loan from R.P. Small Corp. The principal of R.P. Small Corp., Richard P. Small, was upon information and belief, a friend and business associate of Meyer's father and Meyer.

27. The $6 million loan from Small Corp. to Tethys Trading was memorialized by a written Promissory Note dated March 27, 2014 (the "Small Corp. Note") and Security Agreement. As with the Fussle Note, the Small Corp. Note provides expressly that it is for the purpose of funding, in whole or part, margin requirements for Tethys Trading's trades in Distillates-Light Ends. As with the Fussle Note, the Small Corp. Note states, "The proceeds of this Note shall be placed by Maker, upon initial receipt, in a segregated account maintained at Morgan Stanley, and such proceeds shall not be co-mingled with any of Maker's own funds until they are removed from such segregated account, the notice of which shall be made by Maker to Payee as of the date on which such funds are removed from such segregated account."

28. At or around the time that Small Corp. extended the $6 million loan to Tethys Trading, Small Corp. acquired a ten (10%) percent Membership interest in Tethys Trading based upon an enterprise valuation of $12.5 million.

**Tethys Trading's Business Downturn in the Last Half of Calendar Year 2014**

29. Tethys Trading's contract with PEMEX/Shell terminated in or around August 2014. Tethys Trading pursued other potential opportunities, including other trades and diesel oil hedge opportunities. However, Tethys Trading's good fortunes began to run dry, as trading, with its inherent risks, produced certain transaction losses.

30. Tethys Trading had also entered into a "take or pay" oil contract that required Tethys Trading to pay for quantities of oil regardless of whether Tethys Trading was in the position to take possession and secure shipment of the oil. However, Tethys Trading was unable to secure barges to take and move the oil. Tethys Trading attempted to terminate the "take or pay" oil contract, but the supplier continued to draw down on the letter of credit posted by Tethys Trading.

**Diversions and Wrongful Transfers of Assets of Tethys Trading by Meyer**

31. In the first half of 2015, with Tethys Trading's business struggling, Meyer and Finnegan hatched a plan to transfer and divert cash assets of Tethys Trading from Tethys Trading accounts to accounts of other Tethys-denominated entities. Their goal was to strip Tethys Trading of assets and secreting these assets in bank accounts of other Tethys Trading entities, thereby defrauding creditors and potential creditors of Tethys Trading, including Reinhold Fussle.

32. This fraudulent scheme was executed by Meyer, as he was the only person who had power under Tethys Trading's bank resolutions to authorize or make transfers out of Tethys Trading's bank accounts. Meyer was the sole Manager under the Operating Agreement of Tethys Trading.

33. The following acts were perpetrated by Meyer and Finnegan in furtherance of their wrongful scheme:

(a) In or about the first quarter of 2015, Meyer caused the transfer of approximately $380,000.00 (if not a greater amount) of proceeds of the loan extended by Reinhold Fussle from a segregated bank account in the name of Tethys Trading to one or more other Tethys denominated entities, in violation of the express covenants of the Fussle Note.

(b) At or around the same time in 2015, Meyer cause the transfer of millions of dollars of proceeds of the loan extended by Small Corp. from the segregated bank account in the name of Tethys Trading to one or more other Tethys denominated entities, in violation of the express covenants of the Small Corp Note.

(c) Meyer caused the Company to pay to both Meyer and Finnegan several tens, if not hundreds, of thousands of dollars in W-2 compensation. This compensation was paid to Meyer and Finnegan at a time when Tethys Trading was either not operational, or when Meyer and Finnegan were advising Reinhold Fussle that Tethys Trading was without assets and not operating.

(d) In or about January 2015, Meyer caused Tethys Trading to extend a purported "loan" in the amount of $125,000.00 to Finnegan without guaranty or security and at a low interest rate. Upon information and belief, this loan remains outstanding, and Meyer (as Manager of Tethys Trading) has taken no, or virtually no, action on behalf of Tethys Trading to secure collection.

Upon information and belief, Finnegan has failed to satisfy loan payment obligations to Tethys Trading.

34. Upon information and belief, Small Corp. had knowledge of and approved all or virtually all of the fraudulent transfers from Tethys Trading to other Tethys-denominated entities, as well as the unlawful disbursements to Meyer and Finnegan.

35. At or around the same time of the fraudulent transfers of Tethys Trading's assets, Meyer, Finnegan and Small Corp. negotiated and entered into "swap agreements". The details of these negotiations and swap agreement terms were purposefully kept secret from Kadakia. Upon information and belief, Small Corp. received equity interests or additional equity interests in Tethys-denominated entities (including, upon information and belief, Tethys Capital, which received a portion, if not a significant portion, of the assets of Tethys Trading which were wrongfully transferred out of the accounts of Tethys Trading) in return for Small Corp.'s agreement to extend or defer principal and/or interest payment obligations under the Small Corp. Note.

**Default by Tethys Trading Under the Fussle Note; the Revised Fussle Note**

36. By written First Amendment (dated as of December 31, 2014) to the Fussle Note, Fussle agreed to extend the Maturity Date from December 31, 2014 to December 31, 2015.

37. By December 2016, Tethys Trading had ceased payments, or was threatening, to cease payments, of payments due under the Fussle Note.

38. In communications with Fussle, Meyer stated in words or substance to Fussle, that Tethys Trading was not in the position (or did not have the cash available) to make payments due under the Fussle Note; and Meyer pressured Fussle to again recast, restructure or forgive principal/interest payment obligations due under the Fussle Note. Fussle relented and agreed to a restructuring of the Fussle Note.

39. The outcome of these discussions was a three (3)-party agreement by which (a) Fussle reduced the principal amount of the Fussle Note from $500,000.00 to $400,000.00 (with quarterly interest payable beginning on March 31, 2017 and the Maturity Date extended to December 31, 2021), memorialized by a revised written Promissory Note dated January 1, 2017, ("Revised Fussle Note") and (b) as a measure of good faith on the part of Hodgson and concern on his part that Tethys Trading would ultimately not honor its obligations under the Fussle Note, Hodgson agreed to pay Fussle the sum of $100,000 plus interest (which amount Hodgson has fully satisfied by payment of $126,850.00 in principal and interest to Fussle).

40. Meyer's fraudulent conduct vis-à-vis Fussle and the Revised Fussle Note has continued into 2019. Tethys Trading is in default of interest payment obligations due to Fussle under the Revised Fussle Note. Fussle has sought payment; in response, Meyer has stated that Tethys Trading is non-operational and without assets, or words to this effect; and Meyer has disparaged Kadakia in emailed communications to Fussle in falsely laying blame on Kadakia for the business and financial condition of Tethys Trading. At no time has Meyer disclosed to Fussle the fact that Meyer has caused millions of dollars of assets of Tethys Trading to be transferred from accounts of Tethys Trading to accounts of other entities; nor has Meyer disclosed that approximately $380,000.00 (if not more) of Fussle Note proceeds were transferred out of the Tethys Trading segregated account earmarked for Fussle funds to one or more bank accounts of one or more other entities.

**<u>Kadakia is Forced Out of, and Separates from the Tethys Entities</u>**

41. As of the Fall of 2015, Kadakia's relationship with Meyer and Finnegan had become strained if not hostile. Kadakia was summarily removed from payroll, and effectively terminated as an employee, of Tethys Trading.

42. Kadakia sought a formal separation from Meyer, Finnegan, Tethys Trading and the other Tethys entities. Ultimately, Kadakia, Meyer, Finnegan, Tethys Trading and various other Tethys-denominated entities entered into a written "Agreement Regarding Transfer Of Membership Interests" effective December 31, 2015, pursuant to which, among other things, Kadakia's various membership interests in Tethys Trading and other Tethys entities was purchased for the sum of $50,000.00.

43. The instant lawsuit was commenced by Small Corp. without prior notice or demand for payment by Small Corp. to Kadakia. Upon information and belief, Small Corp. has continued its dealings with Meyer, Finnegan and the Tethys entities since Kadakia sold his membership interests at the end of 2015.

**FIRST COUNT**
***Counterclaim Against R.P. Small Corp.***
**[Tortious Interference with Contractual Indemnification Rights and Expectancies of Kadakia Under Written "Agreement Regarding Transfer of Membership Interests"]**

44. Kadakia repeats the allegations of paragraphs 1 through 46 of the Counterclaim and Third-Party Complaint above as though herein set forth at length.

45. By written "Agreement Regarding Transfer of Membership Interests" effective December 31, 2015 (at times, "Kadakia Membership Units Transfer Agreement") between Kadakia, Meyer, Finnegan, Tethys Trading, Tethys Biofuels, Tethys Capital, Tethys Latin America, Tethys Partners, Tethys Derivatives and Tethys Energy, Kadakia transferred to Meyer and Finnegan his ownership interests in the various Tethys Group of companies in consideration for payment of $50,000.00.

46. As of December 31, 2015, it had been approximately three (3) months since Kadakia had any meaningful involvement in day-to-day operations of Tethys Trading, as his status as an employee with Tethys Trading had ended in or about August or September 2015.

47. In the negotiations preceding the closing of Kadakia's sale of his Tethys ownership interests to Meyer and Finnegan, Kadakia through his counsel at the time, requested a release or discharge with respect to any obligations of Kadakia under Kadakia's Personal Guaranty to Small Corp. This request was rejected. With a discharge refused by Meyer and Finnegan with respect to Kadakia's personal guaranty of Tethys Trading's $6 million Note obligation to Small Corp., Kadakia sought and received a broadly written indemnification that would cover claims or liabilities against Kadakia with respect to Kadakia's Personal Guaranty to Small Corp.

48. Under paragraph 3.B. of the Kadakia Membership Units Transfer Agreement,

> "To the fullest extent permitted by applicable law, Meyer, Finnegan, and the Tethys Companies, for themselves, heirs, successors and assigns, agree to indemnify Kadakia and his successors and assigns, from and against any and all claims, demands, damages, fees, actions, and causes of action of whatsoever nature, whether in contract or in tort, at law or in equity, liquidated or unliquidated, which have accrued or may hereafter accrue to any third party, whether now known or not known arising out of, or in any manner relating to, the business of the Tethys Companies [defined as Tethys Trading, Tethys Biofuels, Tethys Latin America, Tethys Partners, Tethys Derivatives and Tethys Energy] or Tethys Capital, LLC, or Kadakia's ownership of the Units, except any such claims, demands, damages, fees, actions, and causes of action arising out of any action taken by Kadakia that is proved by a finder of fact to have been unauthorized or taken outside of Kadakia's scope of authority with respect to any Tethys Company or Tethys Capital, LLC."

49. As alleged above, in 2015 and/or later, in violation of fiduciary duties, duties under contract, and other duties under law, in their capacity as Managing Members or *de facto* Managers of Tethys Trading, Meyer and Finnegan wrongfully transferred assets of Tethys Trading to one or more persons or entities without commensurate, fair or reasonable consideration or value in return. Meyer and Finnegan engaged in this wrongful conduct with the intention of concealing assets of Tethys Trading and defrauding creditors (including, most notably, Reinhold Fussle, and potential creditors of Tethys Trading other than Small Corp.).

50. The referenced wrongful transfers of assets of Tethys Trading devised and implemented by Meyer and Finnegan were, on information and belief, undertaken with the knowledge and consent of Small Corp., which held or received financial, economic and/or equity benefits of some form in or with respect to one or more of the entities directly or indirectly receiving the transferred assets of Tethys Trading. Upon information and belief, at or around the same time that Small Corp. was consenting to the fraudulent transfers by Meyer and Finnegan of Tethys Trading assets, Small Corp. entered into "swap agreements" with Meyer and Finnegan and one or more Tethys-denominated entities, pursuant to which Small Corp. received tangible financial, economic or equity-interest benefits in Tethys-denominated entities other than Tethys Trading.

51. By virtue of the foregoing conduct, Small Corp., in conjunction with Meyer and Finnegan, have rendered Tethys Trading without assets and insolvent, or virtually insolvent, to the substantial detriment of creditors and potential creditors of Tethys Trading, including Kadakia, who stands in the position of a creditor of Tethys Trading by virtue of the contractual indemnification rights as against Tethys Trading held by Kadakia pursuant to Paragraph 3.B. of the Kadakia Membership Units Transfer Agreement.

52. Small Corp.'s knowledge, complicity and participation in the foregoing wrongful conduct was intentional and malicious. It was undertaken without right or justification under law, with knowledge of the likely injurious impact to other creditors of Tethys Trading such as Reinhold Fussle and Kadakia; and it was undertaken with the wrongful purpose of enhancing Small Corp.'s position and interests as a creditor (*e.g.*, with the view of enhancing Small Corp.'s creditor position vis-à-vis Reihnold Fussle, whose loan preceded in time the loan extended by Small Corp. to Tethys Trading), as well as Small Corp.'s interests as an equity holder/investor of

one or more other Tethys-denominated entities that were receiving the benefit of use and control of assets of Tethys Trading.

53. The actions of Small Corp. in collaborating with Meyer and Finnegan in the wrongful transfers and dispositions of assets of Tethys Trading constitute (a) tortious interference with Kadakia's contractual rights of indemnification from Tethys Trading under the Kadakia Membership Units Transfer Agreement, and/or (b) tortious interference with Kadakia's economic expectancies.

54. As a proximate result of the tortious interference by Small Corp. with Kadakia's contractual rights and economic expectancies, Kadakia has suffered damages.

WHEREFORE, Counterclaim Plaintiff Ruchir A. Kadakia requests judgment on this First Count of the Counterclaim against Counterclaim Defendant R.P. Small Corp. and that he be awarded compensatory damages, punitive damages, costs, attorney fees, interest and such other relief as may be just and proper.

**SECOND COUNT**
***Counterclaim Against R.P. Small Corp.***
**[Civil Conspiracy]**

55. Counterclaimant Kadakia repeats the allegations of paragraphs 1 through 57 of the Counterclaim and Third-Party Complaint above as though herein set forth at length.

56. R.P. Small Corp., through its owners, officers, employees, and agents, intentionally acted in combination with Third-Party Defendants Meyer and Finnegan and other Tethys-denominated entities owned and controlled by Meyer, Finnegan and R.P. Small Corp., (a) to perpetrate one or more unlawful and wrongful transfers of assets of Tethys Trading, and/or (b) to engage in other or additional conduct for the unlawful purposes of facilitating the unlawful transfer or transfers of assets of Tethys Trading.

57. The conduct of R.P. Small Corp. constituting the wrongful civil conspiracy involved an unlawful purpose and/or unlawful means undertaken in combination with Third-Party Defendants Meyer, Finnegan and one or more Tethys-denominated entities owned or controlled by them.

58. Counterclaimant Kadakia has been injured as a proximate result of the foregoing wrongful civil conspiracy.

WHEREFORE, Counterclaim Plaintiff Ruchir A. Kadakia requests judgment on this Second Count of the Counterclaim against Counterclaim Defendant R.P. Small Corp. and that he be awarded compensatory damages, punitive damages, costs, attorney fees, interest and such other relief as may be just and proper.

**THIRD COUNT**
***Third-Party Complaint Against Meyer and Finnegan and Tethys-Denominated Entities***
**[Contractual Indemnification Under Kadakia Membership Units Purchase Agreement]**

59. Third-Party Plaintiff Kadakia repeats the allegations of paragraphs 1 through 61 of the Counterclaim and Third-Party Complaint as though herein set forth at length.

60. The filing of the Complaint by R.P. Small Corp. against Kadakia triggers a contractual right of indemnification in favor of Kadakia and against Third-Party Defendants Meyer, Finnegan, Tethys Trading, Tethys Biofuels, Tethys Capital, Tethys Latin America, Tethys Partners, Tethys Derivatives and Tethys Energy pursuant to Paragraph 3.B. of the Kadakia Membership Units Transfer Agreement.

61. Said Third-Party Defendants have actual knowledge of the Complaint against Kadakia and have failed and refused to offer indemnification.

62. Third-Party Defendants Meyer, Finnegan, Tethys Trading, Tethys Biofuels, Tethys Capital, Tethys Latin America, Tethys Partners, Tethys Derivatives and Tethys Energy are liable

to Third-Party Plaintiff Kadakia for indemnification obligations under Paragraph 3.B. of the Kadakia Membership Units Transfer Agreement, and are in breach of the Kadakia Membership Units for failing to acknowledge and assume their liability.

WHEREFORE, Third-Party Plaintiff Ruchir A. Kadakia requests judgment on this Third Count of the Counterclaim and Third-Party Complaint against Third-Party Defendants John E. Meyer, Jr.; Robert Finnegan; Tethys Trading, LLC; Tethys Biofuels, LLC; Tethys Capital, LLC; Tethys Latin America, LLC; Tethys Partners, LLC; Tethys Derivatives, LLC; and Tethys Energy, LLC and that he be awarded compensatory damages, punitive damages, costs, attorney fees, interest and such other relief as may be just and proper..

**FOURTH COUNT**
***Third-Party Complaint Against Meyer and Finnegan and Tethys-Denominated Entities***
**[Common Law Indemnification and Contribution]**

63. Third-Party Plaintiff Kadakia repeats the allegations of paragraphs 1 through 65 of the Counterclaim and Third-Party Complaint as though herein set forth at length.

64. Based upon the wrongful conduct of Third-Party Defendants Meyer and Finnegan in in connection with the disposition and transfer of assets of Tethys Trading (which otherwise could have been used to reduce or retire the alleged obligation to Small Corp., or to produce income through operations of Tethys Trading which could have been used to satisfy claims of creditors of Tethys Trading), Meyer and Finnegan bear the liability associated with the underlying Promissory Note of Tethys Trading which serves as the basis of the claims of Small Corp. against Kadakia.

65. Additionally, Third-Party Defendants Meyer and Finnegan executed and delivered personal guarantees to R.P. Small Corp.

66. Third-Party Defendants Tethys-denominated entities, including but not limited to Tethys Supply and Marketing, should bear liability for all assets of Tethys Trading that they wrongfully received, directly or indirectly, by way of transfers of assets of Tethys Trading made without commensurate value or lawful consideration.

67. John Doe 1 through John Doe 10, and Jane Doe 1 through Jane Doe 10, are natural persons and or other persons under law who are unknown recipients or beneficiaries of fraudulent transfers by Meyer and Finnegan of assets of Tethys Trading without commensurate value or lawful consideration.

68. Kadakia is entitled to common law contribution and common law indemnification in connection with all claims of, and any losses or liabilities to, Small Corp. arising out of the $6 Million Note.

WHEREFORE, Third-Party Plaintiff Ruchir A. Kadakia requests judgment on this Fourth Count of the Counterclaim and Third-Party Complaint against Third-Party Defendants John E. Meyer, Jr. and Robert Finnegan; Tethys Trading, LLC; Tethys Supply and Marketing, LLC; Tethys Biofuels, LLC; Tethys Capital, LLC; Tethys Latin America, LLC; Tethys Partners, LLC; Tethys Derivatives, LLC; Tethys Shipping, LLC; and Tethys Energy, LLC, and John Doe 1 though John Doe 10 and Jane Doe 1 through Jane Doe 10, and that he be awarded compensatory damages, punitive damages, costs, attorney fees, interest and such other relief as may be just and proper.

**FIFTH COUNT**
***Third-Party Complaint Against Meyer, Finnegan and Other Third-Party Defendants***
**[Breach of Fiduciary Duty]**

69. Third-Party Plaintiff Kadakia repeats the allegations of paragraphs 1 through 71 of the Counterclaim and Third-Party Complaint as though herein set forth at length.

70. In his capacity as Managing Member of Tethys Trading, and in all other *de jure* or *de facto* official roles and functions held, assumed or undertaken by Meyer in connection with Tethys Trading, Meyer owed fiduciary duties to all Members of Tethys Trading, including Kadakia, to undertake his duties, responsibilities and functions under the Tethys Trading Operating Agreement and under law with the utmost of honesty and good faith, sublimating his own personal pecuniary, economic and business interests, objectives and motivations to the best interests of all Members of Tethys Trading.

71. In in all other *de jure* or *de facto* official roles and functions held, assumed or undertaken by Finnegan in connection with Tethys Trading, Finnegan owed fiduciary duties to all Members of Tethys Trading, including Kadakia, to undertake his duties, responsibilities and functions under the Tethys Trading Operating Agreement and under law with the utmost of honesty and good faith, sublimating his own personal pecuniary, economic and business interests, objectives and motivations to the best interests of all Members of Tethys Trading.

72. Meyer and Finnegan breached fiduciary duties owed to Kadakia by engaging in misappropriation and diversion of Tethys Trading while Kadakia held equity in Tethys Trading. The acts of misappropriation and diversion include, but are not limited to:

(a) Meyer and Finnegan directed for no, or grossly inadequate, consideration the disbursement of millions in dollars of cash assets of Tethys Trading from one or more bank accounts of Tethys Trading to bank accounts of other Tethys-denominated entities which they owned or controlled in whole or part. These actions were undertaken with the purpose, and had the effect of rendering Tethys Trading without sufficient assets to engage in operations or honor contractual obligations to third parties, including Reinhold Fussle and Small Corp., and in enriching entities other than Tethys Trading (in which Meyer and Finnegan and those conspiring

with them, including Small Corp., held sufficient ownership and/or financial interests. These wrongful transfers of cash assets of Tethys Trading include [i] the transfer of approximately $380.000.00 (if not a greater amount) of proceeds of a loan extended by Reinhold Fussle directly or indirectly from a segregated bank account in the name of Tethys Trading to one or more other Tethys-denominated entities (in violation of terms, conditions and restrictions set forth in the promissory note delivered by Tethys Trading to Fussle, as well as obligations under law); and [ii] millions of dollars of proceeds of the loan extended by Small Corp. from a segregated bank account in the name of Tethys Trading to one or more other Tethys-denominated entities (in violation of terms, conditions and restrictions set forth in the $6 Million Note to Small Corp., as well as obligations under law); and

(b) After effecting the improper transfers of cash assets of Tethys Trading, rendering Tethys Trading with little or no assets to conduct business operations, Meyer and Finnegan proceeded to cause Tethys Trading to pay to them several tens, if not hundreds, of thousands of dollars in IRS Form W-2 employee compensation.

(c) Meyer and Finnegan caused Tethys Trading to extend a purported loan in the amount of $125,000 to Finnegan. Upon information and belief, this loan was inadequately documented, if not undocumented, and was not the subject of a personal guaranty of Finnegan or any pledge of security by Finnegan to Tethys Trading. Upon information and belief, this loan – which was made more than four (4) years ago, remains outstanding, and Meyer and Finnegan have failed to take any action, or cause Tethys Trading to take any action, to secure collection on behalf of Tethys Trading.

73. By virtue of the foregoing conduct, Meyer and Finnegan have breached fiduciary duties owed to Kadakia arising out of his former membership interest in Tethys Trading.

74. Kadakia is entitled to common law contribution and common law indemnification in connection with all claims of, and any losses or liabilities to, Small Corp. arising out of the $6 Million Note.

WHEREFORE, Third-Party Plaintiff Ruchir A. Kadakia requests judgment on this Fifth Count of the Counterclaim and Third-Party Complaint against Third-Party Defendants John E. Meyer, Jr. and Robert Finnegan; Tethys Trading, LLC; Tethys Supply and Marketing, LLC; Tethys Biofuels, LLC; Tethys Capital, LLC; Tethys Latin America, LLC; Tethys Partners, LLC; Tethys Derivatives, LLC; Tethys Shipping, LLC; and Tethys Energy, LLC, and John Doe 1 through John Doe 10 and Jane Doe 1 through Jane Doe 10, and that he be awarded compensatory damages, punitive damages, costs, attorney fees, interest and such other relief as may be just and proper.

## SIXTH COUNT

***Third-Party Complaint Against Meyer, Finnegan and Other Third-Party Defendants***
**[Personal Liability for Causing Fraudulent Transfers**
**in Violation of 24 O.S. §116]**

75. Third-Party Plaintiff Kadakia repeats the allegations of paragraphs 1 through 77 of the Counterclaim and Third-Party Complaint as though herein set forth at length.

76. Kadakia is a creditor of Tethys Trading by virtue of the contractual indemnification obligations of Tethys Trading to Kadakia under the Kadakia Membership Units Purchase Agreement.

77. Tethys Trading, under the control, management and direction of Meyer and Finnegan, made transfers of millions of dollars in or about 2015 (in turn directly or indirectly received by Tethys-denominated entities and/or other persons under the control, management and direction of Meyer and Finnegan) which were, and are, fraudulent transfers to creditors, in violation of Oklahoma statutory law, Oklahoma common law, and Oklahoma public policy,

including, but not limited to, in violation of 24 O.S. §116(A). The transfers were [i] made with actual intent to hinder, delay, or defraud one or more creditors, including Reinhold Fussle; [ii] made without Tethys Trading's receiving reasonably equivalent value in exchange for the transfer; and Tethys Trading was engaged in a business for which the remaining assets of Tethys Trading were unreasonably small in relation to the business of Tethys Trading, or it would have been reasonable to believe that Tethys Trading would incur debts beyond its ability to pay same as and when they became due.

78. Agreement or by virtue of their status as controlling principals of Tethys Trading, bear personal liability under Oklahoma law for the fraudulent transfers of Tethys Trading which they effectuated, implemented and caused to be perpetrated.

79. By virtue of the foregoing wrongful conduct of Meyer, Finnegan, and Third-Party Defendant Tethys-denominated entities participating in the direct or indirect conveyance or receipt of the fraudulently conveyed cash assets of Tethys Trading, Kadakia has suffered damages.

WHEREFORE, Third-Party Plaintiff Ruchir A. Kadakia requests judgment on this Sixth Count of the Counterclaim and Third-Party Complaint against Third-Party Defendants John E. Meyer, Jr. and Robert Finnegan; Tethys Trading, LLC; Tethys Supply and Marketing, LLC; Tethys Biofuels, LLC; Tethys Capital, LLC; Tethys Latin America, LLC; Tethys Partners, LLC; Tethys Derivatives, LLC; Tethys Shipping, LLC; and Tethys Energy, LLC, and John Doe 1 through John Doe 10 and Jane Doe 1 through Jane Doe 10, as follows:

A. Awarding Kadakia the remedies provided in 24 O.S. §119, which include –

i. Avoiding or reversing the transfer(s) to the extent necessary to satisfy Kadakia's claims as a creditor of Tethys Trading;

ii. Granting an attachment or other provisional remedy against the assets transferred or other property of the transferee as provided by law;

iii. Granting an injunction against further disposition of assets of Tethys Trading or any transferee of the assets of Tethys Trading;

iv. Appointing a receiver to take charge of the assets transferred or other property of any transferee; and

v. Granting such other relief as the circumstances may require.

B. An accounting by Third-Party Defendants, at the sole expense of Third-Party Defendants, of all receipts, transfers and dispositions of assets, including cash or other liquid assets, to or from any account of Tethys Trading, LLC; and

C. Awarding Kadakia compensatory damages, punitive damages, costs, attorney fees, interest and such other relief as may be just and proper..

**SEVENTH COUNT**
***Third-Party Complaint Against Meyer, Finnegan and Other Third-Party Defendants***
**[Derivative Claims by Kadakia on Behalf of Tethys Trading]**

80. Third-Party Plaintiff Kadakia repeats the allegations of paragraphs 1 through 82 of the Counterclaim and Third-Party Complaint as though herein set forth at length.

81. At all times relevant through December 31, 2015, Kadakia was a Member of Tethys Trading. Since December 31, 2015, Kadakia is a creditor of Tethys Trading, with an interest in Tethys Trading predicated upon, and derived from, this former Membership status (*i.e.*, Kadakia would not have been required to sign and deliver a personal guaranty were it not for his Membership interest in Tethys Trading.

82. By letter dated August 23, 2019, Kadakia (by his counsel) delivered to Meyer, in his capacity as Manager of Tethys Trading, a written "Demand For Corrective Action And Assertion of Claims" ("Derivative Demand").

83. The Derivative Demand states in relevant part:

> "The Derivative Demand is necessitated by various illegal and otherwise wrongful acts perpetrated by you prior to, and continuing since, December 31, 2015 (date of redemption of Mr. Kadakia's membership units in the Company) as sole Manager of Tethys Trading, LLC under Section 6.01 of the written Operating Agreement of the Company, as amended ["Operating Agreement"]). By the wrongful acts identified in this letter, and additional wrongs, you have caused significant harm to the Company.
>
> *　　　　*　　　　*
>
> Pursuant to 12 OK Stat §12-2023.1 (2019), demand is hereby made that you take immediate corrective action, as follows: (i) account for the disbursement from the R.P. Small Corp. segregated account at [Morgan Stanley] (which account funded disbursement of proceeds on loans extended by R.P. Small Corp. to the Company) since January 1, 2014 (and, together with such accounting, furnish a copy of all bank account statements of the R.P. Small Corp. segregated account; (ii) account for all disbursement transactions since January 1, 2014 in excess of $1,000 from all accounts of the Company (and, together with such accounting, furnish a copy of all bank statements of the Company for the same time period); (iii) restore to the Company all sums disbursed from the Company's accounts in connection with the transactions described in paragraphs A through C above, together with interest at a rate of ten (10%) percent (which, as you know, is the interest that R.P. Small Corp. has claimed).
>
> If the foregoing corrective actions are not completed immediately, then derivative claims will be brought and prosecuted by Mr. Kadakia on behalf of the Company against you for, among other things, breach of fiduciary duty, fraudulent conveyances in violation of applicable law, misappropriation, theft, and other wrongs under common law and statutory law of Oklahoma and/or the United States."

84. Kadakia has received no response to the Derivative Demand.

85. Kadakia has fulfilled all prerequisites to his assertion on behalf of Tethys Trading of the derivative claims set forth in the Derivative Demand.

86. By way of derivative claims on behalf of Tethys Trading, Third-Party Defendant Meyer is liable to Tethys Trading in the following claims:

(a) Breach of Section 6.01 and Section 6.02 of the Operating Agreement;

(b) Breach of the implied covenant of good faith and fair dealing underlying the Operating Agreement;

(c) Breach of fiduciary duty owed to Tethys Trading:

(d) Fraudulent transfers in violation of 24 O.S. §116(A) and other law;

(e) Conversion;

(f) Misappropriation;

(g) Waste; and

(h) Mismanagement.

87. Third-Party Defendants Finnegan and one or more Tethys-denominated (and John Does and Jane Does referenced) are liable to Tethys Trading as recipients of cash assets wrongfully and fraudulently disposed of or transferred out of accounts of Tethys Trading, as alleged more specifically above.

88. As a consequence of Third-Party Defendant Meyer's wrongful conduct and other Third-Party Defendants' wrongful receipt of assets of Tethys Trading, Tethys Trading has suffered damages.

WHEREFORE, derivatively on behalf of Tethys Trading, LLC, Third-Party Plaintiff Ruchir A. Kadakia requests judgment on this Seventh Count of the Counterclaim and Third-Party Complaint against Third-Party Defendants John E. Meyer, Jr. and Robert Finnegan; Tethys Supply and Marketing, LLC; Tethys Biofuels, LLC; Tethys Capital, LLC; Tethys Latin America, LLC; Tethys Partners, LLC; Tethys Derivatives, LLC; Tethys Shipping, LLC; and Tethys

Energy, LLC, and John Doe 1 through John Doe 10 and Jane Doe 1 through Jane Doe 10, as follows:

A. Awarding the remedies provided in 24 O.S. §119, which include –

   i. Avoiding or reversing the transfer(s) to the extent necessary to satisfy Kadakia's claims as a creditor of Tethys Trading;

   ii. Granting an attachment or other provisional remedy against the assets transferred or other property of the transferee as provided by law;

   iii. Granting an injunction against further disposition of assets of Tethys Trading or any transferee of the assets of Tethys Trading;

   iv. Appointing a receiver to take charge of the assets transferred or other property of any transferee; and

   v. Granting such other relief as the circumstances may require.

B. An accounting by Third-Party Defendants, at the sole expense of Third-Party Defendants, of all receipts, transfers and dispositions of assets, including cash or other liquid assets, to or from any account of Tethys Trading, LLC; and

C. Awarding compensatory damages, punitive damages, costs, attorney fees, interest and such other relief as may be just and proper..

Dated this 12th day of September, 2019

By: *_/s/ Evan G. E. Vincent_*
Sanford C. Coats, OBA #18268
Evan G.E. Vincent, OBA #22325

CROWE & DUNLEVEY, P.C.
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
sandy.coats@crowedunlevy.com
evan.vincent@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT, RUCHIR A. KADAKIA**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2019, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

R. Brent Blackstock
Lacey L. Shirley
Mid-Continent Tower, Suite 500
401 South Boston Avenue
Tulsa, OK 74103

s/ *Evan G. E. Vincent*
Evan G.E. Vincent

**VERIFICATION**

I, Ruchir Kadakia, of full age, hereby verifies that the facts set forth in this Amended Answer, Counterclaim and Third-Party Complaint are true, except as to those facts alleged on information and belief, which are true to the best of my knowledge, information and belief.

Ruchir A. Kadakia

Dated this 12th day of September, 2019