**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**R.P. SMALL CORP.**

**Plaintiff,**

**v.**

**RUCHIR A. KADAKIA,**

**Defendant.**

**and**

**RUCHIR A. KADAKIA, individually and derivatively on behalf of Tethys Trading, LLC,**

**Counterclaimant and Third-Party Plaintiff,**

**v.**

**R.P. SMALL CORP., an Illinois corporation,**

**Counterclaim Defendant,**

**and**

**JOHN E. MEYER, JR.; ROBERT FINNEGAN; and TETHYS SUPPLY AND MARKETING, LLC, *et al*.;**

**Third-Party Defendants.**

---

**JT HODGSON CAPITAL, LLC, a Delaware limited liability company, as assignee of Reinhold Fussle,**

**[Proposed] Intervenor-Counterclaimant and Third-Party Plaintiff.**

---

**Case No. 19-cv-271-JED-JFJ**

**MOTION TO INTERVENE OF JT HODGSON CAPITAL, LLC AND BRIEF IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 24(a), JT Hodgson Capital, LLC ("Hodgson Capital" or "Proposed Intervenor") hereby respectfully requests leave to intervene as of right in the above captioned case for the purposes of filing and prosecuting claims against (a) Plaintiff/Counterclaim-Defendant R.P. Small Corp., and (b) Third-Party Defendants John E. Meyer, Jr. and Robert Finnegan, and (c) each of Third-Party Defendants Tethys Trading, LLC, Tethys Supply and Marketing, LLC, Tethys Capital, LLC, Tethys Energy, LLC, Tethys Biofuels, LLC, Tethys Latin America, LLC, Tethys Partners, LLC and Tethys Derivatives, LLC. Alternatively, Hodgson Capital moves for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).

Hodgson Capital seeks to intervene in this action because it is the holder of certain claims against the Third-Party Defendants in this case by virtue of an assignment from an individual named Reinhold Fussle ("Fussle"). Fussle was a creditor of Tethys Trading, LLC prior to the assignment to Hodgson Capital, and through the actions set forth in the proposed Intervenor Third-Party Complaint attached as **Exhibit "1"** Fussle possessed a number of claims against the Third-Party Defendants and original Plaintiff R.P. Small Corp. that are interrelated and intertwined with the claims asserted against them in this case by original Defendant Ruchir Kadakia ("Kadakia"). Indeed, the indebtedness to Fussle (which has since been assigned to Hodgson Capital), is expressly referenced in the allegations made in Kadakia's Amended Answer, Counterclaim and Third-Party Complaint.

As Hodgson Capital is now the holder of all rights and claims held by Fussle, Hodgson Capital seeks to intervene under FED. R. CIV. P. 24 to ensure that its interests are properly protected and litigated in the most efficient manner.[1]

## BACKGROUND

Hodgson Capital is a Delaware limited liability company, whose sole member and manager is Jeffrey T. Hodgson, a founding member of Tethys Trading, LLC. As stated above, Hodgson Capital has acquired certain rights from Fussle pursuant to a written "Assignment of Promissory Note and Security Agreement and Assignment of Claims and Rights Agreement", which is attached to the proposed Intervenor Third-Party Complaint as **Exhibit "1"** (the "Fussle Assignment"). Pursuant to the Fussle Assignment Hodgson Capital has acquired, for good and valid consideration as stated, the following:

A. All rights, title and interests in or to the following of Reinhold Fussle ("Fussle"), a significant creditor of Third-Party Defendant Tethys Trading, LLC ( "Tethys Trading"):

1. A certain written "Pledge and Security Agreement" dated January 17, 2014 and executed and delivered by Tethys Trading in favor of Fussle (the "2014 Security Agreement"); together with

B. All claims or remedies, whether known or unknown, existing now or at any time in the future, of, to or for the benefit of Fussle or Fussle's heirs or estate, arising under law or equity, in any way associated with, related or relating to, or arising out of any one or more of the following:

[1] Although this Court's local rules do not appear to require a motion to intervene to state whether or not the other parties object to the motion, the undersigned has contacted counsel for both R.P. Small Corp. and the Third-Party Defendants regarding whether they object to the requested intervention. Both counsel stated that they reserve any objection to the request for intervention and their clients will respond to the request for intervention by Hodgson Capital in their response to the motion to intervene.

1. A certain written "Promissory Note" dated January 1, 2017 (the "2017 Promissory Note") in the principal amount of $400,000.00 delivered by Tethys Trading to Fussle;

2. The 2017 Promissory Note, including but not limited to acts or omissions preceding its execution or delivery, or in any way relating to the non-performance or breach of same;

3. The 2014 Promissory Note, including but not limited to acts or omissions preceding its execution or delivery, or in any way relating to the non-performance or breach of same;

4. The 2014 Security Agreement, including but not limited to acts or omissions preceding its execution or delivery, or in any way relating to the non-performance or breach of same;

5. The transfer of assets or income of any kind, or rights or claims associated therewith, of Tethys Trading;

6. The business, operations, or management, or any act or omission, of Tethys Trading or any affiliate of Tethys Trading (including but not limited to, Tethys Supply and Marketing, LLC; Tethys Capital, LLC; Tethys Biofuels, LLC; Tethys Latin America, LLC; Tethys Partners, LLC; Tethys Derivatives, LLC; or Tethys Energy, LLC); and

7. Any act or omission of or by John E. Meyer, Jr., Robert Finnegan, R.P. Small Corp., Richard Small, or Norma Small, or any of their affiliated entities, or any person acting or purporting to act on behalf of any of them.

As set forth in the annexed proposed pleading on intervention sought to be filed by Hodgson Capital, well over two (2) years before R.P. Small Corp. commenced this action against Ruchir Kadakia, when Third-Party Defendant Meyer first made clear to Fussle that Tethys Trading would not be able to meet obligations to Fussle under the 2014 Promissory Note,

Hodgson Capital stepped forward and assumed principal and interest obligations totaling over $126,000.00 of Tethys Trading to Fussle. Meyer secured for Tethys Trading debt restructuring and extensions of payments due to Fussle, as set forth in the 2017 Fussle Promissory Note, but Meyer did so through false representations to Fussle regarding the basis for Tethys Trading's inability to satisfy payment obligations to Fussle under the 2014 Fussle Promissory Note.

The reality was that Tethys Trading had no or virtually no assets because Meyer and Finnegan (with the apparent knowledge and/or consent of R.P. Small Corp.) diverted them. Meyer and Finnegan mentioned none of this to Fussle in securing loan payment restructuring and extensions, and the basis for Tethys Trading's financial, liquidity and business difficulties were falsely represented.

In 2019, with Tethys Trading unable to make payments due and owing under the 2017 Fussle Promissory Note, Meyer once again repeated his pattern of falsehoods to Fussle. With Fussle facing the consequences of default by Tethys Trading and the necessity of taking legal action, Hodgson Capital once again stepped forward and (as set forth in the Fussle Assignment) has committed to making payments to Fussle in consideration for Fussle's assignment of claims, rights and interests to Hodgson Capital.

For the reasons set forth below, Proposed Intervenor respectfully requests that the Court grant the motion of Proposed Intervenor to intervene by way of filing the proposed pleading attached as Exhibit "1".

## ARGUMENT AND AUTHORITY

### I. HODGSON CAPITAL IS ENTITLED TO INTERVENE AS OF RIGHT

1. The Requirements For Mandatory Intervention Under FED. R. CIV. P. 24(a)

Intervention as a matter of right under FED. R. CIV. P. 24(a) is broken down into four requirements: (1) the application is timely; (2) the proposed intervenor claims an interest relating

to the property or transaction which is the subject of the action; (3) the proposed intervenor's interest may as a practical matter be impaired or impeded in the action; and (4) the proposed intervenor's interest is not adequately represented by existing parties. *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (quoting *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1391 (10th Cir.2009)); see also, *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005).

The Tenth Circuit Court of Appeals has "historically taken a 'liberal' approach to intervention and, accordingly, our courts favor the granting of motions to intervene." *W. Energy All.*, *supra*, 877 F.3d at 1164 (citing *Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996); *see*, *Elliott Indus. Ltd. P'ship*, *supra*, 407 F.3d at 1103 (10th Cir. 2005) (the Tenth Circuit generally follows a liberal view in allowing intervention under Rule 24(a)) (citing *Nat'l Farm Lines v. ICC*, 564 F.2d 381, 384 (10th Cir.1977)); *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) ("This circuit follows 'a somewhat liberal line in allowing intervention.'") (quoting *Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 384 (10th Cir.1977)). To justify intervention the party "must have an interest that could be adversely affected by the litigation" and courts use practical judgment in determining whether the strength of the interest and the potential risk of injury to that interest are sufficient to justify intervention. *Albert Inv. Co.*, *supra*, 585 F.3d at 1392. As discussed below, Hodgson Capital's claims satisfy all the requirements for intervention as of right.

1. <u>Hodgson Capital's Motion to Intervene is indisputably timely.</u>

The timeliness of a motion to intervene is assessed "in light of all of the circumstances." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (quoting *Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010)). The Tenth Circuit has stated that

"three non-exhaustive factors are 'particularly important: (1) the length of time since the movants knew of their interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movants.'" *Id*. (quoting Tyson, 619 F.3d at 1232).

Timeliness is intended to be "a guard against prejudicing the original parties by the failure to apply sooner" rather than a means of "retribution to punish the tardy." *Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)). In considering the issue of timeliness, the Tenth Circuit has stated that "[f]ederal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" Id. (quoting *Sierra Club*, 18 F.3d at 1205).

There is no legitimate argument that Hodgson Capital's motion is untimely. Defendant Kadakia filed an Answer to the Complaint (with affirmative defenses) on August 29, 2019 (Doc 10; and thereafter, in accordance with FED. R. CIV. P. 14(a), within fourteen (14) days on September 12, 2019, Kadakia timely filed an Amended Answer (with affirmative defenses), and Counterclaim and Third-Party Complaint (Doc 11).

The Fussle Assignment, which serves as the primary basis for Proposed Intervenor's intended pleading, was executed and delivered on October 29, 2019. As this motion is being filed the day after execution, there has been no delay in Proposed Intervenor's filing of this motion. Additionally, Hodgson Capital's intervention is being sought before the initial pleadings have closed because briefing and responsive pleading remain to be completed with respect to claims and counterclaims asserted between Kadakia and the Third-Party Defendants. Thus, the timing of this motion presents no prejudice to the Original Plaintiff and Counterclaim Defendant R.P. Small Corp. or the Third-Party Defendants.

2. Hodgson Capital has an interest in the subject matter and transactions involved in the Counterclaim and Third-Party Claims asserted by Kadakia.

The Tenth Circuit requires that the interests asserted by a movant for intervention as of right "must be 'direct, substantial, and legally protectable.'" *Clinton*, *supra*, 255 F.3d at 1251 (quoting *Coalition of Arizona/New Mexico Counties v. Dep't of Interior*, 100 F.3d Id. 837, 840 (10th Cir. 1996) (internal citations omitted). To be a protectable interest, it must be one that "would be impeded by the disposition of the action." *W. Energy All.*, *supra*, 877 F.3d at 1165 (internal quotations omitted). The inquiry as to whether an interest is sufficient under FED. R. CIV. P. 24(a)(2) is a "highly fact-specific determination." *Zinke*, 877 F.3d at 1165 (quoting *Coal. Arizona/New Mexico*, *supra*, 100 F.3d at 841. The "interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Clinton*, *supra*, 255 F.3d at 1251–52 (quoting *Coal. of Arizona/New Mexico Counties*, 100 F.3d at 841).

As assignee by agreement with Fussle – a significant creditor of Tethys Trading whose recast loan to Tethys Trading (restructured in early 2017, as memorialized by the 2017 Promissory Note and 2014 Security Agreement) in the principal amount of $400,000, plus interest – is in default. As alleged in Proposed Intervenor's proposed pleading on intervention (attached as Exhibit "1"), the assets of Tethys Trading have been fraudulently transferred, converted and dissipated in furtherance of, upon information and belief, a scheme hatched by Meyer and Finnegan, with the knowledge, consent and/or active participation of R.P. Small Corp., to secret Tethys Trading assets in one or more accounts of one or more other Tethys-denominated entities. In so doing, Fussle's status and rights as a secured creditor of Tethys Trading were wrongfully impaired.

More recently, in 2019, prior to execution and delivery of the Fussle Assignment, in communications between Meyer and Fussle, Meyer advised Fussle that Tethys Trading, the debtor under the 2017 Fussle Promissory Note and 2014 Fussle Security Agreement, was without assets or ability to meet its obligations to Fussle. What Meyer failed to reveal to Fussle, however, was the fact and extent (*i.e.*, upon information and belief, several millions of dollars) of Tethys Trading assets diverted, misappropriated and converted by Third-Party Defendants (upon information and belief, with the knowledge, consent and/or active participation of R.P. Small Corp.). The diverted assets include at least $380,000.00 of proceeds of the loan of Reinhold Fussle that were on deposit in a segregated account, in accordance with the express terms and conditions of the 2014 Fussle Promissory Note and the 2017 Fussle Promissory Note.

Prior to the Fussle Assignment, Reinhold Fussle was a significant secured creditor of Tethys Trading. As such, Fussle's rights and interests in, and with respect to, the assets of Tethys Trading, and the safekeeping of same for the benefit of creditors, were "direct, substantial, and legally protectable." See, *Clinton*, *supra*, 255 F.3d at 1251. By virtue of the Fussle Assignment, Hodgson Capital stands in the shoes of Reinhold Fussle, entitled by contract and law to enjoy, exercise and enforce the contractual and legal rights of Fussle as if Proposed Intervenor were itself Fussle.

The law and public policy of Oklahoma strongly favor enforcement of assignments of contract rights and related causes of action, with assignability presumed absent contrary agreement of the parties. *See, Beattie v. State of Oklahoma ex rel. Grand River Dam Authority*, 2002 OK 3, 41 P.3d 377, 381 (Okla. 2002) (quoting *Minnetonka Oil Co. v. Cleveland Vitrified Brick Co.*, 27 Okla. 180, 111 P. 326, 332 (Okla. 1910), and stating, "this presumption of assignability is in keeping with a long tradition to encourage economic and commercial development, 'with a view that whatever one owns cannot be rendered valueless as an asset in

business and trade.'"). The presumption of assignability for all commercial contracts is consistent with the fundamental policy that "free alienability … is essential to commerce." *Beattie*, *supra*, 41 P.3d at 381, quoting John D. Calamari and Joseph M. Perrillo, *Contracts* 633, n.138 (3d ed. 1987). *See also*, *Restatement (Second) of Contracts*, Ch. 15, §317(2)(a)-(c).

As the 2014 Fussle Promissory Note, the 2014 Fussle Security Agreement, and the 2017 Fussle Promissory Note contain no prohibition on assignment, the Fussle Assignment is valid, enforceable and rightfully the basis for Proposed Intervenor's assertions of the claims set forth in the proposed annexed pleading on intervention. *Id.* As Fussle's claims under the loan documents, and under law as they relate to the fraudulent transfers and other wrongs that are the subject of this action, are "direct, substantial, and legally protectable," *Clinton*, *supra*, 255 F.3d at 1251, so too are the rights and claims of Proposed Intervenor. The interests of Proposed Intervenor, as successor by assignment to Fussle, would unquestionably aid in "disposing of [otherwise multiple] lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Clinton*, *supra*, 255 F.3d at 1251–52.

3 & 4. <u>The Rights and Interests of Hodgson Capital May Practically Be Impaired or Impeded in this Case and those Rights and Interests Can Only be Effectively Represented by Hodgson Capital.</u>

As established above, the rights and claims created by, arising under, or relating to the Assignments from Fussle to Hodgson Capital – whether under contract, law or equity – are substantial rights that have direct bearing to this case. There is presently (*i.e.*, prior to intervention by Hodgson Capital) no party in the position – or for that matter with the standing under law – to assert the rights and claims created by the 2014 Fussle Promissory Note, the 2014 Fussle Security Agreement, or the 2017 Fussle Promissory Note except Proposed Intervenor. There is no basis for a conclusion of adequate representation by existing parties when an applicant for intervention does not share an ability to assert the same rights and claims. *Clinton*,

*supra*, 255 F.3d at 1251–52. Thus, the rights of Hodgson Capital are not adequately represented by Kadakia or any other party to this action.

For the reasons set forth, it is respectfully submitted that the grounds for mandatory intervention under FED. R. CIV. P. 24(a) are established and, accordingly, the instant motion should be granted.

## II. PERMISSIVE INTERVENTION IS ALSO WARRANTED FOR HODGSON CAPITAL

FED. R. CIV. P. 24 (b)(1) (B) states that a Court may permit intervention, upon timely motion, where the party "has a claim or defense that shares with the main action a common question of law or fact." However, "in exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24 (b)(3).

As reflected above and in the attached Intervenor Third-Party Complaint, common questions of law and fact exist in Kadakia's Counterclaim and Third-Party Complaint and the claims of Hodgson Capital. At the core of the Counterclaim and Third-Party Complaint of Kadakia are wrongful transfers of assets of Tethys Trading made by Third-Party Defendants through their control of Tethys Trading, with the purpose, and having the effect of, prejudicing rights, interests and claims of creditors of Tethys Trading. The class of creditors of Tethys Trading includes Kadakia (in his status as a holder of rights to indemnification under contract and indemnification and contribution under law), as well as Hodgson Capital (in his capacity as holder of rights, interests and claims formerly held by Fussle). Hodgson Capital seeks to assert its claims as a creditor relating to the very same scheme of wrongful transfers alleged by Kadakia. Accordingly, there is commonality in fact and law between the claims of Kadakia and the claims of Hodgson Capital.

There is no colorable basis to argue that granting Hodgson Capital's request to intervene will unduly delay or prejudice the adjudication of the original parties' rights. This case is still in the initial pleading stage. There is no scheduling order in place and discovery has not even begun. Indeed, complete justice and equity cannot be attained by all interested parties unless the claims of Hodgson Capital are adjudicated alongside of claims of Kadakia already brought in this case.

## CONCLUSION

For these reasons, Hodgson Capital requests that the Court grant its request to intervene in this matter pursuant to FED. R. CIV. P. 24(a) and/or 24(b), and to file the attached Intervenor Third-Party Complaint to commence its claims in this case.

Respectfully submitted,

*/s/ Evan G. E. Vincent*

Evan G.E. Vincent, OBA #22325
CROWE & DUNLEVY, P.C.
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
evan.vincent@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT, RUCHIR A. KADAKIA AND PROPOSED INTERVENOR-COUNTERCLAIMANT AND THIRD-PARTY PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2019, I electronically transmitted the foregoing document and attached exhibit to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

R. Brent Blackstock
Lacey L. Shirley
Mid-Continent Tower, Suite 500
401 South Boston Avenue
Tulsa, OK 74103
ATTORNEYS FOR R.P. SMALL CORP.

R. Richard Love III
Madison Mosier
4000 One Williams Center
Tulsa, OK 74172
ATTORNEYS FOR THIRD-PARTY DEFENDANTS

*/s/Evan G. E. Vincent*
Evan G.E. Vincent