**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTICT OF OKLAHOMA**

(1) R.P. SMALL CORP.

Plaintiff,

v.

(1) RUCHIR A. KADAKIA,

Defendant,

and

(1) RUCHIR A. KADAKIA, individually and derivatively on behalf of Tethys Trading, LLC,

Counterclaimant and
Third-Party Plaintiff,

v.

(2) R.P. SMALL CORP., an Illinois Corporation,

Counterclaim Defendant,

and

(1) JOHN E. MEYER, JR.;
(2) ROBERT FINNEGAN; and (3) TETHYS SUPPLY AND MARKETING, LLC, *et al.*;

Third-Party Defendants.

---

(1) JT HODGSON CAPITAL, LLC,
a Delaware limited liability company, as assignee of Reinhold Fussle,

Proposed Intervenor-
Counterclaimant and
Third-Party Plaintiff.

---

Case No. 19-cv-271-JED-JFJ

**THIRD-PARTY DEFENDANTS' RESPONSE IN OPPOSITION TO RUCHIR A. KADAIA'S MOTION TO DISMISS COUNTERCLAIMS OF TETHYS PARTNERS, LLC AND TETHYS TRADING, LLC**

Third-Party Defendants Tethys Trading, LLC ("Tethys Trading") and Tethys Partners, LLC ("Tethys Partners" and together with Tethys Trading, collectively the "Tethys Entities"), hereby submit this Response in Opposition to Ruchir A. Kadakia's ("Kadakia") Motion to Dismiss Counterclaims of Tethys Partners and Tethys Trading (the "Motion to Dismiss") [Dkt. 44].

**ARGUMENT & AUTHORITIES**

**I. The Tethys Entities' Claims Are Not Time Barred.**

As the party asserting the limitations defense, Kadakia "has the burden to present evidence reasonably tending to establish the time-bar." *MBA Commer. Constr., Inc. v. Roy J. Hannaford Co.*, 1991 OK 87, ¶ 9, 818 P.2d 469, 472. However, at the motion to dismiss stage, Kadakia is limited to allegation set forth in the Tethys Entities' Counterclaims, which must be construed in a light most favorable to the Tethys Entities. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

A federal court sitting in diversity applies the law of the forum for statute of limitations purposes. *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109–110 (1945). Moreover, the law of the forum determines when an action is commenced for statute of limitations purposes. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980).

Here, there are multiple grounds for denying Kadakia's Motion with respect to the limitations defense. First, Oklahoma's borrowing statute requires the forum court to "apply the period of limitation to a claim accruing outside this state that **last bars the claim**." *Consol. Grain & Barge Co. v. Structural Systems, Inc.*, 2009 OK 14, ¶ 19, 212 P.3d 1168, (citing 12 O.S. § 105) (emphasis in original). Thus, as further discussed below, Illinois' five-year statute of limitations is

applicable to each of the Tethys Entities' claims, and each claim is therefore timely. Second, even if the Oklahoma statutes of limitations apply, the Tethys Entities' claims are not time barred by operation of the discovery rule, Kadakia's fraudulent concealment, and the continuous tort/continuing wrong doctrine.

*A. The Tethys Entities' Claims are Timely under Illinois law.*

Because the Tethys Entities' claims accrued in Illinois, and Kadakia is subject to jurisdiction in Illinois, the five-year statute of limitations under 735 Ill. Comp. Stat. Ann. 5/13-205 is applicable. *See Thornton v. T & W Tire, L.P.*, 410 F. Supp. 2d 1098, 1100-04 (W.D. Okla. 2006).

Under 12 O.S. § 105, "[t]he period of limitation applicable to a claim accruing outside of this state shall be that prescribed either by the law of the place where the claim accrued or by the law of this state, whichever last bars the claim." Section 105 "operates to preserve a remedy for an accrued cause of action for the longest applicable time period." *Consol, Grain & Barge Co. v. Structural Sys.*, 2009 OK 14, ¶ 19, 212 P.3d 1168. The statute "allows a litigant to enforce a substantive right even though the remedy may be time-barred in the state where the cause of action arose but not in the forum state of Oklahoma or where it is time-barred in the forum state of Oklahoma but not in the state where the action arose." *Id.* The Tenth Circuit has applied Section 105 where "[m]any of the activities premising plaintiff's action" occurred in another state. *Williams v. Borden, Inc.*, 637 F.2d 731, 733 n.2 (10th Cir. 1980).

Here, based upon the allegations in the Tethys Entities' Counterclaims, there can be no doubt that most, if not all of the conduct underlying the Tethys Entities' claims occurred in Illinois. The harm from Kadakia's misconduct undoubtedly occurred in Chicago, Illinois, which is where each of the Tethys Entities maintained its principal place of business during the relevant time period. Counterclaims [Dkt. 21], ¶¶ 1, 3. Kadakia also resided in Chicago, Illinois, and maintained

an office at the Tethys Entities' principal place of business during such period. *Id.*, ¶ 6. Kadakia and the Tethys Entities are undoubtedly subject to personal jurisdiction in Illinois. S*ee Thornton v. T & W Tire, L.P.*, 410 F. Supp. 2d 1098 (W.D. Okla. 2006) (recognizing that a defendant must be subject to jurisdiction in the state from which a statute of limitations is borrowed under 12 O.S. § 105).

Thus, by operation of 12 O.S. § 105, the five-year statute of limitations under Illinois law is applicable to each of the Tethys Entities' claims. 735 Ill. Comp. Stat. Ann. 5/13-205; *Pucci v. Santi*, 711 F. Supp. 916 (N.D. Ill. 1989) (five-year statute of limitations applicable to breach of fiduciary duty claim and tortious interference claim); *CitiMortgage, Inc. v. Parille*, 2016 IL App (2d) 150286, ¶ 40, 49 N.E.3d 869, 883 ("The limitations period applicable to unjust enrichment claims is five years ….").

As stated in the Counterclaims, the majority of the wrongful conduct underlying the Tethys Entities' claims against Kadakia occurred during and after 2015. *See* Counterclaims [Dkt. 21], ¶¶ 20-33. Thus, the Tethys Entities' claims were asserted well within the expiration of the five-year statute of limitations under Illinois law.[1]

*B. The Tethys Entities' Claims are Timely under Oklahoma law.*

If Oklahoma law governs all of the Tethys Entities' claims, the claims are still viable. First, the discovery rule tolled the statute of limitations until the Tethys Entities learned of the harm and its cause.

[1] To the extent any of Kadakia's wrongful conduct gave rise to any of the Tethys Entities' claims prior to 2015, the Tethys Entities' claims are not time barred by operation of the discovery rule, Kadakia's fraudulent concealment, and the continuous tort/continuing wrong doctrine, which are discussed at length below.

Under Oklahoma's discovery rule, the statute of limitations "does not begin to run until the [claimant] knows, or as a reasonably prudent person should know, that he has the condition for which his action is brought and that the defendant caused it." *Daugherty v. Farmers Coop. Ass'n*, 1984 OK 72, 689 P.2d 947, 950. *See also Williams v. Borden, Inc.*, 637 F.2d 731, 735 (10th Cir. 1980) (causation is a key factor to consider); *Woods v. Prestwick House, Inc.*, 2011 OK 9, 247 P.3d 1183, 1190 ("Quoting from *Resolution Trust Corp. v. Grant*, 1995 OK 68, ¶ 8, 901 P.2d 807, we acknowledged that Oklahoma follows the discovery rule allowing limitations in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury."). Thus, it is a multi-faceted inquiry, which necessarily requires analysis of when the claimant learned that the defendant's conduct was the true cause of the injury. *See Bryer v. ConocoPhillips, Co.*, 725 F. App'x 645, 648 (10th Cir. 2018).

Here, despite Kadakia's distorted interpretation, the allegations in the Counterclaims do not indicate that the Tethys Entities knew or should have known of the harm caused by Kadakia at any specific time. While the Counterclaims state that a review of Kadakia's emails and phone records later bolstered the suspicions that Kadakia had injured the Tethys Entities, it does not follow that the very fact that the records reflect a certain date necessarily means that the injury was discovered on such date. *See, e.g.,* Counterclaims [Dkt. 21], ¶ 32 (regarding the allegation that Kadakia was still using his Tethys Partners email address in January of 2016). Thus, Kadakia's assertions that the Tethys Entities' claims are time barred are not supported by the allegations set forth in the Counterclaims.

The Tethys Entities' discovery of the harm caused by Kadakia was also frustrated by Kadakia's concealment of the Gladieux Refinery business opportunity. "Fraudulent concealment constitutes an implied exception to the statute of limitations, and a party who wrongfully conceals

material facts and thereby prevents a discovery of his wrong, or the fact that a cause of action has accrued against him, is not allowed to take advantage of his own wrong by pleading the statute ..." *Masquât v. DaimlerChrysler Corp.*, 2008 OK 67, ¶ 18, 195 P.3d 48, 54-55.

Critically, "both fraudulent concealment and [a claimant's] reasonable diligence are issues of fact, not appropriately determined at [the motion to dismiss stage]." *Cecil v. BP Am. Prod. Co.*, No. CIV-16-410-RAW, 2017 WL 2987174, at *4 (E.D. Okla. Mar. 20, 2017). Thus, Kadakia's Motion may be properly denied with respect to the limitations defense under both the discovery rule and the doctrine of fraudulent concealment.

Finally, the Tethys Entities' claims are also timely under the continuing wrong doctrine, which provides that "where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury." *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430 (10th Cir. 1996) (citing 54 C.J.S. Limitation of Actions § 177 (1987)); *see also Wing v. Lorton*, 2011 OK 42, 261 P.3d 1122, 1126 at n.1 (recognizing that the continuous tort doctrine has not been expressly rejected in Oklahoma). The "doctrine permits a court to look backwards to the entirety of a continuing wrong to assess its cumulative effect, so long as an injurious act falls within the statute of limitations period." *Burkley v. Corr. Healthcare Mgmt. of Okla., Inc.*, 141 F. App'x 714, 716 (10th Cir. 2005). Here, Kadakia's misconduct spans multiple years as alleged in the Counterclaims. Further, the Tethys Entities continue to suffer injury as a result of Kadakia's misconduct, including his exploitation of a business opportunity that should have been disclosed to the Tethys Entities. Thus, the Tethys Entities' claims are not time barred by operation of the continuing wrong doctrine.

Again, Kadakia "has the burden to present evidence reasonably tending to establish the time-bar." *MBA Commer. Constr., Inc. v. Roy J. Hannaford Co.*, 1991 OK 87, ¶ 9, 818 P.2d 469,

472. However, the evidence must be limited to the allegations set forth in the Counterclaims and viewed in a light most favorable to the Tethys Entities. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). In light of this standard and the above-discussed doctrines applicable to the statute of limitations analysis, Kadakia's Motion should be denied.

## II. The Agreement Regarding Transfer Of Membership Interests Does Not Release The Claims The Tethys Entities Assert.

### *A. The release language is voidable as fraudulent.*

A claimant will not be bound by a release procured by fraud. *Evans v. Bridgestone-Firestone, Inc.*, 1995 OK CIV APP 93, 904 P.2d 156. Invalidating a release on the basis of fraud is governed by the same rules of law as any other contract. *See Darby Petroleum Co. v. Bowers*, 1937 OK 352, ¶ 14, 91 P.2d 663, 666. Actual fraud consists of the "suppression of that which is true, by one having knowledge of belief of the fact" or "[a]ny other act fitted to deceive" "committed by a party to a contract, or with his connivance, with the intent to deceive another party thereto, or to induce him to enter into the contract." 15 O.S. § 58. Constructive fraud is any breach of duty which gains an advantage to the person in fault by misleading another to his prejudice. 15 O.S. § 59. Constructive fraud "has the very same legal consequence as actual fraud[.]" *Faulkenberry v. Kansas City Southern Ry. Co.*, 1979 OK 143, ¶ 4, 602 P.2d 203, 206.

Kadakia procured the release through actual fraud. Kadakia failed to disclose his misconduct pursuing the Gladieux Refinery business opportunity to induce the parties to enter into the Agreement Regarding Transfer of Membership Interests (the "Agreement"). Kadakia concealed this particular conduct so the parties would execute a full release with knowledge of only a mere portion of the harm Kadakia caused the Tethys Entities over the years as a result of his multiple business blunders as a controlling officer of the Tethys Entities.

Kadakia also procured the release through constructive fraud. Here, as an officer, Kadakia served as a fiduciary of the Tethys Entities.[2] Kadakia breached his duties as a fiduciary when he failed to disclose his usurpation of corporate opportunities before entering into the Agreement Regarding Transfer of Membership Interests (the "Agreement") which Kadakia now asserts as a bar against any claim against him, including a claim based on usurpation of corporate opportunities. Kadakia fraudulently induced the parties to enter into the Agreement by failing to disclose his misconduct at or before execution of the Agreement.

*ICD Publications, Inc. v. Gittlitz*, 24 N.E.3d 898 (Ill. App. Ct. 2014), is illustrative. In *ICD Publications, Inc.*, two senior vice presidents of a corporation sued their former business partner, the company's former president and CEO, alleging breach of fiduciary duty and other claims resulting from fraud, embezzlement and usurping a corporate opportunity. *Id*. at 907. Gittlitz, the former president and CEO, asserted the affirmative defense of "release" claiming the suit was barred by a severance agreement where the two senior vice presidents agreed "not to seek legal remedies [against Gittlitz], either civilly or criminally . . . provided restitution is made." *Id*. at 911. The court rejected his defense and voided the release since Gittlitz failed to fully disclose his misconduct when all three parties entered into the agreement. *Id*. at 916-918.

The appellate court, affirming the trial court, found that "[p]arties in a fiduciary relationship owe one another a duty of full disclosure of material facts when making a settlement and obtaining a release. *Id*. at 916. Therefore, a severance agreement arising out of a fiduciary relationship is voidable if one party withheld facts that were material to the agreement." *Id.*

---

[2] It is well-settled Oklahoma law that corporate officers and directors owe fiduciary duties to the corporation and its shareholders. *Adams v. Mid-West Chevrolet Corp.*, 1946 OK 331, ¶ 46, 179 P.2d 147, 156. The fiduciary duties owed in the LLC context are generally analogous to the duties owed in the corporation context. *See e.g. Osage Energy Res., LLC v. Pemco, LLC*, 2016 OK CIV APP 70, ¶ 19, 394 P.3d 265, 269.

Furthermore, in this context, "the party seeking recession need not prove justifiable reliance on the other party's failure to disclose; rather, the burden of the 'duty of full disclosure of material facts' remains on the fiduciary seeking enforcement of the release." *Id*. at 917.

Like Gittlitz, the president and shareholder who undoubtedly owed fiduciary duties to his fellow shareholders, Kadakia owed fiduciary duties to the Tethys Entities as an officer when he entered into the Agreement. In *ICD Publications, Inc.*, the two senior vice presidents did not know the full extent of Gittlitz's misconduct when they entered into the severance agreement. Similarly, Meyer and Finnegan were not aware of Kadakia's misconduct when they entered into the Agreement. Just as the release was voided in *ICD Publications, Inc.*, the release language should be voided here.

Therefore, the release in the Agreement does not bar the claims of the Tethys Entities because the release language is voidable as Kadakia procured such benefit by fraud in the inducement.

*B. Even if the release was controlling, the claims of the Tethys Entities are not limited by the release.*

If, in fact, the release language did apply here, the language Kadakia quotes clarifies that the release was only made to dispose of damages that accrued prior to the Effective Date of that instrument. The Agreement provides: "Tethys Companies . . . release Kadakia . . . from any and all claims . . . from the beginning of time through the Effective date[.]" Thus, damages that accrued after December 31, 2015, the effective date, are not in any way limited by the release language in the Agreement.

Notably, a claim for breach of duty based on usurpation of a corporate opportunity does not accrue until the date the fiduciary entered into a binding agreement usurping the opportunity.

*See In re Mobilactive Media*, No. 5725-VCP LLC, 2013 WL 1900997, at *3 (Del. Ch. May 8, 2013) *unpublished*.

In his Motion to Dismiss, Kadakia claims that all conduct and associated rights and demands relating to Kadakia's employment and/or ownership of the Tethys Entities took place before December 31, 2015. This is simply untrue.

First, the Counterclaims call specific attention to Kadakia's filing of Postlane Capital Partners, LLC's corporate papers on January 4, 2016, the letter of intent Kadakia received on February 2, 2016, and Kadakia's use of his Tethys Partners email address to work the Gladieux Refinery deal after January 2016. [Dkt. 21, p. 7]. All of these events occurred after December 31, 2015.

Second, the Gladieux Refinery deal was certainly not finalized before February 2016, since Kadakia was still working the deal during February 2016. Thus, the breach of duty based on his misconduct likely did not accrue until Kadakia entered into a binding agreement regarding the Gladieux Refinery deal.

Further, the fiduciary duties owed by Kadakia to the Tethys Entities continued even after the Agreement was executed. *See, e.g., H. Vincent Allen & Assocs., Inc. v. Weis*, 63 Ill. App. 3d 285, 292, 379 N.E.2d 765, 770 (1978) ("The constructive trust imposed upon officers and directors applies as well to transactions completed after the termination of the party's association with the corporation 'if the transactions began during the existence of the relationship or were founded on information or knowledge acquired during the relationship.'"). Kadakia's misconduct with respect to the Gladieux Refinery opportunity after the Agreement was executed is therefore unquestionably beyond the scope of the release. *See also Cooper Linse Hallman Capital Mgmt., Inc. v. Hallman*, 368 Ill. App. 3d 353, 357, 856 N.E.2d 585, 589 (2006) (recognizing that officers

and directors have been found to have breached their fiduciary duties "when they used the company's confidential business information for the new business, either before or after [their] departure").

Kadakia's wrongful conduct continued well after December 31, 2015, and the rights and damages that resulted—and that continues to result—from such conduct did not materialize until Kadakia made the deal after the effective date of the Agreement. Thus, claims based on those actions and the resulting damages are not barred by the release language.

## III. Tethys Trading And Tethys Partners Operating Agreements Do Not Prevent The Tethys Entities' Claims.

### *A. In ruling on Kadakia's 12(b)(6) Motion to Dismiss the operating agreements must be disregarded as matters outside the pleadings.*

"When ruling on a 12(b)(6) motion, the district court must examine only the plaintiff's complaint. The district court must determine if the complaint alone is sufficient to state a claim; the district court cannot review matters outside of the complaint." *Carter v. Daniels*, 91 F. App'x 83, 85 (10th Cir. 2004) (quoting *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991)). If the court considers matters outside the complaint and converts the motion to one for summary judgment, the court must adequately develop the record for such a ruling. *Id.*[3]

"A court's function in dismissing a counterclaim on the pleadings is merely to determine whether **the counterclaim itself** is legally sufficient; a court may not dismiss at the pleading stage of the action by weighing the evidence that might be presented or by otherwise considering the

---

[3] Fed.R.Civ.P. 12(d) states that if a Court converts a motion to dismiss into a motion for summary judgment due to matters being submitted outside of the pleadings, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." The Tethys Entities hereby request that opportunity should the Court convert this motion to one of summary judgment.

counterclaimant's likelihood of success." *Seattle-First Nat. Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986) (emphasis added).

In ruling on Kadakia's Motion to Dismiss, the sole determination is whether the counterclaim itself is legally sufficient. Thus, in the same way the courts are restricted to examination of a plaintiff's complaint in ruling on a motion to dismiss the complaint, only the counterclaim may be considered in ruling on a motion to dismiss a counterclaim.

Here, Kadakia urges the court to consider the operating agreements of both Tethys Trading and Tethys Partners, matters which are outside the counterclaim. Thus, Kadakia's third argument based on operating agreements outside the pleadings must be ignored.

The Tenth Circuit has acknowledged one limited exception to the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss. *Waller v. Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). The exception to the general rule is that a court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id*. (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

The one limited exception provided by the Tenth Circuit does not apply here. The operating agreements are not referred to in the Counterclaims, the operating agreements are not central to the Tethys Entities' counterclaims, and neither Tethys entity has assented to the authenticity of these documents. Indeed, only one is attached to the motion to dismiss. The motion to dismiss makes no reference to an operating agreement of Tethys Partners. Because neither the general rule nor the exception applies here, Kadakia's arguments based on the operating agreements must be disregarded.

*B. Even if the Tethys Trading Operating Agreement controlled, its language does not allow Kadakia to usurp corporate opportunities in his position as an officer.*

The Tethys Trading Operating Agreement Kadakia quotes permits *members* to have business interests and engage in business activities in addition to those related to the Company. But this provision does not allow a member to steal work away from the Company. Moreover, Kadakia, as CEO, was an *officer* of the LLC in addition to holding a membership interest. In his capacity as an *officer*, Kadakia was charged with developing business for Tethys and, indeed, that was his main function as an officer in 2014-2015. Counterclaims [Dkt. 21], ¶¶ 12-15. The Operating Agreement provision that Kadakia improperly brings forward in his motion to dismiss does not give Kadakia permission as an *officer* to usurp corporate activities.

Kadakia's pursuit of the Gladieux Refinery was well within his tasks and responsibilities as an officer, not in his role as a member of the LLC. Counterclaims [Dkt. 21], ¶¶ 36, 47. Therefore, the operating agreement does not permit Kadakia's misconduct in his capacity as an officer.

## CONCLUSION

WHEREFORE, the Third-Party Defendants respectfully request that the Court deny Ruchir A. Kadakia's Motion to Dismiss in its entirety and grant the Third-Party Defendants any and all such other relief as the Court deems just and proper.

Respectfully Submitted,

**CONNER & WINTERS, LLP**

s/ R. Richard Love, III
R. Richard Love, III, OBA #14770
Madison C. Mosier, OBA #33980
4000 One Williams Center
Tulsa, Oklahoma 74172-0148
(918) 586-5711
rlove@cwlaw.com
mmosier@cwlaw.com

***Counsel for John E. Meyer, Jr.; Robert Finnegan; Tethys Supply and Marketing, LLC; Tethys Capital, LLC; Tethys Trading, LLC; Tethys Energy, LLC; Tethys Biofuels, LLC; Tethys Latin America, LLC; Tethys Partners, LLC; Tethys Derivatives, LLC and Tethys Shipping, LLC***

***Third Party Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2019, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system of filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Even.vincent@crowedunlevy.com

***Ruchir A. Kadakia and Proposed Intervenor-Counterclaimant and Third-Party Plaintiff***

R. Brent Blackstock
Lacey L. Shipley
Mid-Continent Tower, Suite 500
401 South Boston Avenue
Tulsa, OK 74103

***Attorneys for Plaintiff***

s/ R. Richard Love, III
R. Richard Love, III