**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **R.P. SMALL CORP.**<br><br>**Plaintiff,**<br>**v.**<br><br>**RUCHIR A. KADAKIA,**<br><br>**Defendant.**<br><br>**and**<br><br>**RUCHIR A. KADAKIA**<br><br>**Counterclaimant and Third-Party Plaintiff,**<br><br>**v.**<br><br>**R.P. SMALL CORP., an Illinois corporation,**<br><br>**Counterclaim Defendant,**<br>**and**<br><br>**JOHN E. MEYER, JR.;**<br>**ROBERT FINNEGAN;**<br>**and**<br>**TETHYS TRADING, LLC;**<br>**TETHYS CAPITAL, LLC;**<br>**TETHYS ENERGY, LLC;**<br>**TETHYS BIOFUELS, LLC;**<br>**TETHYS LATIN AMERICA, LLC;**<br>**TETHYS PARTNERS, LLC; and**<br>**TETHYS DERIVATIVES, LLC;**<br>**each an Oklahoma limited liability company;**<br><br>**Third-Party Defendants.** | ) | **Case No. 19-cv-271-JED-JFJ** |

**DEFENDANT RUCHIR A. KADAKIA'S VERIFIED AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

Defendant Ruchir A. Kadakia (at times, "Defendant" or "Kadakia") files this Verified Amended Counterclaim against Plaintiff R.P. Small Corp. ("Small Corp.")[1] and this Third-Party Complaint against defendants John E. Meyer, Jr. ("Meyer"), Robert Finnegan ("Finnegan"), and Tethys Trading, LLC, Tethys Capital, LLC, Tethys Energy, LLC, Tethys Biofuels, LLC, Tethys Latin America, LLC, Tethys Partners, LLC, and Tethys Derivatives, LLC, (the Tethys denominated entities are the "Tethys Companies" when referenced together).

## I. SUMMARY OF KADAKIA'S CLAIMS

Small Corp.'s only claim against Kadakia is for the alleged breach of a personal guaranty (the "Kadakia Guaranty") that he made in support of a loan by Small Corp. to Tethys Trading evidenced by a Promissory Note (the "Tethys Promissory Note"). The Tethys Promissory Note is Exhibit 1 to this pleading, and the Kadakia Guaranty is Exhibit 2.

Small Corp., however, does not have a claim against Kadakia on the Kadakia Guaranty or otherwise because an Event of Default under the Tethys Promissory Note has not occurred and Small Corp. has strategically never declared that the Tethys Promissory Note is in default. Further, Small Corp. unambiguously stated and agreed in a written agreement dated December 19, 2019 between Small Corp., Meyer, and Finnegan (the "December 2019 Agreement"), that the Tethys

---

[1] Kadakia's original Counterclaim and Third Party Complaint [Dkt. # 12 and 13] contained interwoven allegations against Plaintiff Small Corp. and the Third Party Defendants. Repleading the claims consistent with the Court's April 2, 2020 Opinion and Order [Dkt. # 65] necessitated changes to the allegations against both the Third Party Defendants and Small Corp. This pleading also includes a request for a declaratory judgment arising from newly discovered evidence from recent document productions that raises critical and fundamental issues that Small Corp. and the Third Party Defendants did not disclose to the Court or timely to Kadakia, and then only in response to a request for production.

Because this revised pleading includes new allegations (at least in part) against Small Corp., Kadakia will file a motion for leave to file the revised Counterclaim promptly upon receiving Small Corp.'s position on a motion for leave. Counsel's ability to prepare this pleading and any potentially required related motions, including a motion for leave, has been and continues to be significantly impaired by office closures to comply with stay-at-home directives.

Promissory Note is not in default. Indeed, in its Original Complaint, Small Corp. never alleged that the Tethys Promissory Note is in Default.

In short, by its own admission made after this lawsuit was filed, Small Corp.'s claim against Kadakia is not ripe and, to Kadakia's knowledge, never has been.

But even if the Tethys Promissory Note were in default and the action on the Kadakia Guaranty were somehow ripe, Meyer, Finnegan, and the Tethys Companies indemnified Kadakia against Small Corp.'s claim. They are liable under contract for any liability Kadakia might have to Small Corp.

Accordingly, through his Counterclaim and Third-Party Complaint, Kadakia seeks to recover through affirmative claims or establish through a declaratory judgment the following:

1. Pursuant to the terms of Small Corp.'s December 19 Agreement[2]:

    a. Small Corp., Meyer, Finnegan, and Tethys Trading agreed that the Tethys Promissory Note **is not in default.**

       Because the Tethys Promissory Note is not in default, an "Event of Default" of the underlying guaranteed loan obligation has not occurred **and Small Corp.'s claim on the Kadakia Guaranty is not ripe under its terms (assuming the December 19 Agreement does not otherwise discharge the Kadakia Guaranty)**.

    b. The maturity date of the Tethys Promissory Note is extended.

    c. The principal and interest owed on the Tethys Promissory Note is affected.

    d. In addition or in the alternative, Small Corp. agrees that the December 19 Agreement replaces in its entirety the Tethys Promissory Note that is the subject of the Kadakia Guaranty, such that Kadakia cannot be held liable under the Kadakia Guaranty or, alternatively, Kadakia's responsibilities are limited to the lesser of any

[2] Small Corp. only recently produced the December 19 Agreement. The agreement was branded "Confidential" pursuant to the Stipulated Protective Order [Dkt. # 59]. Without agreeing that the document is entitled to "Confidential" treatment, Kadakia is moving to allow the filing of the agreement under seal as provided in the Stipulated Protective Order and the Court's procedures.

Consistent with LCvR 79.1, this pleading makes generic references to the December 19 Agreement without revealing alleged confidential information it might contain. Kadakia reserves the right to supplement this pleading to more fully explain his contentions regarding the legal effect of the December 19 Agreement. If allowed to file it under seal, the document would be Exhibit 3.

obligations Tethys Trading might have under the December 19 Agreement and the Tethys Promissory Note.

The December 19 Agreement is provisionally Exhibit 3 to this pleading.

2. Pursuant to the terms of the "Agreement Regarding Transfer of Membership Interests" ("Transfer Agreement") between Kadakia, Meyer, Finnegan, Tethys Trading, and the other Tethys Companies, with an Effective Date of December 31, 2015:

   Meyer, Finnegan, and the Tethys Companies **agreed to indemnify Kadakia for Small Corp.'s claims** as claims "arising out of, or in any manner relating to, the business of the Tethys Companies or Tethys Capital, or Kadakia's ownership of the Units [including those of Tethys Trading]."

   The Transfer Agreement is attached as Exhibit 4 to this pleading.

3. Any transfers of money, equity, or financial interests in various of the Tethys Companies or other entities, or of other valuable consideration to Small Corp. done at the direction or under the control of Meyer, Finnegan, or the Tethys Companies are payments of principal or interest on the Tethys Promissory Note.

   Meyer, Finnegan, and some or all of the Tethys Companies conspired on their own and, upon information and belief with the knowledge and consent of Small Corp., to remove funds from Tethys Trading that should have been used to pay to Small Corp. the amounts due under the Tethys Promissory Note in contravention of the Tethys Promissory Note and/or conspired to attempt to impose on Kadakia greater liability than he is or may be legally obligated to carry.

   The removal of those funds materially affects Kadakia's purported liability on the Kadakia Guaranty (as well as his rights as a creditor of Tethys Trading for contractual indemnification) and the conduct justifies a complete or partial reduction of any liability Kadakia may have to Small Corp.

4. In the event that Kadakia is obligated to pay any amounts on the Kadakia Guaranty, he has contingent common law contribution rights under Oklahoma law against Meyer and Finnegan as co-guarantors of the Tethys Promissory Note.

## II. THE PARTIES, JURISDICTION, AND VENUE

### A. The Parties

1. Kadakia is a citizen of the State of Texas, with a residential address of 2031 Westcreek Lane, Apartment 1716, Houston, Texas 77027.

2. Small Corp. is an Illinois corporation with its principal place of business in Tulsa, Oklahoma.

3. Meyer is, upon information and belief, a citizen of the State of Illinois, with a mailing address as Managing Member, Tethys Trading, LLC, 954 W. Washington Boulevard, Suite 250, Chicago, Illinois 60607.

4. Finnegan is, upon information and belief, a citizen of the State of Illinois, with a mailing address to the attention of Tethys Trading, LLC, 954 W. Washington Boulevard, Suite 250, Chicago, Illinois 60607.

5. Tethys Trading is an Oklahoma limited liability company, with a mailing address c/o the managing member, John E. Meyer, Jr. 954 W. Washington Boulevard, Suite 250, Chicago, Illinois 60607.

6. Each of the Tethys Companies -- Tethys Trading, Tethys Capital, Tethys Energy, Tethys Biofuels, Tethys Latin America, Tethys Partners, and Tethys Derivatives -- is an Oklahoma limited liability company, with a mailing address c/o the managing member, John E. Meyer, Jr. 954 W. Washington Boulevard, Suite 250, Chicago, Illinois 60607.

**B. Jurisdiction and Venue**

7. The Court has subject matter jurisdiction over the Counterclaim and Third-Party Complaint, pursuant to 28 U.S.C. §1332, as the Counterclaim and the Third-Party Claims are each an action by a citizen of a foreign state against a citizen of a different foreign state, and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Jurisdiction of the declaratory relief sought herein is proper pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

8. Counterclaim Defendant Small Corp. is subject to the personal jurisdiction of this Court as it invoked the jurisdiction of this Court by commencing this action.

9. Third-Party Defendants Meyer and Finnegan are subject to the personal jurisdiction of this Court as they have engaged, actively and on a protracted basis, in the business, operations, and management, as Managing Member(s) or otherwise, of Tethys Trading and the other Tethys Companies, each of which was formed in the State of Oklahoma.

10. Each of the Third-Party Defendant Tethys Companies is an Oklahoma limited liability company whose principal place of business is in the State of Oklahoma.

## III. Factual Background

### A. The Formation of Tethys Trading and Its Business

11. Prior to the formation of Tethys Trading and its affiliates, Kadakia held various positions with different companies in the energy industry, including managing portfolios of commodities investments centered on oil, gas, and power. Kadakia, Meyer, Finnegan (through an entity he owned), and non-party Jeff Hodgson formed Tethys Trading on or about July 30, 2013 as an Oklahoma limited liability company. Each member received 25 voting Membership Units that represented a twenty-five (25) percent equity and voting stake in Tethys Trading. Tethys Trading was initially funded by loans, long since repaid, to the company of $100,000 from Kadakia and $1.8 million from Meyer.

12. Tethys Trading was a fuel commodity trading business, which required significant capital and involved interactions with sophisticated counterparties.

13. Meyer demanded and received complete control over management and operations of Tethys Trading, as memorialized in the initial Operating Agreement of Tethys Trading (which designated Meyer as sole Manager), which was prepared by Meyer's personal attorney. Meyer saw

to it that he alone had signature authority over all of Tethys Trading's bank accounts, including the segregated accounts of Tethys Trading to which loan proceeds of Small Corp.'s loan via the Tethys Promissory Note (addressed below) were deposited.

14. Tethys Trading was initially very successful; it produced roughly $6 million in profits from one significant trading contract during its one (1)-year term. By approximately mid-2014, Meyer, Finnegan, and Kadakia formed as co-members other Tethys-denominated limited liability companies. Each of these entities was entirely focused on trading or financing oil and gas and energy products other than diesel oil (distillates).

**B. Tethys Trading Borrows Money from Small Corp.; Kadakia, Meyer, and Finnegan Provide Guarantees**

15. In the Summer and Fall of 2013, Tethys Trading sought to borrow money to finance margin requirements associated with its trading business. Tethys Trading borrowed $6 million from Small Corp. in or about March 2014. The principal of Small Corp., Richard P. Small, was upon information and belief, a friend and business associate of Meyer's father and Meyer.

16. Small Corp.'s $6 million loan to Tethys Trading was memorialized by the Tethys Promissory Note, attached here as Exhibit 1, and a Security Agreement. The Tethys Promissory Note provides expressly that the proceeds of the loan were to be used only to fund margin requirements for Tethys Trading's trades in Distillates-Light Ends, a specific type of hydrocarbon commodity. The note also requires Tethys Trading to place the proceeds of the loan into a segregated account that shall not be comingled with other funds. The interest due on the Tethys Promissory Note varied depending on whether the funds were in the segregated account or deployed for use in support of Tethys Trading's trading activities.

17. At or around the time that Small Corp. extended the $6 million loan to Tethys Trading, Small Corp. acquired a ten (10%) percent Membership interest in Tethys Trading based upon an enterprise valuation of $12.5 million.

18. In connection with the Tethys Promissory Note, Kadakia, Meyer, and Finnegan each executed a personal Guaranty Agreement in substantially the same form. The Kadakia Guaranty, attached here as Exhibit 2, references the Tethys Promissory Note and Small Corp.'s $6 million loan to Tethys Trading, which is generally defined as "Borrower's Obligations." Kadakia agreed to the "full, prompt and unconditional payment when due, of the Borrower's Obligations due and owing to the Lender…" The guaranty provides that Small Corp. is entitled to enforce the "obligations of [Kadakia] hereunder" "[u]pon the occurrence of an Event of Default (as such term is defined in the [Tethys Promissory Note])."

19. The Tethys Promissory Note provides that events of default are (i) failure to pay any payment required by the note "within [5] business days after the due date and receipt by [Tethys Trading] of Notice from [Small Corp.]; (ii) default under the security agreements for the note; or (iii) Tethys Trading files for bankruptcy protection or its functional equivalent.

20. In short, as with any guaranty, and as expressly provided in the Kadakia Guaranty, Kadakia's obligation to pay on the Kadakia Guaranty only arises if there is an event of default of Tethys Promissory Note. If there is not an event of default under the Tethys Promissory Note – including if Small Corp. later agreed that there is not event of default -- Small Corp. does not have the right to enforce the Kadakia Guaranty.

**C. Small Corp. Receives Assets and Equity Diverted from Tethys Trading**

21. At or around mid-2015, Tethys Trading's business was struggling. Meyer and Finnegan hatched a plan to move assets from Tethys Trading and its accounts to other Tethys-

denominated entities. Their apparent goal was to strip Tethys Trading of assets and place them in other Tethys Trading entities to the prejudice of Tethys Trading's growing list of creditors.

22. Meyer orchestrated and executed the scheme *via* his control of the company's bank accounts. Small Corp. was one among other beneficiaries of the shifting of assets and, as evidenced by the Tethys Companies' bank statements, the reporting to Small Corp. required and/or made under the Tethys Promissory Note, and communications with Small Corp. by Myer or others on behalf of Tethys Trading, had knowledge of and implicitly or explicitly approved the shifting of assets from Tethys Trading to other Tethys-denominated entities.

23. At or around the same time, Meyer, Finnegan, and Small Corp. negotiated and entered into "swap agreements." The details of these negotiations and swap agreement terms were purposefully kept secret from Kadakia. Upon information and belief, Small Corp. received financial and/or equity interests in Tethys-denominated entities (including, upon information and belief, Tethys Capital, which received a significant portion of the assets of Tethys Trading). These assignments either reduced the principal and interest on the Tethys Promissory Note (or must be calculated as such) or were known misuses of Tethys Trading's assets to benefit Meyer and Finnegan to the detriment of Kadakia.

**D. Kadakia is Forced Out of, and Separates from, the Tethys Companies**

24. As of the Fall of 2015, Kadakia's relationship with Meyer and Finnegan had become strained if not hostile. Kadakia was summarily terminated as an employee of Tethys Trading and removed from its payroll by September 30, 2015.

25. Kadakia sought a formal separation from Meyer, Finnegan, Tethys Trading, and the other Tethys Companies. Ultimately, Kadakia, Meyer, Finnegan, Tethys Trading, and the other Tethys Companies entered into the Transfer Agreement, as defined above. Pursuant to the Transfer

Agreement, Kadakia assigned his various membership interests in Tethys Trading and other Tethys Companies entities to Meyer and Finnegan, with each receiving 50% of Kadakia's interests in the various Tethys Companies, except Meyer received 100% of Kadakia's interest in Tethys Energy.

26. In exchange, Kadakia received a *de minimis* $50,000 payment and, more valuable to him, broad indemnifications from Meyer, Finnegan, and Tethys Trading of any liability related to his ownership of Tethys Trading, including his obligations under the Kadakia Guaranty. Kadakia also received a broad release of any claims "arising out of or relating to … any other act, transaction, or occurrence prior to the Effective Date [December 31, 2015]."

27. After December 2015, Kadakia received essentially no information about the continuing business of the Tethys Companies or the status of the Tethys Promissory Note. His disinterest was justified because of the separation achieved by the Transfer Agreement and the broad indemnifications and releases therein.

**E. Small Corp. Files this Lawsuit in May 2019, But Then Confirms in December 2019 that the Tethys Promissory Note is Not in Default**

28. Small Corp. filed this lawsuit without any prior notice of an event of default of the Tethys Promissory Note. Finding himself in the middle of a set-up, Kadakia asserted third party claims against Meyer, Finnegan, and the Tethys Companies to enforce the indemnifications in the Transfer Agreement and to recover the wrongful transfers out of Tethys Trading that should have been used to satisfy the Tethys Promissory Note. Motions to dismiss and extensive briefing followed, ending on November 21, 2019.

29. While resolutely attacking Kadakia's positions that (i) the Kadakia Guaranty was not due and owing and (ii) Small Corp., Meyer, and Finnegan had unlawfully prejudiced Kadakia's rights, Small Corp, Meyer, Finnegan, and Tethys Trading were busy negotiating and executing the December 19 Agreement referenced above. None of them made any effort to supplement their

Rule 26 Initial Disclosures to disclose its existence or terms, but Small Corp. later produced it as "Confidential" in response to Kadakia's requests for production.

30. The December 19 Agreement underscores what Kadakia has alleged all along – Small Corp., Meyer, Finnegan, and the Tethys Companies are orchestrating their actions to try to impose on Kadakia greater liability for the repayment of the Tethys Promissory Note than he agreed to under the Kadakia Guaranty all while not declaring a default of the Tethys Promissory Note.

## IV. KADAKIA'S CLAIMS AND CAUSES OF ACTION

### FIRST COUNT

**[Declaratory Judgment of Rights and Legal Effect of the December 19 Agreement]**

31. Kadakia repeats the allegations of paragraphs 1 through 30 of the Counterclaim and Third-Party Complaint above as though herein set forth at length.

32. There presently exists a justiciable controversy between Small Corp., Meyer, Finnegan, and Tethys Trading on the one hand and Kadakia on the other hand regarding the legal effect of the provisions of the December 19 Agreement on the status of the Tethys Promissory Note and Kadakia's liability on the Kadakia Guaranty.

33. Kadakia is entitled to a declaratory judgment that pursuant to the terms of the December 19 Agreement and otherwise as established by the facts:

a. Small Corp., Meyer, Finnegan, and Tethys Trading agreed that the Tethys Promissory Note is not in default**.**

b. Because the Tethys Promissory Note is not in default, an "Event of Default" of the underlying guaranteed loan obligation has not occurred and Small Corp.'s claim on the Kadakia Guaranty is not ripe under its terms (assuming the Workout Agreement does not otherwise discharge the Kadakia Guaranty).

c. The maturity date of the Tethys Promissory Note is extended.

d. The principal and interest owed on the Tethys Promissory Note is affected.

e. In addition or in the alternative, the December 19 Agreement replaces in its entirety the Tethys Promissory Note that is the subject of the Kadakia Guaranty, such that Kadakia cannot be held liable under the Kadakia Guaranty or Kadakia's responsibilities are limited to any obligations in default of Tethys Trading might have under the December 19 Agreement or the Tethys Promissory Note (whichever is lesser).

## SECOND COUNT

***Third-Party Complaint Against Meyer and Finnegan and the Tethys Companies***
**[Contractual Indemnification Under the Transfer Agreement]**

34. Third-Party Plaintiff Kadakia repeats the allegations of paragraphs 1 through 33 above of the Counterclaim and Third-Party Complaint as though herein set forth at length.

35. The filing of the Complaint by Small Corp. against Kadakia triggers a contractual right of indemnification in favor of Kadakia and against Meyer, Finnegan, and the Tethys Companies pursuant to Paragraph 3.B. of the Transfer Agreement. *See* Exhibit 4.

36. Meyer, Finnegan, and the Tethys Companies have actual knowledge of the Complaint against Kadakia and have failed and refused to offer indemnification.

37. Meyer, Finnegan, and each of the Tethys Companies are liable to Kadakia for indemnification under Paragraph 3.B. of the Transfer Agreement, and are in breach of the Transfer Agreement for failing to acknowledge and assume their liability. Kadakia is entitled to actual, special, and compensatory damages, as well as his costs, attorney fees, interest and such other relief as may be just and proper.

38. In addition or in the alternative, there presently exists a justiciable controversy between Meyer, Finnegan, and the Tethys Companies on the one hand and Kadakia on the other hand regarding the indemnification and release provisions in the Transfer Agreement.

39. Kadakia is entitled to a declaratory judgment that pursuant to the terms of the Transfer and otherwise as established by the facts that Meyer, Finnegan, and the Tethys Companies agreed

to indemnify Kadakia for Small Corp.'s claims as claims "arising out of, or in any manner relating to, the business of the Tethys Companies or Tethys Capital, or Kadakia's ownership of the Units [including those of Tethys Trading]."

**<u>THIRD COUNT</u>**

***Counterclaim against R.P. Small Corp.***
**[Tortious Interference with Contractual Indemnification Rights and Expectancies of Kadakia Under the Transfer Agreement]**

40. Kadakia repeats the allegations of paragraphs 1 through 39 of the Counterclaim and Third-Party Complaint above as though set forth at length.

41. Upon information and belief, including based on Kadakia's work at Tethys Trading and awareness of the interactions of Meyer and Small Corp.'s principal, the wrongful transfers of assets of Tethys Trading devised and implemented by Meyer and Finnegan were undertaken with the consent of Small Corp. As reflected in documents produced in discovery and as ultimately memorialized in the December 2019 Agreement, Small Corp. held or received financial, economic and/or equity benefits of some form in or with respect to one or more of the entities directly or indirectly receiving the transferred assets of Tethys Trading.

42. Upon information and belief, Small Corp. entered into "swap agreements" with Meyer and Finnegan and one or more Tethys-denominated entities, pursuant to which Small Corp. received tangible financial, economic or equity-interest benefits in Tethys-denominated entities other than Tethys Trading. Bank statements of the Tethys Companies, the reporting to Small Corp. required under the Tethys Promissory Note and/or otherwise provided, and other apparent communications that demonstrate sufficient facts that Small Corp. knew of the transfers and implicitly or explicitly consented to them. This evidence further demonstrates that Small Corp. knew the effect the transfers would have on Tethys Trading's financial viability of and its ability

to satisfy claims of creditors (including Kadakia by virtue of his contractual indemnification rights under the Transfer Agreement).

43. The transfers rendered Tethys Trading without assets and insolvent, or virtually insolvent, to the substantial detriment of creditors and potential creditors of Tethys Trading, including Kadakia, who stands in the position of a creditor of Tethys Trading by virtue of his contractual indemnification rights established under Paragraph 3.B. of the Transfer Agreement.

44. The actions of Small Corp. in collaborating, implicitly and/or explicitly, with Meyer and Finnegan in the transfers and dispositions of assets of Tethys Trading constitute (a) tortious interference with Kadakia's contractual rights of indemnification from Tethys Trading under the Transfer Agreement, and/or (b) tortious interference with Kadakia's economic expectancies.

45. As a proximate result of the tortious interference by Small Corp. with Kadakia's contractual rights and economic expectancies, Kadakia has suffered damages, including actual, special, and consequential damages, and has been forced to incur costs and attorneys' fees.

## FOURTH COUNT

***Counterclaim Against R.P. Small Corp. and Third Party Complaint against Meyer, Finnegan, and Tethys Trading***
**[Civil Conspiracy]**

46. Counterclaimant Kadakia repeats the allegations of paragraphs 1 through 45 of the Counterclaim and Third-Party Complaint above as though herein set forth at length.

47. By its receipt of certain transfers and the retention of the benefits of those transfers, as well as its negotiation and execution of an agreement (the December 19 Agreement) that seeks to continue to attempt to allow Small Corp. to enforce the Kadakia Guaranty even in the absence of any default of the Tethys Promissory Note, Small Corp., through its owners, officers, employees, and agents, intentionally acted in combination with Meyer, Finnegan, and the Tethys Companies

owned and controlled by Meyer, Finnegan and Small Corp., (a) participated in one or more unlawful and wrongful transfers of assets of Tethys Trading, (b) engaged in other or additional conduct for the unlawful purposes of facilitating the unlawful transfer or transfers of assets of Tethys Trading, and/or (c) seek to extract from Kadakia money for obligations that are legally not in default.

48. The conduct of Small Corp. to pursue the conspiracy involved unlawful purposes and/or unlawful means – such as the transfer of assets of out the reach of other creditors or ignoring legal rights and limitations in contracts to advance Small Corp.'s interests -- undertaken in combination with Meyer, Finnegan, and one or more Tethys Companies owned or controlled by them.

49. Counterclaimant Kadakia has been injured as a proximate result of the foregoing wrongful civil conspiracy and he is entitled to actual, special, and compensatory damages, punitive damages, costs, attorney fees, interest and such other relief as may be just and proper.

**FIFTH COUNT**

***Third-Party Complaint Against Meyer, Finnegan, and the Tethys Companies***
**[Common Law or Equitable Indemnification and Contribution]**

50. Third-Party Plaintiff Kadakia repeats the allegations of paragraphs 1 through 49 above of the Counterclaim and Third-Party Complaint as though set forth at length.

51. Based upon the wrongful conduct of Third-Party Defendants Meyer and Finnegan in in connection with the disposition and transfer of assets of Tethys Trading (which otherwise could have been used to reduce or retire the alleged obligation to Small Corp., or to produce income through operations of Tethys Trading which could have been used to satisfy claims of creditors of Tethys Trading), Meyer and Finnegan bear the liability associated with the underlying Promissory

Note of Tethys Trading which serves as the basis of the claims of Small Corp. against Kadakia under the doctrine of non-contractual or equitable contribution.

52. Additionally or in the alternative, Meyer and Finnegan executed and delivered personal guarantees to Small Corp. of the Tethys Promissory Note. As co-guarantors of a common obligation – the Tethys Promissory Note – Oklahoma law provides that each is required to contribute equally in discharging the Tethys Promissory Note. As such, if and when an Event of Default of the Tethys Promissory Note occurs, Meyer, Finnegan, and Kadakia as co-obligors shall be required to contribute equally to discharge the amounts due, and Kadakia's liability cannot be greater than that of Meyer or Finnegan, and is limited to Kadakia's relative equitable share of the lesser of Tethys Trading's liability on the 2014 Tethys Promissory Note or the December 19 Agreement.

## V. PRAYER AND REQUEST FOR JUDGMENT

WHEREFORE, Third-Party Plaintiff Ruchir A. Kadakia requests this Court enter judgment in his favor against Counterclaim Defendant R.P. Small Corp. and Third-Party Defendants John E. Meyer, Jr. and Robert Finnegan; Tethys Trading, LLC; Tethys Capital, LLC; Tethys Energy, LLC; Tethys Biofuels, LLC; Tethys Latin America, LLC; Tethys Partners, LLC; and Tethys Derivatives, LLC on the causes of action and counts asserted against each as stated above, and that he be awarded all of his actual, special, and compensatory damages, as well as punitive damages, costs, attorney fees, interest and such other relief as may be just and proper at law or in equity, and further enter a declaratory judgment, ordering as follows:

1. Pursuant to the terms of the December 19 Agreement and otherwise as established by the preponderance evidence:

   a. Small Corp., Meyer, Finnegan, and Tethys Trading agreed that the Tethys Promissory Note is not in default.

b. Because the Tethys Promissory Note is not in default, an "Event of Default" of the underlying guaranteed loan obligation has not occurred and Small Corp.'s claim on the Kadakia Guaranty is not ripe under its terms (assuming the Workout Agreement does not otherwise discharge the Kadakia Guaranty).

c. The maturity date of the Tethys Promissory Note is extended.

d. The principal and interest owed on the Tethys Promissory Note is affected.

e. The December 19 Agreement replaces in its entirety the Tethys Promissory Note that is the subject of the Kadakia Guaranty, such that Kadakia cannot be held liable under the Kadakia Guaranty or Kadakia's responsibilities are limited to the lesser of [i] any obligations Tethys Trading might have under the December 19 Agreement or [ii] any net obligations of Tethys Trading under the 2014 Promissory Note, less all appropriate credits for the value of financial, equity or other economic benefits received by Small Corp.

2. Pursuant to the Transfer Agreement, Meyer, Finnegan, and the Tethys Companies agreed to indemnify Kadakia for Small Corp.'s claims as claims "arising out of, or in any manner relating to, the business of the Tethys Companies or Tethys Capital, or Kadakia's ownership of the Units [including those of Tethys Trading]."

Dated this 9th day of April, 2020.

Respectfully submitted,

*/s/ Neil D. Kelly*

Evan G.E. Vincent, OBA #22325
CROWE & DUNLEVY, P.C.
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
evan.vincent@crowedunlevy.com

Neil D. Kelly (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
JPMorgan Chase Tower
600 Travis St, Houston, TX 77002
(713) 220.4198
(713) 220.4285 (Facsimile)

**ATTORNEYS FOR DEFENDANT/ THIRD-PARTY PLAINTIFF RUCHIR A. KADAKIA**

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

R. Brent Blackstock
Lacey L. Shirley
Mid-Continent Tower, Suite 500
401 South Boston Avenue
Tulsa, OK 74103
ATTORNEYS FOR R.P. SMALL CORP.

R. Richard Love III
Madison Mosier
4000 One Williams Center
Tulsa, OK 74172
ATTORNEYS FOR THIRD-PARTY DEFENDANTS

/s/ *Neil D. Kelly*
Neil D. Kelly

## VERIFICATION

I, Ruchir A. Kadakia, of full age, hereby verifies under penalty of perjury that the facts set forth in this Counterclaim and Third Party Complaint are true and correct, except those facts alleged on information and belief, which are true and correct to the best of my knowledge, information, and belief.

Ruchir A. Kadakia

Dated this 9th day of April, 2020.