**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **R.P. SMALL CORP.**<br><br>**Plaintiff,**<br>**v.**<br><br>**RUCHIR A. KADAKIA,**<br><br>**Defendant.**<br><br>**and**<br><br>**RUCHIR A. KADAKIA**<br><br>**Counterclaimant and Third-Party Plaintiff,**<br><br>**v.**<br><br>**R.P. SMALL CORP., an Illinois corporation,**<br><br>**Counterclaim Defendant,**<br>**and**<br><br>**JOHN E. MEYER, JR.;**<br>**ROBERT FINNEGAN;**<br>**and**<br>**TETHYS TRADING, LLC;**<br>**TETHYS CAPITAL, LLC;**<br>**TETHYS ENERGY, LLC;**<br>**TETHYS BIOFUELS, LLC;**<br>**TETHYS LATIN AMERICA, LLC;**<br>**TETHYS PARTNERS, LLC; and**<br>**TETHYS DERIVATIVES, LLC;**<br>**each an Oklahoma limited liability company;**<br><br>**Third-Party Defendants.** | ) | **Case No. 19-cv-271-JED-JFJ** |

**DEFENDANT RUCHIR A. KADAKIA'S VERIFIED AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

Defendant Ruchir A. Kadakia (at times, "Defendant" or "Kadakia") files this Verified Amended Counterclaim against Plaintiff R.P. Small Corp. ("Small Corp.")[1] and this Third-Party Complaint against defendants John E. Meyer, Jr. ("Meyer"), Robert Finnegan ("Finnegan"), and Tethys Trading, LLC, Tethys Capital, LLC, Tethys Energy, LLC, Tethys Biofuels, LLC, Tethys Latin America, LLC, Tethys Partners, LLC, and Tethys Derivatives, LLC, (the Tethys denominated entities are the "Tethys Companies" when referenced together).

## I. SUMMARY OF KADAKIA'S CLAIMS

Small Corp.'s only claim against Kadakia is for the alleged breach of a personal guaranty (the "Kadakia Guaranty") that he made in support of a loan by Small Corp. to Tethys Trading evidenced by a Promissory Note (the "Tethys Promissory Note"). The Tethys Promissory Note is Exhibit 1 to this pleading, and the Kadakia Guaranty is Exhibit 2.

Small Corp., however, does not have a claim against Kadakia on the Kadakia Guaranty or otherwise because an Event of Default under the Tethys Promissory Note has not occurred and Small Corp. has strategically never declared that the Tethys Promissory Note is in default. Further, Small Corp. unambiguously stated and agreed in a written agreement dated December 19, 2019 between Small Corp., Meyer, and Finnegan (the "December 2019 Agreement"), that the Tethys

[1] Kadakia's original Counterclaim and Third Party Complaint [Dkt. # 12 and 13] contained interwoven allegations against Plaintiff Small Corp. and the Third Party Defendants. Repleading the claims consistent with the Court's April 2, 2020 Opinion and Order [Dkt. # 65] necessitated changes to the allegations against both the Third Party Defendants and Small Corp. This pleading also includes a request for a declaratory judgment arising from newly discovered evidence from recent document productions that raises critical and fundamental issues that Small Corp. and the Third Party Defendants did not disclose to the Court or timely to Kadakia, and then only in response to a request for production.

Because this revised pleading includes new allegations (at least in part) against Small Corp., Kadakia will file a motion for leave to file the revised Counterclaim promptly upon receiving Small Corp.'s position on a motion for leave. Counsel's ability to prepare this pleading and any potentially required related motions, including a motion for leave, has been and continues to be significantly impaired by office closures to comply with stay-at-home directives.

Promissory Note is not in default. Indeed, in its Original Complaint, Small Corp. never alleged that the Tethys Promissory Note is in Default.

In short, by its own admission made after this lawsuit was filed, Small Corp.'s claim against Kadakia is not ripe and, to Kadakia's knowledge, never has been.

But even if the Tethys Promissory Note were in default and the action on the Kadakia Guaranty were somehow ripe, Meyer, Finnegan, and the Tethys Companies indemnified Kadakia against Small Corp.'s claim. They are liable under contract for any liability Kadakia might have to Small Corp.

Accordingly, through his Counterclaim and Third-Party Complaint, Kadakia seeks to recover through affirmative claims or establish through a declaratory judgment the following:

1. Pursuant to the terms of Small Corp.'s December 19 Agreement[2]:

    a. Small Corp., Meyer, Finnegan, and Tethys Trading agreed that the Tethys Promissory Note **is not in default.**

       Because the Tethys Promissory Note is not in default, an "Event of Default" of the underlying guaranteed loan obligation has not occurred **and Small Corp.'s claim on the Kadakia Guaranty is not ripe under its terms (assuming the December 19 Agreement does not otherwise discharge the Kadakia Guaranty)**.

    b. The maturity date of the Tethys Promissory Note is extended.

    c. The principal and interest owed on the Tethys Promissory Note is affected.

    d. In addition or in the alternative, Small Corp. agrees that the December 19 Agreement replaces in its entirety the Tethys Promissory Note that is the subject of the Kadakia Guaranty, such that Kadakia cannot be held liable under the Kadakia Guaranty or, alternatively, Kadakia's responsibilities are limited to the lesser of any

[2] Small Corp. only recently produced the December 19 Agreement. The agreement was branded "Confidential" pursuant to the Stipulated Protective Order [Dkt. # 59]. Without agreeing that the document is entitled to "Confidential" treatment, Kadakia is moving to allow the filing of the agreement under seal as provided in the Stipulated Protective Order and the Court's procedures.

Consistent with LCvR 79.1, this pleading makes generic references to the December 19 Agreement without revealing alleged confidential information it might contain. Kadakia reserves the right to supplement this pleading to more fully explain his contentions regarding the legal effect of the December 19 Agreement. If allowed to file it under seal, the document would be Exhibit 3.

obligations Tethys Trading might have under the December 19 Agreement and the Tethys Promissory Note.

The December 19 Agreement is provisionally Exhibit 3 to this pleading.

2. Pursuant to the terms of the "Agreement Regarding Transfer of Membership Interests" ("Transfer Agreement") between Kadakia, Meyer, Finnegan, Tethys Trading, and the other Tethys Companies, with an Effective Date of December 31, 2015:

   Meyer, Finnegan, and the Tethys Companies **agreed to indemnify Kadakia for Small Corp.'s claims** as claims "arising out of, or in any manner relating to, the business of the Tethys Companies or Tethys Capital, or Kadakia's ownership of the Units [including those of Tethys Trading]."

   The Transfer Agreement is attached as Exhibit 4 to this pleading.

3. Any transfers of money, equity, or financial interests in various of the Tethys Companies or other entities, or of other valuable consideration to Small Corp. done at the direction or under the control of Meyer, Finnegan, or the Tethys Companies are payments of principal or interest on the Tethys Promissory Note.

   Meyer, Finnegan, and some or all of the Tethys Companies conspired on their own and, upon information and belief with the knowledge and consent of Small Corp., to remove funds from Tethys Trading that should have been used to pay to Small Corp. the amounts due under the Tethys Promissory Note in contravention of the Tethys Promissory Note and/or conspired to attempt to impose on Kadakia greater liability than he is or may be legally obligated to carry.

   The removal of those funds materially affects Kadakia's purported liability on the Kadakia Guaranty (as well as his rights as a creditor of Tethys Trading for contractual indemnification) and the conduct justifies a complete or partial reduction of any liability Kadakia may have to Small Corp.

4. In the event that Kadakia is obligated to pay any amounts on the Kadakia Guaranty, he has contingent common law contribution rights under Oklahoma law against Meyer and Finnegan as co-guarantors of the Tethys Promissory Note.

## II. THE PARTIES, JURISDICTION, AND VENUE

### A. The Parties

1. Kadakia is a citizen of the State of Texas, with a residential address of 2031 Westcreek Lane, Apartment 1716, Houston, Texas 77027.

2. Small Corp. is an Illinois corporation with its principal place of business in Tulsa, Oklahoma.

3. Meyer is, upon information and belief, a citizen of the State of Illinois, with a mailing address as Managing Member, Tethys Trading, LLC, 954 W. Washington Boulevard, Suite 250, Chicago, Illinois 60607.

4. Finnegan is, upon information and belief, a citizen of the State of Illinois, with a mailing address to the attention of Tethys Trading, LLC, 954 W. Washington Boulevard, Suite 250, Chicago, Illinois 60607.

5. Tethys Trading is an Oklahoma limited liability company, with a mailing address c/o the managing member, John E. Meyer, Jr. 954 W. Washington Boulevard, Suite 250, Chicago, Illinois 60607.

6. Each of the Tethys Companies -- Tethys Trading, Tethys Capital, Tethys Energy, Tethys Biofuels, Tethys Latin America, Tethys Partners, and Tethys Derivatives -- is an Oklahoma limited liability company, with a mailing address c/o the managing member, John E. Meyer, Jr. 954 W. Washington Boulevard, Suite 250, Chicago, Illinois 60607.

**B. Jurisdiction and Venue**

7. The Court has subject matter jurisdiction over the Counterclaim and Third-Party Complaint, pursuant to 28 U.S.C. §1332, as the Counterclaim and the Third-Party Claims are each an action by a citizen of a foreign state against a citizen of a different foreign state, and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Jurisdiction of the declaratory relief sought herein is proper pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

8. Counterclaim Defendant Small Corp. is subject to the personal jurisdiction of this Court as it invoked the jurisdiction of this Court by commencing this action.

9. Third-Party Defendants Meyer and Finnegan are subject to the personal jurisdiction of this Court as they have engaged, actively and on a protracted basis, in the business, operations, and management, as Managing Member(s) or otherwise, of Tethys Trading and the other Tethys Companies, each of which was formed in the State of Oklahoma.

10. Each of the Third-Party Defendant Tethys Companies is an Oklahoma limited liability company whose principal place of business is in the State of Oklahoma.

## III. Factual Background

### A. The Formation of Tethys Trading and Its Business

11. Prior to the formation of Tethys Trading and its affiliates, Kadakia held various positions with different companies in the energy industry, including managing portfolios of commodities investments centered on oil, gas, and power. Kadakia, Meyer, Finnegan (through an entity he owned), and non-party Jeff Hodgson formed Tethys Trading on or about July 30, 2013 as an Oklahoma limited liability company. Each member received 25 voting Membership Units that represented a twenty-five (25) percent equity and voting stake in Tethys Trading. Tethys Trading was initially funded by loans, long since repaid, to the company of $100,000 from Kadakia and $1.8 million from Meyer.

12. Tethys Trading was a fuel commodity trading business, which required significant capital and involved interactions with sophisticated counterparties.

13. Meyer demanded and received complete control over management and operations of Tethys Trading, as memorialized in the initial Operating Agreement of Tethys Trading (which designated Meyer as sole Manager), which was prepared by Meyer's personal attorney. Meyer saw

to it that he alone had signature authority over all of Tethys Trading's bank accounts, including the segregated accounts of Tethys Trading to which loan proceeds of Small Corp.'s loan via the Tethys Promissory Note (addressed below) were deposited.

14. Tethys Trading was initially very successful; it produced roughly $6 million in profits from one significant trading contract during its one (1)-year term. By approximately mid-2014, Meyer, Finnegan, and Kadakia formed as co-members other Tethys-denominated limited liability companies. Each of these entities was entirely focused on trading or financing oil and gas and energy products other than diesel oil (distillates).

### B. Tethys Trading Borrows Money from Small Corp.; Kadakia, Meyer, and Finnegan Provide Guarantees

15. In the Summer and Fall of 2013, Tethys Trading sought to borrow money to finance margin requirements associated with its trading business. Tethys Trading borrowed $6 million from Small Corp. in or about March 2014. The principal of Small Corp., Richard P. Small, was upon information and belief, a friend and business associate of Meyer's father and Meyer.

16. Small Corp.'s $6 million loan to Tethys Trading was memorialized by the Tethys Promissory Note, attached here as Exhibit 1, and a Security Agreement. The Tethys Promissory Note provides expressly that the proceeds of the loan were to be used only to fund margin requirements for Tethys Trading's trades in Distillates-Light Ends, a specific type of hydrocarbon commodity. The note also requires Tethys Trading to place the proceeds of the loan into a segregated account that shall not be comingled with other funds. The interest due on the Tethys Promissory Note varied depending on whether the funds were in the segregated account or deployed for use in support of Tethys Trading's trading activities.

17. At or around the time that Small Corp. extended the $6 million loan to Tethys Trading, Small Corp. acquired a ten (10%) percent Membership interest in Tethys Trading based upon an enterprise valuation of $12.5 million.

18. In connection with the Tethys Promissory Note, Kadakia, Meyer, and Finnegan each executed a personal Guaranty Agreement in substantially the same form. The Kadakia Guaranty, attached here as Exhibit 2, references the Tethys Promissory Note and Small Corp.'s $6 million loan to Tethys Trading, which is generally defined as "Borrower's Obligations." Kadakia agreed to the "full, prompt and unconditional payment when due, of the Borrower's Obligations due and owing to the Lender…" The guaranty provides that Small Corp. is entitled to enforce the "obligations of [Kadakia] hereunder" "[u]pon the occurrence of an Event of Default (as such term is defined in the [Tethys Promissory Note])."

19. The Tethys Promissory Note provides that events of default are (i) failure to pay any payment required by the note "within [5] business days after the due date and receipt by [Tethys Trading] of Notice from [Small Corp.]; (ii) default under the security agreements for the note; or (iii) Tethys Trading files for bankruptcy protection or its functional equivalent.

20. In short, as with any guaranty, and as expressly provided in the Kadakia Guaranty, Kadakia's obligation to pay on the Kadakia Guaranty only arises if there is an event of default of Tethys Promissory Note. If there is not an event of default under the Tethys Promissory Note – including if Small Corp. later agreed that there is not event of default -- Small Corp. does not have the right to enforce the Kadakia Guaranty.

### C. Small Corp. Receives Assets and Equity Diverted from Tethys Trading

21. At or around mid-2015, Tethys Trading's business was struggling. Meyer and Finnegan hatched a plan to move assets from Tethys Trading and its accounts to other Tethys-

denominated entities. Their apparent goal was to strip Tethys Trading of assets and place them in other Tethys Trading entities to the prejudice of Tethys Trading's growing list of creditors.

22. Meyer orchestrated and executed the scheme *via* his control of the company's bank accounts. Small Corp. was one among other beneficiaries of the shifting of assets and, as evidenced by the Tethys Companies' bank statements, the reporting to Small Corp. required and/or made under the Tethys Promissory Note, and communications with Small Corp. by Myer or others on behalf of Tethys Trading, had knowledge of and implicitly or explicitly approved the shifting of assets from Tethys Trading to other Tethys-denominated entities.

23. At or around the same time, Meyer, Finnegan, and Small Corp. negotiated and entered into "swap agreements." The details of these negotiations and swap agreement terms were purposefully kept secret from Kadakia. Upon information and belief, Small Corp. received financial and/or equity interests in Tethys-denominated entities (including, upon information and belief, Tethys Capital, which received a significant portion of the assets of Tethys Trading). These assignments either reduced the principal and interest on the Tethys Promissory Note (or must be calculated as such) or were known misuses of Tethys Trading's assets to benefit Meyer and Finnegan to the detriment of Kadakia.

**D. Kadakia is Forced Out of, and Separates from, the Tethys Companies**

24. As of the Fall of 2015, Kadakia's relationship with Meyer and Finnegan had become strained if not hostile. Kadakia was summarily terminated as an employee of Tethys Trading and removed from its payroll by September 30, 2015.

25. Kadakia sought a formal separation from Meyer, Finnegan, Tethys Trading, and the other Tethys Companies. Ultimately, Kadakia, Meyer, Finnegan, Tethys Trading, and the other Tethys Companies entered into the Transfer Agreement, as defined above. Pursuant to the Transfer

Agreement, Kadakia assigned his various membership interests in Tethys Trading and other Tethys Companies entities to Meyer and Finnegan, with each receiving 50% of Kadakia's interests in the various Tethys Companies, except Meyer received 100% of Kadakia's interest in Tethys Energy.

26. In exchange, Kadakia received a *de minimis* $50,000 payment and, more valuable to him, broad indemnifications from Meyer, Finnegan, and Tethys Trading of any liability related to his ownership of Tethys Trading, including his obligations under the Kadakia Guaranty. Kadakia also received a broad release of any claims "arising out of or relating to … any other act, transaction, or occurrence prior to the Effective Date [December 31, 2015]."

27. After December 2015, Kadakia received essentially no information about the continuing business of the Tethys Companies or the status of the Tethys Promissory Note. His disinterest was justified because of the separation achieved by the Transfer Agreement and the broad indemnifications and releases therein.

**E. Small Corp. Files this Lawsuit in May 2019, But Then Confirms in December 2019 that the Tethys Promissory Note is Not in Default**

28. Small Corp. filed this lawsuit without any prior notice of an event of default of the Tethys Promissory Note. Finding himself in the middle of a set-up, Kadakia asserted third party claims against Meyer, Finnegan, and the Tethys Companies to enforce the indemnifications in the Transfer Agreement and to recover the wrongful transfers out of Tethys Trading that should have been used to satisfy the Tethys Promissory Note. Motions to dismiss and extensive briefing followed, ending on November 21, 2019.

29. While resolutely attacking Kadakia's positions that (i) the Kadakia Guaranty was not due and owing and (ii) Small Corp., Meyer, and Finnegan had unlawfully prejudiced Kadakia's rights, Small Corp, Meyer, Finnegan, and Tethys Trading were busy negotiating and executing the December 19 Agreement referenced above. None of them made any effort to supplement their

Rule 26 Initial Disclosures to disclose its existence or terms, but Small Corp. later produced it as "Confidential" in response to Kadakia's requests for production.

30. The December 19 Agreement underscores what Kadakia has alleged all along – Small Corp., Meyer, Finnegan, and the Tethys Companies are orchestrating their actions to try to impose on Kadakia greater liability for the repayment of the Tethys Promissory Note than he agreed to under the Kadakia Guaranty all while not declaring a default of the Tethys Promissory Note.

## IV. KADAKIA'S CLAIMS AND CAUSES OF ACTION

### FIRST COUNT

**[Declaratory Judgment of Rights and Legal Effect of the December 19 Agreement]**

31. Kadakia repeats the allegations of paragraphs 1 through 30 of the Counterclaim and Third-Party Complaint above as though herein set forth at length.

32. There presently exists a justiciable controversy between Small Corp., Meyer, Finnegan, and Tethys Trading on the one hand and Kadakia on the other hand regarding the legal effect of the provisions of the December 19 Agreement on the status of the Tethys Promissory Note and Kadakia's liability on the Kadakia Guaranty.

33. Kadakia is entitled to a declaratory judgment that pursuant to the terms of the December 19 Agreement and otherwise as established by the facts:

a. Small Corp., Meyer, Finnegan, and Tethys Trading agreed that the Tethys Promissory Note is not in default**.**

b. Because the Tethys Promissory Note is not in default, an "Event of Default" of the underlying guaranteed loan obligation has not occurred and Small Corp.'s claim on the Kadakia Guaranty is not ripe under its terms (assuming the Workout Agreement does not otherwise discharge the Kadakia Guaranty).

c. The maturity date of the Tethys Promissory Note is extended.

d. The principal and interest owed on the Tethys Promissory Note is affected.

e. In addition or in the alternative, the December 19 Agreement replaces in its entirety the Tethys Promissory Note that is the subject of the Kadakia Guaranty, such that Kadakia cannot be held liable under the Kadakia Guaranty or Kadakia's responsibilities are limited to any obligations in default of Tethys Trading might have under the December 19 Agreement or the Tethys Promissory Note (whichever is lesser).

## SECOND COUNT

***Third-Party Complaint Against Meyer and Finnegan and the Tethys Companies***
**[Contractual Indemnification Under the Transfer Agreement]**

34. Third-Party Plaintiff Kadakia repeats the allegations of paragraphs 1 through 33 above of the Counterclaim and Third-Party Complaint as though herein set forth at length.

35. The filing of the Complaint by Small Corp. against Kadakia triggers a contractual right of indemnification in favor of Kadakia and against Meyer, Finnegan, and the Tethys Companies pursuant to Paragraph 3.B. of the Transfer Agreement. *See* Exhibit 4.

36. Meyer, Finnegan, and the Tethys Companies have actual knowledge of the Complaint against Kadakia and have failed and refused to offer indemnification.

37. Meyer, Finnegan, and each of the Tethys Companies are liable to Kadakia for indemnification under Paragraph 3.B. of the Transfer Agreement, and are in breach of the Transfer Agreement for failing to acknowledge and assume their liability. Kadakia is entitled to actual, special, and compensatory damages, as well as his costs, attorney fees, interest and such other relief as may be just and proper.

38. In addition or in the alternative, there presently exists a justiciable controversy between Meyer, Finnegan, and the Tethys Companies on the one hand and Kadakia on the other hand regarding the indemnification and release provisions in the Transfer Agreement.

39. Kadakia is entitled to a declaratory judgment that pursuant to the terms of the Transfer and otherwise as established by the facts that Meyer, Finnegan, and the Tethys Companies agreed

to indemnify Kadakia for Small Corp.'s claims as claims "arising out of, or in any manner relating to, the business of the Tethys Companies or Tethys Capital, or Kadakia's ownership of the Units [including those of Tethys Trading]."

## THIRD COUNT

***Counterclaim against R.P. Small Corp.***
**[Tortious Interference with Contractual Indemnification Rights and Expectancies of Kadakia Under the Transfer Agreement]**

40. Kadakia repeats the allegations of paragraphs 1 through 39 of the Counterclaim and Third-Party Complaint above as though set forth at length.

41. Upon information and belief, including based on Kadakia's work at Tethys Trading and awareness of the interactions of Meyer and Small Corp.'s principal, the wrongful transfers of assets of Tethys Trading devised and implemented by Meyer and Finnegan were undertaken with the consent of Small Corp. As reflected in documents produced in discovery and as ultimately memorialized in the December 2019 Agreement, Small Corp. held or received financial, economic and/or equity benefits of some form in or with respect to one or more of the entities directly or indirectly receiving the transferred assets of Tethys Trading.

42. Upon information and belief, Small Corp. entered into "swap agreements" with Meyer and Finnegan and one or more Tethys-denominated entities, pursuant to which Small Corp. received tangible financial, economic or equity-interest benefits in Tethys-denominated entities other than Tethys Trading. Bank statements of the Tethys Companies, the reporting to Small Corp. required under the Tethys Promissory Note and/or otherwise provided, and other apparent communications that demonstrate sufficient facts that Small Corp. knew of the transfers and implicitly or explicitly consented to them. This evidence further demonstrates that Small Corp. knew the effect the transfers would have on Tethys Trading's financial viability of and its ability

to satisfy claims of creditors (including Kadakia by virtue of his contractual indemnification rights under the Transfer Agreement).

43. The transfers rendered Tethys Trading without assets and insolvent, or virtually insolvent, to the substantial detriment of creditors and potential creditors of Tethys Trading, including Kadakia, who stands in the position of a creditor of Tethys Trading by virtue of his contractual indemnification rights established under Paragraph 3.B. of the Transfer Agreement.

44. The actions of Small Corp. in collaborating, implicitly and/or explicitly, with Meyer and Finnegan in the transfers and dispositions of assets of Tethys Trading constitute (a) tortious interference with Kadakia's contractual rights of indemnification from Tethys Trading under the Transfer Agreement, and/or (b) tortious interference with Kadakia's economic expectancies.

45. As a proximate result of the tortious interference by Small Corp. with Kadakia's contractual rights and economic expectancies, Kadakia has suffered damages, including actual, special, and consequential damages, and has been forced to incur costs and attorneys' fees.

## FOURTH COUNT

***Counterclaim Against R.P. Small Corp. and Third Party Complaint against Meyer, Finnegan, and Tethys Trading***
**[Civil Conspiracy]**

46. Counterclaimant Kadakia repeats the allegations of paragraphs 1 through 45 of the Counterclaim and Third-Party Complaint above as though herein set forth at length.

47. By its receipt of certain transfers and the retention of the benefits of those transfers, as well as its negotiation and execution of an agreement (the December 19 Agreement) that seeks to continue to attempt to allow Small Corp. to enforce the Kadakia Guaranty even in the absence of any default of the Tethys Promissory Note, Small Corp., through its owners, officers, employees, and agents, intentionally acted in combination with Meyer, Finnegan, and the Tethys Companies

owned and controlled by Meyer, Finnegan and Small Corp., (a) participated in one or more unlawful and wrongful transfers of assets of Tethys Trading, (b) engaged in other or additional conduct for the unlawful purposes of facilitating the unlawful transfer or transfers of assets of Tethys Trading, and/or (c) seek to extract from Kadakia money for obligations that are legally not in default.

48. The conduct of Small Corp. to pursue the conspiracy involved unlawful purposes and/or unlawful means – such as the transfer of assets of out the reach of other creditors or ignoring legal rights and limitations in contracts to advance Small Corp.'s interests -- undertaken in combination with Meyer, Finnegan, and one or more Tethys Companies owned or controlled by them.

49. Counterclaimant Kadakia has been injured as a proximate result of the foregoing wrongful civil conspiracy and he is entitled to actual, special, and compensatory damages, punitive damages, costs, attorney fees, interest and such other relief as may be just and proper.

## FIFTH COUNT

***Third-Party Complaint Against Meyer, Finnegan, and the Tethys Companies***
**[Common Law or Equitable Indemnification and Contribution]**

50. Third-Party Plaintiff Kadakia repeats the allegations of paragraphs 1 through 49 above of the Counterclaim and Third-Party Complaint as though set forth at length.

51. Based upon the wrongful conduct of Third-Party Defendants Meyer and Finnegan in in connection with the disposition and transfer of assets of Tethys Trading (which otherwise could have been used to reduce or retire the alleged obligation to Small Corp., or to produce income through operations of Tethys Trading which could have been used to satisfy claims of creditors of Tethys Trading), Meyer and Finnegan bear the liability associated with the underlying Promissory

Note of Tethys Trading which serves as the basis of the claims of Small Corp. against Kadakia under the doctrine of non-contractual or equitable contribution.

52. Additionally or in the alternative, Meyer and Finnegan executed and delivered personal guarantees to Small Corp. of the Tethys Promissory Note. As co-guarantors of a common obligation – the Tethys Promissory Note – Oklahoma law provides that each is required to contribute equally in discharging the Tethys Promissory Note. As such, if and when an Event of Default of the Tethys Promissory Note occurs, Meyer, Finnegan, and Kadakia as co-obligors shall be required to contribute equally to discharge the amounts due, and Kadakia's liability cannot be greater than that of Meyer or Finnegan, and is limited to Kadakia's relative equitable share of the lesser of Tethys Trading's liability on the 2014 Tethys Promissory Note or the December 19 Agreement.

## V. PRAYER AND REQUEST FOR JUDGMENT

WHEREFORE, Third-Party Plaintiff Ruchir A. Kadakia requests this Court enter judgment in his favor against Counterclaim Defendant R.P. Small Corp. and Third-Party Defendants John E. Meyer, Jr. and Robert Finnegan; Tethys Trading, LLC; Tethys Capital, LLC; Tethys Energy, LLC; Tethys Biofuels, LLC; Tethys Latin America, LLC; Tethys Partners, LLC; and Tethys Derivatives, LLC on the causes of action and counts asserted against each as stated above, and that he be awarded all of his actual, special, and compensatory damages, as well as punitive damages, costs, attorney fees, interest and such other relief as may be just and proper at law or in equity, and further enter a declaratory judgment, ordering as follows:

1. Pursuant to the terms of the December 19 Agreement and otherwise as established by the preponderance evidence:

    a. Small Corp., Meyer, Finnegan, and Tethys Trading agreed that the Tethys Promissory Note is not in default.

b. Because the Tethys Promissory Note is not in default, an "Event of Default" of the underlying guaranteed loan obligation has not occurred and Small Corp.'s claim on the Kadakia Guaranty is not ripe under its terms (assuming the Workout Agreement does not otherwise discharge the Kadakia Guaranty).

c. The maturity date of the Tethys Promissory Note is extended.

d. The principal and interest owed on the Tethys Promissory Note is affected.

e. The December 19 Agreement replaces in its entirety the Tethys Promissory Note that is the subject of the Kadakia Guaranty, such that Kadakia cannot be held liable under the Kadakia Guaranty or Kadakia's responsibilities are limited to the lesser of [i] any obligations Tethys Trading might have under the December 19 Agreement or [ii] any net obligations of Tethys Trading under the 2014 Promissory Note, less all appropriate credits for the value of financial, equity or other economic benefits received by Small Corp.

2. Pursuant to the Transfer Agreement, Meyer, Finnegan, and the Tethys Companies agreed to indemnify Kadakia for Small Corp.'s claims as claims "arising out of, or in any manner relating to, the business of the Tethys Companies or Tethys Capital, or Kadakia's ownership of the Units [including those of Tethys Trading]."

Dated this 9th day of April, 2020.

Respectfully submitted,

*/s/ Neil D. Kelly*

Evan G.E. Vincent, OBA #22325
CROWE & DUNLEVY, P.C.
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
evan.vincent@crowedunlevy.com

Neil D. Kelly (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
JPMorgan Chase Tower
600 Travis St, Houston, TX 77002
(713) 220.4198
(713) 220.4285 (Facsimile)

**ATTORNEYS FOR DEFENDANT/ THIRD-PARTY PLAINTIFF RUCHIR A. KADAKIA**

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

R. Brent Blackstock
Lacey L. Shirley
Mid-Continent Tower, Suite 500
401 South Boston Avenue
Tulsa, OK 74103
ATTORNEYS FOR R.P. SMALL CORP.

R. Richard Love III
Madison Mosier
4000 One Williams Center
Tulsa, OK 74172
ATTORNEYS FOR THIRD-PARTY DEFENDANTS

/s/ *Neil D. Kelly*
Neil D. Kelly

**VERIFICATION**

I, Ruchir A. Kadakia, of full age, hereby verifies under penalty of perjury that the facts set forth in this Counterclaim and Third Party Complaint are true and correct, except those facts alleged on information and belief, which are true and correct to the best of my knowledge, information, and belief.

Ruchir A. Kadakia

Dated this 9th day of April, 2020.

# EXHIBIT 1

**PROMISSORY NOTE**

$6,000,000.00

March 27, 2014
Tulsa, Oklahoma

FOR VALUE RECEIVED, **TETHYS TRADING, LLC**, an Oklahoma limited liability company ("Maker"), promises to pay to the order of R.P. Small Corp. or successors and assigns ("Payee"), at Payee's address at 1585 E. 22nd St., Tulsa, OK 74114-1305, the principal amount of up to Six Million Dollars ($6,000,000.00), plus interest thereon at the rates set forth below (collectively the "Note Rate"). The Note Rate shall apply to the outstanding principal amount of this Note received by Maker from Payee or used by Maker as set forth below. Interest shall be payable monthly beginning on the 30th day following the date of this Note and every 30 days thereafter. Principal and all accrued and unpaid interest shall be due and payable on or before March 27, 2015 (hereafter the "Maturity Date"). This Note may be paid at any time without penalty or additional interest.

The foregoing notwithstanding, Maker may extend the Maturity Date for four (4) successive 12-month periods, upon written notice to Payee not less than five (5) days prior to the end of the then-impending Maturity Date or the applicable extension period, so long as Maker is then not in default under the terms of this Note. If one or more extensions occur, the other terms and conditions of this Note shall remain in full force and effect during such extension or extensions.

The purpose of this Note is to fund, in whole or in part, margin requirements for Maker's trades in Distillates-Light Ends. The proceeds of this Note shall be placed by Maker, upon initial receipt, in a segregated account maintained at Morgan Stanley, and such proceeds shall not be co-mingled with any of Maker's own funds until they are removed from such segregated account, the notice of which shall be made by Maker to Payee as of the date on which such funds are removed from such segregated account. While the proceeds of this Note are maintained in such segregated account, the outstanding principal amount of this Note maintained in such account shall accrue interest at the rate of 6% *per annum*, which interest shall be payable by Maker to Payee as set forth herein. From and after the date on which the principal amount of this Note is removed by Maker from such segregated account and used with any margin requirement for its business, such amount so removed from such account shall then accrue interest at the rate of 10% *per annum*, payable in accordance with the terms hereof.

The amounts due under this Note shall be secured by that certain Pledge and Security Agreement executed by Maker (as debtor) in favor of Payee (as secured party) by which Maker pledges to Payee Maker's accounts receivable resulting in any transaction by which Maker uses the proceeds of this Note to fund margin requirements as discussed herein.

Interest on the principal amount of this Note shall be calculated on the basis of the actual number of days elapsed in the period for which the calculation is being made based on 360-day year. On the Maturity Date, all principal and interest shall be due and payable without notice or demand.

The interest payable upon the indebtedness evidenced by this Note shall not at any time

exceed the maximum rate of interest permitted under the laws of the State of Oklahoma for loans of the type and character evidenced by this Note.

All payments under this Note shall be made in lawful currency of the United States of America at Payee's residence or office (as set forth above).

From time to time the Maturity Date of this Note may be extended or this Note may be renewed, in whole or in part, or a new note of different form may be substituted for this Note and/or the rate of interest may be changed, or changes may be made in consideration of loan extensions, and Payee, from time to time, may waive or surrender, either in whole or in part, any rights, guarantees, security interests or liens given for the benefit of Payee in connection with payment of this Note or any security therefor; but no such occurrences shall in any manner affect, limit, modify or otherwise impair any rights, guaranties or security of Payee not specifically waived, released or surrendered in writing, nor shall any maker, guarantor, endorser or any person who is or might be liable hereon, either primarily or contingently, be released from liability by reason of the occurrence of any such event. Payee, from time to time, shall have the unlimited right to release any person who might be liable hereon, and such release shall not affect or discharge the liability of any other person who is or might be liable hereon.

In the event that John E. Meyer, Jr. either resigns from his position as, is removed from his position of, or ceases to serve as sole Manager of Maker, Payee may, at its option, without further notice or demand, declare this Note in default and all indebtedness due and owing hereunder shall be due and payable immediately.

If (a) any payment required by this Note is not made within five (5) business days after the due date and receipt by Maker of Notice from Payee, (b) any default occurs under any other instrument related hereto or under the provisions of any security agreement, pledge agreement or other document or agreement which provides security for the indebtedness evidenced by this Note, or (c) Maker applies for or consents to the appointment of a receiver, trustee, or liquidator of itself or of all or a substantial part of its assets, or admits in writing its inability to pay its debts as they fall due, or makes a general assignment for the benefit of creditors, or is adjudicated a bankrupt or insolvent, or a petition or other proceeding (voluntary or otherwise) is filed by or with respect to Maker in which a reorganization or an arrangement with Maker's creditors is sought or by which any creditor of Maker or Maker itself seeks to take advantage of any insolvency, bankruptcy, reorganization, arrangement, or other similar proceeding, Payee may, at its option, without further notice or demand, declare this Note in default and all indebtedness due and owing hereunder shall be due and payable immediately. In the event of a default, the entire balance (principal and interest) shall be due and payable immediately. All makers, endorsers, guarantors and sureties hereby severally waive protest, presentment, demand, and notice of protest and nonpayment in case this Note or any payment due hereunder is not paid when due; and they agree to any renewal of this Note or to any extension, acceleration or postponement of the time of payment, or any other indulgence, to any substitution, exchange or release of collateral and to the release of any party or person primarily or contingently liable, without prejudice to Payee and without notice to any maker, endorser, guarantor or surety. Maker hereof, and any guarantor, endorser, surety or any other person who is or may become liable hereon shall, on demand, pay all costs of collection, including reasonable attorney fees incurred by Payee in attempting to enforce payment of this Note and for defending the validity of any

document securing this Note.

This Note is given for an actual loan of money for business purposes and not for personal, agricultural or residential purposes, and is executed and delivered in the State of Oklahoma and shall be governed by and construed in accordance with the laws of the State of Oklahoma. The state or federal courts sitting within Tulsa, Oklahoma shall have exclusive jurisdiction over any disputes which arise hereunder and the parties acknowledge that venue is proper only in such courts.

**TETHYS TRADING, LLC, an Oklahoma limited liability company**

**By:** ______________________________
**John E. Meyer, Jr., Manager**

# EXHIBIT 2

# GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (this "Guaranty Agreement"), is made as of the 24 day of March, 2014, by **Ruchir A. Kadakia** ( "Guarantor") in favor of R.P. Small Corp., an Illinois corporation (the "Lender").

**RECITALS:**

WHEREAS, Tethys Trading, LLC, an Oklahoma limited liability company (the "Borrower"), made a certain promissory note, dated as of the date hereof (the "Note"), in favor of the Lender, pursuant to which the Lender made a loan to the Borrower in the amount of Six Million Dollars ($6,000,000.00) Dollars, together with interest thereon (the "Loan"); and

WHEREAS, the Note is secured by, among other things, certain Accounts Receivable and other collateral identified in the Pledge and Security Agreement, dated as of the date hereof (the "Borrower Collateral"), from the Borrower to the Lender; and

WHEREAS, as a condition precedent to the making of the Loan, *inter alia*, the Lender has required that the Guarantor, who has an equity ownership interest, whether direct or indirect, in the Borrower, and thus will directly or indirectly benefit from the Loan, unconditionally enter into and execute this Guaranty Agreement, hereby guaranteeing the full, prompt and unconditional payment when due of the Loan, and the full and complete performance of all other obligations of the Borrower with respect to the Loan (the "Borrower's Obligations"); and

WHEREAS, the Guarantor has determined that the execution, delivery and performance of this Guaranty Agreement directly benefits, and is in the best interests of, the Guarantor; and

WHEREAS, all words and terms not defined herein shall have the respective meanings and be construed herein as provided in the Note and Pledge and Security Agreement;

THEREFORE, in consideration of the Loan made to the Borrower and with knowledge that the Lender would not make the Loan but for the promises of the Guarantor hereunder, the Guarantor, hereby absolutely and unconditionally, represents, warrants and covenants as follows:

1. The Guarantor hereby irrevocably guaranties the full, prompt and unconditional payment when due, of the Borrower's Obligations due and owing to the Lender, when and as the same shall become due, whether at the stated maturity date, by acceleration or otherwise, and the full, prompt, and unconditional performance of each and every term and condition of any transaction to be kept and performed by the Borrower under the Note. This Guaranty Agreement is a primary obligation of the Guarantor and shall be a continuing inexhaustible Guaranty Agreement. In the event any of the Borrower's Obligations shall not be paid or performed according to their terms, the Guarantor shall immediately pay or perform the same, this Guaranty Agreement being an absolute, irrevocable and unconditional guaranty of full payment and performance and not a guaranty of collection.
2. The Guarantor waives all defenses based upon surety or impairment of collateral, including without limitation, any actions or defenses identified generally or specifically under the Uniform Commercial Code or other body of law governing sureties or guarantors, waives notice of acceptance of this Guaranty Agreement and notice of any of the Borrower's Obligations to which it may apply, and waives notice of default, non-payment, partial payment, presentment, demand,

protest, notice of protest or dishonor and all other notices to which the Guarantor might otherwise be entitled, or which might be required by law and required to be given by the Lender.

3. The obligations of the Guarantor hereunder shall be unconditional and absolute and, without limiting the generality of the foregoing, shall not be released, discharged, be a defense to or otherwise affected by:
   (a) any extension, renewal, settlement, indulgence, compromise, waiver or release of or with respect to any of the Borrower's Obligations or any part thereof or any agreement relating thereto, or with respect to any obligation of any other guarantor of the Borrower's Obligations, whether (in any such case) by operation of law or otherwise, or any failure or omission to enforce any right, power or remedy with respect to any of the Borrower's Obligations or any part thereof or any agreement relating thereto, or with respect to any obligation of any other guarantor of any of the Borrower's Obligations;
   (b) any modification or amendment of or supplement to the Note, including, without limitation, any such amendment which may increase the amount of the Borrower's Obligations guaranteed hereby;
   (c) any release, surrender, compromise, settlement, waiver, subordination or modification, with or without consideration, of any collateral securing the Borrower's Obligations or any part thereof, any other guaranties with respect to the Borrower's Obligations or any part thereof, or any other obligation of any person or entity with respect to the Borrower's Obligations or any part thereof, or any non-perfection or invalidity of any direct or indirect security for any of the Borrower's Obligations;
   (d) any acceptance by the Lender of additional security to act as collateral for the Borrower's Obligations;
   (e) any change in the structure or ownership of the Borrower or any other guarantor of any of the Borrower's Obligations, or any solvency, bankruptcy, reorganization, or other similar proceeding affecting the Borrower or any other guarantor of any of the Borrower's Obligations, or any of their respective assets or any resulting release or discharge of any obligation of the Borrower any guarantor of any of the Borrower's Obligations;
   (f) the existence of any claim, set-off or other rights which the Guarantor may have at any time against the Borrower, any other guarantor of any of the Borrower's Obligations, the Lender or any other person, whether in connection herewith or in connection with any unrelated transactions;
   (g) the enforceability or validity of the Borrower's Obligations or any part thereof or the genuineness, enforceability or validity of any agreement relating thereto or with respect to any collateral securing the Borrower's Obligations or any part thereof, or any other invalidity or unenforceability relating to or against the Borrower or any other guarantor of any of the Borrower's Obligations, for any reason related to the Note or any provision of applicable law or regulation purporting to prohibit the payment by the Borrower or any other guarantor of any of the Borrower's Obligations;
   (h) the failure of the Lender to take any steps to perfect and maintain any security interest in, or to preserve any rights to, any security or collateral for any of the Borrower's Obligations, if any;
   (i) any borrowing or grant of a security interest by the Borrower, debtor-in-possession, under Section 364 of the United States Bankruptcy Code;
   (j) the disallowance, under Section 502 of the United States Bankruptcy Code, of all or any portion of the claims of the Lender for repayment of all or any part of any of the Borrower's Obligations;

(k) the failure of any other guarantor to sign or become party to this Guaranty Agreement or any amendment, change, or reaffirmation hereof; or

(l) any other act or omission to act or delay of any kind by the Borrower, any other guarantor of any of the Borrower's Obligations, the Lender or any other person or any other circumstance whatsoever which might, but for the provisions of this Section constitute a legal or equitable discharge of the Guarantor's obligations hereunder.

4. Upon the occurrence of an Event of Default (as such term is defined in the Note), the Lender shall be immediately entitled to enforce the obligations of the Guarantor hereunder.
5. The Lender may at any time before or after an Event of Default exercise its right to set-off all or any portion of the Borrower's Obligations owed to it against any liability or indebtedness of the Lender to the Borrower or the Guarantor (whether owed by the Borrower or the Guarantor or alone or in conjunction with any other person or entity, provided that the Borrower or the Guarantor has a beneficial interest therein) without prior notice to the Borrower or Guarantor.
6. The Guarantor hereby waives any right or claim of right to cause a marshalling of the Borrower's assets or to cause the Lender to proceed against any of the security or collateral held by the Lender before proceeding against the Guarantor, and the Guarantor hereby waives any and all legal requirement that the Lender shall institute any action at law or in equity against the Borrower, or anyone else, with respect to the Note or with respect to any other documents, agreements or instruments executed by the Borrower or with respect to any security held by the Lender, as a condition precedent to bringing any action against the Guarantor upon this Guaranty Agreement.
7. Until repayment and performance of all of the Borrower's Obligations, the Guarantor hereby irrevocably waives and relinquishes any and all statutory, contractual, common law, equitable or other claims and rights (a) to seek reimbursement, contribution, indemnification, set-off or other recourse from or against the Borrower in connection with any payments made by the Guarantor under this Guaranty Agreement and (b) to be subrogated to the Lender's rights under the Note upon the Guarantor's performance under this Guaranty Agreement.
8. This Guaranty Agreement is made and shall continue as to any of the Borrower's Obligations to the Lender without regard to the existence of other collateral or security or guaranties, if any, or to the validity or effectiveness of any or all thereof; and any or all such collateral and security and guaranties may, from time to time, without notice to or consent of the Guarantor, be sold, released, surrendered, exchanged, settled, compromised, waived, subordinated or modified, with or without consideration, on such terms and conditions as may be acceptable to the Lender without in any manner affecting or impairing the liability of the Guarantor. The Guarantor's obligations under this Guaranty Agreement shall extend to any and all monies advanced by the Lender pursuant to the Note.
9. If claim is ever made upon the Lender for repayment or recovery of any amount or amounts received by the Lender in payment for, or on account of, any of the Borrower's Obligations, and the Lender repays all or part of said amount by reason of (a) any judgment, decree or order of any court or administrative body having jurisdiction over the Lender or any of its property, or (b) any settlement or compromise of any such claim effected by the Lender with any such claimant (including the Borrower), then, and in such event, the Guarantor agrees that any such judgment, decree, order, settlement or compromise shall be binding upon him, notwithstanding the cancellation of any note or any other instrument evidencing any of the Borrower's Obligations, and the Guarantor shall be and remain liable to the Lender hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by the Lender.
10. Settlement of any claim by the Lender against the Borrower, whether in any proceeding or not, and whether voluntary or involuntary, shall not reduce the amount due under the terms of this

Guaranty Agreement except to the extent of the amount paid by the Borrower in connection with the settlement.

11. No delay on the part of the Lender in exercising any of its rights, powers or privileges or partial or single exercise thereof under the Note, this Guaranty Agreement or any other document made to or with the Lender by the Borrower shall operate as a waiver of any such privileges, powers or rights. No waiver of any of its rights hereunder, and no modification or amendment of this Guaranty Agreement, shall be deemed to be made by the Lender unless the same shall be in writing, duly signed on behalf of the Lender, by a duly authorized officer, and each such waiver, if any, shall apply only with respect to the specific instance involved, and shall in no way impair the rights of the Lender or the obligations of the Guarantor to the Lender in any other respect at any other time.
12. All rights, powers and remedies afforded to the Lender by reason of this Guaranty Agreement are separate and cumulative remedies and no one of such remedies whether or not exercised by the Lender shall be deemed to exclude any of the other remedies available to the Lender nor prejudice availability of any other legal or equitable remedy which the Lender may have with respect to the Loan.
13. This Guaranty Agreement shall be governed by and construed in accordance with the laws of the State of Oklahoma without reference to principles of conflicts of law, except to the extent that the validity or perfection of the security interest granted hereunder, or remedies hereunder, in respect of any particular collateral are governed by the laws of another jurisdiction. The fact that any part of this Guaranty or the Note may not be enforced will not affect the enforceability of the rest of such documents. The Guarantor irrevocably submits to the exclusive jurisdiction of any federal or state court located in the State of Oklahoma with respect to any proceedings relating to this Guaranty or the Note, and irrevocably agrees not to assert any objection to venue in such court or any claim of inconvenient forum. The Guarantor irrevocably consents to service of process by mailing of such process by registered or certified mail, postage prepaid, at its address set forth below.
14. This Guaranty Agreement shall be binding upon and inure to the benefit of and be enforceable by all parties hereto and their respective successors, assigns, heirs, administrators, executors and legal representatives.
15. All notices and other communications relating to this Guaranty shall be made in writing and delivered to the Borrower at 954 West Washington Blvd., Suite 250, Chicago, Illinois 60607, and delivered to the Lender at 1585 E. 22nd St., Tulsa, OK 74114-1305, or such other place as the Lender shall designate in writing, with a copy to the Guarantor at the address indicated on the signature page below. Any such notice shall be deemed effective (i) when delivered, if delivered personally or by email or facsimile transmission, (ii) two (2) days after delivered (properly addressed and all fees paid) for overnight delivery service to a courier that regularly provides such service and regularly obtains executed receipts evidencing delivery, or (iii) five (5) days after deposited (properly addressed and stamped for first-class delivery) in the United States mail.
16. In case of any proceedings to collect any liabilities from the Guarantor, the Guarantor shall pay all costs and expenses of every kind for collection, sale or delivery, including reasonable attorney's fees, and after deducting such costs and expenses from the proceeds of sale or collection, the Lender may apply any residue to the liabilities of the Guarantor who shall continue to be liable for any deficiency, with interest at the Note Rate (as such term is defined under the Note).
17. This Guaranty shall be binding upon the Guarantor and the heirs, legal representatives, successors and assigns of the Guarantor. If more than one party shall execute this Guaranty, the term

"Guarantor" shall mean all parties executing this Guaranty, and all such parties shall be jointly and severally obligated hereunder.

18. In all references herein to any parties, persons, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.
19. The Guarantor hereby acknowledges and agrees that the Guarantor shall have the sole responsibility for obtaining from the Borrower such information concerning the Borrower's financial condition and business operations as the Guarantor may require, and that the Lender has no duty at any time to disclose to the Guarantor any information relating to the business operations or financial condition of the Borrower.
20. THE GUARANTOR HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION NOW EXISTING OR HEREAFTER ARISING RELATING TO THE LOAN, THIS GUARANTY AGREEMENT, THE NOTE OR ANY DEALINGS OR TRANSACTIONS RELATED THERETO AND THE GUARANTOR AGREES THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY.
21. THE GUARANTOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. THE GUARANTOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER, IN THE EVENT OF LITIGATION, WILL NOT SEEK TO ENFORCE THE FOREGOING WAIVER. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR THE LENDER TO ACCEPT THIS GUARANTY AGREEMENT AND MAKE THE LOAN.

INTENDING TO BE BOUND, the Guarantor has caused this Guaranty Agreement to be duly executed and delivered, all as of the day and year first above written.

**Guarantor:**



**Ruchir A. Kadakia**
**94 Deer Plain Dr.**
**Spring, TX 77389**

# EXHIBIT 3
# [to be filed under seal]

# EXHIBIT 4

## AGREEMENT REGARDING TRANSFER OF MEMBERSHIP INTERESTS

This Agreement Regarding Transfer of Membership Interests (the "Agreement") is entered into effective as of this 31st day of December, 2015 (the "Effective Date") among Ruchir A. Kadakia ("Kadakia"), Robert Finnegan ("Finnegan"), John E. Meyer, Jr. ("Meyer"), and Tethys Trading, LLC, Tethys Biofuels, LLC, Tethys Latin America, LLC, Tethys Partners, LLC, Tethys Derivatives, LLC, and Tethys Energy, LLC (collectively, the "Tethys Companies") (Collectively, Kadakia, Finnegan, Meyer, and the Tethys Companies are each a "Party").

### RECITALS

A. WHEREAS, Tethys Trading, LLC is a limited liability company, organized and existing under the laws of the State of Oklahoma, with its principal offices at 954 N. Washington Boulevard, Suite 250, Chicago, Illinois, 60607;

B. WHEREAS, Tethys Biofuels, LLC is a limited liability company, organized and existing under the laws of the State of Oklahoma, with its principal offices at 954 N. Washington Boulevard, Suite 250, Chicago, Illinois, 60607;

C. WHEREAS, Tethys Capital, LLC is a limited liability company, organized and existing under the laws of the State of Delaware, with its principal offices at 954 N. Washington Boulevard, Suite 250, Chicago, Illinois, 60607;

D. WHEREAS, Tethys Latin America, LLC is a limited liability company, organized and existing under the laws of the State of Oklahoma, with its principal offices at 954 N. Washington Boulevard, Suite 250, Chicago, Illinois, 60607;

E. WHEREAS, Tethys Partners, LLC is a limited liability company, organized and existing under the laws of the State of Oklahoma, with its principal offices at 954 N. Washington Boulevard, Suite 250, Chicago, Illinois, 60607;

F. WHEREAS, Tethys Derivatives, LLC is a limited liability company, organized and existing under the laws of the State of Oklahoma, with its principal offices at 954 N. Washington Boulevard, Suite 250, Chicago, Illinois, 60607;

G. WHEREAS, Tethys Energy, LLC is a limited liability company, organized and existing under the laws of the State of Oklahoma, with its principal offices at 954 N. Washington Boulevard, Suite 250, Chicago, Illinois, 60607;

H. WHEREAS, Kadakia owns Units of Membership Interests in the Tethys Companies and in Tethys Capital, LLC (the "Units") as follows:

| | |
|---|---|
| - Tethys Trading, LLC | 250 Units |
| - Tethys Biofuels, LLC | 20.944 Units |
| - Tethys Capital, LLC | 166 1/3 Units |
| - Tethys Latin America, LLC | 100 Units |

| | |
|---|---|
| - Tethys Partners, LLC | 100 Units |
| - Tethys Derivatives, LLC | 33 1/3 Units |
| - Tethys Energy, LLC | 33 Units; |

I. WHEREAS, in return for the Consideration described herein, Kadakia wishes to assign, transfer and convey his Units in Tethys Trading, LLC, Tethys Biofuels, LLC, Tethys Capital, LLC, Tethys Latin America, LLC, Tethys Partners, LLC, and Tethys Derivatives, LLC to Meyer and Finnegan, with fifty percent (50%) of such Units in each company transferred to Meyer, and fifty percent (50%) of such Units in each company transferred to Finnegan;

J. WHEREAS, Kadakia wishes to transfer and convey one hundred percent (100%) of his Units in Tethys Energy to Meyer;

K. WHEREAS, as of 12:00 A.M. on January 1, 2016, Kadakia will no longer own any Units in any of the Tethys Companies or in Tethys Capital, LLC; and

L. WHEREAS, Meyer and Finnegan are willing to accept such Units from Kadakia in return for the Consideration described herein.

NOW, THEREFORE, in consideration of the Recitals set forth above, all of which are incorporated into the body of this Agreement, the promises and covenants contained herein, and for other good and valuable consideration, the adequacy and receipt of which are hereby acknowledged, the undersigned parties agree as follows:

1. **Payment**. On the Effective Date, Meyer and Finnegan shall pay by wire transfer, and provide written confirmation of the payment, the sum of FIFTY THOUSAND and 00/100 ($50,000.00) (the "Payment") to Kadakia, pursuant to the following wiring instructions:

| | |
|---|---|
| Bank: | Chase Bank |
| Account Name: | Ruchir Kadakia |
| Account No.: | 437032316 |
| ABA No.: | 322271627 |
| Reference: | Tethys Units Payment |

2. **Assignment**. In exchange for the Payment, and the other promises and covenants contained herein, Kadakia hereby sells, assigns, transfers and conveys his Units (with such assignments to take place at 12:00 A.M. on January 1, 2016):

A. to Meyer, fifty percent (50%) of his Units in Tethys Trading, LLC, Tethys Biofuels, LLC, Tethys Capital, LLC, Tethys Latin America, LLC, Tethys Partners, LLC, and Tethys Derivatives, LLC, all free and clear of all liens, claims, encumbrances, charges, security interests and rights of third parties, absolute or contingent, of any kind whatsoever;

B. to Finnegan, fifty percent (50%) of his Units in Tethys Trading, LLC, Tethys Biofuels, LLC, Tethys Capital, LLC, Tethys Latin America, LLC, Tethys Partners, LLC, and Tethys Derivatives, LLC, all free and clear of all liens, claims, encumbrances, charges, security interests and rights of third parties, absolute or contingent, of any kind whatsoever; and

C. to Meyer, one hundred percent (100%) of his Units in Tethys Energy, LLC, all free and clear of all liens, claims, encumbrances, charges, security interests and rights of third parties, absolute or contingent, of any kind whatsoever.

3. **Indemnification:**

A. To the fullest extent permitted by applicable law, Kadakia, agrees to indemnify Meyer, Finnegan, and the Tethys Companies from and against any and all claims, demands, damages, fees, actions, and causes of action of whatsoever nature, whether in contract or in tort, at law or in equity, liquidated or unliquidated, which have accrued or may hereafter accrue to any third party, whether now known or not known, arising out of any action taken by Kadakia that is proved by a finder of fact to have been unauthorized or taken outside of Kadakia's scope of authority with respect to any Tethys Company or Tethys Capital, LLC.

B. To the fullest extent permitted by applicable law, Meyer, Finnegan, and the Tethys Companies, for themselves, heirs, successors and assigns, agree to indemnify Kadakia and his successors and assigns, from and against any and all claims, demands, damages, fees, actions, and causes of action of whatsoever nature, whether in contract or in tort, at law or in equity, liquidated or unliquidated, which have accrued or may hereafter accrue to any third party, whether now known or not known, arising out of, or in any manner relating to, the business of the Tethys Companies or Tethys Capital, LLC, or Kadakia's ownership of the Units, except any such claims, demands, damages, fees, actions, and causes of action arising out of any action taken by Kadakia that is proved by a finder of fact to have been unauthorized or taken outside of Kadakia's scope of authority with respect to any Tethys Company or Tethys Capital, LLC.

4. **Releases.**

A. Kadakia, for himself and his attorneys, legal representatives, and heirs and assigns RELEASES, ACQUITS, FOREVER DISCHARGES, AND COVENANTS NOT TO SUE Finnegan, Meyer, and the Tethys Companies, and their past and present shareholders, officers, directors, employees, agents, representatives, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, groups, and parent companies, and all their representatives and assigns, from any and all claims, rights, demands, debts, liabilities, controversies, or causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, of any nature whatsoever from the beginning of time through the Effective Date, including, but not limited to, those arising out of or relating to: (1) business conducted by the Tethys Companies or Tethys Capital, LLC; (2) Kadakia's employment with any of the Tethys Companies or Tethys Capital, LLC; (3) Kadakia's ownership of the Units; or (4) any other act, transaction, or occurrence prior to the Effective Date; except that nothing herein shall prevent Kadakia from enforcing the terms of this Agreement.

B. Meyer and Finnegan, for themselves and their attorneys, legal representatives, and heirs and assigns RELEASE, ACQUIT, FOREVER DISCHARGE, AND COVENANT NOT TO SUE Kadakia, his attorneys, legal representatives, and heirs and all their assigns, from any and all claims, rights, demands, debts, liabilities, controversies, or causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, of any nature whatsoever from the beginning of time through the Effective Date,

including, but not limited to, those arising out of or relating to: (1) business conducted by the Tethys Companies or Tethys Capital, LLC; (2) Kadakia's employment with any of the Tethys Companies or Tethys Capital, LLC; (3) Kadakia's ownership of the Units; or (4) any other act, transaction, or occurrence prior to the Effective Date; except that nothing herein shall prevent Meyer and Finnegan from enforcing the terms of this Agreement.

C. The Tethys Companies, for themselves and their past and present, employees, agents, representatives, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, groups, and parent companies RELEASE, ACQUIT, FOREVER DISCHARGE, AND COVENANT NOT TO SUE Kadakia, his attorneys, legal representatives, and heirs and all their assigns, from any and all claims, rights, demands, debts, liabilities, controversies, or causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, of any nature whatsoever from the beginning of time through the Effective Date, including, but not limited to, those arising out of or relating to: (1) business conducted by the Tethys Companies; (2) Kadakia's employment with any of the Tethys Companies; (3) Kadakia's ownership of the Units; or (4) any other act, transaction, or occurrence prior to the Effective Date; except that nothing herein shall prevent the Tethys Companies from enforcing the terms of this Agreement.

5. **Representations and Warranties.**

A. The Tethys Companies represent and warrant that they have received an Opinion of Counsel, as that term is defined in the various operating agreements for the Tethys Companies, opining that the assignment of Units contemplated by this Agreement does not materially adversely affect the classification of the Tethys Companies as partnerships for federal or state income-tax purposes.

B. Finnegan and Meyer represent and warrant that all consents to the assignment required of additional members of any of the Tethys Companies and Tethys Capital, LLC pursuant to their operating agreements, have been obtained.

6. **Binding Effect**. The undersigned parties agree that the provisions in this Agreement are binding on themselves and their respective heirs, personal and legal representatives, successors, and assigns.

7. **Severability**. In the event that any provision of this Agreement is held invalid, such invalidity shall not affect other provisions of this Agreement.

8. **Miscellaneous**.

A. **Entire Agreement**. Except as otherwise expressly provided herein, this Agreement (and the related instruments by which each party came to hold his Units) contains the entire agreement among the parties executing this Agreement with respect to the transactions contemplated herein. This Agreement may only be modified by express written amendment specifically referencing this Agreement and signed by all parties.

B. **Captions**. The captions contained in this Agreement are for reference only and are not part of this Agreement.

C. **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Oklahoma. If any legal action or proceeding arising from this Agreement is initiated, the prevailing party shall be entitled to recover its court costs and all reasonable and necessary attorney's fees and expenses, in addition to any damages or other relief, whether in law or equity, to which such prevailing party may be entitled.

D. **Further Assurances**. Each party hereto agrees to execute and deliver from time to time any other instruments or documents considered necessary or desirable by the others to effect, finalize, record or perfect the assignment contemplated hereunder and to take all reasonable additional acts, and furnish reasonable assurances, as further required by the other.

E. **Resulting Ownership**. As a result of this Agreement, as of 12:00 A.M. on January 1, 2016, Kadakia will no longer hold any Membership Units in any of the Tethys Companies or in Tethys Capital, LLC.

F. **Tax Treatment**. For the purpose of Federal and State tax reporting, including the filing of any amended returns, for any year during which Kadakia owned Units, the Tethys Companies and Tethys Capital, LLC will treat Kadakia exactly the same as all other members of the Tethys Companies and Tethys Capital, LLC. For a period of five years from the Effective Date, Kadakia shall have the right to audit, at his expense, any tax return, including amended returns, filed by the Tethys Companies and Tethys Capital, LLC for any year during which Kadakia owned Units.

G. **Use of "Tethys"**. As of the Effective Date, Kadakia agrees not to use, or aid others in using, the name "Tethys" for any business enterprise, or otherwise.

H. **Confidentiality**. The undersigned parties acknowledge that the terms of this Agreement are confidential and shall not be disclosed by them or their representatives to any third parties, except: (a) tax reporting as required by law; (b) to a party's attorneys or tax consultants and auditors; (c) to comply with regulatory requirements; (d) to comply with a court order and/or subpoena; or (e) as necessary to comply with or carry out the terms of the Agreement.

I. **Duplicate Originals**. This Agreement may be executed in duplicate original counterparts, each of which shall be considered an original for all purposes.

**IN WITNESS WHEREOF,** the undersigned parties have caused this Agreement to be executed by their duly appointed representatives as of the Effective Date.

[SIGNATURE PAGES FOLLOW]

**PARTIES**

______________________________
Ruchir A. Kadakia

______________________________
John E. Meyer, Jr.

______________________________
Robert Finnegan

TETHYS TRADING, LLC, an Oklahoma limited liability company

By: ____________________________
Manager

TETHYS BIOFUELS, LLC, an Oklahoma limited liability company

By: ____________________________
Manager

TETHYS LATIN AMERICA, LLC, an Oklahoma limited liability company

By: ____________________________
Manager

TETHYS PARTNERS, LLC, an Oklahoma limited liability company

By: ____________________________
Manager

TETHYS DERIVATIVES, LLC, an Oklahoma limited liability company

By: ____________________________
Manager

**PARTIES**

____________________________________
Ruchir A. Kadakia

____________________________________
John E. Meyer, Jr.

____________________________________
Robert Finnegan

TETHYS TRADING, LLC, an Oklahoma limited liability company

By: ________________________________
Manager

TETHYS BIOFUELS, LLC, an Oklahoma limited liability company

By: ________________________________
Manager

TETHYS LATIN AMERICA, LLC, an Oklahoma limited liability company

By: ________________________________
Manager

TETHYS PARTNERS, LLC, an Oklahoma limited liability company

By: ________________________________
Manager

TETHYS DERIVATIVES, LLC, an Oklahoma limited liability company

By: ________________________________
Manager

TETHYS ENERGY, LLC, an Oklahoma limited liability company

By: ______________________
Manager

TETHYS TRADING, LLC, an Oklahoma limited liability company

By: ______________________
Manager