**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **1. R.P. SMALL CORP.,**<br>**Plaintiff,**<br>**v.**<br><br>**1. RUCHIR A. KADAKIA,**<br>**Defendant.**<br><br>**and**<br><br>**1. RUCHIR A. KADAKIA, individually and Derivatively on behalf of Tethys Trading,**<br><br>**Counterclaimant and Third-Party Plaintiff,**<br><br>**v.**<br><br>**2. R.P. Small Corp., an Illinois corporation**<br><br>**Counterclaim Defendant,**<br><br>**and**<br><br>**1. JOHN E. MEYER, JR.;**<br>**2. ROBERT FINNEGAN;**<br>**and**<br>**3. TETHYS SUPPLY AND MARKETING, LLC;**<br>**4. TETHYS CAPITAL, LLC;**<br>**5. TETHYS TRADING, LLC;**<br>**6. TETHYS ENERGY, LLC;**<br>**7. TETHYS BIOFUELS, LLC;**<br>**8. TETHYS LATIN AMERICA, LLC;**<br>**9. TETHYS PARTNERS, LLC;**<br>**10. TETHYS DERIVATIVES, LLC; and**<br>**11. TETHYS SHIPPING, LLC,**<br>**each an Oklahoma limited liability company;**<br>**and**<br>**12. JOHN DOES and JANE DOES 1 to 10;**<br><br>**Third-Party Defendants.** | **CASE NO. 19-CV-271-CVE-JFJ**<br>**JURY TRIAL DEMANDED** |

**OBJECTION TO DEFENDANT KADAKIA'S MOTION TO RECONSIDER**

R.P. Small Corp. ("Plaintiff" or "RPS") objects to Ruchir A. Kadakia's Motion for Reconsideration (Dkt. 68) (the "Motion") of the Court's April 2, 2020 Opinion and Order (Dkt.65) (the "Order"). With regard to Kadakia's Third Party Claims, Plaintiff objects to the Motion because it would undo this Court's well-reasoned decision that the involvement of the third parties will cause undue delay and complexity on what is, essentially, a straightforward lawsuit between RPS and Kadakia over the collection of a Note under the terms of a Personal Guaranty. Oklahoma case law makes it clear that the liabilities of the original obligor and the personal guarantor are contractually distinct. (*See Riverside Nat'l Bank v. Manolakis*, 1980 OK 72, ¶ 9, 613 P.2d 438, 441 ("A guarantor's undertaking…- because it differs so vastly from the rights of a nonobligor who provides security for another person's debt – creates a collateral obligation independent and separately enforceable from that of the principal debtor."). Not only does RPS object to Kadakia's Motion for Reconsideration of the Order, RPS also objects to the statements made concerning RPS in that Motion, as more fully explained below.

**I. RPS'S RESPONSE TO KADAKIA'S CONTENTIONS REGARDING DEFAULT.**

Section I of Kadakia's Motion attacks RPS's claims against Kadakia, but the Order has no impact on those claims. Although largely irrelevant, Section I contains a number of misstatements that should be corrected regarding the issue of default and the effect of the "December 19, 2019 agreement between Small Corp, Meyer, Finnegan and Tethys Trading."[1]

**A. THE ISSUE OF DEFAULT**

Although notice of default was unnecessary, RPS attempted to notify Kadakia that the Promissory Note was in default prior to the filing of this litigation. *See* Demand Letter attached

[1] Motion, p. 2.

hereto as **Exhibit A**. Kadakia's allegation[2] that a declaration of default is necessary or that it is a requirement is simply incorrect. The terms of the Guaranty state explicitly that neither a formal declaration nor a notice of the default is required to be sent to Kadakia or the other guarantors. Here is a snapshot of those terms:

> 2. The Guarantor waives all defenses based upon surety or impairment of collateral, including without limitation, any actions or defenses identified generally or specifically under the Uniform Commercial Code or other body of law governing sureties or guarantors, waives notice of acceptance of this Guaranty Agreement and notice of any of the Borrower's Obligations to which it may apply, and waives notice of default, non-payment, partial payment, presentment, demand,
>
> protest, notice of protest or dishonor and all other notices to which the Guarantor might otherwise be entitled, or which might be required by law and required to be given by the Lender.

The plain language of the Guaranty - that Kadakia agreed to and admits to executing – moots Kadakia's claims stated in the Motion for Reconsideration that "Small Corp. has neither declared an event of default of the Tethys Promissory Note nor does it allege in its Original Complaint that the note is in default."[3] First, under the terms of the Guaranty, Kadakia guarantied RPS "the full, prompt and unconditional payment when due, of the Borrower's Obligations due and owing to the Lender, when and as the same shall become due."[4] The Complaint (Dkt.1) states in ¶ 14: "As of March 27, 2016, payments on the Promissory Note were not made as provided for in the Promissory Note." Second, Oklahoma statutes state that a guarantor is immediately liable "upon default of the principal, and without demand or notice." OKLA. STAT. tit. 15, § 332. Third, Kadakia was informed on January 6, 2017, that RPS had made demands that payments be made on the Note. *See* January 16, 2017 Email attached as **Exhibit B**. In this same email, Meyer explains that there was not enough money in Tethys Trading for this to happen. All three of them acknowledged at that time that the Note was due and owing and that Tethys Trading could not make the payments.

---

[2] Motion, p. 2.
[3] *Id.*
[4] Guaranty, p. 1, ¶ 1.

Not only was RPS not obligated to declare a default, the parties to the Note already knew that it was in default. Fourth, Kadakia waived this defense when he executed the Guaranty as noted above in the terms of the Guaranty. Finally, regarding the December 19, 2019 Agreement ("Agreement"), (Dkt. 70), the Agreement Recital C states: "Workout Agreement: Without waiving any of its rights under the Promissory Note or the associated guarantees, RPS is willing to accept the performance of the obligations set forth herein in lieu of the instigation of litigation to collect the full amounts due from Tethys Trading, provided that all payments made by Meyer and Finnegan as set forth herein are timely made." The Agreement, by its own terms, does not waive RPS's, as Lender, rights when a default is in effect. The Agreement does not change the fact that "full, prompt and unconditional payment when due" has not occurred, as guaranteed by Kadakia. Kadakia's statement in the Motion that RPS "cannot seek to enforce Kadakia's obligations under his guaranty"[5] is simply incorrect. *See FDIC v. Casey*, 1987 OK 68, 741 P.2d 463, 465 ("Oklahoma's statutory scheme provides separate treatment for actions against guarantors and actions against principal debtors."). For the foregoing reasons Kadakia's erroneous contentions in the Motion regarding default do not invalidate the Order.

**B. TETHYS' DECEMBER 19, 2019 AGREEMENT HAS NO BEARING ON KADAKIA'S OBLIGATIONS ARISING FROM THE GUARANTY PER THE TERMS OF THE GUARANTY.**

As alleged in paragraph 14 of the Complaint, payments on the Promissory Note had not been made as provided for in the Promissory Note, which is an event of default under the Note. Kadakia's statement to the contrary is false. Furthermore, the Guaranty is "unconditional and absolute." The terms of the Guaranty state that "The obligations of the Guarantor hereunder shall be unconditional and absolute and,…shall not be released, discharged, be a defense to or otherwise affected by: (a) any extension, renewal, ***settlement,*** indulgence, compromise, waiver or release of

[5] Motion, p. 2.

or with respect to any of the Borrower's Obligations…or with respect to any obligation of any other guarantor of the Borrower's Obligations;" (emphasis added) Guaranty, ¶ 3 (a). The December 19, 2019 Agreement made between RPS, Meyer, and Finnegan has no bearing on Kadakia's obligations as a guarantor per the exact terms of the Guaranty and the Agreement. The Guaranty allows RPS, as Lender, to make any settlement whatsoever with one guarantor without affecting the other guaranties. Kadakia's indemnity agreement with Meyer, Finnegan and Tethys Trading also has no bearing on his obligations as guarantor. Any issues that Kadakia has regarding the indemnification is between him and the other parties. It does not change his obligation to RPS.

As stated in the preface, a guarantor's obligation is contractually distinct from that of the principal obligor. In *Manolakis*, Manolakis, "the guarantor," just like Kadakia, "promised full and prompt payment of the debtor's obligation and waived certain statutory defenses." *Id.* at 442. Manolakis claimed that the exoneration of the liability of the primary obligor exonerated him as well. Instead, the Oklahoma Supreme Court held that a guarantor's undertaking

> creates a collateral obligation independent and separately enforceable from that of the principal debtor. The debtor need not be and frequently is not a party to the guaranty agreement. Nor need the guarantor be a party to the principal obligation. The obligation of a guaranty is contractual, and the inquiry must, in each case, focus on the precise terms of the guarantor's undertaking – the dimension or breadth of the promise.

*Id.* at 441.

Kadakia's obligations in favor of RPS are defined by the language of the Guaranty and are enforceable whether the principal obligation continues to exist or not. Consequently, there is no need for the obligor [Tethys Trading], or any of the other guarantors to be involved in this litigation. It is solely between RPS and Kadakia. Kadakia's bullet point issues raised in his Motion do not invalidate the Order.

## II. Response to Kadakia's Rule 14(a) argument.

In the Order, the Court quoted from the language of the Guaranty[6] whereby Kadakia expressly waived the counterclaims and third party claims he is now asking this Court to enforce. Specifically, Kadakia has no claim, set-off or any other right against either Plaintiff (the Lender) or the third party defendants (the other guarantors) "whether in connection herewith or in connection with any unrelated transactions." Order, Dkt. 65 at FN 2 citing Guaranty 3(f). Notably, Kadakia's Motion for Reconsideration entirely ignores his waivers, and Rule 14 does not override or supersede the waivers. Instead, its application to this case requires Kadakia to have an actual existing counterclaim or third party claim. Kadakia has neither because he waived those claims. Kadakia did not comment in his Motion about the waivers in the Guaranty, but they constitute an insurmountable obstacle to the relief he seeks in this motion. Consequently, the authorities he cites are irrelevant because in those cases, the third party plaintiff had not waived the claims that give rise to third party liability. Indeed, it would be difficult for Kadakia to find any support for the theory that Rule 14 or Rule 18a could revive a claim that never came into existence in the first place. Furthermore, the plain language of the guaranty, Oklahoma statutes, and case law clarify that only the guarantor is contractually obligated for any claims against him. Any liabilities aside from the Guaranty are separate and distinct from claims relating to the Guaranty. Essentially, it is irrelevant whether or not other parties are liable to RPS for the obligations set forth in the Guaranty. Kadakia's claims for indemnification are a matter between him and the third parties and have no effect whatsoever on his obligations under the Guaranty.

---

[6] The Court found that "Kadakia expressly waived any defense based on 'the existence of any claim, set-off or other rights which the Guarantor may have at any time against the Borrower, any other guarantor of any of the Borrower's Obligations, the Lender or any other person, whether in connection herewith or in connection with any unrelated transactions.'" Dkt. 66 at FN2, citing Guaranty at 3(f).

Even if the waivers did not destroy Kadakia's claims against his co-guarantors, case law does. In Oklahoma, guarantors cannot hold co-guarantors liable for contribution when that guarantor has not paid more than was his legal obligation. The court in *CSBO, LLC v. Eckman* called this question "well settled" under Oklahoma law. *CSBO, LLC v. Eckman*, 2015 U.S. Dist. LEXIS 23944 (W.D. Okla. Feb. 27, 2015). In *CSBO*, Eckman, the defendant in a complaint to recover a breached promissory note and guaranty agreement, attempted to hold third parties liable for contribution. The court held that Eckman's application of Federal Rule of Civil Procedure 14(a)(1), which states a defendant may serve a complaint against a non-party who may be liable to it for the complaint against it, did not apply because Eckman had not paid more than was his legal obligation. The court stated, "a contribution claim cannot be maintained unless the guarantor has paid more than his fair share of the obligation."[7]

Moreover, the cases the Court cited in its Order are controlling. As held in *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800 (6th Cir. 2008), a court has supplemental jurisdiction over the third party complaint and it is "well within the court's discretion" to dismiss the third party complaint. *Id*. at 805. Further, "Whether third-party defendants may be brought in and retained in the action is ordinarily a matter addressed to the sound discretion of the trial judge." *U.S. Fidelity & Guar. Co. v. Perkins*, 388 F.2d 771, 773, (10th Cir. 1968).

Kadakia would postulate that FED. R. CIV. P 18 *requires* a court to grant joinder when the claim arises out of the same transaction or occurrence, but Kadakia skips the first step – the existence of viable third party claims in the first place. S*ee King Fisher Marine Serv. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1158-72 (10th Cir. 1990), *cert. denied*, 496 U.S 912 (1990). The

[7] Kadakia has apparently ignored the Court's statements regarding the issue of contribution Dkt 65 at FN 1; however, because Kadakia, again, asserts in the bullet points that the third parties may be liable for any liability of Kadakia's, Plaintiff addresses this again, here. Though Kadakia circumvents the use of the word "contribution" – Kadakia is asserting contribution again.

main case Kadakia cites to support his contention that his third party claims are proper under Rule 18, *King Fisher Marine*, involves factually different circumstances that gave rise to the jurisdictional questions facing that court. In *King Fisher*, the issue was whether the district court had ancillary jurisdiction over the third party claims where the claims were a "state-law cause of action against a non-diverse defendant." *Id*. at 1166. Despite these factual disparities, *King Fisher* provides authority in support of the Order dismissing Kadakia's third party complaints. The court in *King Fisher* thoroughly analyzed the interplay between FED. R. CIV. P. 14 and 18, stating:

> With respect to the propriety of the additional third party claims asserted by Reed, the court reasoned: The general rule is that once a court has determined that a proper third party claim has been asserted, it should allow joinder [under Fed.R.Civ.P. 18(a)] of any other claims the third party plaintiff may have against the third-party defendant…the requirement of subject matter jurisdiction…is met if the additional claim arises out of the same transaction or occurrence as the initial claim for liability.

*Id.* at 1171.

The Court, here in the instant case, properly determined that the third party claims were not proper under FED. R. CIV. P. 14 and dismissed them. Therefore, FED. R. CIV. P. 18 is not activated. As for the "nexus" between the original claim and Kadakia's third party claims that were dismissed, the court in *Am. Zurich* states: "Third-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third party to be impleaded." *Am. Zurich.* at 805. In further analysis and discussion of the analogical definitions of the "logical relationship" an ancillary claim must have with the original claim, the court in *King Fisher* defines "logical relationship" as:

> aris[ing] out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests

> activates additional legal rights in a party defendant that would otherwise remain dormant.

*Id.* at 1168. (citing *Nishimatsu Constr. Co. v. Hudson Nat'l Bank*, 515 F.2d 1200, 1205 (5th Cir. 1975)).

As the Court observed, Kadakia alleged claims against third party defendants that have no relationship to Kadakia's liability under the Personal Guaranty. The operative facts of the original claim are simple – Kadakia executed a personal guaranty to a Note for which payments have not been made when due, and Kadakia is now liable for full payment. Whether or not he has claims against any other party for any other reason is irrelevant. To be joined in this case, any other claims must be grounded in those basic facts or they do not have the necessary "logical relationship" to Plaintiff's claim. Impleader is inappropriate for Kadakia's claims that merely arise from the same transaction. *Krainski v. Mill*, 356 Fed. App'x 951, 952 (9th Cir. Dec. 14, 2009). Kadakia might actually have valid claims against third parties including the other guarantors for various misdeeds they supposedly committed against him while they worked together at Tethys, or thereafter, perhaps, as part of his conspiracy theory as he has alleged. However, unless those claims relate directly to Kadakia's guaranty to RPS, they do not belong in this case. *See Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982). Therefore, the Order dismissing Kadakia's third party claims was proper under the wide discretion courts are given under FED. R. CIV. P. 14, and Kadakia's Motion for Reconsideration should be denied.

## CONCLUSION

The Court's Order is correct on the facts and the law. The involvement of the third parties makes the case more complex and costly to RPS than is justified for such a straightforward lawsuit. As such, Kadakia's Motion for Reconsideration should be denied.

Respectfully submitted,

By: /s/ Lacey L. Shirley
R. Brent Blackstock, OBA No. 00839
Lacey L. Shirley, OBA No. 33269
Mid-Continent Tower, Suite 500
401 S. Boston Ave.
Tulsa, OK 74103
(918) 383-0777, (918) 699-0325 (fax)
Brent@BrentBlackstock.com
lacey@brentblackstock.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE BY ECF

I hereby certify that today I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to counsel of record.

By: /s/ Lacey L. Shirley
Lacey L. Shirley

R. BRENT BLACKSTOCK
BLACKSTOCK LAW OFFICES

MID-CONTINENT TOWER, FIFTH FLOOR
401 S. BOSTON
TULSA, OKLAHOMA 74103
Main: 918-383-0777 | Fax: 918-699-0325

Brent@BrentBlackstock.com

April 26, 2019

Ruchir A. Kadakia
2217 Rio Mesa Drive
Austin, TX 78732-1938

Via certified mail

RE: Personal Guaranty made to R.P. Small Corp. guaranteeing a Promissory Note of Tethys Trading, LLC for Six Million Dollars

Dear Mr. Kadakia:

This letter is to inform you that we will be filing the attached Complaint in the Northern District of Oklahoma soon. In March 2014, Tethys Trading LLC executed a Promissory Note ("Note") to R.P. Small Corp. promising to pay Six Million Dollars plus interest. On March 24, 2014, you executed a Personal Guaranty Agreement securing the Promissory Note of Tethys Trading, LLC. On March 17, 2015, an extension to the Maturity Date of the original Note was granted extending the Maturity Date for an additional twelve (12) months.

As of the writing of this letter, Tethys has not fulfilled its obligations on the Note. You guaranteed that you would "immediately pay or perform the [Borrower's Obligations]." Please remit Six Million Dollars plus interest of $2,502,000.00, for a total of $8,502,000.00 due immediately. If payment in full is not remitted within five days of receipt of this letter, then we will initiate litigation to collect the monies due and owing.

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.

Sincerely,

R. Brent Blackstock

R. Brent Blackstock
Attorney at Law

Enclosures

cc: Richard Small

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **R.P. Small Corp.,**<br>**Plaintiff,**<br><br>**v.**<br><br>**Ruchir A. Kadakia,**<br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. ________________** |

## COMPLAINT

Comes now Plaintiff, R.P. Small Corp. ("RPS" or "Plaintiff") for its Complaint and claims against the Defendant, alleges and states as follows:

## PARTIES

1. R.P. Small Corp. ("RPS") is an Illinois corporation with its principal place of business located in Tulsa, Oklahoma.

2. The Defendant, Ruchir A. Kadakia ("Kadakia" or "Defendant"), is an individual currently domiciled in Travis County, Texas.

3. The acts, events, and transactions complained of herein occurred by virtue of the execution of promissory notes, deemed executed in Tulsa County, Oklahoma, and the damages suffered by RPS as a result of Defendant's breach of contract, and non-payment of the notes, occurred in Tulsa County, Oklahoma.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action and the parties, pursuant to 28 U.S.C. § 1332, as this is an action between a citizen of a state and a citizen of a foreign state where the matter in controversy exceeds the amount of $75,000, exclusive of interests and costs.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391, in that a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district.

6. The Promissory Note and Guarantee Agreement underlying this Complaint were negotiated and entered into in Oklahoma, and the Note contains jurisdiction-consent provisions for the State of Oklahoma.

## FACTUAL ALLEGATIONS

7. On or around March 14, 2014, Tethys Trading LLC and RPS entered into a Promissory Note ("Note"), dated March 27, 2014. *See* Exhibit B.

8. As agreed, Kadakia signed and executed a personal guaranty (the "Guaranty") to Plaintiff on or around that same date, March 14, 2014.

9. Pursuant to the Guaranty, Kadakia agreed to be joint and severally liable for breach of the Note. *See* Exhibit A, at ¶ 17.

10. On or around March 17, 2015, an extension to the Maturity Date was granted on the original Note for a period of twelve (12) months after March 27, 2015 to March 27, 2016. *See* Exhibit C.

11. According to the Personal Guaranty that was executed by Kadakia, he guaranteed the "full, prompt, and unconditional payment when due, of the Borrower's (Tethys) Obligations due and owing to the Lender (RP Small Corp)." *See* Exhibit A, at p. 1.

12. Kadakia, as a Guarantor, also agreed to "immediately pay or perform the [Borrower's Obligations]." The Guaranty specifically states: "[T]his Guaranty Agreement [is] an absolute, irrevocable and unconditional guaranty of full payment and performance and not a guaranty of collection." *See* Exhibit A.

## I. First Cause of Action – Breach of Guaranty

13. RPS realleges all of the foregoing allegations.

14. As of March 27, 2016, payments on the Promissory Note were not made as provided for in the Promissory Note.

15. Kadakia is in breach of the terms of the personal guaranty on the promissory note because he has not paid the amount due to RPS.

16. Kadakia currently owes RPS the sum total of six million dollars, plus interest, of $2,502,000 for a total of $8,502,000, calculated as provided for in the Promissory Note at 10% interest per annum. *See* Exhibit B, at ¶13 and Exhibit D.

## PRAYER

WHEREFORE, RPS respectfully requests this Court grant the relief set forth in this Complaint, specifically:

1. A judgment declaring and finding the Defendant Kadakia has breached its repayment obligation on the promissory note identified herein.
2. An award of damages in favor of RPS and against Defendant for Breach of Personal Guaranty of Promissory Note in the sum of $6,000,000 plus interest of $2,502,000, for a total of $8,502,000, plus prejudgment interest to be calculated under the laws of the State of Oklahoma.
3. Attorney fees and the costs of litigation pursuant to the terms of the promissory note serving as the underlying basis for RPS's claims.
4. Such further relief to which RPS is entitled.

Dated: April 26, 2019

Respectfully Submitted,

By: /s/ Brent Blackstock
R. Brent Blackstock, OBA No. 00839
Lacey L. Shirley, OBA 33269
Mid-Continent Tower, Suite 500
401 S. Boston Ave.
Tulsa, OK 74103
(918) 383-0777 (918) 699-0300 (fax)
***Counsel for Plaintiff***

Brent Blackstock
401 S. Boston Ave., Ste 500
Tulsa, OK 74103

7018 0680 0001 3875 1865

FIRST-CLASS

US POSTAGE
$ 006.80
02 1P
0002102612 APR 26 2019
MAILED FROM ZIP CODE 74103

Ruchir A. Kadakia
2217 Rio Mesa Drive
Austin, TX 78732

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ruchir A. Kadakia
2217 Rio Mesa Drive
Austin, TX 78732

9590 9402 3780 8032 0752 09

2. Article Number (*Transfer from service label*)

7018 0680 0001 3875 1865

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent ☐ Addressee

B. Received by (*Printed Name*) C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

**OFFICIAL USE**

| | |
|---|---|
| Certified Mail Fee $ | Postmark Here |
| Extra Services & Fees (*check box, add fee as appropriate*) ☐ Return Receipt (hardcopy) $ ☐ Return Receipt (electronic) $ ☐ Certified Mail Restricted Delivery $ ☐ Adult Signature Required $ ☐ Adult Signature Restricted Delivery $ | |
| Postage $ | |
| Total Postage and Fees $ | |

Sent To Ruchir Kadakia
Street and Apt. No., or PO Box No. 2217 Rio Mesa Drive
City, State, ZIP+4® Austin, TX 78732

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7018 0680 0001 3875 1865

Gmail

Ruchir Kadakia <ruchir.kadakia@gmail.com>

# Equity Exchange with Mr. Small

**Jack Meyer** <jack.meyer@tethyspartners.com> Mon, Jan 16, 2017 at 8:29 PM
To: Ruchir Kadakia <ruchir.kadakia@gmail.com>
Cc: Robert Finnegan <robert.finnegan@tethysgrp.com>

Good Morning Ruchir,

I was unaware you do not have the tax returns and financials up to 12/31/2015. You must have your K-1s from '15 and whatever financials you produced prior, right? As I said before, who could know more about that period of time than you? Certainly not me, sitting on the side of a mountain in Nevada.

I have not looked at our agreement from 12/31/15, but assume you have. I believe you if you say you can audit our tax returns, although I am not sure what that means. I have copied Rob on this, so that he can better address you requests for information as I have apparently failed to satisfy you. Please know we are closing our 2016 books, so I ask that you be patient.

I am not certain about the revised books and tax returns you mention, but I recall we had to clean up some problems left over from Rob Condon's involvement in our accounting. Whatever we send you will likely have those adjustments included.

I think Tethys Energy entered into an NDA with Coachman in 2014 or so and that deal went nowhere, no fees were exchanged under the NDA. Subsequently, I believe Solvenz was periodically in contract with Coachman on different proposed deals and those deals failed as well. I tried to help Coachman and Solvenz consummate a deal, but they did not. In any event, if you look at the attached letter from Solvenz above you'll see that they discontinued business with Tethys Energy before you left, the Company gave notice to you and all of the Members it was going inactive after this notification.

I understand you legally separated from Tethys on 12/31/15. I think it is Rob's and my job/duty to utilize the assets of Tethys to grow the businesses just as it was yours before you left.

I am not watching a game simultaneously so hopefully I did a better job of responding this time. If not, you have my renewed apologies.

Best,

J. E. (Jack) Meyer Jr.
Chairman
954 West Washington Blvd, Suite 250
Chicago, Illinois. 60607
918.740.8331
jack.meyer@tethyspartners.com
www.tethysgrp.com


EXHIBIT B
PAGE 1 OF 7

CONFIDENTIALITY NOTICE: This e-mail may contain confidential or proprietary information belonging to Tethys Group (Collectively "Tethys"), and is intended only for the use of the recipients names above. If you are not the intended recipient, please immediately notify the sender and either delete this e-mail or return to the sender immediately. You may not review, copy, or distribute this e-mail. Within the bounds of law, this part of Tethys retains all e-mails and IMs and may monitor them to ensure compliance with Tethys internal policies and for other legitimate business purposes. In addition, Tethys may record and monitor the telephone calls of all employees.

---

**From:** Ruchir Kadakia <ruchir.kadakia@gmail.com>
**Date:** Monday, January 16, 2017 at 9:15 AM
**To:** Jack Meyer <jack.meyer@tethyspartners.com>
**Subject:** Re: Equity Exchange with Mr. Small

Jack,

It was a great game indeed -- and you must have been fully focused on the game while penning the note below, because your comments/assertions below are flat out wrong on so many levels that I won't bother to line item them in a response.

Again, what I'm requesting for the second time -- are the financials and tax returns for the the years since inception through 2015 for all Tethys and related companies. In addition, I need color on whichever entity did business with Coachman Energy, as I am learning new details about fees that were paid into that entity despite your documented email stating that Tethys Energy didn't have business in the year preceding my departure. My understanding is that you and your new accountants have materially revised the books and filed amended tax returns. As you know, when I legally separated from the company in the 3rd quarter of 2015, the company had significant assets and wherewithal to mitigate creditor liabilities. I would like understand how you and Rob leveraged those resources between the time I left and when we executed the release in December. This undoubtedly has implications on resulting liabilities to Tethys investors/creditors, including Small. As a reminder, per our release and reassignment agreement dated December 31, 2015, I have the right to audit the tax returns (and supporting financials) for up to 5 years back. Please provide me these documents at your earliest as to not delay this process any further.

Best,
Ruchir

On Mon, Jan 9, 2017 at 11:42 PM, Jack Meyer <jack.meyer@tethyspartners.com> wrote:

> This was an interesting read! Thanks for the response. Sorry it took me a while to get back with you, it was a Monday, you covered a lot of ground and I am trying to watch the CFP National Championship game at the same time. I'll try to respond to each of the issues you raise, forgive me if I miss something.
>
> I am also sorry to hear your financial situation has not improved as it sounded like your prospects were on the rise when last we corresponded.
>
> I can neither control what Mr. Small will or will not do to you, nor how you would respond. So I will respectfully pass on an invitation, if that is what it was, to gaze into a crystal ball and opine.
>
> What Rob and I can reasonably hope to control today is how we manage our personal risk. I told you what we hope to accomplish in this regard so that you may be aware of options potentially available to you to do the same. I stand ready to help you in this way, if you wish. I appreciate your "pari passu" participation in the allocation of '15 tax losses to Mr. Small and it was in the same spirit of teamwork spearheading resolution that I sent you my note.
>
> I also appreciate your offer of assistance with the current business of Tethys and I recognize you as an artful networker. If you have something specific in mind you think may be a mutually beneficial fit, please let me know. Or if you think Tethys can be of assistance in something you/Postlane are doing, we can certainly look at that. On a deeper level, the business and culture at Tethys has changed tremendously since you left and I am not

sure that we would be a good match for you beyond origination as a success based independent contractor or perhaps Tethys as a contracted party for services on deals you/Postlane may have completed. However, I am open to suggestions.

You must have most all information imaginable on Tethys operationally and financially dating from the time while you were there. If you don't have it, I am not sure who would. From what I know, you were CEO and aware of all undertakings and/or orchestrated them and all associated accounting with your friend, Rob Condon. Although I will acknowledge that some of your machinations, trades and losses from your stint remain a bit of a mystery to us that carry on here.

I am not sure what more you could need from an accounting standpoint during your tenure to enable you to fulfill your offer of assistance, but if you tell me and I can make some sense of it, I'll try to get it to you. I seem to recall you requested something from that period of time, but never responded to a follow up question. Does that ring a bell?

As you must know, after your resignation as a Member and CEO and the associated sale of all of your interests in all Tethys Entities, all subsequent Tethys financial records became those of a detached private enterprise(s). So please know it is truly nothing personal, just a simple fact when I say it is highly unlikely that such information would be shared with you or anyone else in your position.

In your email you introduce, in retrospect, a new opinion that I had a significant form of "control" during your time at Tethys. However, in your contemporaneous written and verbal correspondence with me and others you repeatedly asserted, quite passionately, that I was the functional equivalent of a treasury staffer whose tasks were clerical and trivial. Not sure what to make of this revised antithetical notion. Not even sure how this disagreement with yourself may be relevant. I am also unsure how you could know what I do or do not control since your departure if, as you say, you have no such "visibility" since you departed. Heck, it would take some time for me to figure this out myself with all my "visibility".

In any event, please let me know what information from your tenure you believe I can provide that could help you help us all out of this jam and as always good luck with what you are doing with Postlane.

I hope I touched on all of the subjects you raised…I think I did…if I missed something, just let me know.

Best,

J. E. (Jack) Meyer Jr.
Chairman
954 West Washington Blvd, Suite 250
Chicago, Illinois. 60607
918.740.8331
jack.meyer@tethyspartners.com
www.tethysgrp.com

CONFIDENTIALITY NOTICE: This e-mail may contain confidential or proprietary information belonging to Tethys Group (Collectively "Tethys"), and is intended only for the use of the recipients names above. If you are not the intended recipient, please immediately notify the sender and either delete this e-mail or return to the sender immediately. You may not review, copy, or distribute this e-mail. Within the bounds of law, this part of Tethys retains all e-mails and IMs and may monitor them to ensure compliance with Tethys internal policies and for other legitimate business purposes. In addition, Tethys may record and monitor the telephone calls of all employees.

---

**From:** Ruchir Kadakia <ruchir.kadakia@gmail.com>
**Date:** Sunday, January 8, 2017 at 12:12 PM


EXHIBIT B
PAGE 3 OF 7

**To:** Jack Meyer <jack.meyer@tethyspartners.com>
**Subject:** Re: Equity Exchange with Mr. Small

Jack,

Happy New Year!

Thanks for your note, as we have previously discussed multiple times over the past few months -- I'm not in any position to assist with Mr. Small's debt service requests or participate in any equity exchange for the simple fact that I don't have anything of value to trade. That said, I'm glad to hear you and Rob are successfully leveraging the Tethys resources to help make good on the company's liabilities to creditors.

As you know, while I've expressed my desire that Mr. Small is treated fairly as an early Tethys investor (as evidenced by my forgoing 100% of my interests and related tax benefits in an effort to provide the company with the resources to execute the turnaround) - I've not been associated with the company or have had any visibility into Tethys operations or financials for the past year and a half. So while you have had the benefit of parlaying the Tethys assets into other profitable ventures for which you are now able to trade 'profitable partnership interests' — I've, unfortunately, not had this same luxury.

If Mr. Small does in fact seek to obtain any debt relief from from me personally, rest assured that I'll be looking to you and Rob for subrogation since you controlled the significant company assets before and after my legal separation from Tethys. Let's try and avoid this ugly situation, as there will not be any winners. On that note, how are the companies actually doing since I left? I'd like to help, but need to understand the current situation better. As a first step, can you share with me the financials for the past couple of years so we are all operating from the same fact base?

Best,
Ruchir

On Fri, Jan 6, 2017 at 11:42 AM Jack Meyer <jack.meyer@tethyspartners.com> wrote:

Hello Ruchir,


EXHIBIT B
PAGE 4 OF 7

Hope you are well and Happy New Year!

You have not responded to the last couple of emails I sent to you since you directed me to use only your gmail account, but you confirmed receipt of the earlier Postlane ones, so I will try that address again.

As I told you, Mr. Small has demanded a principal payment be made of $500k. In addition we have the ongoing interest expense we are paying. As you know Tethys Trading does not have the means do this, so Rob and I are having find other sources of money

or value for these obligations.

Rob and I are in the process of trading profitable partnership interests to Mr. Small in exchange for extending forbearance against us personally. I thought you might be interested to know that this may be a path you can follow to protect yourself.

Do you have any equitable or other interests in profitable ventures? I would be happy to work with you and Mr. Small in good faith as an intermediary in this same vein if you wish. I want to be sure you have every opportunity to avoid an adverse outcome

in this matter.


EXHIBIT B
PAGE 5 OF 7

Please let me know.

Thanks,

J. E. (Jack) Meyer Jr.

Chairman

954 West Washington Blvd, Suite 250

Chicago, Illinois. 60607

918.740.8331

jack.meyer@tethyspartners.com

www.tethysgrp.com

CONFIDENTIALITY NOTICE: This e-mail may contain confidential or proprietary information

belonging to Tethys Group (Collectively "Tethys"), and is intended only for the use of the recipients names above. If you are not the intended recipient, please immediately notify the sender and either delete this e-mail or return to the sender immediately.

You may not review, copy, or distribute this e-mail. Within the bounds of law, this part of Tethys retains all e-mails and IMs and may monitor them to ensure compliance with Tethys internal policies and for other legitimate business purposes. In addition,

Tethys may record and monitor the telephone calls of all employees.

**Tethys Notice 12292014[1].pdf**
138K