**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTICT OF OKLAHOMA**

(1) R.P. SMALL CORP.

Plaintiff,

v.

(1) RUCHIR A. KADAKIA,

Defendant,

And

(1) RUCHIR A. KADAKIA, individually and derivatively on behalf of Tethys Trading, LLC,

Counterclaimant and
Third-Party Plaintiff,

v.

(2) R.P. SMALL CORP., an Illinois Corporation,

Counterclaim Defendant,

And

(1) JOHN E. MEYER, JR.; et al.,

Third-Party Defendants.

Case No. 19-cv-271-CVE-JFJ

**THIRD-PARTY DEFENDANTS' COMBINED MOTION TO DISMISS VERIFIED AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT, AND BRIEF IN SUPPORT**

Pursuant to Fed. R. Civ. P. 12(b)(6) and alternatively 14(a), Third-Party Defendants John E. Meyer, Jr. ("Meyer"), Robert Finnegan ("Finnegan"), Tethys Trading, LLC ("Tethys Trading"), *et al.*, move to dismiss Defendant Ruchir A. Kadakia's Verified Amended Counterclaim and Third-Party Complaint [Dkt. #66] as follows:

## Summary of Argument

**First Count** (Declaratory Relief).[1] There is no case or controversy as a matter of law. Under the terms of the Kadakia Guaranty, Kadakia's obligations are unconditional and absolute, and are not affected as a matter of law by the purported existence of rights or defenses that Kadakia might craft from the December 19 Workout Agreement. Further, Plaintiff reserved all rights it had in the Kadakia Guaranty when Plaintiff entered into the 2019 Workout Agreement with Meyer, Finnegan, and Tethys Trading, so the Kadakia Guaranty obligations remain unchanged.

**Second Count** (Contractual Indemnification). Kadakia has no contractual indemnification rights as a matter of law. First, Kadakia's obligations to Plaintiff under the Kadakia Guaranty are absolute, and Kadakia waived any right "at any time" to seek indemnification from a co-guarantor under the Kadakia Guaranty. Second, the Transfer Agreement cannot be read to give Kadakia indemnification rights because Plaintiff is not a "third party" to the Transfer Agreement, a material term to the indemnification clause. To be an effective transfer of membership interests, Plaintiff was required to sign an Acknowledgment and Consent to the Transfer Agreement, which Plaintiff executed at the time that all other parties executed it, making Plaintiff a party to the Transfer Agreement. Third, and in the alternative, even if Kadakia had contractual indemnification rights that

[1] Kadakia filed his First Count without leave of Court. The Court can either grant Kadakia's motion for leave to file, and then dismiss the Count under Fed. R. Civ. P. 12(b)(6), or the Court can deny the motion for leave on the basis that amending would be futile. *See E. SPIRE Commc'ns, Inc. v. N.M. Pub. Reg. Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004) ("A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason.").

were not waived in the Kadakia Guaranty, these rights still would not transfer Kadakia's primary liability under the Complaint to the Third-Party Defendants and are therefore improper under Fed. R. Civ. P. 14(a).[2]

**Third Count** (Tortious Interference). While the Third Count is solely a counterclaim against Plaintiff, it nonetheless is barred by the terms of the Kadakia Guaranty and because Kadakia does not have contractual indemnification rights under the Transfer Agreement.

**Fourth Count** (Civil Conspiracy). Kadakia's civil conspiracy claim fails as a matter of law because there is no wrongful object to be accomplished through one or more unlawful overt acts – required elements of such a claim. First, the Kadakia Guaranty is unconditional and absolute, and is unaffected by the existence of any claim, set off, or any other right that Kadakia might claim "at any time" against Plaintiff, the borrower, or any other guarantor. Thus he cannot make a claim against Plaintiff or any of the Third Party Defendants based upon any act of (1) entering into a ghost "swap agreement," (2) an unsubstantiated "transfer" of "benefits," or (3) the 2019 Workout Agreement, because Kadakia waived such rights. Second, this Court has already decided [Dkt. #65] it will not adjudicate fraudulent transfer claims in this action. The civil conspiracy claim contrived by Kadakia is nothing more than a backdoor attempt around this Court's prior ruling.

**Fifth Count** (Common Law Indemnification and Contribution). Kadakia's common law claims for indemnification and contribution were waived by the Kadakia

---

2 *See Krainski v. Mill*, 356 Fed. Appx. 951, 952 (9th Cir. 2009).

Guaranty. Further, under Oklahoma law no such claim lies as a matter of law unless Kadakia and the Third-Party Defendants were joint tortfeasors, and then only if Kadakia paid more than his fair share (Kadakia has paid zero). And lastly, in the alternative, even if Kadakia had common law indemnification or contribution rights that were not waived in the Kadakia Guaranty, these rights still would not transfer Kadakia's primary liability under the Complaint to the Third-Party Defendants and are therefore improper under Fed. R. Civ. P. 14(a).

## Argument and Authorities

### A. Rule 12(b)(6) Standard of Review.

For purposes of reviewing a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court should accept all factual allegations of the Amended Third-Party Complaint as true and view them in the light most favorable to Kadakia. *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). To survive the motion to dismiss, the Amended Third-Party Complaint must allege "enough facts to state a claim to relief that is plausible on its face" and must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

### B. The Third-Party Declaratory Relief Claim Fails as a Matter of Law Because There Is No Justiciable Case or Controversy.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). In *MedImmune, Inc. v. Genentech, Inc.*, the United

States Supreme Court stated that the test for whether an "actual controversy" exists is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. 118, 127 (2007) (internal quotation marks omitted).

Here, there is no substantial controversy warranting declaratory relief when one examines the scope of the Kadakia Guaranty, and his absolute waiver of rights therein:

> 3. The obligations of the Guarantor hereunder shall be unconditional and absolute and, without limiting the generality of the foregoing, shall not be released, discharged, be a defense to or otherwise affected by:
>
> (a) any … settlement … [or] compromise … with respect to any of the Borrower's Obligations or … with respect to any obligation of any other guarantor … or any failure or omission to enforce any right … with respect to any of the Borrower's Obligations …;
>
> ***
>
> (f) the existence of any claim, set-off or other rights which the Guarantor may have at any time against the Borrower, any other guarantor of any of the Borrower's Obligations, the Lender or any other person, whether in connection herewith or in connection with any unrelated transactions;
>
> ***
>
> (l) any other act or omission to act or delay of any kind by the Borrower, any other guarantor of any of the Borrower's Obligations, the Lender or any other person or any other circumstance whatsoever which might, but for the provisions of this Section constitute a legal or equitable discharge of the Guarantor's obligations hereunder.

(Kadakia Guaranty) [Dkt. #66-2]. Under the terms of the Kadakia Guaranty, Kadakia has none of the counterclaims or third-party claims he now asserts. The terms of the guaranty are that absolute.

Moreover, couching his First Count in declaratory relief around the December 19 Workout Agreement makes no difference. Plaintiff reserved its rights under the Kadakia Guaranty in Paragraph C of the Recitals section of the December 19 Workout Agreement. [filed under seal]. Even if Plaintiff had not reserved such rights, the provisions of paragraph 3(a) of the Kadakia Guaranty allowing Plaintiff to reach settlement with other obligors would still prevail. This Court has recognized the scope of the Kadakia Guaranty, which expressly "guarant[eed] the full, prompt and unconditional payment when due". [Dkt. #65, n.2]. There is no case or controversy warranting any further involvement by this Court.

### C. The Third-Party Contractual Indemnification Claim Does Not Exist as a Matter of Law.

The Second Count of the Amended Third-Party Complaint alleges contractual indemnification rights against the Third-Party Defendants based upon the terms of Paragraph 3.B. of the Transfer Agreement [Dkt. #66-4]. Kadakia fails to state a claim upon which relief may be granted for contractual indemnification because of the terms of the waiver contained in the Kadakia Guaranty, and because Plaintiff is not a "third party" to the Transfer Agreement, as that term is used in Paragraph 3.B thereof.

The Kadakia Guaranty, paragraph 3(f) *supra*, Subsection B, p. 5, is a broad waiver of any claims Kadakia might assert, including even future claims of indemnity against his co-guarantors and the borrower. Kadakia is liable for the full $6,000,000, as are Meyer and Finnegan. Paragraph 3(f) was designed by the lender to keep the obligors from diluting the pool of assets from which the lender can obtain repayment. In other words, Plaintiff

agreed to lend money to Tethys Trading, but only if Plaintiff had the right to collect payment from four different persons (Tethys Trading, Kadakia, Meyer, and Finnegan). The guaranty agreements forestall any attempt by Kadakia to reduce that pool from four to three.

Moreover, Kadakia has no indemnification rights in Paragraph 3.B. of the Transfer Agreement. In considering this Second Count, the Court must consider the *entire* Transfer Agreement, which Kadakia failed to provide the Court. Appended hereto as Exhibit 1 is the complete Transfer Agreement, including the acknowledgments and consents obtained from the Tethys Trading members.[3] It includes an Acknowledgment of Assignment of Membership Units in Tethys Trading, LLC in which Plaintiff, R.P. Small Corp., acknowledges the transfer under the Transfer Agreement and consents to it.

The indemnification clause of Paragraph 3.B. of the Transfer Agreement provides in pertinent part:

> To the fullest extent permitted by applicable law, Meyer, Finnegan, and the Tethys Companies … agree to indemnify Kadakia … from and against any and all claims, demands, damages, fees, actions, and causes of actions of whatsoever nature … which have accrued or may hereafter accrue to any third party … except any such claims … arising out of any action taken by Kadakia that is proved by a finder of fact to have been unauthorized or taken outside of Kadakia's scope of authority with respect to any Tethys Company or Tethys Capital, LLC.

[3] Exhibit 1 also contains the transmittal email exchanged between counsel for Kadakia and the Third-Party Defendants, so the Court can see that it was the final version upon which the parties relied in releasing payment funds.

The term "third party" is not defined in the Transfer Agreement, but in legal parlance it generally means a person who does not have a connection with the contract. Black's Law Dictionary (11th ed. 2019)( **third party** n. (1818) Someone who is not a party to a[n] … agreement, or other transaction …; a person not connected to a contract but may be affected by its outcome. Also termed outside party; third person.). The transfer of membership interests from Kadakia to Meyer and Finnegan could not be effective under the operating agreement without consent from R.P. Small Corp., a member of Tethys Trading. Plaintiff had a direct connection to the Transfer Agreement and indeed it executed an acknowledgment of the Transfer Agreement and consented to it. Plaintiff is not the third party against whom Kadakia was indemnified.[4]

From reading the four corners of the indemnity clause, one can ascertain what was intended to be indemnified: actions taken by the former Chief Executive Officer to further Tethys Trading business activities, so long as the Chief Executive Officer was acting within the scope of his authority as an officer. The clause was not designed to forgive Kadakia's personal debts. It was designed to indemnify Kadakia against lawsuits that might be

[4] Kadakia claims that he was paid $50,000 for his units in practically insolvent companies, and as part of that transaction also received an indemnification right worth $6,000,000. A common sense reading of the Transfer Agreement does not comport with this preposterous tale. Furthermore, in paragraph 47 of his original Third-Party Complaint [Dkt. #13], Kadakia admits that "[i]n the negotiations preceding the closing of Kadakia's sale of his Tethys ownership interests to Meyer and Finnegan, Kadakia through his counsel at the time, requested a release or discharge with respect to any obligations of Kadakia under Kadakia's Personal Guaranty to Small Corp." He also admits "[t]his request was rejected [by Meyer and Finnegan]." Kadakia's legal machinations, while shifty, have one prevalent chord: contrive reasons to avoid the guaranty through frivolous litigation.

brought by trading partners with whom Tethys Trading had contracted, but whom Tethys Trading could not repay due to mounting losses.[5]

In the alternative, even if Kadakia had contractual indemnification rights against the Third-Party Defendants that were not released under paragraph 3(f) of the Kadakia Guaranty, these rights would not transfer Kadakia's liability to Plaintiff from Kadakia to the Third-Party Defendants. Kadakia's guaranty obligations are absolute, and, at the very least, he waived any right to seek indemnification or contribution until repayment and performance of all of the Borrower's Obligations. [Dkt. #66-2, ¶7]. The Second Count of the Amended Third-Party Complaint does not, therefore, comport with Fed. R. Civ. P. 14(a) as this Court required in its Order of April 4, 2020. [Doc. No. 65, at fn 2]. *See Krainski*, 356 Fed. Appx. at 952. For all of the foregoing reasons, the Second Count should be dismissed.

**D. The Third Count Counterclaim for Tortious Interference Does Not State a Claim.**

The Third Count for tortious interference with contractual indemnification rights and expectancies of Kadakia under the Transfer Agreement is solely a counterclaim against Plaintiff, but it does not state a claim for relief for the same reasons as articulated in subsections B and C of this brief.

---

[5] While the Court cannot consider facts outside the pleadings, it may look back upon Kadakia's original Third-Party Complaint [Dkt. #13] at ¶¶ 29-30 to get an idea of the "business downturn" that Kadakia himself acknowledges, and that Kadakia himself caused as the company's Chief Executive Officer.

**E. The Fourth Count for Civil Conspiracy Fails Scrutiny for Lack of an Unlawful Overt Act in Furtherance of a Scheme.**

"Under Oklahoma law, to state a claim for civil conspiracy, a plaintiff must plead the following elements: 1) a combination of two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful overt acts; and 5) damages as a proximate result thereof." *Zagorski v. McAdam*, No. CIV–13–1209–D, 2014 WL 2982669, *6 (W.D. Okla. July 1, 2014). "To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means." *Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997). There can be no liability for civil conspiracy where the act complained of and the means employed are lawful. *Id*.

Here, Kadakia's civil conspiracy claim against Plaintiff and Third-Party Defendants fails to state a claim because the acts complained of and the means employed are all lawful. First, Kadakia complains of the execution of the 2019 Workout Agreement. But this is a lawful settlement agreement, contemplated by the Kadakia Guaranty. It accomplishes a settlement between Plaintiff and the Third-Party Defendants. It adds additional repayment sources. It provides for a means by which the Third-Party Defendants can repay Plaintiff the full amount of the debt owed to Plaintiff, and does not release Meyer or Finnegan from their guaranty obligations until the full $6,000,000 is repaid. It does nothing by its terms to try to shift more liability to Kadakia than he already had under the terms of the Kadakia Guaranty. A fair reading of the December 2019 Workout Agreement reveals nothing nefarious.

Second, Kadakia complains that Plaintiff and the Third-Party Defendants participated in one or more unlawful and wrongful transfers of assets of Tethys Trading. Kadakia does not articulate the "unlawful and wrongful transfers of assets" (which alone is a basis for requiring a more definite statement under Fed. R. Civ. P. 12(e)), but this is of no moment.[6] As a matter of law there is no civil conspiracy for a transfer of assets allowed under the Kadakia Guaranty. Put another way, the Kadakia Guaranty makes Kadakia's liability absolute, even if assets of other obligors are transferred:

> 3. The obligations of the Guarantor hereunder shall be unconditional and absolute and, without limiting the generality of the foregoing, shall not be released, discharged, be a defense to or otherwise affected by:
>
> ***
>
> (e) any change in the structure or ownership of the Borrower or any other guarantor … or any of their respective assets…

The acts complained of and the means employed are all lawful and indeed, even if true, are sanctioned under the Kadakia Guaranty. Rule 12(b)(6) requires dismissal of Count Four.

### F. The Fifth Count for Common Law or Equitable Indemnification and Contribution Fails to State a Claim.

"The general rule of indemnity is that one without fault, who is forced to pay on behalf of another, is entitled to indemnification." *Nat'l Union Fire Ins. Co. v. A.A.R. Western Skyways, Inc.*, 784 P.2d 52, 54 (Okla. 1989). "Noncontractual or equitable indemnity is similar to common-law contribution; one who is only constructively or

[6] Kadakia is likely pursuing his fraudulent transfer claims here as the underlying unlawful act, although he does not articulate it well. If so, the Court has already ruled it will not adjudicate such claims, and should dismiss this count on this basis as well. [*See* Dkt. # 65, at 6].

vicariously obligated to pay damages because of another's tortious conduct may recover the sum paid from the tortfeasor." *Id*. at 54. Noncontractual indemnity "rests upon fault of another which has been imputed or constructively fastened upon him who seeks indemnity." *Central Nat'l Bank of Poteau v. McDaniel*, 734 P.2d 1314, 1316 (Okla. Civ. App. 1986). In other words, a common law claim for indemnity exists only where "one who is only constructively liable to the injured party and is in no manner responsible for the harm is compelled to pay damages for the tortious act of another." *Caterpillar Inc. v. Trinity Indus., Inc.*, 134 P.3d 881, 886 (Okla. Civ. App. 2006).

Here, Kadakia's claim for common law indemnification fails as a matter of law because the Kadakia Guaranty provides an absolute bar to such a claim. *See*, *supra*, Subsection B, p. 5, reciting ¶ 3 of the Kadakia Guaranty. Moreover, the Kadakia Guaranty provides that "all such parties shall be jointly and severally obligated hereunder." [Doc. No. 66-2, at 4-5]. Just as the Guaranty forestalls Kadakia's claim for contractual indemnification, so also is Kadakia's claim for common law indemnification barred by the plain terms of the Guaranty, including its provision for joint and several liability, which makes a common law indemnity claim impossible. *See Guideone Am. Ins. Co. v. Shore Ins. Agency, Inc.*, 259 P.3d 864, 868 (Okla. Civ. App. 2011) (holding that there is "[n]o right of indemnity exists between joint tortfeasors."). Kadakia cannot accomplish under common law what he already cannot do under contract.

Finally, with respect to Kadakia's claim for common law contribution, this Court has already held that a claim for contribution is inappropriate because "plaintiff has not alleged a tort claim against Kadakia and contribution applies only to joint tortfeasors."

[Dkt. #65, at 3, n. 1] (citing OKLA. STAT. tit. 12, § 832; *Barringer v. Baptist Healthcare of Okla.*, 22 P.3d 695, 698 (Okla. 2001)). In any case, a guarantor cannot hold a co-guarantor liable for contribution when that guarantor has not paid more than his legal obligation. *See CSBO, LLC v. Eckman*, No. CIV–14–419–M, 2015 WL 867620, *2 (W.D. Okla. Feb. 27, 2015) ("[T]he law in Oklahoma is well settled; a contribution claim cannot be maintained unless the guarantor has paid more than his fair share of the obligation."). Kadakia's claim for common law or equitable contribution should thus be dismissed.

## Conclusion

For the foregoing reasons, Third-Party Defendants pray that the Court grant their motion to dismiss Defendant Ruchir A. Kadakia's Verified Amended Counterclaim and Third-Party Complaint [Dkt. #66] pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, Fed. R. Civ. P. 14(a). Kadakia is obligated under his guaranty, and pursuing frivolous litigation only serves to deplete assets that should be used to make Plaintiff whole.

Respectfully Submitted,

**CONNER & WINTERS, LLP**

s/ R. Richard Love III
R. Richard Love, III, OBA #14770
C. Austin Birnie, OBA #31942
4000 One Williams Center
Tulsa, Oklahoma 74172-0148
(918) 586-5711
rlove@cwlaw.com
abirnie@cwlaw.com

***Counsel for Third Party Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23nd day of April, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

R. Brent Blackstock, brent@brentblackstock.com
Lacey Shirley, lacey@brentblackstock.com
Neil Kelly, neilkelly@huntonak.com
Evan G. E. Vincent, evan.vincent@crowedunlevy.com

s/ R. Richard Love III
R. Richard Love, III