**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **1. R.P. SMALL CORP.,**<br>**Plaintiff,**<br>**v.**<br><br>**1. RUCHIR A. KADAKIA,**<br>**Defendant.**<br><br>**and**<br><br>**1. RUCHIR A. KADAKIA, individually and Derivatively on behalf of Tethys Trading,**<br><br>**Counterclaimant and Third-Party Plaintiff,**<br><br>**v.**<br><br>**2. R.P. Small Corp., an Illinois corporation**<br><br>**Counterclaim Defendant,**<br><br>**and**<br><br>**1. JOHN E. MEYER, JR.;**<br>**2. ROBERT FINNEGAN;**<br>**and**<br>**3. TETHYS SUPPLY AND MARKETING, LLC;**<br>**4. TETHYS CAPITAL, LLC;**<br>**5. TETHYS TRADING, LLC;**<br>**6. TETHYS ENERGY, LLC;**<br>**7. TETHYS BIOFUELS, LLC;**<br>**8. TETHYS LATIN AMERICA, LLC;**<br>**9. TETHYS PARTNERS, LLC;**<br>**10. TETHYS DERIVATIVES, LLC; and**<br>**11. TETHYS SHIPPING, LLC,**<br>**each an Oklahoma limited liability company;**<br>**and**<br>**12. JOHN DOES and JANE DOES 1 to 10;**<br><br>**Third-Party Defendants.** | **CASE NO. 19-CV-271-CVE-JFJ**<br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

Pursuant to FED. R. CIV. P. 12(b)(6) Plaintiff/Counter Defendant R.P. Small Corp. ("Plaintiff" or "RPS") files this Motion to Dismiss **all of the counterclaims of Ruchir A. Kadakia** ("Kadakia") found in the Amended Counterclaim and Third-Party Complaint (the "Amended Counterclaim," Dkt. 66) including those counterclaims in the Third Count (paragraphs 40-45) alleging Tortious Interference by RPS and the Fourth Count (paragraphs 46-49) alleging conspiracy by RPS.

Kadakia cannot overcome the undeniable fact that he waived all of his counterclaims as a result of the waivers in the Guaranty attached to the Complaint (Dkt. 001). Therefore, the Amended Counterclaim fails to state a cognizable claim. For its Motion, RPS states as follows:

## I. SUMMARY OF ARGUMENT

This is a straightforward action to enforce an absolute and unconditional guaranty (the "Guaranty") executed by Kadakia in favor of RPS. The Guaranty served as security for a Promissory Note (the "Note") extending $6 million in credit to Tethys Trading of which Kadakia was CEO at the time. Tethys Trading has defaulted on the Note and Kadakia has failed to make any payments under the Guaranty following Tethys Trading's default.

Instead of honoring his promise to make good on any failure by Tethys to pay as agreed, Kadakia has instead made every effort to impede the swift enforcement of the instrument he signed. In an attempt to create a basis for far-reaching and expensive discovery in a case that could otherwise proceed straight to summary judgment, Kadakia has alleged counterclaims for tortious interference and civil conspiracy and has also asserted affirmative defenses of the same. Kadakia alleges that RPS interfered with "Kadakia's contractual rights of indemnification from Tethys Trading under the Transfer Agreement and/or (b) tortious interference with Kadakia's economic

expectancies." In this same section Kadakia states that RPS knew and "implicitly or explicitly" consented to transfers that RPS received "directly or indirectly," and that RPS benefitted in some manner. *See* Amended Counterclaim, ¶¶ 40-45. As for the alleged "swap" agreements between Meyer, Finnegan and RPS, Kadakia cannot explain how the alleged agreements would have created any new liability owed by RPS to Kadakia that would not have been waived by the Guaranty itself. If the agreements gave RPS any financial benefit, they might reduce the balance owed on the Note, but they would not create a counterclaim for Kadakia. Kadakia does not explain how this interfered with his "economic expectancies" after he was paid $50,000 to exit the company. Nor does he explain how RPS must have benefitted in a transfer that depleted Tethys Trading's viability from an account controlled solely by Meyer.

Kadakia's allegations of a civil conspiracy also fail to state a plausible claim. "A civil conspiracy consists of a combination of two or more persons to do an unlawful act." *Brock v. Thompson*, 1997 OK 127, ¶39, 948 P.2d 279, 294. Further, "To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means." *Id.* Here, Kadakia does not and cannot truthfully allege RPS committed any unlawful acts. Even if the transfers by Meyer were for some alleged nefarious purpose to undermine Kadakia, the transfers themselves were to operate the Tethys companies and were lawful. Meyer's and Finnegan's poor business decisions or RPS knowing about them are not "unlawful acts." Kadakia has no basis of fact to state a claim for conspiracy. Kadakia's allegations set forth in the Amended Counterclaim (Dkt. 66) should be dismissed for failure to state a claim in accordance with FED. R. CIV. P. 12(b)(6).

First, Kadakia's factual allegations in light of the waivers set forth in the Guaranty do not provide Kadakia grounds for entitlement to relief by "rais[ing] a right to relief above the

speculative level," (*Atlantic Corp. v. Twombly*, 550 U.S. 544, 548 (2007) and do not "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Second, Kadakia asserts its claims without any references to the Guaranty, and asserts that the December 19, 2020 Agreement ("Agreement," Dkt. 70) materially affects Kadakia's liabilities. The two contracts, the Guaranty and the Agreement, are two distinct documents each with separate obligations. Neither has any effect on the other as they relate to RPS. Further, according to both statutory and case law, each are dealt with under separate legal schemes. Based on the clear language in the Guaranty waiving Kadakia's defenses and the language in Recital C to the Agreement retaining RPS's rights under the Note and Guaranty, Kadakia has no viable claims against RPS. Even if Kadakia has plausible claims, he cannot allege them because of the waivers in the Guaranty. The Court should dismiss Kadakia's claims as a matter of law.

## II. STANDARD OF REVIEW

FED. R. CIV. P. 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The Tenth Circuit noted in *VanZandt v. Oklahoma Department of Human Services*, 276 Fed. Appx. 843, 846, 2008 U.S. App. LEXIS 9667 in analyzing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) that "[T]he Plaintiff has the burden to frame a 'complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief'" and that for the "complaint to satisfy this new standard, a plaintiff must do more than generally allege a wide swath of conduct." *VanZandt* at 846. In 2009, the Supreme Court determined in *Ashcroft v. Iqbal* that the *Twombly* standard applies in all civil actions. 556 U.S. 662, 684 (2009). First, the court must determine whether the claimant has stated a counterclaim upon which relief may be granted construing the allegations in the "light most favorable to" the claimant. *Id.* at 555; FED. R. CIV. P. 12(b)(6). The court then considers whether "the well-pleaded,

nonconclusory factual allegation[s]…g[i]ve rise to a plausible suggestion" that the plaintiff is entitled to relief. *Iqbal* at 680. The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly* at 555. However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991). Kadakia only made conclusory allegations in his Amended Counterclaim completely ignoring the waivers in the Guaranty, as well as in the December 19, 2019 Agreement.

In the event that a plaintiff has attached a contract or other core document to its complaint, the District Court may consider that attachment as part of the pleading when deciding whether to grant a defendant's motion to dismiss. *See Meyers v. Textron, Inc.*, 540 Fed. Appx. 408, 409 (5th Cir. 2013). ("Although a district court primarily looks to the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, there are other sources it may consider. For example, a district court may take into account documents incorporated into the complaint by reference or integral to the claim…and exhibits attached to the complaint whose authenticity is unquestioned." (internal citations omitted).). Because Kadakia admitted that he executed the Guaranty, that Tethys entered into the Promissory Note, and that Tethys, Meyer and Finnegan entered into an Agreement, the Court may also consider those documents here.

## III. Kadakia Fails to State a Claim Against RPS

### A. The Guaranty Waiver

Kadakia completely ignores all of the terms of the Guaranty in his Amended Counterclaim. Kadakia cites to a limited version of the Guaranty as it relates to a default but fails to acknowledge

that the terms of the Guaranty waive Kadakia's defenses as well as notice of default. Kadakia tries to twist the Agreement to supersede the terms of the Guaranty because the Agreement states that Tethys Trading, as it relates to its own obligations and that of Meyer and Finnegan, are not in default. However, neither the Agreement, Guaranty nor Promissory Note can be read in a vacuum. They must all be considered together because each of them contains provisions giving RPS the right to make agreements without affecting his rights to collect against the other guarantors. Further, the Guaranty itself precludes Kadakia from asserting any claims or defenses related to his obligations under the Guaranty. Here are the pertinent provisions in chronological order:

The Promissory Note, p.2:

> From time to time the Maturity Date of this Note may be extended or this Note may be renewed, in whole or in part, or a new note of different form may be substituted for this Note and/or the rate of interest may be changed, or changes may be made in consideration of loan extensions, and Payee, from time to time, may waive or surrender, either in whole or in part, any rights, guarantees, security interests or liens given for the benefit of Payee in connection with payment of this Note or any security therefor; but no such occurrences shall in any manner affect, limit, modify or otherwise impair any rights, guaranties or security of Payee not specifically waived, released or surrendered in writing, nor shall any maker, guarantor, endorser or any person who is or might be liable hereon, either primarily or contingently, be released from liability by reason of the occurrence of any such event. Payee, from time to time, shall have the unlimited right to release any person who might be liable hereon, and such release shall not affect or discharge the liability of any other person who is or might be liable hereon.

The Personal Guaranty, ¶¶ 2 & 3(a) & (f):

> 2. The Guarantor waives all defenses based upon surety or impairment of collateral, including without limitation, any actions or defenses identified generally or specifically under the Uniform Commercial Code or other body of law governing sureties or guarantors, waives notice of acceptance of this Guaranty Agreement and notice of any of the Borrower's Obligations to which it may apply, and waives notice of default, non-payment, partial payment, presentment, demand,

---

> protest, notice of protest or dishonor and all other notices to which the Guarantor might otherwise be entitled, or which might be required by law and required to be given by the Lender.

---

3. The obligations of the Guarantor hereunder shall be unconditional and absolute and, without limiting the generality of the foregoing, shall not be released, discharged, be a defense to or otherwise affected by:
   (a) any extension, renewal, settlement, indulgence, compromise, waiver or release of or with respect to any of the Borrower's Obligations or any part thereof or any agreement relating thereto, or with respect to any obligation of any other guarantor of the Borrower's Obligations, whether (in any such case) by operation of law or otherwise, or any failure or omission to enforce any right, power or remedy with respect to any of the Borrower's Obligations or any part thereof or any agreement relating thereto, or with respect to any obligation of any other guarantor of any of the Borrower's Obligations;

---

(f) the existence of any claim, set-off or other rights which the Guarantor may have at any time against the Borrower, any other guarantor of any of the Borrower's Obligations, the Lender or any other person, whether in connection herewith or in connection with any unrelated transactions;

---

The first sentence of Paragraph 3 of the Guaranty states that the Obligations of the Guarantor "shall not be released, discharged, be a defense to or otherwise affected" even if RPS opts, *inter alia,* to make amendments to the Note, collect from Tethys or the other guarantors, settle, compromise, and even to increase the amount of the obligations they guaranteed.

<u>The December 19, 2019 Agreement, Recital C & ¶ 9:</u>

* * * Please see Dkt. 70 filed under seal at Recital C, but also ¶ 9. * * *

Taken as a whole, RPS has consistently retained his right to make any changes, agreements, or settlements with the principal, Tethys Trading, or the other guarantors without releasing or discharging Kadakia from his obligations under the Guaranty. The Guaranty waives Kadakia's ability to assert the alleged counterclaim.

**B. The Effect of the Guaranty Waiver on the Claim for Tortious Interference**

First, under the obligations Kadakia agreed to in the Guaranty, **"Kadakia expressly waived any defense based on 'the existence of any claim, set-off, or other rights which the Guarantor may have at any time against the Borrower, any other guarantor of any of the Borrower's Obligations, the Lender or any other person, whether in connection herewith or**

**in connection with any unrelated transactions.'"** Order. Dkt. 65 at FN 2 quoting Guaranty, ¶ 3(f). Emphasis supplied. As this Court found, Kadakia waived his right to assert a claim.

Furthermore, in order to be able to state a claim upon which relief could be granted, Kadakia must make allegations supported by consistent facts. First, under the waivers as listed in Paragraph 3 of the Guaranty, Kadakia is prohibited from asserting any defense, even indemnification, to his obligations. Second, Kadakia's allegations do not give rise to a right to relief. *Twombly* at 548. In Oklahoma a claim for tortious interference is recognized only if the claimant can prove "(1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage." *Hawk Enters. v. Cash Am. Int'l, Inc.*, 2012 OK CIV APP 66, ¶ 12, 282 P.3d 786. If the allegations of "wrongful transfers" were to establish the claim of tortious interference, the transfers would have had to be malicious and unjustified and Kadakia would have to plausibly state facts meeting the first element of a claim for tortious interference: "the interference was with an **existing** contractual or business right." Kadakia has not explained what existing right he had that RPS interfered with or how RPS acted with inexcusable malice to interfere with it. Mere knowledge of or consent to the act of another does not suffice. Therefore, Kadakia cannot state a claim for tortious interference for which relief could be granted.

### C. The Effect of the Guaranty Waiver on the Conspiracy

Again, as stated above, Kadakia waived any defense based on a claim against RPS. Guaranty, ¶ 3(f). Further, under Oklahoma law,

> A civil conspiracy consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means. Unlike its criminal counterpart, civil conspiracy itself does not create liability. To be liable the conspirators must pursue an independently unlawful purpose or use an

> independently unlawful means. There can be no civil conspiracy where the act complained of and the means employed are lawful.
>
> *Brock* at ¶39.

Here, Kadakia asserts in Amended Counterclaim, ¶¶ 46-49, that by virtue of making the Agreement and participating in transfers and "retention of the benefits of those transfers" RPS participated in "unlawful and wrongful transfers of assets of Tethys Trading; engaged in other or additional conduct for the unlawful purposes of facilitating the unlawful transfer or transfers of assets of Tethys Trading;…[sought] to extract from Kadakia money for obligations that are legally not in default." Amended Counterclaim, Dkt. 66, at ¶ 47. First, the only so-called "benefits" that RPS received were already owed by Tethys Trading to RPS by virtue of the Promissory Note. This is the "benefit" Kadakia is referring to as stated in the Agreement, ¶ 5, where it is acknowledged as a "Cash Payment" "used to reduce Tethys Obligations." There is nothing "unlawful" about retaining a benefit in the form of a payment on a loan that is past due and could not possibly constitute a basis for a counterclaim. Second, despite Kadakia's insistence that he is not responsible for his obligations under the unconditional Guaranty because the Note is not "legally in default," the waivers in the Guaranty prohibit Kadakia from making this claim, and the Recital in the Agreement gives RPS the right to collect from any other guarantor as does the Note itself. Kadakia is unable to explain how RPS's actions to collect on a Note and Guaranty are unlawful. RPS's alleged actions have solely been to collect what is owed from Tethys Trading and the guarantors. Kadakia fails to state a claim of conspiracy for failing to meet the element of "unlawful acts." Kadakia's Amended Counterclaim of conspiracy should be dismissed.

## IV. CONCLUSION

All of Kadakia's counterclaims against RPS should be dismissed. Under the *Iqbal* evaluation methodology, the Court must disregard conclusory allegations because such allegations

"are not entitled to the assumption of truth." *Iqbal*, at 679-80. Kadakia's specific claims, Counts One, Three, & Four, all hark back to his unfounded theory that RPS illegally conspired in some way with Meyer, Finnegan, and the Tethys Companies to its benefit; however, the logic here is impossible for several reasons.

First, RPS never benefitted illegally from his relationship as a Lender to Tethys Trading or through any "swap agreements" or shifting of assets as alleged in ¶ 22 of the Amended Counterclaim, because the benefit from any of the alleged payments merely would serve to reduce the balance of the loan and would not constitute an independent counterclaim.

Second, none of the documents, and certainly not Kadakia's Guaranty at issue here, impose a requirement of prior notice of an event of default of the Tethys Promissory Note. The Promissory Note itself states: "Payee may, at its option, without further notice or demand, declare this Note in default and all indebtedness due and owing hereunder shall be due and payable immediately." *See* Promissory Note, Exhibit B to Dkt. 1, Promissory Note at p.2. The Guaranty itself states that Kadakia waived "notice of any of the Borrower's obligations to which it may apply" and "notice of default, non-payment, partial payment, presentment, demand…" Exhibit A to Dkt. 1, Guaranty at ¶ 2. Further, controlling Oklahoma statutes also waive any requirements for notice of default. OKLA. STAT. tit. 15, § 332 states: "A guarantor of payment or performance is liable to the guarantee immediately upon the default of the principal, and without demand or notice." Kadakia has no authority that a notice of default is required or that lack of notice would cause a claim for relief.

Third, the claims asserted in ¶¶ 28-30, allege some kind of orchestration between RPS, Meyer, Finnegan and the Tethys Companies to impose a greater liability on Kadakia. These allegations simply do not make sense in light of the Agreement itself. The Agreement actually causes a much larger liability to be assessed and paid back by Meyer and Finnegan than that of the

original Note and guaranties. The Agreement promises a return of $__ million to RPS. *See* Agreement, Dkt. 70 filed under seal, at ¶ 6. Kadakia's Guaranty promises payment of the balance of the Note plus interest. Exhibit A to Dkt. 1, Guaranty, Recital ¶ 1. Nothing in the subsequent Agreement imposed a greater liability on Kadakia; it actually imposes a greater liability on Meyer and Finnegan.

Regardless of the terms of the Agreement, that settlement has no bearing on Kadakia's obligations under the Guaranty. First, the Promissory Note itself gives RPS the right to "waive or surrender, either in whole or in part, any rights, guarantees, security interests or liens given for the benefit of [RPS] in connection with payment of this Note" without affecting or releasing any other liabilities under the Note. Note at p.2. Specifically, the Note states:

> [B]ut no such occurrences shall in any manner affect, limit, modify or otherwise impair any rights, guaranties or security of [RPS] not specifically waived, released or surrender in writing, nor shall any maker, ***guarantor***, endorser or any person who is or might be liable hereon, either primarily or contingently, be released from liability by reason of the occurrence of any such event. [RPS], from time to time, shall have the unlimited right to release any person who might be liable hereon, and such release shall not affect or discharge the liability of any other person who is or might be liable hereon.

*Id*. (emphasis added).

RPS had every right to enter into an Agreement with Tethys Trading and the other guarantors without affecting or releasing the other guarantors, in this case, Kadakia. Next, the Guaranty is "unconditional" meaning nothing can change Kadakia's obligation and also provides for a potential settlement with Tethys Trading or the other guarantors:

> The obligations of the Guarantor hereunder shall be unconditional and absolute and…shall not be released, discharged, be a defense to or otherwise affected by: (a) any extension, renewal, ***settlement***, indulgence, compromise, waiver or release of or with respect to any of the Borrower's Obligations or any part thereof or any agreement relating thereto, or with respect to any obligation of any other guarantor of the Borrower's Obligations…

Guaranty at ¶ 3(a), p.2.

Finally, the Agreement restates RPS's right to enter into the Agreement without waiving any of its rights under the Promissory Note:

* * * See Agreement, Dkt. 70 filed under seal, Recital C, p. 1.* * *

Kadakia cannot state a claim upon which relief can be granted in light of the controlling documents in this matter and the provisions in each that protect RPS's rights as the Lender. Kadakia's Amended Counterclaims should be dismissed.

WHEREFORE, RPS respectfully moves this Court to dismiss Kadakia's Amended Counterclaims pursuant to FED. R. CIV. P. 12(b)(6) and requests such other relief as is just.

Respectfully submitted,

By: /s/ Lacey L. Shirley
R. Brent Blackstock, OBA No. 00839
Lacey L. Shirley, OBA No. 33269
Mid-Continent Tower, Suite 500
401 S. Boston Ave.
Tulsa, OK 74103
(918) 383-0777, (918) 699-0325 (fax)
Brent@BrentBlackstock.com
lacey@brentblackstock.com
**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE BY ECF**

I hereby certify that today I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to counsel of record.

By: /s/ Lacey L. Shirley
Lacey L. Shirley