**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**R.P. SMALL CORP.**

**Plaintiff,**

**v.**

**RUCHIR A. KADAKIA,**

**Defendant.**

**and**

**RUCHIR A. KADAKIA, individually and derivatively on behalf of Tethys Trading, LLC,**

**Counterclaimant and Third-Party Plaintiff,**

**v.**

**R.P. SMALL CORP., an Illinois corporation,**

**Counterclaim Defendant,**

**and**

**JOHN E. MEYER, JR.;
ROBERT FINNEGAN;
and
TETHYS SUPPLY AND MARKETING, LLC;
TETHYS CAPITAL, LLC;
TETHYS TRADING, LLC;
TETHYS ENERGY, LLC;
TETHYS BIOFUELS, LLC;
TETHYS LATIN AMERICA, LLC;
TETHYS PARTNERS, LLC;
TETHYS DERIVATIVES, LLC; and
TETHYS SHIPPING, LLC,
each an Oklahoma limited liability company;
and
JOHN DOES and JANE DOES 1 to 10;**

**Third-Party Defendants.**

**Case No. 19-cv-0271-CVE-JFJ**

**RUCHIR A. KADAKIA'S REPLY TO THIRD-PARTY DEFENDANTS' OPPOSITION TO RECONSIDERATION [Dkt. #74] AND PLAINTIFF'S OBJECTION TO KADAKIA'S MOTION TO RECONSIDER [Dkt. #73]**

The arguments advanced by Plaintiff and the Third-Party Defendants distort the straightforward analysis in Kadakia's motion for reconsideration.[1] The first question is whether Kadakia has asserted a valid third-party claim under Rule 14(a). The second question is whether, having asserted a valid third-party claim, the additional claims raised are proper under Rule 18 as arising out of the same transaction or occurrence already at issue in this case. Kadakia's motion simply requests the Court to reconsider its prior dismissal of third-party claims because the answer to both questions is "Yes."

**A. Kadakia Has Indemnity Claims Against the Third Party Defendants, Notwithstanding the Provisions in the Guaranty**

Regarding the first question, Plaintiff's and the Third-Party Defendants' opposition to Kadakia's Motion for Reconsideration rest on the flawed contention that Kadakia's contractual indemnity claim against the Third-Party Defendants is prohibited by language in the Guaranty.[2] Both Plaintiff and the Third-Party Defendants attempt to grasp onto language in Paragraphs 3 and 7 of the Guaranty, but neither paragraph precludes Kadakia's indemnity claim here.

As an initial matter, Paragraph 7 applies only to indemnity type claims against "the Borrower", Tethys Trading. The language in paragraph 7 of the Guaranty has no application to indemnity and contribution claims against any of the other Third-Party Defendants, including the co-guarantors Meyer and Finnegan. While Paragraph 3 of the Guaranty contemplates that co-

[1] Plaintiff's attempt to challenge the viability of the third-party claims demonstrates its alignment with Meyer and Finnegan, [Doc. No. 73]. Plaintiff has no standing to challenge the viability of the third-party claims directed against parties other than Plaintiff.

[2] The Third-Party Defendants primarily make this argument in their motion to dismiss. *See* Doc. No. 75. Kadakia will further address this argument in his response to that motion.

guarantor's obligations are not a defense, the Guaranty does not limit Kadakia's right to seek indemnity from them.

Further, the potential application of Paragraph 7 goes to the *timing* of Kadakia reimbursement by Tethys Trading -- the paragraph addresses *when* Kadakia can recover from Tethys Trading for an indemnity type claim. The paragraph begins with "Until repayment and performance of all of the Borrower's Obligations" and it is simply putting performance of the Guaranty ahead of collection for indemnity. Reading the paragraph in its entirety shows that it does not eliminate Kadakia's right to pursue such claims.

Kadakia's Amended Third Party Complaint (and its original Third-Party Complaint) properly asserts an indemnity claim based on a contract – the December 31, 2015 Transfer Agreement-- with the Third-Party Defendants that was entered into more than 18 months after the Guaranty was signed. The claim seeks to recover all or part of the amount that Kadakia may be liable to pay Plaintiff, and it is squarely within the contemplation of Rule 14(a). The same is true of Kadakia's common law indemnity claim. Thus, the requirement of a proper claim under Rule 14 is satisfied.

**B. Kadakia's Other Claims Are Factually and Legally Intertwined With Plaintiff's Claims and Kadakia's Defenses and Affirmative Defenses**

With respect to the second question, both Plaintiff and the Third-Party Defendants go to great lengths to avoid addressing the fatal point in their position: the third-party claims and the counterclaims all arise from transactions that directly relate to central issues already presented by Plaintiff's claims:

(a) whether the 2014 Note is in default (it is not per the Workout Agreement) **and** the express condition precedent stated in Paragraph 4 of Kadakia's Guaranty has occurred, *i.e.*, has an "Event of Default" under the 2014 Note occurred (it has not); and

(b) the potential amount Kadakia may owe under the Guaranty, which requires an examination of the amounts paid to Plaintiff and the other valuable consideration Plaintiff received via the Third-Party Defendants.

The third-party claims that Kadakia is requesting the Court to reconsider and allow, fraudulent transfer and breach of fiduciary duty, involve the diversion of Tethys Trading assets that should have been used to pay toward the R.P. Small Corp. Note. Those claims are based on documents that show Meyer and Finnegan used those assets to provide value to Plaintiff through various different types of transactions, and that value is not accounted for in the amount claimed by Plaintiff in its Complaint as summarized in Complaint Exhibit D.

The relief sought is to identify these transactions and apply that value as a credit to Tethys Trading's obligations under the 2014 Note, which in turn affects Kadakia's potential obligations under the Guaranty. Alternatively, the relief sought is to impose an obligation on the Third-Party Defendants to reimburse Kadakia for the amount that those transfers increased his obligation under the Guaranty. Kadakia submits that these claims are within those contemplated by Rules 14 and 18, and is accordingly asking the Court to reconsider its exclusion of these claims.

More important, because these claims go directly to the amount due on the 2014 Note and thus Kadakia's potential liability, the facts that support these claims are directly connected to Plaintiff's claim under the Guaranty and Kadakia's affirmative defenses and counterclaims. The interconnection is best explained by Plaintiff's principal in his August 29, 2017 email to Meyer.[3] In that email, Richard Small outlines an agreement with Meyer and Finnegan (but not Kadakia) to forbear on the enforcement of the 2014 Note against Tethys Trading and the personal guarantees

[3] Because Plaintiff produced the document as Confidential, the discussion here removes the purported confidential content. Kadakia references this document as Exhibit B-1 and other confidential documents as Exhibit B-2 to B- 6, and shall move for leave to file the referenced documents under seal.

of Meyer and Finnegan in exchange for the assignment of tax losses of Tethys Trading and their ownership in all Tethys entities.

One of the problems is that one or more of those other Tethys entities were the ones that received the transfers of Tethys Trading assets to the detriment of its other creditors, including Kadakia. Further, the agreement – later documented in the December 19, 2019 agreement – substantiates Kadakia's contention that Plaintiff participated and benefitted in those transfers and that the agreement shifts performance (payment) the 2014 Note from Tethys Trading to these other forms of value and consideration, all of which must be accounted for in determining Kadakia's potential liability.

Finally, the email ends with a "PS" about Tethys Trading tax statements (Plaintiff became a member of Tethys Trading via the 2014 Note) that shows confusion about the murky transactions of Tethys Trading in 2016, which is after Kadakia left the company, including the apparent shifting of profits of the company. Kadakia is not aware of any effort by Plaintiff, as either a significant creditor or member of Tethys Trading, to have Meyer and Finnegan put the assets back into Tethys Trading or apply the value of all of the transfers and other consideration to the 2014 Note to Tethys Trading.

Indeed, Exhibit D to Plaintiff's Complaint shows just the opposite – an effort to avoid an accurate and complete accounting of the value Plaintiff received from its agreements with Meyer and Finnegan that are tied to the 2014 Note. Mr. Small's August 29, 2017, email is thus an intersection of the amount due on Kadakia's Guaranty as part of Plaintiff's claim and Kadakia's counterclaim and requested third party claims that seek to hold Plaintiff and Third Party Defendants responsible for their dealings that prejudiced and harmed Kadakia.

As a further explanation of the high degree of factual overlap and connection between the obligation Plaintiff claims under the Guaranty and the affirmative defenses, counterclaims, and third-party claims that Kadakia asserts, Kadakia provides a chart as Exhibit A. Exhibit A shows three (3) central, although not exclusive, areas of factual and legal overlap as summarized below with examples of specific documents that substantiate these claims and shows how they are interrelated:

1. **Assignments of Interests by Third Party Defendants to Plaintiff**.
The agreements and assignments of interests by which Plaintiff R.P. Small Corp. on the one hand and Meyer/Finnegan/Tethys Trading and the other Tethys Entities (including Tethys Capital and Tethys Supply and Marketing) on the other hand are linked and by which they share significant mutual interests.

These interests represent the value, or the vehicles through which the value was delivered, to Plaintiff and not properly credited to Tethys Trading's obligation on the 2014 Note, and in turn to Kadakia's liability on the Guaranty.

*Relevant documents include:*

Exhibit B-2 - Small 000022 – 10/7/2016 email – Meyer to Richard Small and Norma Small
Confirms Kadakia's allegation that Meyer and Finnegan agreed to assign to Plaintiff a percentage of their combined holdings in Tethys entities, later documented in the Workout Agreement.

Exhibit B-3 - Small 000031 - 8/3/2017 – Meyer email to Richard Small
Confirms Kadakia's allegation that Plaintiff received valuable assignments of Tethys Trading tax losses.

2. **Payments and credits to Plaintiff that Plaintiff fails to account for.**
Plaintiff's Exhibit "D" to the Complaint does not accurately account for payments to Plaintiff on the 2014 Note. Here too, Plaintiff's and Third-Party Defendants' interests and objectives are aligned against Kadakia, as every dollar recovered by Plaintiff against Kadakia is beneficial not only for Plaintiff but for Third-Party Defendants (as it affords them a credit against distribution payments they would otherwise be required to make to Plaintiff under the Workout Agreement).

*Relevant documents include:*

Multiple bank statements that show wire transfers to Plaintiff's account from August 2014 to December 2015 that total over $437,000.

Exhibit B-4 - 8/22/2019 email from Third Party Defendants' workout lawyer that Plaintiff had received over $1.2 in cash and tax savings from Tethys.

***Note: Plaintiff's Exhibit D does not reflect the vast bulk of the cash payments and only one of the tax loss transfers.***

3. **Transfer of cash assets of Tethys Trading to other Tethys entities.**
Plaintiff's claim and Kadakia's counterclaim and third party claims require resolution of the transfers of more than $1 million from Tethys Trading to Tethys Capital and/or other Tethys Entities, which are the entities to which Plaintiff received assignments from Meyer and Finnegan.

These funds were assets of Tethys Trading and should have been used to pay the R.P. Small Corp. Note but were improperly transferred by Meyer and then used to deliver value to Plaintiff which has not been credited against the Note.

*Relevant documents include:*

Exhibit B-5 - Bank account statements from July 2015 of accounts held by (i) Tethys Trading – a segregated account pursuant to the terms of the 2014 Note, and (ii) Tethys Capital that show the flow of $2.0 million dollars, and two transfers – a transfer of $1.0 million back to the segregated account and another transfer of $1.0 million into what appears to be a separate segregated Tethys Capital account that presumably was for the benefit of Plaintiff (yet no statements have been produced of that apparent account).

January 2016 bank statement for the Tethys Trading segregated account showing over $500,000;[4] this statement is the last bank statement date produced by Third Party Defendants even though the disposition of those funds is obviously relevant.

Exhibit B-6 - Kadakia 62001 – 11/26/2016 – Meyer email to Jeff Hodgson
Confirms Kadakia's allegations of Meyer's control of Tethys finances, including as to the 2014 Note, and Plaintiff's knowledge of Tethys's finances and the status of the 2014 Note via Meyer.

Exhibit B-1 - Small 00034 – 8/29/2017 – Richard Small email to Meyer
Confirms Kadakia's allegations regarding a forbearance agreement between Plaintiff and Meyer and Finnegan, and the transfer of assets.

---

[4] The balances of these segregated accounts (Tethys Trading and Tethys Capital) are highly relevant because the 2014 Note provides for different rates of interest based on whether the funds were in a segregated account or in another account (or used in support of trading activities). The interest rate variation is yet another critical fact missing from Exhibit D to Plaintiff's Complaint.

Also confirms that Plaintiff's principal had actual knowledge of the financial dealings of Tethys Trading.

These facts and evidence indicate that Plaintiff and Third-Party Defendants have been and are acting in a collaboration to shift liabilities from Meyer and Finnegan and Tethys Trading under the 2014 Note (and their Guarantees) and to forego, recast and recharacterize their obligations to Small Corp. They are doing so while attempting for their mutual benefit to get away with Meyer's having swept assets of Tethys Trading to Tethys Capital and/or other Tethys Entities better situated to create returns for Plaintiff and Third-Party Defendants while rendering Kadakia's creditor rights under Tethys Trading's indemnification of Kadakia effectively valueless.

**CONCLUSION AND REQUEST FOR RELIEF**

The purpose of asserting the third-party claims for breach of fiduciary duty and fraudulent transfers is to prevent the Third-Party Defendants from harming Kadakia by making his potential obligations under the Guaranty larger than they otherwise should be. Accordingly, Kadakia requests that the Court reconsider its dismissal of those claims and allow Kadakia to pursue them under Fed. R. Civ. P. 18.

Respectfully submitted,

*/s/ Neil D. Kelly*

Neil D. Kelly (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
JPMorgan Chase Tower
600 Travis St, Houston, TX 77002
(713) 220.4198
(713) 220.4285 (Facsimile)

Evan G.E. Vincent, OBA #22325
CROWE & DUNLEVY, P.C.
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102
(405) 235-7700

(405) 239-6651 (Facsimile)
evan.vincent@crowedunlevy.com

**ATTORNEYS FOR THIRD-PARTY PLAINTIFF RUCHIR A. KADAKIA**

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2020, I electronically transmitted the foregoing document and attached exhibit to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

R. Brent Blackstock
Lacey L. Shirley
Mid-Continent Tower, Suite 500
401 South Boston Avenue
Tulsa, OK 74103
ATTORNEYS FOR R.P. SMALL CORP.

R. Richard Love III
Madison Mosier
4000 One Williams Center
Tulsa, OK 74172
ATTORNEYS FOR THIRD-PARTY DEFENDANTS

s/ *Neil D. Kelly*
Neil D. Kelly