**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **R.P. SMALL CORP.**<br>**Plaintiff,**<br>**v.**<br><br>**RUCHIR A. KADAKIA,**<br>**Defendant.**<br>**and**<br><br>**RUCHIR A. KADAKIA,**<br>**Counterclaimant and**<br>**Third-Party Plaintiff,**<br>**v.**<br><br>**R.P. SMALL CORP., an Illinois corporation,**<br>**Counterclaim Defendant,**<br>**and**<br>**JOHN E. MEYER, JR., et al.;**<br>**Third-Party Defendants.** | ) | **Case No. 19-CV-271-CVE-JFJ** |

**RUCHIR A. KADAKIA'S COMBINED RESPONSE TO THIRD-PARTY DEFENDANTS' MOTION TO DISMISS VERIFIED AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT, AND BRIEF IN SUPPORT [Dkt. #75] AND PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS [Dkt.#79]**

Evan G.E. Vincent, OBA #22325
CROWE & DUNLEVY, P.C.
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102
(405) 235-7700;
(405) 239-6651 (Facsimile)
evan.vincent@crowedunlevy.com

Neil D. Kelly (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
JPMorgan Chase Tower
600 Travis St, Houston, TX 77002
(713) 220.4198
(713) 220.4285 (Facsimile)
**ATTORNEYS FOR DEFENDANT**
**RUCHIR A. KADAKIA**

**TABLE OF CONTENTS**

I. ARGUMENT AND AUTHORITIES....3

A. THE MOTION TO DISMISS STANDARD....3

B. FACTUAL AND PROCEDURAL BACKGROUND AND OVERVIEW....3

C. THE PROPER ANALYSIS OF THE SCOPE OF THE "WAIVERS" IN THE KADAKIA GUARANTY....9

D. KADAKIA'S DECLARATORY JUDGMENT CLAIM IS VALID....11

E. KADAKIA HAS VALID CLAIMS ARISING FROM THE INDEMNIFICATION PROVISION IN THE 2015 TRANSFER AGREEMENT....14

F. KADAKIA ADEQUATELY PLEADS A TORTIOUS INTERFERENCE CLAIM....17

G. KADAKIA ADEQUATELY PLEADS A CIVIL CONSPIRACY CLAIM....19

H. KADAKIA ADEQUATELY PLEADS A CLAIM FOR COMMON LAW OR EQUITABLE INDEMNIFICATION AND CONTRIBUTION....22

II. CONCLUSION AND REQUEST FOR RELIEF....25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barringer v. Baptist Healthcare of Oklahoma*,
2001 OK 29, 22 P.3d 695....10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)....3

*Borges v. Waller*,
2011 OK CIV APP 127, 270 P.3d 202....12, 13

*Brown v. Goldsmith*,
1968 OK 4, 437 P.2d 427....24

*Central Nat'l Bank of Poteau v. McDaniel*,
1986 OK CIV APP 34, 734 P.2d 1314....23, 24

*Dias v. City and County of Denver*,
567 F.3d 1169 (10th Cir. 2009)....3

*Duran v. Carris*,
238 F.3d 1268 (10th Cir. 2001)....3

*First Nat. Bank and Trust Co. of Vinta v. Kissee*,
1993 OK 96, 859 P.2d 502....12

*Founders Bank and Trust Co. v. Upsher*,
1992 OK 35, 830 P.2d 1355....12

*Guideone Am. Ins. Co. v. Shore Ins. Agency, Inc.*,
2011 OK CIV APP 69, 259 P.3d 864....22, 24

*JPMorgan Chase Bank, N.A. v. Specialty Restaurants, Inc.*,
2010 OK 65, 243 P.3d 8....12

*Lum v. Lee Way Motor Freight, Inc.*,
1987 OK 112, 757 P.2d 810....11

*May v. Mid-Century Ins. Co.*,
151 P.3d 132, 2006 OK 100....16

*Power v. Sullivan*,
1993 OK CIV APP 14, 852 P.2d 790....25

*Riverside Nat. Bank v. Manolakis*,
1980 OK 72, 613 P.2d 438 ........................................ 12

*Teigen v. Renfrow*,
511 F.3d 1072 (10th Cir. 2007) ........................................ 3

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................ 1, 3, 17

Restatement of Restitution § 76 (1937) ........................................ 23

**RUCHIR A. KADAKIA'S COMBINED RESPONSE TO THIRD-PARTY DEFENDANTS' MOTION TO DISMISS VERIFIED AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT, AND BRIEF IN SUPPORT [Dkt. #75] AND PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS [Dkt.#79]**

The motions before this Court reflect continued unified, coordinated effort by Plaintiff (a Lender) and Third-Party Defendants (a primary obligor [Tethys Trading] and 2 co-guarantors) to wrongfully shift liabilities under the 2014 Promissory Note to Kadakia while (a) failing to accurately account for same, (b) enjoying the benefit of assets of the Tethys Trading transferred to other Tethys Entities, and (c) continuing to otherwise act amongst themselves and presumably the outside world as if Tethys Trading, Meyer and Finnegan are not in default as to the 2014 Promissory Note.

The arguments presented by Plaintiff and Third-Party Defendants (together, "Movants") for dismissal ignore Kadakia's succinct and well-pleaded factual allegations based on Movants' documented admissions and conduct and overlook the language of Kadakia's Guaranty, the 2015 Transfer Agreement, and the 2019 Workout Agreement. They reach conclusions and offer interpretations not supported by either the words or common sense, and wholly inappropriate on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), while ignoring plain pleadings and provisions that inconveniently support Kadakia's positions.

Movants protest too much. They know Kadakia's claims have merit and shine a light on how Movants' concerted actions have harmed Kadakia by, among other examples, hiding the agreed-to (in the 2019 Workout Agreement) absence of an Event of Default of the 2014 Promissory Note and failing to account for cash and other

consideration provided to Plaintiff, while leaving Kadakia without redress to enforce his indemnification rights.

The Court should deny the Movants' Motions to Dismiss because

- Kadakia's Guaranty did not waive his right to obtain indemnification from the Third-Party Defendants, or the right to recover – separate from any potential liability Kadakia may have on the Guaranty – for the torts and other wrongs of Plaintiff and the Third-Party Defendants;

- Movants ignore that the 2019 Workout Agreement speaks to the fundamental issue in this case – there is no event of default of the 2014 Promissory Note, which under Oklahoma law and the express terms of the Guaranty is a prerequisite to Kadakia's liability;

- Kadakia more than adequately pleads a tortious interference claim against Plaintiff to recover damages for Plaintiff's actions (without justification and improperly motivated) that benefitted Plaintiff and the Third-Party Defendants but devalued Kadakia's indemnification rights under the 2015 Transfer Agreement (by way of, among other things transfers of Tethys Trading assets to other Tethys Entities in which Third-Party Defendants Meyer and Finnegan and Plaintiff hold interests);

- Kadakia more than adequately pleads a conspiracy; the agreements and actions of Plaintiff and Third-Party Defendants are, as to Kadakia, a conspiracy because they involve:

  (i) the wrongful object to impose liability on Kadakia for the entire balance (overstated in amount by virtue of the knowing failure to account for cash and other assets of value paid or transferred to Plaintiff) of the unpaid principal and interest of the 2014 Promissory Note and render worthless his indemnification rights;

  (ii) which were accomplished through wrongful acts, including the participation in (contemporaneously or through after-the-fact knowing ratification) transfers of the assets of Tethys Trading to other Tethys Entities in which Plaintiff and Third-Party Defendants shared ownership or financial interests.

- Kadakia has valid common law indemnity and contribution rights because Plaintiff seeks to hold him liable for an amount far greater than he is or might otherwise be responsible for.

# I. ARGUMENT AND AUTHORITIES

## A. THE MOTION TO DISMISS STANDARD

As the Court is well aware, in its assessment of Movant's motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court assumes the truth of Kadakia's well-pleaded facts in the Counterclaim and Third-Party Complaint, and draws all reasonable inferences therefrom in the light most favorable to the plaintiffs. *See Teigen v. Renfrow,* 511 F.3d 1072, 1078 (10th Cir. 2007). A complaint will survive dismissal only if it alleges a plausible claim for relief—that is, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

As the Tenth Circuit further recognizes that even under the *Twombly* analysis "[g]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009), (citing *Duran v. Carris,* 238 F.3d 1268, 1270 (10th Cir. 2001). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " *Id.* (citing *Twombly*, 550 U.S. at 556).

## B. FACTUAL AND PROCEDURAL BACKGROUND AND OVERVIEW

As the Court is aware, there is presently pending a motion by Kadakia to file the Amended Counterclaim [Dkt.#66]. This motion is pending; and to this extent, Plaintiff's motion to dismiss the proposed Amended Counterclaim is procedurally premature.

The Court also well knows from the prior motions practice that this case concerns Plaintiff's attempt to enforce a personal guaranty by Kadakia that he executed in connection with Plaintiff's loan to Tethys Trading, LLC. The loan at issue is evidenced by a March 27, 2014 Promissory Note by Tethys Trading and payable to Plaintiff. At the time of Plaintiff's loan, Tethys Trading was owned by Kadakia, Meyer, and Finnegan (with each executing a personal guaranty as part of Plaintiff's loan), as well as Plaintiff.

The facts now before the Court – all contained in the allegations of the proposed Amended Counterclaim and Third-Party Complaint, which are presumed true for the purposes of these motions are as follow:

**Tethys Trading Borrows Money from Plaintiff.; Kadakia, Meyer, and Finnegan Provide Guarantees**

In the Summer and Fall of 2013, Tethys Trading sought to borrow money to finance margin requirements associated with its trading business. Tethys Trading borrowed $6 million from Plaintiff. The principal of Plaintiff, Richard P. Small, was upon information and belief, a friend and business associate of Meyer's father and Meyer.

Plaintiff's $6 million loan to Tethys Trading was memorialized by a written Promissory Note dated March 27, 2014 (the "2014 Promissory Note") and a Security Agreement. The 2014 Promissory Note provides expressly that the proceeds of the loan were to be used only to fund margin requirements for Tethys Trading's trades in Distillates-Light Ends, a specific type of hydrocarbon commodity. The note also requires Tethys Trading to place the proceeds of the loan into a segregated account that

shall not be comingled with other funds. The interest due on the 2014 Promissory Note varied depending on whether the funds were in the segregated account or deployed for use in support of Tethys Trading's trading activities.

At or around the time that Plaintiff extended the $6 million loan to Tethys Trading, Plaintiff acquired a ten (10%) percent Membership interest in Tethys Trading based upon an enterprise valuation of $12.5 million.

In connection with the Tethys Promissory Note, Kadakia, Meyer, and Finnegan each executed a personal Guaranty Agreement in substantially the same form. The Kadakia Guaranty references the 2014 Promissory Note and Plaintiff's $6 million loan to Tethys Trading, which is generally defined as "Borrower's Obligations." Kadakia agreed to the "full, prompt and unconditional payment when due, of the Borrower's Obligations due and owing to the Lender…" The guaranty provides that Plaintiff is entitled to enforce the "obligations of [Kadakia] hereunder" "[u]pon the occurrence of an Event of Default (as such term is defined in the [2014 Promissory Note])."

The Tethys Promissory Note provides that events of default are (i) failure to pay any payment required by the note "within [5] business days after the due date and receipt by [Tethys Trading] of Notice from [Plaintiff]"; (ii) default under the security agreements for the note; or (iii) Tethys Trading files for bankruptcy protection or its functional equivalent.

In short, as with any guaranty, Kadakia's obligation to pay on the Kadakia Guaranty only arises if there is an event of default of Tethys Promissory Note. In turn, the Tethys Promissory defines an event of default as the nonpayment after 5 days'

notice from Small Corp. of nonpayment of an amount due under the note. If there is not an event of default under the Tethys Promissory Note – including if Small Corp. later agreed that there is not event of default, Small Corp. does not have the right to enforce the Kadakia Guaranty.

**Small Corp. Receives Assets and Equity Diverted from Tethys Trading**

In the first half of 2015, Tethys Trading's business was struggling. Meyer and Finnegan hatched a plan to move assets from Tethys Trading and its accounts to other Tethys-denominated entities. Their apparent goal was to strip Tethys Trading of assets and place them in other Tethys Trading entities to the prejudice of Tethys Trading's growing list of creditors.

Meyer orchestrated and executed the scheme via his control of the company's bank accounts. Plaintiff was a beneficiary of the shifting of assets and, as evidenced by Tethys Company bank statements, reporting obligations under the Tethys Promissory Note, and communications with Plaintiff , had knowledge of and implicitly or explicitly approved the shifting of assets from Tethys Trading to other Tethys-denominated entities.

At or around the same time of the shuffling of Tethys Trading's assets, Meyer, Finnegan, and Plaintiff negotiated and entered into "swap agreements." The details of these negotiations and swap agreement terms were purposefully kept secret from Kadakia. Upon information and belief, Plaintiff received equity interests or additional equity interests in Tethys-denominated entities (including, upon information and belief, Tethys Capital, which received a significant portion of the assets of Tethys Trading).

These assignments either reduced the principal and interest on the 2014 Promissory Note (or must be calculated as such) or were known misuses of Tethys Trading's assets to benefit Meyer and Finnegan to the detriment of Kadakia.

**Kadakia is Forced Out of, and Separates from the Tethys Companies**

As of the Fall of 2015, Kadakia's relationship with Meyer and Finnegan had become strained if not hostile. Kadakia was summarily removed from payroll on September 20, 2015, and terminated as an employee of Tethys Trading.

Kadakia sought a formal separation from Meyer, Finnegan, Tethys Trading, and the other Tethys Companies. Ultimately, Kadakia, Meyer, Finnegan, Tethys Trading, and the other Tethys Companies entered into a written "Agreement Regarding Transfer Of Membership Interests" effective December 31, 2015 (the "2015 Transfer Agreement"). Pursuant to the Transfer Agreement, Kadakia assigned his various membership interests in Tethys Trading and other Tethys Companies entities to Meyer and Finnegan, with each receiving 50% of Kadakia's interests in the various Tethys Companies, except Meyer receive 100% of Kadakia's interest in Tethys Energy.

In exchange, Kadakia received a *de minimis* $50,000 payment and, more valuable to him, a broad indemnification from Meyer, Finnegan, and Tethys Trading of any liability related to his ownership of Tethys Trading, including his obligations under the Kadakia Guaranty. Kadakia also received a broad release of essentially any claims arising from any actions before December 31, 2015.

After December 2015, Kadakia received essentially no information about the continuing business of the Tethys Companies or the status of the Tethys Promissory

Note. His disinterest was justified because of the separation achieved by the 2015 Transfer Agreement and the broad indemnification and releases therein.

**Small Corp. Files this Lawsuit in May 2019, But Then Confirms in December 2019 that the Tethys Promissory Note is Not in Default**

Plaintiff filed this lawsuit without any prior notice of an event of default of the 2014 Promissory Note. Suspecting a set up, Kadakia asserted third party claims against Meyer, Finnegan, and the Tethys Companies (and a few more Tethys entities) to enforce their liability to Kadakia pursuant to the indemnification in the Transfer Agreement and to recover the wrongful transfers out of Tethys Trading that should have been used to satisfy the 2014 Promissory Note. Motions to dismiss and extensive briefing followed, ending on November 21, 2019.

While resolutely attacking Kadakia's positions that (i) the Kadakia Guaranty was not due and owing and (ii) Plaintiff, Meyer, and Finnegan had unlawfully prejudiced Kadakia's rights, Small Corp, Meyer, Finnegan, and Tethys Trading were busy negotiating and executing the December 19 "Workout Agreement" referenced above. None of them made any effort to supplement their Rule 26 Initial Disclosures to mention it, but Plaintiff produced it as "Confidential" in response to Kadakia's requests for production.

The Workout Agreement underscores what Kadakia has alleged all along – the 2014 Promissory Note is not due and Plaintiff, Meyer, Finnegan, and the Tethys Companies are orchestrating their actions to try to extract from Kadakia greater liability that he agreed to under the Kadakia Guaranty.

### C. The Proper Analysis of the Scope of the "Waivers" in the Kadakia Guaranty

Kadakia is well aware of the detailed language in the Kadakia Guaranty in Paragraph 2 that sets out specific waivers and in Paragraph 3 that acknowledge a long list of circumstance that shall not "release[], discharge[], be a defense to or otherwise affect" his obligations under the guaranty. But no language in Kadakia Guaranty waives:

- Kadakia's ability to contest liability on the guaranty when the 2014 Promissory Note is not in default, which is the substance of his defenses and his declaratory judgment action,
- Kadakia's right to an accurate and full accounting of payments on the 2014 Promissory Note, which is at the core of all of his defenses and claims;
- The tort and other claims that Kadakia has against Movants, including the tortious interference, conspiracy, and contribution claims.

Movants' arguments that Kadakia waived all of his claims in the Amended Counterclaim and Third-Party Complaint significantly overstate the plain language of the Kadakia Guaranty. Even if Paragraph 3 is characterized as a waiver of defenses, Movants ignore the difference between defenses to liability and affirmative claims.

In Paragraph 3, Kadakia agreed that the (a) to (f) circumstances or events would not affect his liability on the Kadakia Guaranty. For example, Kadakia cannot argue that the Workout Agreement is a renewal or settlement of the 2014 Promissory Note and thus he is no longer liable on his guaranty. *See* Kadakia Guaranty Par. 3(a). Nor can Kadakia argue that his liability on the guaranty is absolved because of setoff or other claims against Plaintiff. *See* Kadakia Guaranty Par. 3(f). But those are not and never have been Kadakia's arguments.

Instead, other than the request for declaratory relief, Kadakia asserts affirmative claims for damages against Plaintiff and Third-Party Defendant based upon actions by Plaintiff and Third-Party Defendants after the execution of the 2014 Promissory Note and Kadakia Guaranty. Nothing in Paragraph 3, or elsewhere in the Kadakia Guaranty, states that Kadakia waives – *i.e.*, voluntarily relinquishes a known right – any affirmative claim he might have against Plaintiff (or Third-Party Defendants) – or for that matter a right not yet accrued or known as of the Kadakia Guaranty based upon future conduct of Plaintiff. *See Barringer v. Baptist Healthcare of Oklahoma*, 2001 OK 29, 22 P.3d 695, 701 (defining waiver). Kadakia did not give up his right to assert claims against Plaintiff for its conduct and recover damages.

Movants ignore that the Kadakia Guaranty acknowledges that Kadakia retains (and does not waive) any claims he might have against Plaintiff. *See* Kadakia Guaranty Paragraphs 20 (waiver of right to jury trial of any claim, but contemplates the potential existence of claims) and 21 (waiver of "special, exemplary, punitive or consequential damages *other than* … actual damages", emphasis added). The effect of the waivers and acknowledgements in the Kadakia Guaranty only prevent him from arguing that he is not liable on the guaranty because of those claims and certain types of damages (to the extent the provision applies); they do not prevent him from asserting the claims.

This distinction is critical because Movants repeatedly argue waiver in their Motions. Yet they know it is not a legitimate argument against Kadakia's claims because Movants *never* argued waiver in the first round of attacks by motions to dismiss Kadakia's claims in the Fall of 2019. The only reasonable interpretation of the Kadakia

Guaranty is that he cannot use his claims as defenses to his liability under the guaranty, but he did not give up the right to assert separate tort claims; and he certainly did not give up the right to assert claims not known by him as of the Kadakia Guaranty based upon future wrongful conduct of Plaintiff or Third-Party Defendants acting in concert with Plaintiff. If the intent was for a true waiver (or release), the parties could have easily said so.

### D. KADAKIA'S DECLARATORY JUDGMENT CLAIM IS VALID

Plaintiff attacks Kadakia's declaratory judgment claim in Section III.A of its Motion at pages 5 to 7; Third-Party Defendants address the claim in Section B of their Argument and Authorities, pages 4 to 5. Their arguments are substantially the same – the Kadakia Guaranty waives any argument based on the Workout Agreement. Their arguments are misplaced and incorrect.

First, the Kadakia Guaranty does not in any way waive the legitimate question of the legal effect of the 2019 Workout Agreement. Movants ignore that the declaratory relief sought by Kadakia seeks to address the fundamental questions whether there is or has been a default of the 2014 Promissory Note that triggers Kadakia's liability. As noted above, Kadakia did not waive his ability to challenge whether the condition precedent to his liability – a default of Tethys Trading's obligations under the 2014 Promissory Note – has occurred. *See Lum v. Lee Way Motor Freight, Inc.*, 1987 OK 112, 757 P.2d 810, 814 (a guarantor's secondary liability is conditioned on the principal's default).

The question whether there is a default of the 2014 Promissory Note is of paramount importance because Oklahoma courts recognize that an event of default by a borrower is a prerequisite for maintaining an action on a guaranty. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Specialty Restaurants, Inc.*, 2010 OK 65, 243 P.3d 8 (principal defaulted on the promissory note); *First Nat. Bank and Trust Co. of Vinta v. Kissee*, 1993 OK 96, ¶ 10, 859 P.2d 502, 506 (default is a perquisite to enforcement of a guaranty: "Other than default, the instrument embodies no prerequisite performance of an act by debtor or bank, nor any condition precedent before guarantor's liability is operative."); *Founders Bank and Trust Co. v. Upsher*, 1992 OK 35, 830 P.2d 1355 (principal defaulted on the promissory note); and *Riverside Nat. Bank v. Manolakis*, 1980 OK 72, 613 P.2d 438, 441 (debtor defaulted on the promissory note).

The issue of the absence of a default on a guaranty claim was addressed by the court in *Borges v. Waller*, 2011 OK CIV APP 127, 270 P.3d 202, where the trial court granted defendant guarantor's motion for summary judgment dismissing plaintiff landlord's claim on the guaranty. Significantly, presented with facts similar to those before this Court, the *Borges* court stated:

> Plaintiff Borges contends the Guarantors remain obligated for any amount not paid under the terms of the original $9000/month lease. He asserts that any renegotiation between him and the tenant is irrelevant to the obligations of the Guarantors, because the guarantees are separate agreements and the language of the guarantees state that the 'obligations under the terms of this Guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: ... (d) the modification of, amendment to, or waiver of compliance with any terms of the Lease Agreement without the notification of Guarantor[.]'
>
> Borges' argument fails to acknowledge two imperatives. **First, the guarantee agreements are triggered by some kind of default on the part of the tenant, of which there has been none in this case….** [Emphasis added.]

> **The mechanism under which Guarantors become responsible for the underlying obligations of the principal obligor is default. 'A guaranty is a promise to answer for the debt, default or miscarriage of another person. A guarantor has a collateral obligation which is independently and separately enforceable from that of the principal debtor or obligor. Under Oklahoma law a guarantor is secondarily liable. His obligation is conditioned upon default by the principal debtor or obligor.'** *Lum v. Lee Way Motor Freight, Inc.,* 1987 OK 112, 757 P.2d 810, 814; 15 O.S.2001 §321. [Emphasis added.]
>
> The language of the lease guarantee is consistent with this position as well. Subsection four (4) of the lease guarantee provides that the Guarantor shall pay the demand of the landlord upon the default of the tenant in the payment or performance of the guaranteed indebtedness. The lease guarantee does not otherwise provide for payment by the Guarantors to the landlord.

*Borges*, *supra*, 270 P.3d at 204-05.

Second, Kadakia's declaratory judgment action does not seek to establish that the Workout Agreement exonerates, releases, or discharges him from any liability ever on the Kadakia Guaranty, only that Plaintiff's instant claim is not ripe because, as the Workout Agreement provides, the 2014 Promissory Note is not in default. More broadly, the declaratory judgment claim seeks to establish (similar to Kadakia's defenses) that there is and has not been an Event of Default under the 2014 Promissory Note, and that accordingly, any action by Plaintiff seeking to enforce the Kadakia Guaranty is premature and not a case or controversy ripe for adjudication.

The provisions relied on by Movants in the Kadakia Guaranty – Paragraphs 3(a), (f), and (l), presuppose that the prerequisite to liability (an Event of Default) has occurred and speak to a permanent avoidance of liability under the guaranty or avoidance in the face of an actual default. Those provisions cannot apply to prevent Kadakia from defending himself.

Third, Plaintiff's reservation of rights (phrased as "without waiving any of its rights") in the Workout Agreement is irrelevant to the declaratory relief sought. The reservation of rights merely prevents the guarantors (Kadakia, Meyer, and Finnegan) from arguing that the fact or terms of the Workout Agreement supersedes or discharges their liability under the guarantees. The provision does not provide an express contractual right in favor of Plaintiff to enforce the Kadakia Guaranty now while at the same time Plaintiff agrees and acknowledges the absence of a default or "Event of Default" with respect to Tethys Trading, or in the absence of "Borrower's Obligations" being past due and owing.

In sum, a significant case or controversy exists between the parties that is appropriate and necessary for the Court to resolve and Movants' attacks on the declaratory judgment claim lack factual and legal merit.

### E. KADAKIA HAS VALID CLAIMS ARISING FROM THE INDEMNIFICATION PROVISION IN THE 2015 TRANSFER AGREEMENT

Plaintiff does not challenge Kadakia's indemnification claim. Third-Party Defendants' arguments begin with another waiver argument' then the arguments range from the absurd (arguing Plaintiff is a party to an agreement that he expressly is not a party to) to the revisionist (rewriting the 2015 Transfer Agreement to say what they want it to say). All of these arguments are wrong.

On waiver, Paragraph 3(f) of the Kadakia Guaranty is not, as Third-Party Defendants contend "a broad waiver of any claims Kadakia might assert, including event future claims of indemnity against his co-guarantors and the borrower." As noted above, this argument (badly) misreads Paragraph 3(f) – it is an acknowledgement by

Kadakia that any claim, set-off or other rights that he may have against Tethys Trading, Plaintiff, or the other guarantors shall not release, discharge, or be a defense to Kadakia's obligations under the guaranty. In other words, Kadakia cannot avoid his own liability to Plaintiff by pointing to an indemnification.

Kadakia's indemnification claim is an affirmative claim against Third-Party Defendants to impose on them whatever liability Kadakia might have to Plaintiff, not a defense to Plaintiff's claim against Kadakia. Nothing in Paragraph 3(f) waives Kadakia's indemnification claims against the Third-Party Defendants. And even if it did, the only persons covered by the alleged "waiver" would be Plaintiff, Meyer, Finnegan, and Tethys Trading. Kadakia's claims against the other Third-Party Defendants that are parties to the 2015 Transfer Agreement would not be affected.

Third-Party Defendants' second argument eviscerates reality to say that Plaintiff is a party to the 2015 Transfer Agreement is contrary to both contract law and common sense. The notion that because Plaintiff consented to the 2015 Transfer Agreement as a member of Tethys Trading[1], Plaintiff's claim is not a "third party" claim covered by the indemnification provision is nonsensical. The parties to the 2015 Transfer Agreement are recited in its preamble and each defined as a "Party": Kadakia, Meyer, Finnegan, Tethys Trading, Tethys Biofuels, LLC, Tethys Latin America, LLC, Tethys Partners, LLC, Tethys Derivatives, LLC, and Tethys Energy, LLC. Plaintiff is not a "Party" and is

---

[1] More specifically, Plaintiff consented to the cross-purchase by Meyer and Finnegan of Kadakia's Tethys Trading membership units rather than a redemption of the units by Tethys Trading. The redemption would have increased Plaintiff's percentage membership interests in Tethys Trading.

not a signatory to the 2015 Transfer Agreement, no obligations are due from or owed to Plaintiff, and none of the provisions reach Plaintiff as a member of Tethys Trading.

Further, the 2015 Transfer Agreement does not reference or incorporate the Consent and Waiver, and the Consent and Waiver does not reference or incorporate the 2015 Transfer Agreement. Plaintiff's name does not even appear in the 2015 Transfer Agreement. That the Plaintiff's execution of the Consent and Waiver was required by the Tethys Trading limited liability company agreement to effect the transfers accomplished by the 2015 Transfer Agreement does not somehow interject all members of Tethys Trading, including Plaintiff, that may have executed consents as a "party" (or even not a "third party") to the 2015 Transfer Agreement. Nor is Plaintiff somehow a third-party beneficiary of the 2015 Transfer Agreement, as no rights of Plaintiff are expressly provided. *See May v. Mid-Century Ins. Co.*, 151 P.3d 132, 2006 OK 100 (One to whom, by the express terms of a contract, no obligation is due from its promisor, cannot qualify for the status of an intended or implied third-party beneficiary.)

The Third-Party Defendant's next argument that the indemnification provision in the 2015 Transfer Agreement does not include Kadakia's potential liability on the Kadakia Guaranty is likewise without merit. While the Third-Party Defendants make a self-serving attempt to rewrite the indemnification provision to include more favorable language for them, their attempt is refuted by the plain language of the unambiguous 2015 Transfer Agreement. The Third-Party Defendants indemnify Kadakia in his individual capacity, and the indemnification extends to "his successors and assigns."

Kadakia more than adequately pleads a claim against Third-Party Defendants to enforce his indemnification rights against each of the eight indemnitees (2 individuals and 6 entities). Plaintiff's claim against Kadakia is exactly the type of "third party" claim that the indemnification was intended to cover. The express terms and conditions of the 2015 Transfer Agreement in no way make Plaintiff a "Party" to defeat the "third party requirement" and Kadakia is fully indemnified in his personal capacity. Third-Party Defendants' arguments are contrary to express terms and conditions of the 2015 Transfer Agreement, and as such, their arguments in the nature of tortured contractual interpretation are wholly inappropriate on a motion under Rule 12(b)(6). Third-Party Defendants arguments do not have merit and the Court should deny its motion.

### F. Kadakia Adequately Pleads a Tortious Interference Claim

Third- Party Defendants' Motion does not offer any substantive arguments against Kadakia's tortious interference claim; it merely incorporates its incorrect arguments on Kadakia's declaratory judgment and indemnification. Plaintiff's Motion argues waiver and the alleged absence of Kadakia's explanation what existing right Plaintiff interfered with. Both arguments are incorrect as Kadakia more than adequately pleads a tortious interference claim against Plaintiff.

Plaintiff's waiver argument is the same as before – because Kadakia agreed in Paragraph 3(f) of the Kadakia Guaranty that he cannot raise as a defense any claim, set-off, or other rights he has against Plaintiff and thus waived the tortious interference claim. As discussed above, even if Paragraph 3(f) is characterized as a "waiver", it is only a waiver of defenses, not of claims.

Plaintiff's second argument – the absence of a pleading what agreement Plaintiff interfered with – shows that Plaintiff simply ignores the allegations in paragraphs 40 to 45 of the Amended Counterclaim and the reasonable inferences to be made from those allegations. Kadakia's pleadings in the Amended Counterclaim and the reasonable inferences therefrom identify the contract Plaintiff interfered with as the 2015 Transfer Agreement (see ¶¶ 42, 43, and 44), the acts of interference that were malicious and wrongful (see ¶¶ 41, 42, and 44), that the interference was not justified (see ¶¶ 42 and 43), and the interference proximately caused Kadakia damages (see ¶¶ 44 and 45).

Although beyond the scope and inquiry of Plaintiff's Motion to Dismiss, the evidence that supports these allegations is trickling in from the inadequate and deficient discovery responses from Movants. For example, see Exhibit B-1 to B-6 filed under seal in support of Kadakia's Reply Brief on Motion for Reconsideration. In particular, Exhibit B-5 of the unexplained transfers of $2.0 million to Tethys Capital out of the special, segregated Tethys Trading account that was designed to hold the funds loaned by Plaintiff or funds to be used in repayment of said loans (if not used in connection with margin requirements with respect to Tethys Trading's trades in "Distillate Light Ends" pursuant to the 2014 Promissory Note). The more than reasonable inference from Exhibit B-1 to B-5 is that Plaintiff allowed or caused the transfers to occur because they benefitted Plaintiff (and Plaintiff's financial interests in Tethys Entities that it was receiving by assignment by Meyer and Finnegan in return for Plaintiff's forbearance) and would harm Kadakia's interests, including his rights under the indemnification in the 2015 Transfer Agreement, which Plaintiff was aware of.

Kadakia's tortious interference claim may face certain challenges posed by Movant's inadequate discovery responses and Plaintiff's claim of privilege to shield the machinations by its lawyers that isolated and harmed Kadakia. But the Amended Counterclaim more than adequately pleads a tortious interference claim. The Court should deny Movants' motions to dismiss the claim.

### G. Kadakia Adequately Pleads a Civil Conspiracy Claim

Movants argue that the Court should dismiss Kadakia's civil conspiracy claim because of "waivers" in the Kadakia Guaranty and the acts Kadakia complains of are legal.

Movants' waiver argument here suffers the same problem discussed above – at most, Kadakia waived defenses, not affirmative claims to hold Movants responsible for their actions. Those claims of Kadakia are not prohibited by the Kadakia Guaranty, and are even contemplated by the jury waiver and damages limitations in the Kadakia Guaranty.

Further, Movants fail to address the direct connection that the conspiracy claim has to the issue of the **amount** for which Kadakia is potentially responsible under the Kadakia Guaranty (assuming that the 2014 Promissory Note is even in default). As noted above, Kadakia did not waive the right to a full and proper accounting as to his obligations under the Kadakia Guaranty. The conspiracy claim addresses wrongful transfers of assets away from Tethys Trading that should have been used to pay down the Promissory Note, and Kadakia has accordingly asserted conspiracy as an affirmative claim to establish those transfers as credits against his potential liability

under the Kadakia Guaranty. The waiver language in the Kadakia Guaranty does not preclude him from doing this.

As to Movants legality argument, Kadakia's Amended Counterclaim and Third-Party Complaint outlines the conspiracy at paragraphs 46 to 49. Movants of course deny any conspiracy and try to characterize their agreements and actions in furtherance of those agreements as entirely appropriate. As Kadakia pleads, however, Movants transferred assets (money) from Tethys Trading to other Tethys Entities; that money should have been used to pay Tethys Trading's obligations to Plaintiff.

Plaintiff had every opportunity as early as August 2017 if not earlier to demand that Third-Party Defendants use cash assets transferred and/or being transferred to pay down principal and interest obligations allegedly due to Plaintiff under the 2014 Note. Rather than demand and enforce such rights, Plaintiff consented to the transfers, instead electing to knowingly accept and enjoy the benefit of these wrongful transfers in furthering the value and opportunity of Tethys Entity interests of Meyer and Finnegan assigned to Plaintiff. All of this was agreed to and acted upon to the material detriment of Kadakia, whose liability to Plaintiff would be reduced were the diverted cash assets of Tethys Trading used to pay down Tethys Trading's obligations under the 2014 Promissory Note.

As Kadakia further pleads, Movants transferred other assets of Tethys Trading to Plaintiff or for its benefit; those assets also should have been used to satisfy Tethys Trading's obligations, which again would have reduced Kadakia's alleged liability to Plaintiff under the Kadakia Guaranty. And as Kadakia also pleads, by maintaining this

lawsuit to recover over $8.5 million from Kadakia (See Plaintiff's Complaint, Ex. "D") even though the 2014 Promissory Note is not in default, as admitted in the 2019 Workout Agreement, Movants are trying to extract from Kadakia obligations that are inaccurately computed and accounted for (in Exhibit "D" to the Complaint) and not legally due in any event. Third-Party Defendants' Motion proves the point that the Workout Agreement is structured to impose a greater obligation on Kadakia than he has under the Kadakia Guaranty – Meyer and Finnegan escape their guarantees after only $6.0 million is repaid.

The actions and agreements of Movants are unlawful as to Kadakia (and other creditors of Tethys Trading) because they shift assets away from Tethys Trading to other Tethys Entities. Plaintiff's attempt to hold Kadakia liable for $8.5 million is also unlawful when Plaintiffs knows not only that the 2014 Promissory Note is not in default, but also that even if it were in default, Plaintiff received over $1.2 million in cash payments of other valuable consideration provided to satisfy the Note.

The glimpse of the evidence in Exhibits B-1 to B-6 as referenced above shows that Kadakia's complaints are real and have merit. As a major creditor and member of Tethys Trading, Plaintiff is an insider conspiring with Third-Party Defendants to extract from Kadakia $8.5 million on a debt that is not due while not giving credit for significant payments or other value and leaving Kadakia stranded without any redress against the Third-Party Defendants under the indemnification provision of the 2015 Transfer Agreement.

Movants' actions and agreements are not those of an innocent creditor and well-meaning debtors, but conspirators in a scheme that, if successful, will yield Plaintiff more than it is entitled to under the 2014 Promissory Note and allow Meyer and Finnegan to skate on their guarantees while using capital misappropriated from Tethys Trading to fund their other business interests.

Similar to Kadakia's tortious interference claims, proof of the conspiracy claim will be difficult. But as alleged in Kadakia's Amended Counterclaim and Third-Party Complaint and reasonable inferences therefrom, as well as the facts uncovered thus far, Kadakia has plead a real claim that merits further inquiry and resolution by the trier of fact. The Court should dismiss Movants' Motions to Dismiss Kadakia's conspiracy claim.

### H. KADAKIA ADEQUATELY PLEADS A CLAIM FOR COMMON LAW OR EQUITABLE INDEMNIFICATION AND CONTRIBUTION

Third-Party Defendants' arguments against Kadakia's claim for common law or equitable indemnification and contribution misstates and ignores Oklahoma law and, again, overstates the effect of the "waivers" in the Kadakia Guaranty.

Third-Party Defendants' discussion of Oklahoma law of common law or implied indemnity in their Motion at section F, pages 11-12, confuses implied immunity generally with the principle that no right of indemnity exists between joint tortfeasors. They lift their legal discussion from *Guideone Am. Ins. Co. v. Shore Ins. Agency, Inc.*, 2011 OK CIV APP 69, 259 P.3d 864, 868, but leave out the court's important statement that implied indemnity may arise out of equitable considerations:

> Noncontractual indemnity is sometimes referred to as 'implied indemnity' and 'may arise out of a contractual or special relationship between parties and from equitable considerations.'" *Noble Steel, Inc. v. Williams Bros. Concrete Const. Co.*, 2002 OK CIV APP 66, ¶ 12, 49 P.3d 766, 770 (quoting *Central Nat'l Bank of Poteau v. McDaniel*, 1986 OK CIV APP 34, ¶ 9, 734 P.2d 1314, 1316).

As the court explained in *Central National Bank of Poteau v. McDaniel*, the right of indemnification exists in many other circumstances as stated in the Restatement of Restitution § 76 (1937), which provides:

> A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

Here, Kadakia plead facts that compel the application of these legal principles and entitle him to equitable indemnification from Meyer and Finnegan. As pleaded in the Amended Counterclaim and Third-Party Complaint at ¶¶ 50 to 52, Third-Party Defendants Meyer and Finnegan orchestrated the disposition and transfer of Tethys Trading assets that could have been used to reduce or retire the 2014 Promissory Note or to fund the operations of Tethys Trading.

Further, Meyer and Finnegan know that more than $1.2 million in cash and other value has been paid to Plaintiff, yet with their forbearance agreements obtained by the misappropriation of Tethys Trading assets, they are collaborating with a lender with whom they would be adverse in an arms-length scenario to shift liabilities to Kadakia that facts, law, and the equities compel that he not bear.

Third Party Defendants' waiver argument also fails. Nothing in the Kadakia Guaranty prevents Kadakia from asserting a claim for indemnification or contribution

against any party. Kadakia cannot, however, use his indemnification and contribution rights as a defense to his liability under the Kadakia Guaranty.

Third Party Defendants also contend that the prohibition against indemnity between joint tortfeasors extends to Kadakia's common law indemnification claim because, they argue, the Kadakia Guaranty provides that he is jointly and severally liable. This argument is incorrect and ignores the proper analysis of common law indemnification presented in *Guideone* and *McDaniel*. Those cases make clear that a common law indemnification claim "may arise out of a contractual or special relationship between parties and from equitable considerations" as Kadakia has plead. *McDaniel*, 734 P.2d at 1316.

Third-Party Defendants last argument concerns Kadakia's common law contribution claim. The Oklahoma Supreme Court has long recognized that co-guarantors have a common law right of contribution:

> The general rule appears to be that each co-obligor is required to contribute equally in discharging a common obligation in the absence of an agreement to the contrary.

*Brown v. Goldsmith*, 1968 OK 4, 437 P.2d 427, 428.

As the court held in *Brown*, the contribution should be in proportion to the amount of stock that the co-guarantor owned in the corporation. The court held that because the corporation was the debtor and the underlying debt was for the operation of a corporation, the equitable principle of contribution required the guaranty obligation to be imposed pro rata on the co-guarantors. Thus, under *Brown*, Kadakia has

a common law right of contribution against Meyer and Finnegan that is in proportion to the ownership interests that the three of them held in Tethys Trading.

Kadakia's contribution right is limited, however, "only if he paid more than his pro rata share of a debt which he was under a legal obligation to pay." *See Power v. Sullivan*, 1993 OK CIV APP 14, 852 P.2d 790, 792. But that is the point – Kadakia has a contribution right from Meyer and Finnegan in this action and is entitled to a judgment against them to recover the amount he pays in excess of his pro rata share, which is at least one-third, if not less given the conduct of Meyer and Finnegan to transfer assets away from Tethys Trading and conspire with Plaintiff to force Kadakia to pay $8.5 million while they (and Tethys Trading) pay nothing.

In summary, Kadakia adequately plead facts in his Amended Counterclaim and Third-Party Complaint that the Court should take as true (and they are, based on the limited evidence thus far), and deny Third-Party Defendants' Motion as to Kadakia's common law or equitable indemnification and contribution claim.

## II. CONCLUSION AND REQUEST FOR RELIEF

Kadakia's Amended Counterclaim and Third-Party Counterclaim more than adequately pleads factually and legally supported claims against Plaintiff and the Third-Party Defendants. The Court should deny Movants' Motions to Dismiss.

Respectfully submitted,

*/s/ Neil D. Kelly*

Evan G.E. Vincent, OBA #22325
CROWE & DUNLEVY, P.C.
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
evan.vincent@crowedunlevy.com

Neil D. Kelly (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
JPMorgan Chase Tower
600 Travis St, Houston, TX 77002
(713) 220.4198
(713) 220.4285 (Facsimile)

**ATTORNEYS FOR DEFENDANT RUCHIR A. KADAKIA**

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

R. Brent Blackstock
Lacey L. Shirley
Mid-Continent Tower, Suite 500
401 South Boston Avenue
Tulsa, OK 74103
ATTORNEYS FOR R.P. SMALL CORP.

R. Richard Love III
Madison Mosier
4000 One Williams Center
Tulsa, OK 74172
ATTORNEYS FOR THIRD-PARTY DEFENDANTS

*/s/ Neil D. Kelly*
Neil D. Kelly