**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **R.P. SMALL CORP.,**<br>**Plaintiff,**<br>**v.**<br><br>**RUCHIR A. KADAKIA,**<br>**Defendant**<br><br>**and**<br><br>**RUCHIR A. KADAKIA, individually and on behalf of Tethys Trading,**<br>**Counterclaimant and Third-Party Plaintiff,**<br><br>**v.**<br><br>**R.P. SMALL CORP.,**<br>**Counterclaim Defendant,**<br><br>**and**<br><br>**JOHN E. MEYER, JR.; et al.,**<br>**Third-Party Defendants.** | **CASE NO. 19-CV-271-CVE-JFJ** |

**R.P. SMALL CORP.'S REPLY TO KADAKIA'S RESPONSE TO**
**<u>PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS</u>**

Plaintiff R.P. Small Corp ("RPS") for its Reply to Kadakia's Combined Response to Third-Party Defendants' Motion to Dismiss Verified Amended Counterclaim and Third-Party Complaint, and Brief in Support and Plaintiff's Motion to Dismiss Counterclaims (Dkt. 85) states as follows:

Kadakia would characterize the Plaintiff, RPS, and Third Party Defendants together as "Movants;" however, RPS and Third Party Defendants have differing and, in fact, directly opposing objectives, especially with regard to Kadakia's counterclaims against RPS and his third party claims against Meyer and Finnegan. RPS takes no position on the validity of Kadakia's third

party claims. In fact, if Kadakia's Second and Fifth Causes of Action for indemnity by Meyer and Finnegan were resolved in his favor, the result could actually benefit RPS by adding an Order of indemnification to the existing rights RPS already has under each guaranty. Each reference by Kadakia to "Movants" obfuscates the differing rights and responsibilities he has with respect to each of them. Kadakia owes full and prompt payment to RPS, who owes Kadakia nothing. Meyer and Finnegan owe RPS the same thing and they may owe Kadakia an indemnification as well. Although Plaintiff and Third Party Defendants seek to dismiss Kadakia's claims in their Motions to Dismiss, this facial similarity nether requires nor results in a "coordinated effort...to wrongfully shift liabilities under the 2014 Promissory Note to Kadakia."

While Kadakia may well have sought to shift his liability under the guaranty, he failed to do so. Until the Promissory Note is paid in full, all guarantors remain liable because each of them executed an "unconditional" Guaranty that promises "full, prompt" payment of the balance owed plus interest. Neither Kadakia nor the Third Party Defendants can deny that without prompt payment of the amount owed on the Promissory Note, they failed to satisfy their primary obligation to RPS.

Kadakia states "Movants' concerted actions have harmed Kadakia by "hiding the agreed-to (in the 2019 Workout Agreement) absence of an Event of Default of the 2014 Promissory Note and "failing to account for cash and other consideration provided to Plaintiff, while leaving Kadakia without redress to enforce his indemnification rights." Kadakia's Response, Dkt. 85, pp. 5-6. Nothing in the Workout Agreement eliminates any of Kadakia's rights or obligations. He is still responsible for prompt payment of the amount owed. Under the broad terms of the guaranty agreement he signed, he agreed that RPS had the right to pursue payment from any or all of the guarantors or the borrower. Finnegan and Meyer negotiated with RPS to obtain a delay in payment

in return for additional commitments to RPS. Kadakia, on the other hand, has refused to accept any responsibility for payment. His complaint about shifting liabilities is indeed ironic in that he is the only one of all persons liable on the Note who has paid nothing and is actually attempting to shift liability to others. Even if it were true that Meyer and Finnegan have wronged him, their conduct is irrelevant to Kadakia's obligations under the Guaranty and do not impact RPS's rights to collect. Kadakia's allegations must meet the 12(b)(6) standards and cannot because he waived all rights to defenses and claims against RPS and does not meet the elements for torts claims. The Borrower's Obligations are due and owing and Kadakia's time is up. Kadakia's obligations to RPS have no bearing on any indemnification rights Kadakia may seek from Third Party Defendants.

Therefore, in direct response to Kadakia's bullet points, RPS states:

- The issue of indemnification is between Kadakia and the Third Party Defendants and has nothing to do with RPS.

- An event of default did occur in 2014, 2015, 2016 and again in 2017 and remains in default for purposes of Kadakia's Personal Guaranty. RPS sent a Demand Letter to Tethys Trading, LLC shortly before instigating the present litigation. Tethys Trading, LLC was notified of its default and its default continues to this day. For purposes of this motion, even if one were to assume Kadakia received no notice of default, lack of notice of default is not relevant to Kadakia's Counterclaims, nor is it a defense to RPS's claims and should have no bearing on a Motion to Dismiss. If RPS chooses to toll the "default" in order to work out a settlement agreement with other guarantors or the Borrower, it in no way affects Kadakia's obligations under his own Guaranty and RPS's right to do so was retained in the 2019 Workout Agreement.

- Kadakia does not adequately plead a tortious interference claim as explained more fully in Plaintiff's Motion to Dismiss. To tortiously interfere with Kadakia's indemnification rights "by way of …transfers of Tethys Trading assets to other Tethys Entities[1]," those transfers would have had to occur *after* the 2015 Transfer Agreement was entered into and be "malicious and wrongful" and "neither justified, privileged nor excusable." *See Hawk Enters v. Ash Am. Int'l, Inc.*, 2012 OK CIV APP 66, ¶ 12, 282 P.3d 786. None of these factors occurred. The transfers Kadakia alleges occurred while he was still CEO and before the 2015 Transfer Agreement. Any transfers that occurred thereafter were solely RPS's attempts to recover what he loaned to Tethys, therefore, justified and excusable, not done

[1] Kadakia's Response, p.4.

maliciously and not wrongful. The claims are invalid and should be dismissed.

- Kadakia does not adequately plead a conspiracy claim against RPS. A conspiracy involves unlawful acts. Nothing Kadakia has pled indicates that RPS acted in any way "unlawfully."

For these reasons, RPS's Motion to Dismiss should be granted and Kadakia's counterclaims should be dismissed.

## PROCEDURAL ISSUES

Although Kadakia filed a Motion for Leave to file an Amended Counterclaim (Dkt. 67), he also filed the Amended Counterclaim (Dkt. 66) knowing the Court should grant leave first. RPS had no choice but to either answer or file a motion to dismiss to the Amended Counterclaim (Dkt. 66). Therefore, to call RPS's Motion to Dismiss "procedurally premature" is incorrect.

## RPS'S REPLY TO KADAKIA'S "FACTUAL" STATEMENTS

Even if Kadakia's version of the facts[3] were true they do not give rise to valid counterclaims against RPS. Kadakia waived his ability to bring any claims against RPS related to collection of the balance under the Personal Guaranty. Second, any tort claims must also rise to the 12(b)(6) standard, and Kadakia's claims fail as shown in RPS's Motion to Dismiss. "The absence of an essential element of any claim or defense is fatal to the claim or defense." *Barringer v. Baptist Healthcare*, 2001 OK 29, 21, 22 P.3d 695, 700. Kadakia's torts claims fail to assert allegations that give rise to all of the elements of the claims as pointed out in RPS's Motion to Dismiss. The factual issues that RPS contests in Kadakia's Combined Response (Dkt. 85) are also raised in Kadakia's summary judgment motion. RPS will save its response to those factual contentions in its response to Kadakia's motion for summary judgment.

[3] Kadakia Brief, pps. 4-8.

## ANALYSIS

### A. Waiver

"Waiver" as defined in *Barringer* "is the voluntary and intentional relinquishment of a known right." *Id*. at ¶22. Further, the court in *Barringer* points out that "the doctrine [of waiver] is essentially a matter of intention focusing on the intent of the party against whom waiver is asserted." *Id*. In *Barringer*, the Court was considering whether the hospital defendant's claims for contribution from physician plaintiff were waived where there was no contract defining the rights of the parties. Contrary to the facts here, Kadakia entered into a contract guaranty that waived his ability to assert both claims and defenses relating to the Guaranty. Kadakia's assertion that he never waived rights to separate tort claims or that he never waived his right to assert later claims based on future wrongful conduct of RPS is incorrect. The language of the Guaranty states that Kadakia "irrevocably waives any and all statutory, contractual, common law, equitable or other claims and rights." Guaranty, ¶7 and this Court's Order in Dkt. 65, FN 2. Further, the Guaranty states the Kadakia "guarant[eed] the full, prompt and unconditional payment when due." Guaranty, ¶ 1. Kadakia intentionally agreed to an "unconditional" guaranty. Nothing in Kadakia's response refutes either the Court's finding or his unconditional guaranty of prompt payment.

Kadakia states "Movants *never* argued waiver in the first round of attacks by motions to dismiss Kadakia's claims in the Fall of 2019." RPS has previously objected in this Reply to being characterized as a joint "movant." RPS did not discuss waiver because it did not participate in the "first round of attacks." RPS did not file a Motion to Dismiss until it filed Dkt. 79. This argument is inapplicable to RPS.

### B. Nonpayment is an Event of Default

On May 17, 2019, RPS mailed demand letters to Tethys Trading, Meyer, Finnegan and

attempted to mail one to Kadakia noting that Tethys Trading was in default, to pay amount due plus interest in full or litigation would be enacted to collect. Tethys, Meyer and Finnegan responded to work out a settlement; Kadakia remained absent and silent as he has from the beginning. Default occurred; default has never been cured. Kadakia's attempts to misconstrue the true meaning and intent of the parties to the 2019 Workout Agreement as well as attempts to misconstrue the language in the Guaranty to, again, skirt his obligations under the Guaranty is simply wrong.

Kadakia states that he has a "right" for the court to determine whether an Event of Default has occurred – i.e. the declaratory judgment cause of action. At the same time, Kadakia does not dispute that Tethys Trading has never paid the balance due on the Note. RPS notified the Borrower of its Default; the Borrower has never paid. Why would RPS have entertained and entered into the 2019 Workout Agreement but for an event of default? Just as in the cases cited by Kadakia[4], (except for *Borges* where no default occurred at all)[5], the Borrower, here, also never paid the balance due and owing on the Promissory Note, and all of the guarantors were held by the courts to their obligations under the guaranties as should Kadakia. Further, the irony of the former CEO

---

[4] *See JPMorgan Chase Bank, N.A. v. Specialty Restaurants, Inc.*, 2010 OK CIV 65, 243 P.3d 8 (restaurant failed and bank foreclosed, having never paid the full balance which enacted the guarantors' obligations); *Founders Bank and Trust Co. v. Upsher*, 1992 OK 35, 830 P.2d 1355, 1362, 1363 ("[T]he legal effectiveness of a guaranty is not dependent on the continued existence of the principals debt. Rather, it is co-extensive in its breadth and sweep with the terms of the guarantor's enforceable promise," where the Borrower defaulted and the bank foreclosed on a mortgage guaranteed by several co-guarantors, and the court held that the guarantors remained liable for "a fixed percentage of the guaranty-debt judgment although the principal's debt may be eligible for reduction." The Court also held that "Where there is joint and several liability…a judgment creditor may pursue all possible avenues of recovery simultaneously until the judgment is satisfied. The possibility of collecting a judgment's unpaid balance from other jointly liable does not diminish a judgment debtor's present liability for the full amount of the unsatisfied balance." Just as here, RPS is pursuing alternative avenues of recovery: one avenue via the 2019 Workout Agreement and another avenue via this lawsuit. Neither of these avenues are in contradiction of an event of default by Tethys Trading, LLC.); *Riverside Nat'l Bank v. Manolakis*, 1980 OK 72, ¶8 (where the court declined to allow "the legal effectiveness of guaranty" to "be made totally dependent on the continued existence of the principal debt rather than regarded as co-extensive in its breadth and sweep in terms of the guarantor's valid and hence enforceable promise.")

[5] In *Borges v. Waller*, the Lender sued the Guarantor to have Guarantor pay the difference in a renegotiated lease agreement where the Borrower was paying less than the original lease amount. The court rightfully held that because the Borrower had not defaulted, the guarantor's responsibilities under it were not enacted. Here, there is no question that Tethys never paid the balance due on the Note.

of Tethys Trading, Kadakia, claiming that there was no default when, the entire purpose of his 2015 Transfer Agreement was to attempt to avoid liability for that very default is ludicrous. Kadakia's cite to *Kissee* conveniently leaves out the implications of the duties of a guarantor under an absolute and unconditional guaranty to ensure the Note is paid in full.[6] Kadakia never contacted RPS to coordinate in anyway the repayment of the Tethys' Promissory Note nor did Kadakia ever put pressure on Meyer or Finnegan to see that RPS was re-paid. Kadakia's counterclaims are irrelevant and the 2019 Workout Agreement has no bearing on his obligations; therefore, Kadakia's claims for a declaratory judgment are invalid and should be dismissed.

**C. Indemnification**

As Kadakia stated on p. 14, RPS does not challenge Kadakia's indemnification claim. In fact, if it would assist Kadakia in honoring his guaranty, RPS would support it. Kadakia's theory that Movants are joined in a conspiracy are unsupported by the record, and all of Kadakia's arguments relating to the 2015 Transfer Agreement are irrelevant to RPS.[7]

**D. Tortious Interference.**

Kadakia's contention that the waiver in Paragraph 3(f) "is only a waiver of defenses, not of claims"[8] contradicts the plain language of the document. In that paragraph Kadakia waived:

(f) the existence of any claim, set-off or other rights which the Guarantor may have at any time against the Borrower, any other guarantor of any of the Borrower's Obligations, the Lender or any other person, whether in connection herewith or in connection with any unrelated transactions;

Quite obviously, the waiver is not limited to defenses. It waives "any claim" Kadakia may have against RPS as Lender.

[6] "[T]he duty is upon the guarantor to see that his contract of guaranty is fulfilled, and that the obligations of the principal are discharge[d] [sic] at maturity." *First Nat'l Bank & Trust Co. v. Kissee*, 1993 OK 96, ¶ 14.
[7] Kadakia Brief, pps. 14-17.
[8] Kadakia Brief, p. 17.

Even if the waiver is ineffective, the counterclaim does not satisfy the requirements of FRCP 12(b)(6). Kadakia is correct to state that Paragraph 44 of the Amended Counterclaim (Dkt. 66) identifies the Transfer Agreement as the contract that was supposedly involved, and indemnification as the right that was supposedly interfered with, but merely stating that RPS's actions were "tortious" is exactly the kind of conclusory allegation that fails to state a claim. *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991). To be tortious, RPS's actions must be malicious and wrongful, and none of them were. Consequently, Kadakia's allegations are vague and conclusory and made merely "upon information and belief"[9]. Kadakia claims RPS's principal knew of unspecified wrongful transfers of assets by Tethys Trading which resulted in "financial, economic and/or equity benefits of some form in or with respect to one or more of the entities directly or indirectly receiving the transferred assets of Tethys Trading." It is undisputed that as a minority owner of Tethys Trading, RPS could not have stopped any transfers undertaken by Meyer and Finnegan, who had undisputed control of Tethys Trading. Furthermore, RPS had no obligation to Kadakia to attempt to intervene, even if it could have.[10] Moreover, any benefit to RPS from these supposed transfers would have inured to Kadakia's benefit by reducing the amount Kadakia owed on his Guaranty. Kadakia is attempting to disguise the failure of his business enterprise as someone else's tortious act. The transfers were appropriate because the assets of Tethys Trading are not Kadakia's property, nor does he own an interest in them either directly or indirectly. Decisions about Tethys assets made by Finnegan and Meyer, who did have the lawful right to control them, might be unwise or foolish, but they are not tortious.

Any efforts by RPS to collect what was owed, even by acquiring ownership, would not

[9] Kadakia Amended Counterclaim, Paragraph 41.
[10] *See Kissee* at ¶ 28 (outlining and refuting guarantor's contention that the bank [Lender] had any obligation to inform guarantor of issues relating to the Borrower's indebtedness.).

hamper Kadakia's indemnification, but had any financial benefits or payments been received it would have reduced Kadakia's obligations under the Guaranty. However, $1.2 million payments would only reduce the balance due by Tethys, not create a counterclaim by Kadakia. This allegation does not give rise to a claim of "tortious interference" for RPS would have had to maliciously intended to harm Kadakia, when, in fact, RPS was simply trying to collect what it was owed as indicated by the emails found in Exhibits B-1 to B-6. Kadakia's claims of tortious interference are not valid and should be dismissed.

**E. Conspiracy**

Kadakia does not deny that his claims of civil conspiracy must be about unlawful activity. Kadakia claims in conclusory fashion that RPS participated in unlawful activity, but the only activity he can identify is the legal transfer of Tethys assets by Tethys management to Tethys affiliates. The Motion to Dismiss called out Kadakia's lack of a claim about any act that was, in fact, unlawful. Even if true, Kadakia's allegations that RPS consented to transfers of Tethys Entity interests of Meyer and Finnegan assigned to Plaintiff, do not give rise to a valid claim of conspiracy. Only if the transfers were somehow "unlawful" would it give rise to a valid conspiracy claim. Kadakia may not escape a motion to dismiss with a conclusory statement that these transfers were somehow "unlawful." RPS acted only to recover its losses under the Promissory Note as shown in the emails in Exhibits B-1 to B-6 filed under seal by Kadakia. Any issues related to indemnification are between Kadakia and the Third Party Defendants, cannot be a conspiracy because it is not unlawful, and have no bearing on Kadakia's obligations to RPS under the Guaranty.

## CONCLUSION

RPS's Motion to Dismiss adequately points out the factual and legal issues with Kadakia's

Amended Counterclaims. The issues Kadakia raises in its Response still do not adequately show that his claims are valid. Kadakia waived his right to bring claims under the Guaranty and Kadakia fails to provide facts that give rise to valid torts claims. Kadakia's Amended Counterclaims should be dismissed.

Respectfully submitted,

By: /s/ Lacey L. Shirley
R. Brent Blackstock, OBA No. 00839
Lacey L. Shirley, OBA No. 33269
401 S. Boston Ave., Suite 500
Tulsa, OK 74103
(918) 383-0777, (918) 699-0325 (fax)
lacey@brentblackstock.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE BY ECF

I hereby certify that today I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to counsel of record.

By: /s/ Lacey L. Shirley
Lacey L. Shirley