**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **R.P. SMALL CORP.,**<br>**Plaintiff,**<br>**v.**<br><br>**RUCHIR A. KADAKIA,**<br>**Defendant**<br><br>**and**<br><br>**RUCHIR A. KADAKIA, individually and on behalf of Tethys Trading,**<br>**Counterclaimant and Third-Party Plaintiff,**<br><br>**v.**<br><br>**R.P. SMALL CORP.,**<br>**Counterclaim Defendant,**<br><br>**and**<br><br>**JOHN E. MEYER, JR.; et al.,**<br>**Third-Party Defendants.** | ) | **CASE NO. 19-CV-271-JFH-JFJ**<br><br>redacted version |

**PLAINTIFF/COUNTER DEFENDANT R.P. SMALL CORP.'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff R.P. Small Corp. for its Motion for Summary Judgment states as follows:

**STATEMENT OF UNDISPUTED FACTS**

1. Plaintiff R.P. Small Corp. ("RPS" or "Lender") filed a Complaint (Dkt. 001) to enforce the terms of a Guaranty Agreement (the "Guaranty") by Defendant Ruchir Kadakia ("Kadakia") of the repayment of a Promissory Note (the "Note") executed by Tethys Trading, LLC ("Tethys" or "Borrower"). The Guaranty and Note are attached as Exhibits A and B to the Complaint and to this motion.

2. As alleged in the Complaint at ¶ 7 and admitted by Kadakia in his Amended Counterclaim (Dkt. 66) at ¶ 16, on or around March 14, 2014, Tethys and RPS entered into a Promissory Note ("Note"), dated March 27, 2014. *See* Exhibit B.

3. As alleged in the Complaint at ¶ 8 and admitted by Kadakia in his Amended Counterclaim at ¶ 18, Kadakia executed the Guaranty. Dkt. 66, at ¶ 18. *See* Exhibit A, executed Guaranty.

4. Kadakia made certain commitments to RPS as stated in this snapshot of ¶ 1 of the Guaranty:

1. The Guarantor hereby irrevocably guaranties the full, prompt and unconditional payment when due, of the Borrower's Obligations due and owing to the Lender, when and as the same shall become due, whether at the stated maturity date, by acceleration or otherwise, and the full, prompt, and unconditional performance of each and every term and condition of any transaction to be kept and performed by the Borrower under the Note. This Guaranty Agreement is a primary obligation of the Guarantor and shall be a continuing inexhaustible Guaranty Agreement. In the event any of the Borrower's Obligations shall not be paid or performed according to their terms, the Guarantor shall immediately pay or perform the same, this Guaranty Agreement being an absolute, irrevocable and unconditional guaranty of full payment and performance and not a guaranty of collection.

5. Kadakia expressly waived certain defenses as set forth in this snapshot of ¶ 2 of the Guaranty:

2. The Guarantor waives all defenses based upon surety or impairment of collateral, including without limitation, any actions or defenses identified generally or specifically under the Uniform Commercial Code or other body of law governing sureties or guarantors, waives notice of acceptance of this Guaranty Agreement and notice of any of the Borrower's Obligations to which it may apply, and waives notice of default, non-payment, partial payment, presentment, demand, protest, notice of protest or dishonor and all other notices to which the Guarantor might otherwise be entitled, or which might be required by law and required to be given by the Lender.

6. As of the current date, Tethys never paid the balance due and owing on the Promissory Note. The amount owed is set forth in the Affidavit, attached hereto as Exhibit C, of Kenneth Klingenberg, an independent CPA and the expert witness for RPS who verified the amount due.

7. Kadakia, as Guarantor, must pay the balance of the Promissory Note as obligated by his execution of the Personal Guaranty.

8. Per the very terms of the Note, Guaranty and December 19, 2019 Settlement Agreement ("Agreement"), attached hereto as Exhibit E, between RPS and Meyer, Finnegan and Tethys, RPS has the right to collect the full and prompt payment from the Kadakia, despite any settlements, set-offs or other arrangements with the Borrower or guarantors.

## STATEMENT OF THE CASE

This Court is familiar with the basic facts of Plaintiff's case as set forth on page 2 of the Opinion and Order (Dkt. 65). In that Order, the Court ruled on the Motions at Dkt. 19 and 42 and dismissed Kadakia's Third Party Complaint (Dkt. 13), and the counter claims of third party defendants (Dkt. 21). At this point, only Plaintiff RPS and Defendant Kadakia have existing claims, specifically the single cause of action in the Complaint at Dkt. 1 by RPS to enforce the guaranty and the counterclaims by Kadakia in the Amended Counterclaim at Dkt. 66.[1]

Kadakia admitted the facts alleged by RPS in its Complaint. No fact is alleged in the Amended Counterclaim that would defeat the enforceability of Kadakia's commitments to RPS. Instead, Kadakia's defense is a conspiracy theory and assertion that Tethys is not in default. He claims, "upon information and belief," that RPS conspired with Meyer, Finnegan and Tethys to receive "financial and/or equity interests." According to Kadakia, RPS's alleged acquisitions "were known misuses of Tethys Trading's assets to benefit Meyer and Finnegan to the detriment of Kadakia." However, these transfers happened under the watchful eye of Kadakia while he was CEO. If they were somehow improper, then Kadakia could have intervened at that time. In

[1] Although, Kadakia submitted an Amended Third Party Complaint and Counterclaims, Dkt. 66, the Court has not granted Kadakia's Motion for Leave to Amend, Dkt. 67. However, the Court's Order, Dkt. 65, may have granted Kadakia leave to file an amended counterclaim, but RPS prefers clarification on the pending Motion for Leave.

addition, the "benefits" RPS received were only in exchange for monies due and owing on the Tethys Note and in no way a financial benefit, but simply the tiny recovery of a substantial loss, that has still not been fully recovered to date. Hence, RPS instigated this very litigation.

Under Kadakia's conspiracy theory, RPS conspired with others to defraud itself and the other creditors of Tethys by placing its assets beyond their reach. As this Court determined, whether or not the dismissed parties did in fact conspire to carry out alleged the "wrongful scheme" is not within the scope of this Case as limited by Rule 14. Nevertheless, the Court is obligated to consider all relevant evidence bearing on RPS's claim under the guaranty and any defenses that have not been waived by Kadakia.

The language in the Guaranty is intended to cause the guarantor to waive all defenses to a claim for repayment by the lender. By signing the Guaranty, Kadakia in ¶ 1 irrevocably guaranteed payment and in ¶ 2 waived "all defenses based upon surety or impairment of collateral." In ¶ 3, Kadakia promised that his obligations were "unconditional and absolute" and without limitation would not be affected by, among many other things:

- (c) the release or surrender, with or without consideration, of any collateral, including the $6,000,000 lent by RPS to Tethys, (e) "any change in the structure or ownership of [Tethys]",
- (f) the existence of any set-off or rights Kadakia may have against:
  - Tethys (the Borrower),
  - Meyer or Finnegan (the other guarantors),
  - RPS (the Lender)
  - "**or any other person, whether in connection herewith or in connection with any unrelated transactions,**" or

- (l) "**any other act or omission to act or delay of any kind by**
    - **[Tethys] the Borrower)…**
    - **[RPS] (the Lender)**
    - **or any other person" -** such as the co-conspirators –
- **"or circumstance whatsoever,"-** such as the alleged 'unlawful acts'**- "which might, but for the provisions of this Section constitute a legal or equitable discharge of the Guarantor's obligations hereunder**."

The purpose and intent of this language is obvious.[2] It is intended to defeat the defenses raised by Kadakia against his liability on the Guaranty he signed.

**ARGUMENTS AND AUTHORITIES**

The purpose of summary judgment is to provide prompt, efficient and inexpensive means of disposing of an action that has no legally sufficient basis. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). District courts are accorded wide latitude in assessing the sufficiency and quantity of evidence offered in support of a summary judgment motion in determining whether there is an absence of genuine issue of material fact. *See id.; see also Matsushita elec. Indus. Co. Ltd. V. Zenith Radio Corp.*, 475 U.S. 574 (1986). A party opposing a motion for summary judgment cannot rest upon mere allegations or denials in its pleadings and instead must set forth specific facts showing there is genuine issue for trial. *Id*. The opponent must do more "than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586.; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Thus, where, as here, the evidence establishes that there is no genuine material issue of fact and the moving party should prevail as a matter of law, summary judgment should be granted.

---

[2] The Guaranty was actually drafted by Jay Chandler, then counsel for Meyer, Finnegan and Kadakia.

### A. RPS IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW.

The Guaranty states: "This Guaranty Agreement shall be governed by and construed in accordance with the laws of the State of Oklahoma…" Exhibit A at ¶ 13. Under Oklahoma law, a "guaranty" is defined as "a promise to answer for the debt, default or miscarriage of another person." OKLA. STAT. tit. 15, § 321. In addition, "guaranty agreements are construed most strongly against the guarantor." *JPMorgan Chase Bank, N.A. v. Specialty Restaurants, Inc.*, 2010 OK 65, ¶9, 243 P.3d 8. In Oklahoma, guaranties are construed under the rules of contract construction. "[T]he independent nature of guarantor's obligation is wholly contractual. Thus, our inquiry must 'focus on the precise terms of the guarantor's undertaking – the dimension or breadth of the promise.'" *First Nat'l Bank & Trust v. Kissee*, 1993 OK 96, ¶ 13, 859 P.2d 502.

> When the language of a written contract is complete, unambiguous and free from uncertainty as to the parties' intentions, parole evidence of prior representations, contemporaneous agreements or understandings tending to change, contradict or enlarge the plain terms of the written contract are inadmissible. As a general rule of law, 'whether a contract is ambiguous to require extrinsic evidence to clarify the ambiguity is purely one of law for the court, and the construction of an unambiguous contract is a matter of law for the court.'

*Id.*

"A guarantor has a collateral obligation which is independently and separately enforceable from that of the principal debtor or obligor. Under Oklahoma law a guarantor is secondarily liable. His obligation is conditioned upon default by the principal debtor or obligor." *Lum v. Lee Way Motor Freight*, 1987 OK 112, ¶ 13, 757 P.2d 810, 814.

In Oklahoma, guaranties, such as the Guaranty that Kadakia executed, are construed using contract rules of construction. Additionally, guaranties are construed against the guarantor and construed based on the "precise terms…of the promise." Here, Kadakia indisputably executed a Personal Guaranty in order to receive funds for Tethys. The Guaranty states:

> [Kadakia] hereby irrevocably ***guaranties the full, prompt and unconditional payment when due, of [Tethys'] Obligations due and owing to [RPS],… and the full, prompt, and unconditional performance of each and every term and condition of any transaction*** to be kept and performed by [Tethys] under the Note. This Guaranty Agreement is a primary obligation of [Kadakia] and shall be a continuing inexhaustible Guaranty Agreement. In the event any of [Tethys'] Obligations shall not be paid or performed according to their terms, [Kadakia] shall ***immediately*** pay or perform the same, this Guaranty Agreement being an absolute, irrevocable and unconditional guaranty of full payment and performance and not a guaranty of collection. (emphasis added).

Kadakia's Personal Guaranty, Exhibit A, ¶ 1.

According to the precise terms of the Guaranty, Kadakia agreed to "full, prompt, and unconditional performance" of Tethys' Obligations. Tethys failed to meet its obligations in the Promissory Note. As a result, Tethys is in default, prompting the condition needed to hold the guarantor (Kadakia) "secondarily liable." The mechanism of Tethys's default engages the obligations of the Personal Guaranty wherein Kadakia agreed to be "jointly and severally obligated." Personal Guaranty, Exhibit A, ¶ 17. As a matter of law, RPS's Motion for Summary Judgment should be granted.

### B. Tethys is Undisputedly in Default.

John E. Meyer, Jr., principal for Tethys Trading, LLC, executed a Promissory Note to R.P. Small Corp on March 27, 2014. The Note states: "Principal and all accrued and unpaid interest shall be due and payable on or before March ___, 2015[3] (hereafter the "Maturity Date.")." Exhibit B. The Note continues,

> If (a) any payment required by this Note is not made within five (5) business days after the due date and receipt by Maker of Notice from payee…Payee may, at its option, without further notice or demand, declare this Note in default and all indebtedness due and owing hereunder shall be due and payable immediately.
> Note, Exhibit B, p.2.

[3] Though this was left blank, it was the parties' understanding that the "Maturity Date" was exactly one year from the date of execution, which would be March 27, 2015.

In March 2015, Tethys had only made small interest payments on the Note and requested an extension which RPS granted. This extended the Maturity Date to March 27, 2016. Tethys continued making small interest payments in 2016. At no time did Tethys ever pay the Note in full. As such, the Payee, RPS declared the Note in default in March 2017. Kadakia, as guarantor, never made any payments nor paid the Note in full.[4]

Kadakia attempts to renege on his obligations under the Guaranty based on the December 19, 2019 Agreement made between RPS, Meyer, Finnegan and Tethys. This Agreement states in ¶ 9 that "[redacted]." Exhibit E. However, the Agreement also states:

> [redacted]

Agreement, Exhibit E, Recital C.

Under the unconditional terms of the Guaranty, Kadakia waived any defenses based on the existence of a claim or any settlement RPS might make with Tethys or a co-guarantor. Additionally, the Agreement reserved RPS's right to continue to collect on the defaulted Promissory Note, and finally, the Promissory Note itself provides RPS with the same right to continue to collect from any one of the guarantors or the borrower while also making outside agreements, settlements or set-offs against the same.[5] RPS is broadly protected through the language of the three contracts at play.

---

[4] The bank statements for RPS that indicate the interest payments it received from Tethys were filed under seal as Exhibit 2 to RPS Response to Kadakia's Motion for Summary Judgment, Dkt. 96.

[5] The Promissory Note states: "Payee [RPS], from time to time, may waive or surrender, either in whole or in part, any rights, guarantees, security interests or liens given for the benefit of Payee in connection with payment of this

None of the parole evidence Kadakia puts forth in his Amended Counterclaim[6] are admissible: "When the language of a written contract is complete, unambiguous and free from uncertainty as to the parties' intentions, parole evidence of prior representations, contemporaneous agreements or understandings tending to change, contradict or enlarge the plain terms of the written contract are inadmissible." *First Nat'l Bank & Trust* at ¶ 13. The new 2019 Agreement has absolutely zero bearing on Kadakia's obligations under the Guaranty. Kadakia waived all defenses. Because of the waiver's in the Guaranty, and Kadakia admitted to executing the Guaranty, there are no issues of material fact and RPS's Motion for Summary Judgment should be granted.

### C. KADAKIA UNDISPUTEDLY SIGNED THE PERSONAL GUARANTY.

On March 24, 2014, Ruchir Kadakia executed a Personal Guaranty in favor of R.P. Small Corp. Kadakia's signature is on the Guaranty. Kadakia admits in the pleadings that he executed the Guaranty. Dkt. 66, ¶ 18. Tethys defaulted on the Promissory Note which is guaranteed by the Guaranty Agreement executed by Kadakia. Even if Tethys has entered into workout agreement with RPS after its default, Kadakia is still obligated under the Guaranty and cannot assert any claims because he waived his right to do so. There is no issue of material fact that Kadakia executed the Guaranty. There is no issue of material fact that Tethys never paid back the $6 million loan it received from RPS. Tethys is in default and the Guarantor, Kadakia, is obligated to full and prompt performance of the loan. As such, RPS's motion for summary judgment should be granted.

---

Note or any security therefor; but no such occurrence shall in any manner affect, limit, modify or otherwise impair any rights, **guaranties**, or security of Payee not specifically waived, released or surrendered in writing, nor shall any maker, guarantor, endorser, or any person who is or might be liable hereon, either primarily or contingently, be released from liability by reason of the occurrence of any such event. **Payee, from time to time, shall have the unlimited right to release any person who might be liable hereon, and such release shall not affect or discharge the liability of any other person who is or might be liable hereon.** (emphasis added).

[6] Kadakia asks for a declaratory judgment in the First Count as to the "Legal Effect of the December 19 Agreement;" however, since this suit is in regards to his unconditional obligations under the Guaranty, his attempts to introduce parole evidence that might affect his obligations are inadmissible.

### D. Kadakia Waived All Potential Claims Against Lender RPS and Borrower Tethys.

When Kadakia executed the Personal Guaranty, he waived all claims against not only RPS, but also against Tethys. This Court noted Kadakia's waivers in Footnote 2, Dkt. 65. Kadakia has no defense having agreed to "the full, prompt and unconditional payment when due." Kadakia cannot, per the terms of the Guaranty, subrogate his obligations to that of Tethys or any other guarantor. In effect, just as the Guaranty states, Kadakia is individually liable – "jointly and severally" – for all obligations under the Guaranty. Kadakia cannot wiggle out of this obligation. As such, RPS's motion for summary judgment on both its claims and in defense of the counterclaims asserted by Kadakia should be granted.

### E. Kadakia Owes the Entire Balance; However, RPS Attributed Payments Made by Tethys to Kadakia's Balance Due

RPS attached a spreadsheet to its Complaint denoting Kadakia's balance due. Exhibit D to the Complaint, Dkt.1. RPS inadvertently omitted Tethys' limited interest payments and has since introduced a "corrected" spreadsheet as Exhibit 1 to its Response to Kadakia's Motion for Summary Judgment (Dkt. 96). However, after review by the expert witness, Mr. Klingenberg, slight modifications were made to the balance and the final and correct balance is attached hereto as Exhibit D. Under the terms of the Guaranty, Kadakia is liable for the total balance - "[T]his Guaranty Agreement being an absolute, irrevocable and unconditional guaranty of full payment and performance and not a guaranty of collection." Guaranty, Exhibit A, ¶ 1. RPS is attributing the payments made by Tethys to the balance due from Kadakia. Kadakia admitted that he executed the Personal Guaranty, Kadakia owes the balance as shown; therefore, RPS's Motion for Summary Judgment should be granted

## CONCLUSION

WHEREFORE, for premises considered, Plaintiff respectfully requests that the Court enter summary judgment in its favor on its claim and against Defendant on his counterclaim, grant attorney's fees[7], and such other relief may be just.

Respectfully submitted,

By: /s/ Lacey L. Shirley
R. Brent Blackstock, OBA No. 00839
Lacey L. Shirley, OBA No. 33269
Mid-Continent Tower, Suite 500
401 S. Boston Ave.
Tulsa, OK 74103
(918) 383-0777, (918) 699-0325 (fax)
Brent@BrentBlackstock.com
lacey@brentblackstock.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE BY ECF

I hereby certify that today I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to counsel of record.

By: /s/ Lacey L. Shirley
Lacey L. Shirley

[7] The Guaranty states: "In case of any proceedings to collect any liabilities from the Guarantor, the Guarantor shall pay all costs and expenses of every kind for collection, sale or delivery, including reasonable attorney's fees…" Guaranty, Exhibit A, ¶ 16.

# GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (this "Guaranty Agreement"), is made as of the 24 day of March, 2014, by **Ruchir A. Kadakia** ( "Guarantor") in favor of R.P. Small Corp., an Illinois corporation (the "Lender").

**RECITALS**:

WHEREAS, Tethys Trading, LLC, an Oklahoma limited liability company (the "Borrower"), made a certain promissory note, dated as of the date hereof (the "Note"), in favor of the Lender, pursuant to which the Lender made a loan to the Borrower in the amount of Six Million Dollars ($6,000,000.00) Dollars, together with interest thereon (the "Loan"); and

WHEREAS, the Note is secured by, among other things, certain Accounts Receivable and other collateral identified in the Pledge and Security Agreement, dated as of the date hereof (the "Borrower Collateral"), from the Borrower to the Lender; and

WHEREAS, as a condition precedent to the making of the Loan, *inter alia*, the Lender has required that the Guarantor, who has an equity ownership interest, whether direct or indirect, in the Borrower, and thus will directly or indirectly benefit from the Loan, unconditionally enter into and execute this Guaranty Agreement, hereby guaranteeing the full, prompt and unconditional payment when due of the Loan, and the full and complete performance of all other obligations of the Borrower with respect to the Loan (the "Borrower's Obligations"); and

WHEREAS, the Guarantor has determined that the execution, delivery and performance of this Guaranty Agreement directly benefits, and is in the best interests of, the Guarantor; and

WHEREAS, all words and terms not defined herein shall have the respective meanings and be construed herein as provided in the Note and Pledge and Security Agreement;

THEREFORE, in consideration of the Loan made to the Borrower and with knowledge that the Lender would not make the Loan but for the promises of the Guarantor hereunder, the Guarantor, hereby absolutely and unconditionally, represents, warrants and covenants as follows:

1. The Guarantor hereby irrevocably guaranties the full, prompt and unconditional payment when due, of the Borrower's Obligations due and owing to the Lender, when and as the same shall become due, whether at the stated maturity date, by acceleration or otherwise, and the full, prompt, and unconditional performance of each and every term and condition of any transaction to be kept and performed by the Borrower under the Note. This Guaranty Agreement is a primary obligation of the Guarantor and shall be a continuing inexhaustible Guaranty Agreement. In the event any of the Borrower's Obligations shall not be paid or performed according to their terms, the Guarantor shall immediately pay or perform the same, this Guaranty Agreement being an absolute, irrevocable and unconditional guaranty of full payment and performance and not a guaranty of collection.
2. The Guarantor waives all defenses based upon surety or impairment of collateral, including without limitation, any actions or defenses identified generally or specifically under the Uniform Commercial Code or other body of law governing sureties or guarantors, waives notice of acceptance of this Guaranty Agreement and notice of any of the Borrower's Obligations to which it may apply, and waives notice of default, non-payment, partial payment, presentment, demand,

protest, notice of protest or dishonor and all other notices to which the Guarantor might otherwise be entitled, or which might be required by law and required to be given by the Lender.

3. The obligations of the Guarantor hereunder shall be unconditional and absolute and, without limiting the generality of the foregoing, shall not be released, discharged, be a defense to or otherwise affected by:
   (a) any extension, renewal, settlement, indulgence, compromise, waiver or release of or with respect to any of the Borrower's Obligations or any part thereof or any agreement relating thereto, or with respect to any obligation of any other guarantor of the Borrower's Obligations, whether (in any such case) by operation of law or otherwise, or any failure or omission to enforce any right, power or remedy with respect to any of the Borrower's Obligations or any part thereof or any agreement relating thereto, or with respect to any obligation of any other guarantor of any of the Borrower's Obligations;
   (b) any modification or amendment of or supplement to the Note, including, without limitation, any such amendment which may increase the amount of the Borrower's Obligations guaranteed hereby;
   (c) any release, surrender, compromise, settlement, waiver, subordination or modification, with or without consideration, of any collateral securing the Borrower's Obligations or any part thereof, any other guaranties with respect to the Borrower's Obligations or any part thereof, or any other obligation of any person or entity with respect to the Borrower's Obligations or any part thereof, or any non-perfection or invalidity of any direct or indirect security for any of the Borrower's Obligations;
   (d) any acceptance by the Lender of additional security to act as collateral for the Borrower's Obligations;
   (e) any change in the structure or ownership of the Borrower or any other guarantor of any of the Borrower's Obligations, or any solvency, bankruptcy, reorganization, or other similar proceeding affecting the Borrower or any other guarantor of any of the Borrower's Obligations, or any of their respective assets or any resulting release or discharge of any obligation of the Borrower any guarantor of any of the Borrower's Obligations;
   (f) the existence of any claim, set-off or other rights which the Guarantor may have at any time against the Borrower, any other guarantor of any of the Borrower's Obligations, the Lender or any other person, whether in connection herewith or in connection with any unrelated transactions;
   (g) the enforceability or validity of the Borrower's Obligations or any part thereof or the genuineness, enforceability or validity of any agreement relating thereto or with respect to any collateral securing the Borrower's Obligations or any part thereof, or any other invalidity or unenforceability relating to or against the Borrower or any other guarantor of any of the Borrower's Obligations, for any reason related to the Note or any provision of applicable law or regulation purporting to prohibit the payment by the Borrower or any other guarantor of any of the Borrower's Obligations;
   (h) the failure of the Lender to take any steps to perfect and maintain any security interest in, or to preserve any rights to, any security or collateral for any of the Borrower's Obligations, if any;
   (i) any borrowing or grant of a security interest by the Borrower, debtor-in-possession, under Section 364 of the United States Bankruptcy Code;
   (j) the disallowance, under Section 502 of the United States Bankruptcy Code, of all or any portion of the claims of the Lender for repayment of all or any part of any of the Borrower's Obligations;

Page 3 of 5

(k) the failure of any other guarantor to sign or become party to this Guaranty Agreement or any amendment, change, or reaffirmation hereof; or

(l) any other act or omission to act or delay of any kind by the Borrower, any other guarantor of any of the Borrower's Obligations, the Lender or any other person or any other circumstance whatsoever which might, but for the provisions of this Section constitute a legal or equitable discharge of the Guarantor's obligations hereunder.

4. Upon the occurrence of an Event of Default (as such term is defined in the Note), the Lender shall be immediately entitled to enforce the obligations of the Guarantor hereunder.
5. The Lender may at any time before or after an Event of Default exercise its right to set-off all or any portion of the Borrower's Obligations owed to it against any liability or indebtedness of the Lender to the Borrower or the Guarantor (whether owed by the Borrower or the Guarantor or alone or in conjunction with any other person or entity, provided that the Borrower or the Guarantor has a beneficial interest therein) without prior notice to the Borrower or Guarantor.
6. The Guarantor hereby waives any right or claim of right to cause a marshalling of the Borrower's assets or to cause the Lender to proceed against any of the security or collateral held by the Lender before proceeding against the Guarantor, and the Guarantor hereby waives any and all legal requirement that the Lender shall institute any action at law or in equity against the Borrower, or anyone else, with respect to the Note or with respect to any other documents, agreements or instruments executed by the Borrower or with respect to any security held by the Lender, as a condition precedent to bringing any action against the Guarantor upon this Guaranty Agreement.
7. Until repayment and performance of all of the Borrower's Obligations, the Guarantor hereby irrevocably waives and relinquishes any and all statutory, contractual, common law, equitable or other claims and rights (a) to seek reimbursement, contribution, indemnification, set-off or other recourse from or against the Borrower in connection with any payments made by the Guarantor under this Guaranty Agreement and (b) to be subrogated to the Lender's rights under the Note upon the Guarantor's performance under this Guaranty Agreement.
8. This Guaranty Agreement is made and shall continue as to any of the Borrower's Obligations to the Lender without regard to the existence of other collateral or security or guaranties, if any, or to the validity or effectiveness of any or all thereof; and any or all such collateral and security and guaranties may, from time to time, without notice to or consent of the Guarantor, be sold, released, surrendered, exchanged, settled, compromised, waived, subordinated or modified, with or without consideration, on such terms and conditions as may be acceptable to the Lender without in any manner affecting or impairing the liability of the Guarantor. The Guarantor's obligations under this Guaranty Agreement shall extend to any and all monies advanced by the Lender pursuant to the Note.
9. If claim is ever made upon the Lender for repayment or recovery of any amount or amounts received by the Lender in payment for, or on account of, any of the Borrower's Obligations, and the Lender repays all or part of said amount by reason of (a) any judgment, decree or order of any court or administrative body having jurisdiction over the Lender or any of its property, or (b) any settlement or compromise of any such claim effected by the Lender with any such claimant (including the Borrower), then, and in such event, the Guarantor agrees that any such judgment, decree, order, settlement or compromise shall be binding upon him, notwithstanding the cancellation of any note or any other instrument evidencing any of the Borrower's Obligations, and the Guarantor shall be and remain liable to the Lender hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by the Lender.
10. Settlement of any claim by the Lender against the Borrower, whether in any proceeding or not, and whether voluntary or involuntary, shall not reduce the amount due under the terms of this

Guaranty Agreement except to the extent of the amount paid by the Borrower in connection with the settlement.

11. No delay on the part of the Lender in exercising any of its rights, powers or privileges or partial or single exercise thereof under the Note, this Guaranty Agreement or any other document made to or with the Lender by the Borrower shall operate as a waiver of any such privileges, powers or rights. No waiver of any of its rights hereunder, and no modification or amendment of this Guaranty Agreement, shall be deemed to be made by the Lender unless the same shall be in writing, duly signed on behalf of the Lender, by a duly authorized officer, and each such waiver, if any, shall apply only with respect to the specific instance involved, and shall in no way impair the rights of the Lender or the obligations of the Guarantor to the Lender in any other respect at any other time.
12. All rights, powers and remedies afforded to the Lender by reason of this Guaranty Agreement are separate and cumulative remedies and no one of such remedies whether or not exercised by the Lender shall be deemed to exclude any of the other remedies available to the Lender nor prejudice availability of any other legal or equitable remedy which the Lender may have with respect to the Loan.
13. This Guaranty Agreement shall be governed by and construed in accordance with the laws of the State of Oklahoma without reference to principles of conflicts of law, except to the extent that the validity or perfection of the security interest granted hereunder, or remedies hereunder, in respect of any particular collateral are governed by the laws of another jurisdiction. The fact that any part of this Guaranty or the Note may not be enforced will not affect the enforceability of the rest of such documents. The Guarantor irrevocably submits to the exclusive jurisdiction of any federal or state court located in the State of Oklahoma with respect to any proceedings relating to this Guaranty or the Note, and irrevocably agrees not to assert any objection to venue in such court or any claim of inconvenient forum. The Guarantor irrevocably consents to service of process by mailing of such process by registered or certified mail, postage prepaid, at its address set forth below.
14. This Guaranty Agreement shall be binding upon and inure to the benefit of and be enforceable by all parties hereto and their respective successors, assigns, heirs, administrators, executors and legal representatives.
15. All notices and other communications relating to this Guaranty shall be made in writing and delivered to the Borrower at 954 West Washington Blvd., Suite 250, Chicago, Illinois 60607, and delivered to the Lender at 1585 E. 22nd St., Tulsa, OK 74114-1305, or such other place as the Lender shall designate in writing, with a copy to the Guarantor at the address indicated on the signature page below. Any such notice shall be deemed effective (i) when delivered, if delivered personally or by email or facsimile transmission, (ii) two (2) days after delivered (properly addressed and all fees paid) for overnight delivery service to a courier that regularly provides such service and regularly obtains executed receipts evidencing delivery, or (iii) five (5) days after deposited (properly addressed and stamped for first-class delivery) in the United States mail.
16. In case of any proceedings to collect any liabilities from the Guarantor, the Guarantor shall pay all costs and expenses of every kind for collection, sale or delivery, including reasonable attorney's fees, and after deducting such costs and expenses from the proceeds of sale or collection, the Lender may apply any residue to the liabilities of the Guarantor who shall continue to be liable for any deficiency, with interest at the Note Rate (as such term is defined under the Note).
17. This Guaranty shall be binding upon the Guarantor and the heirs, legal representatives, successors and assigns of the Guarantor. If more than one party shall execute this Guaranty, the term

"Guarantor" shall mean all parties executing this Guaranty, and all such parties shall be jointly and severally obligated hereunder.

18. In all references herein to any parties, persons, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.
19. The Guarantor hereby acknowledges and agrees that the Guarantor shall have the sole responsibility for obtaining from the Borrower such information concerning the Borrower's financial condition and business operations as the Guarantor may require, and that the Lender has no duty at any time to disclose to the Guarantor any information relating to the business operations or financial condition of the Borrower.
20. THE GUARANTOR HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION NOW EXISTING OR HEREAFTER ARISING RELATING TO THE LOAN, THIS GUARANTY AGREEMENT, THE NOTE OR ANY DEALINGS OR TRANSACTIONS RELATED THERETO AND THE GUARANTOR AGREES THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY.
21. THE GUARANTOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. THE GUARANTOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER, IN THE EVENT OF LITIGATION, WILL NOT SEEK TO ENFORCE THE FOREGOING WAIVER. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR THE LENDER TO ACCEPT THIS GUARANTY AGREEMENT AND MAKE THE LOAN.

INTENDING TO BE BOUND, the Guarantor has caused this Guaranty Agreement to be duly executed and delivered, all as of the day and year first above written.

**Guarantor:**

______________________________

**Ruchir A. Kadakia**
**94 Deer Plain Dr.**
**Spring, TX 77389**

# PROMISSORY NOTE

$6,000,000.00

March 27, 2014
Tulsa, Oklahoma

FOR VALUE RECEIVED, **TETHYS TRADING, LLC**, an Oklahoma limited liability company ("Maker"), promises to pay to the order of R.P. Small Corp. or successors and assigns ("Payee"), at Payee's address at 1585 E. 22nd St., Tulsa, OK 74114-1305, the principal amount of up to Six Million Dollars ($6,000,000.00), plus interest thereon at the rates set forth below (collectively the "Note Rate"). The Note Rate shall apply to the outstanding principal amount of this Note received by Maker from Payee or used by Maker as set forth below. Interest shall be payable monthly beginning on the 30th day following the date of this Note and every 30 days thereafter. Principal and all accrued and unpaid interest shall be due and payable on or before March ____, 2015 (hereafter the "Maturity Date"). This Note may be paid at any time without penalty or additional interest.

The foregoing notwithstanding, Maker may extend the Maturity Date for four (4) successive 12-month periods, upon written notice to Payee not less than five (5) days prior to the end of the then-impending Maturity Date or the applicable extension period, so long as Maker is then not in default under the terms of this Note. If one or more extensions occur, the other terms and conditions of this Note shall remain in full force and effect during such extension or extensions.

The purpose of this Note is to fund, in whole or in part, margin requirements for Maker's trades in Distillates-Light Ends. The proceeds of this Note shall be placed by Maker, upon initial receipt, in a segregated account maintained at Morgan Stanley, and such proceeds shall not be co-mingled with any of Maker's own funds until they are removed from such segregated account, the notice of which shall be made by Maker to Payee as of the date on which such funds are removed from such segregated account. While the proceeds of this Note are maintained in such segregated account, the outstanding principal amount of this Note maintained in such account shall accrue interest at the rate of 6% *per annum*, which interest shall be payable by Maker to Payee as set forth herein. From and after the date on which the principal amount of this Note is removed by Maker from such segregated account and used with any margin requirement for its business, such amount so removed from such account shall then accrue interest at the rate of 10% *per annum*, payable in accordance with the terms hereof.

The amounts due under this Note shall be secured by that certain Pledge and Security Agreement executed by Maker (as debtor) in favor of Payee (as secured party) by which Maker pledges to Payee Maker's accounts receivable resulting in any transaction by which Maker uses the proceeds of this Note to fund margin requirements as discussed herein.

Interest on the principal amount of this Note shall be calculated on the basis of the actual number of days elapsed in the period for which the calculation is being made based on 360-day year. On the Maturity Date, all principal and interest shall be due and payable without notice or demand.

The interest payable upon the indebtedness evidenced by this Note shall not at any time

exceed the maximum rate of interest permitted under the laws of the State of Oklahoma for loans of the type and character evidenced by this Note.

All payments under this Note shall be made in lawful currency of the United States of America at Payee's residence or office (as set forth above).

From time to time the Maturity Date of this Note may be extended or this Note may be renewed, in whole or in part, or a new note of different form may be substituted for this Note and/or the rate of interest may be changed, or changes may be made in consideration of loan extensions, and Payee, from time to time, may waive or surrender, either in whole or in part, any rights, guarantees, security interests or liens given for the benefit of Payee in connection with payment of this Note or any security therefor; but no such occurrences shall in any manner affect, limit, modify or otherwise impair any rights, guaranties or security of Payee not specifically waived, released or surrendered in writing, nor shall any maker, guarantor, endorser or any person who is or might be liable hereon, either primarily or contingently, be released from liability by reason of the occurrence of any such event. Payee, from time to time, shall have the unlimited right to release any person who might be liable hereon, and such release shall not affect or discharge the liability of any other person who is or might be liable hereon.

In the event that John E. Meyer, Jr. either resigns from his position as, is removed from his position of, or ceases to serve as sole Manager of Maker, Payee may, at its option, without further notice or demand, declare this Note in default and all indebtedness due and owing hereunder shall be due and payable immediately.

If (a) any payment required by this Note is not made within five (5) business days after the due date and receipt by Maker of Notice from Payee, (b) any default occurs under any other instrument related hereto or under the provisions of any security agreement, pledge agreement or other document or agreement which provides security for the indebtedness evidenced by this Note, or (c) Maker applies for or consents to the appointment of a receiver, trustee, or liquidator of itself or of all or a substantial part of its assets, or admits in writing its inability to pay its debts as they fall due, or makes a general assignment for the benefit of creditors, or is adjudicated a bankrupt or insolvent, or a petition or other proceeding (voluntary or otherwise) is filed by or with respect to Maker in which a reorganization or an arrangement with Maker's creditors is sought or by which any creditor of Maker or Maker itself seeks to take advantage of any insolvency, bankruptcy, reorganization, arrangement, or other similar proceeding, Payee may, at its option, without further notice or demand, declare this Note in default and all indebtedness due and owing hereunder shall be due and payable immediately. In the event of a default, the entire balance (principal and interest) shall be due and payable immediately. All makers, endorsers, guarantors and sureties hereby severally waive protest, presentment, demand, and notice of protest and nonpayment in case this Note or any payment due hereunder is not paid when due; and they agree to any renewal of this Note or to any extension, acceleration or postponement of the time of payment, or any other indulgence, to any substitution, exchange or release of collateral and to the release of any party or person primarily or contingently liable, without prejudice to Payee and without notice to any maker, endorser, guarantor or surety. Maker hereof, and any guarantor, endorser, surety or any other person who is or may become liable hereon shall, on demand, pay all costs of collection, including reasonable attorney fees incurred by Payee in attempting to enforce payment of this Note and for defending the validity of any

document securing this Note.

This Note is given for an actual loan of money for business purposes and not for personal, agricultural or residential purposes, and is executed and delivered in the State of Oklahoma and shall be governed by and construed in accordance with the laws of the State of Oklahoma. The state or federal courts sitting within Tulsa, Oklahoma shall have exclusive jurisdiction over any disputes which arise hereunder and the parties acknowledge that venue is proper only in such courts.

**TETHYS TRADING, LLC, an Oklahoma limited liability company**

**By:** ______________________________
**John E. Meyer, Jr., Manager**

# AFFIDAVIT OF KENNETH W. KLINGENBERG

State of Oklahoma )
) ss
County of Oklahoma )

I, Kenneth W. Klingenberg, being first duly sworn upon oath, depose and state as follows:

1. I am an attorney in good standing with the Oklahoma Bar Association and a Certified Public Accountant in good standing with the Oklahoma Accountancy Board.

2. I have been requested by Lacey Shirley and Brent Blackstock with the firm Brent Blackstock PLC to review documents (i.e. Promissory Note, Complaint, Guaranty Agreement, Defendant Ruchir A. Kadakia's Verified Amended Counterclaim and Third-party Complaint) and examine the spreadsheet with interest calculations generated by Lee Swarthout at Hogan Taylor which determines what is owed in this matter.

3. After my review of documents I issued my report dated July 17, 2020 in which I concluded the total balance due as of May 1, 2020 was $8,375,189.18.

FURTHER, AFFIANT SAYETH NOT.

KENNETH W. KLINGENBERG

SUBSCRIBED AND SWORN to before me this 17th day of July, 2020.

Ramona A. Stults
NOTARY PUBLIC

RAMONA A. STULTS
NOTARY
# 13003344
EXP. 04/09/21
PUBLIC
STATE OF OKLAHOMA

My Commission Expires:
4-9-21

My Commission Number:
13003344

F:\Business Valuation Clients\R.P. Small Corp (Richard & Norma Small)\Affidavit of KWK - Final.wpd

EXHIBIT C
PAGE 1 OF 1

EXHIBIT D
PAGE 1 OF 2

Tethys Promissory Note
Interest Accrued since April 2014

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | | Principal | | Principal | | Interest Calculation | | | | | | Interest | | | Interest | Principal and |
| 3 | | Balance | | Balance | | Loan Balance | Excess Loan | 6% Interest | 10% Interest | | | Balance | | | Balance | Interest |
| 4 | Beginning | Beginning | Principal | End of | | In MS | Balance Not | On MS | On Excess | Total | | Beginning | Interest | Interest | End of | Balance |
| 5 | Date | Of Month | Additions | Month | | Account | In MS Account | Balance | Loan Balance | Interest | | Of Month | Additions | Repayments | Month | End of Month |
| 6 | 3/27/2014 | $ - | $ 6,000,000.00 | $ 6,000,000.00 | | $ 6,000,000.00 | $ - | $ 4,000.00 | $ - | $ 4,000.00 | | $ - | $ 4,000.00 | $ - | $ 4,000.00 | $ 6,004,000.00 |
| 7 | 4/1/2014 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 4,200,076.93 | $ 1,799,923.07 | $ 21,000.38 | $ 14,999.36 | $ 35,999.74 | | $ 4,000.00 | $ 35,999.74 | $ - | $ 39,999.74 | $ 6,039,999.74 |
| 8 | 5/1/2014 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 4,200,076.93 | $ 1,799,923.07 | $ 21,700.40 | $ 15,499.34 | $ 37,199.74 | | $ 39,999.74 | $ 37,199.74 | $ (34,000.00) | $ 43,199.48 | $ 6,043,199.48 |
| 9 | 6/1/2014 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 4,700,155.55 | $ 1,299,844.45 | $ 23,500.78 | $ 10,832.04 | $ 34,332.82 | | $ 43,199.48 | $ 34,332.82 | $ (67,666.67) | $ 9,865.63 | $ 6,009,865.63 |
| 10 | 7/1/2014 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 9,865.63 | $ 51,666.59 | $ (56,566.33) | $ 4,965.89 | $ 6,004,965.89 |
| 11 | 8/1/2014 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 4,965.89 | $ 51,666.59 | $ - | $ 56,632.48 | $ 6,056,632.48 |
| 12 | 9/1/2014 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 49,999.82 | $ 49,999.93 | | $ 56,632.48 | $ 49,999.93 | $ (42,801.11) | $ 63,831.30 | $ 6,063,831.30 |
| 13 | 10/1/2014 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 63,831.30 | $ 51,666.59 | $ (34,180.00) | $ 81,317.89 | $ 6,081,317.89 |
| 14 | 11/1/2014 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 49,999.82 | $ 49,999.93 | | $ 81,317.89 | $ 49,999.93 | $ (31,190.00) | $ 100,127.82 | $ 6,100,127.82 |
| 15 | 12/1/2014 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 100,127.82 | $ 51,666.59 | $ (32,273.34) | $ 119,521.07 | $ 6,119,521.07 |
| 16 | | | | | | | | | | | | | | | | |
| 17 | 1/1/2015 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 119,521.07 | $ 51,666.59 | $ (34,640.00) | $ 136,547.66 | $ 6,136,547.66 |
| 18 | 2/1/2015 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.10 | $ 46,666.50 | $ 46,666.60 | | $ 136,547.66 | $ 46,666.60 | $ (63,647.78) | $ 119,566.48 | $ 6,119,566.48 |
| 19 | 3/1/2015 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 119,566.48 | $ 51,666.59 | $ (68,031.00) | $ 103,202.07 | $ 6,103,202.07 |
| 20 | 4/1/2015 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 49,999.82 | $ 49,999.93 | | $ 103,202.07 | $ 49,999.93 | $ (13,912.00) | $ 139,290.00 | $ 6,139,290.00 |
| 21 | 5/1/2015 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 139,290.00 | $ 51,666.59 | $ (13,500.62) | $ 177,455.97 | $ 6,177,455.97 |
| 22 | 6/1/2015 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 49,999.82 | $ 49,999.93 | | $ 177,455.97 | $ 49,999.93 | $ (13,918.19) | $ 213,537.71 | $ 6,213,537.71 |
| 23 | 7/1/2015 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 213,537.71 | $ 51,666.59 | $ (13,564.81) | $ 251,639.49 | $ 6,251,639.49 |
| 24 | 8/1/2015 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 251,639.49 | $ 51,666.59 | $ (14,033.89) | $ 289,272.19 | $ 6,289,272.19 |
| 25 | 9/1/2015 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 49,999.82 | $ 49,999.93 | | $ 289,272.19 | $ 49,999.93 | $ (14,114.81) | $ 325,157.31 | $ 6,325,157.31 |
| 26 | 10/1/2015 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 325,157.31 | $ 51,666.59 | $ (13,748.40) | $ 363,075.50 | $ 6,363,075.50 |
| 27 | 11/1/2015 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 49,999.82 | $ 49,999.93 | | $ 363,075.50 | $ 49,999.93 | $ (14,005.36) | $ 399,070.07 | $ 6,399,070.07 |
| 28 | 12/1/2015 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 399,070.07 | $ 51,666.59 | $ (13,663.88) | $ 437,072.78 | $ 6,437,072.78 |
| 29 | 2015 tax benefit | | | | | | | | | | | $ 437,072.78 | | $ (248,000.00) | $ 189,072.78 | $ 6,189,072.78 |
| 30 | | | | | | | | | | | | | | | | |
| 31 | 1/1/2016 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 189,072.78 | $ 51,666.59 | $ (300,000.00) | $ (59,260.63) | $ 5,940,739.37 |
| 32 | 2/1/2016 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.10 | $ 46,666.50 | $ 46,666.60 | | $ (59,260.63) | $ 46,666.60 | $ (48,347.94) | $ (60,941.97) | $ 5,939,058.03 |
| 33 | 3/1/2016 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 49,999.82 | $ 49,999.93 | | $ (60,941.97) | $ 49,999.93 | $ (16,178.70) | $ (27,120.74) | $ 5,972,879.26 |
| 34 | 4/1/2016 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ (27,120.74) | $ 51,666.59 | $ (15,666.79) | $ 8,879.06 | $ 6,008,879.06 |
| 35 | 5/1/2016 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 49,999.82 | $ 49,999.93 | | $ 8,879.06 | $ 49,999.93 | $ - | $ 58,878.99 | $ 6,058,878.99 |
| 36 | 6/1/2016 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 58,878.99 | $ 51,666.59 | $ (16,165.54) | $ 94,380.04 | $ 6,094,380.04 |
| 37 | 7/1/2016 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.35 | $ 5,999,978.65 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 94,380.04 | $ 51,666.59 | $ (15,869.92) | $ 130,176.71 | $ 6,130,176.71 |
| 38 | 8/1/2016 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.36 | $ 5,999,978.64 | $ 0.11 | $ 49,999.82 | $ 49,999.93 | | $ 130,176.71 | $ 49,999.93 | $ (31,582.85) | $ 148,593.79 | $ 6,148,593.79 |
| 39 | 9/1/2016 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ 21.36 | $ 5,999,978.64 | $ 0.11 | $ 51,666.48 | $ 51,666.59 | | $ 148,593.79 | $ 51,666.59 | $ (16,757.69) | $ 183,502.69 | $ 6,183,502.69 |
| 40 | 10/1/2016 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 50,000.00 | $ 50,000.00 | | $ 183,502.69 | $ 50,000.00 | $ (38,313.61) | $ 195,189.08 | $ 6,195,189.08 |
| 41 | 11/1/2016 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 195,189.08 | $ 51,666.67 | $ - | $ 246,855.75 | $ 6,246,855.75 |
| 42 | 12/1/2016 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 246,855.75 | $ 51,666.67 | $ - | $ 298,522.42 | $ 6,298,522.42 |
| 43 | | | | | | | | | | | | | | | | |
| 44 | 1/1/2017 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 298,522.42 | $ 51,666.67 | $ - | $ 350,189.09 | $ 6,350,189.09 |
| 45 | 2/1/2017 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 46,666.67 | $ 46,666.67 | | $ 350,189.09 | $ 46,666.67 | $ - | $ 396,855.76 | $ 6,396,855.76 |
| 46 | 3/1/2017 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 396,855.76 | $ 51,666.67 | $ - | $ 448,522.43 | $ 6,448,522.43 |
| 47 | 4/1/2017 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 50,000.00 | $ 50,000.00 | | $ 448,522.43 | $ 50,000.00 | $ - | $ 498,522.43 | $ 6,498,522.43 |
| 48 | 5/1/2017 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 498,522.43 | $ 51,666.67 | $ - | $ 550,189.10 | $ 6,550,189.10 |
| 49 | 6/1/2017 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 50,000.00 | $ 50,000.00 | | $ 550,189.10 | $ 50,000.00 | $ - | $ 600,189.10 | $ 6,600,189.10 |
| 50 | 7/1/2017 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 600,189.10 | $ 51,666.67 | $ - | $ 651,855.77 | $ 6,651,855.77 |
| 51 | 8/1/2017 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 651,855.77 | $ 51,666.67 | $ - | $ 703,522.44 | $ 6,703,522.44 |
| 52 | 9/1/2017 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 50,000.00 | $ 50,000.00 | | $ 703,522.44 | $ 50,000.00 | $ - | $ 753,522.44 | $ 6,753,522.44 |
| 53 | 10/1/2017 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 753,522.44 | $ 51,666.67 | $ - | $ 805,189.11 | $ 6,805,189.11 |
| 54 | 11/1/2017 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 50,000.00 | $ 50,000.00 | | $ 805,189.11 | $ 50,000.00 | $ - | $ 855,189.11 | $ 6,855,189.11 |
| 55 | 12/1/2017 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 855,189.11 | $ 51,666.67 | $ - | $ 906,855.78 | $ 6,906,855.78 |
| 56 | | | | | | | | | | | | | | | | |
| 57 | 1/1/2018 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 906,855.78 | $ 51,666.67 | $ - | $ 958,522.45 | $ 6,958,522.45 |
| 58 | 2/1/2018 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 46,666.67 | $ 46,666.67 | | $ 958,522.45 | $ 46,666.67 | $ - | $ 1,005,189.12 | $ 7,005,189.12 |
| 59 | 3/1/2018 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 1,005,189.12 | $ 51,666.67 | $ - | $ 1,056,855.79 | $ 7,056,855.79 |
| 60 | 4/1/2018 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 50,000.00 | $ 50,000.00 | | $ 1,056,855.79 | $ 50,000.00 | $ - | $ 1,106,855.79 | $ 7,106,855.79 |

EXHIBIT D
PAGE 1 OF 2

EXHIBIT D
PAGE 2 OF 2

Tethys Promissory Note
Interest Accrued since April 2014

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 61 | 5/1/2018 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 1,106,855.79 | $ 51,666.67 | $ - | $ 1,158,522.46 | $ 7,158,522.46 |
| 62 | 6/1/2018 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 50,000.00 | $ 50,000.00 | | $ 1,158,522.46 | $ 50,000.00 | $ - | $ 1,208,522.46 | $ 7,208,522.46 |
| 63 | 7/1/2018 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 1,208,522.46 | $ 51,666.67 | $ - | $ 1,260,189.13 | $ 7,260,189.13 |
| 64 | 8/1/2018 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 1,260,189.13 | $ 51,666.67 | $ - | $ 1,311,855.80 | $ 7,311,855.80 |
| 65 | 9/1/2018 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 50,000.00 | $ 50,000.00 | | $ 1,311,855.80 | $ 50,000.00 | $ - | $ 1,361,855.80 | $ 7,361,855.80 |
| 66 | 10/1/2018 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 1,361,855.80 | $ 51,666.67 | $ - | $ 1,413,522.47 | $ 7,413,522.47 |
| 67 | 11/1/2018 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 50,000.00 | $ 50,000.00 | | $ 1,413,522.47 | $ 50,000.00 | $ - | $ 1,463,522.47 | $ 7,463,522.47 |
| 68 | 12/1/2018 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 1,463,522.47 | $ 51,666.67 | $ - | $ 1,515,189.14 | $ 7,515,189.14 |
| 69 | | | | | | | | | | | | | | | | |
| 70 | 1/1/2019 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 1,515,189.14 | $ 51,666.67 | $ - | $ 1,566,855.81 | $ 7,566,855.81 |
| 71 | 2/1/2019 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 46,666.67 | $ 46,666.67 | | $ 1,566,855.81 | $ 46,666.67 | $ - | $ 1,613,522.48 | $ 7,613,522.48 |
| 72 | 3/1/2019 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 1,613,522.48 | $ 51,666.67 | $ - | $ 1,665,189.15 | $ 7,665,189.15 |
| 73 | 4/1/2019 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 50,000.00 | $ 50,000.00 | | $ 1,665,189.15 | $ 50,000.00 | $ - | $ 1,715,189.15 | $ 7,715,189.15 |
| 74 | 5/1/2019 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 1,715,189.15 | $ 51,666.67 | $ - | $ 1,766,855.82 | $ 7,766,855.82 |
| 75 | 6/1/2019 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 50,000.00 | $ 50,000.00 | | $ 1,766,855.82 | $ 50,000.00 | $ - | $ 1,816,855.82 | $ 7,816,855.82 |
| 76 | 7/1/2019 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 1,816,855.82 | $ 51,666.67 | $ - | $ 1,868,522.49 | $ 7,868,522.49 |
| 77 | 8/1/2019 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 1,868,522.49 | $ 51,666.67 | $ - | $ 1,920,189.16 | $ 7,920,189.16 |
| 78 | 9/1/2019 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 50,000.00 | $ 50,000.00 | | $ 1,920,189.16 | $ 50,000.00 | $ - | $ 1,970,189.16 | $ 7,970,189.16 |
| 79 | 10/1/2019 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 1,970,189.16 | $ 51,666.67 | $ - | $ 2,021,855.83 | $ 8,021,855.83 |
| 80 | 11/1/2019 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 50,000.00 | $ 50,000.00 | | $ 2,021,855.83 | $ 50,000.00 | $ - | $ 2,071,855.83 | $ 8,071,855.83 |
| 81 | 12/1/2019 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 2,071,855.83 | $ 51,666.67 | $ - | $ 2,123,522.50 | $ 8,123,522.50 |
| 82 | | | | | | | | | | | | | | | | |
| 83 | 1/1/2020 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 2,123,522.50 | $ 51,666.67 | $ - | $ 2,175,189.17 | $ 8,175,189.17 |
| 84 | 2/1/2020 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 46,666.67 | $ 46,666.67 | | $ 2,175,189.17 | $ 46,666.67 | $ - | $ 2,221,855.84 | $ 8,221,855.84 |
| 85 | 3/1/2020 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 2,221,855.84 | $ 51,666.67 | $ - | $ 2,273,522.51 | $ 8,273,522.51 |
| 86 | 4/1/2020 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 50,000.00 | $ 50,000.00 | | $ 2,273,522.51 | $ 50,000.00 | $ - | $ 2,323,522.51 | $ 8,323,522.51 |
| 87 | 5/1/2020 | $ 6,000,000.00 | | $ 6,000,000.00 | | $ - | $ 6,000,000.00 | $ - | $ 51,666.67 | $ 51,666.67 | | $ 2,323,522.51 | $ 51,666.67 | $ - | $ 2,375,189.18 | $ 8,375,189.18 |
| 88 | | | | | | | | $ - | | | | | Total Payments | $ (1,336,341.23) | | |
| 89 | | | | | | | | | | | | | | HT Tax Records | | |
| 90 | | | | | | | | | | | | | 2014 | $ 298,677.45 | | |
| 91 | | | | | | | | | | | | | 2015 | $ 290,780.74 | | |
| 92 | | | | | | | | | | | | | 2016 | $ 498,883.04 | | |
| 93 | | | | | | | | | | | | | Total HT | $ 1,088,341.23 | | |
| 94 | | | | | | | | | | | | | Tax Benefit | $ 248,000.00 | | |
| 95 | | | | | | | | | | | | | Total | $ 1,336,341.23 | | |

EXHIBIT D
PAGE 2 OF 2

EXHIBIT E

Filed under seal