**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **R.P. SMALL CORP.**<br>Plaintiff,<br>v.<br>**RUCHIR A. KADAKIA**,<br>Defendant.<br>and<br>**RUCHIR A. KADAKIA**,<br>Counterclaimant<br>and Third-Party Plaintiff,<br>v.<br>**R.P. SMALL CORP.**,<br>an Illinois corporation,<br>Counterclaim Defendant,<br>and<br>**JOHN E. MEYER, JR.**, et al.;<br>Third-Party Defendants. | Case No. 19-CV-271-JFH-JFJ |

**DEFENDANT RUCHIR A. KADAKIA'S RESPONSE TO PLAINTIFF/COUNTER DEFENDANT R.P. SMALL CORP.'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff/Counterclaim Defendant R.P. Small Corp. (RPS) has not sustained its demanding burden under Rule 56 to prove its claim against Defendant Ruchir Kadakia. The material facts necessary for RPS to prevail on its motion are in dispute. Whether Tethys Trading, LLC is in default on the promissory note, thereby triggering Kadakia's guaranty obligation, is disputed. RPS asserts, notwithstanding a Complaint that never mentions default (Dkt. # 1) that "Tethys is undisputedly in default." Dkt. #122, 125 at 7. The evidence before the Court demonstrates otherwise: [redacted]

[redacted] There is no evidence before the Court that RPS has given notice of default to the obligor, Tethys Trading, as expressly provided in the Promissory Note. Moreover, a genuine issue of material fact exists as to the amount owed on the note, as evidenced by RPS's multiple, conflicting accountings and interest calculations put forth by RPS, as well as RPS's omissions of financial and economic benefits received from Third Party Defendants on account of amounts. To obtain summary relief on its claim against Kadakia, RPS must prove, just as it would at trial, each element of its claim supported by undisputed, admissible evidence. RPS has not cleared this evidentiary hurdle. The Court should therefore deny RPS's motion.[1]

## RESPONSE TO RPS'S STATEMENT OF FACTS

1. Kadakia does not dispute that RPS filed this lawsuit to enforce the referenced Kadakia Guaranty Agreement or that the Guaranty and Tethys Trading Promissory Note are attached to the Complaint. However, Kadakia disputes that RPS is entitled to any relief. *See* Dkt. #88 (Sealed Motion by Kadakia with documents annexed), #90 (pending Kadakia motion by Kadakia to dismiss the Complaint).

2. Undisputed.

3. Undisputed.

[1] Plaintiff's motion for summary judgment is one of seven of motions pending before the Court. The other six motions are catalogued in Kadakia's Motion for Status Conference (Dkt. #118), including (i) *Defendant, Counter Claimant, and Third-Party Plaintiff Kadakia's Motion for Leave to File Amended Counterclaim* (Dkt. #67); (ii) *Ruchir A. Kadakia's Motion for Reconsideration of the Court's April 2, 2020 Opinion [Dkt. #65]* (Dkt. #68); (iii) *Third-Party Defendants' Combined Motion to Dismiss Verified Amended Counterclaim and Third-Party Complaint* (Dkt. #75); (iv) *Ruchir A. Kadakia's Motion and Supporting Brief for Summary Judgment on Plaintiff's Complaint [Dkt. #1]* (Dkt. #90); (v) *Plaintiff's Motion to Compel Non-Party Tethys Group Holdings LLC to Comply with Subpoena Duces Tecum* (Dkt. #95); and (vi) *Third-Party Defendants' Combined Brief in Opposition to Plaintiff's Motion to Compel and Motion to Quash Document Subpoena Issued by Plaintiff on Non-Party Tethys Group Holdings, LLC* (Dkt. #109).

4. Kadakia does not dispute that RPS pasted a screenshot of paragraph 1 of the Guaranty Agreement into paragraph 4 of its "Statement of Undisputed Facts." The screen shot is materially incomplete in its recitation of the terms and conditions of the Guaranty Agreement, which speaks for itself.

5. Kadakia does not dispute that RPS pasted a screenshot of paragraph 2 of the Guaranty Agreement into paragraph 5 of its "Statement of Undisputed Facts." The screen shot is materially incomplete in its recitation of the terms and conditions of the Guaranty Agreement, which speaks for itself.

6. Kadakia disputes paragraph 6 of RPS's "Statement of Undisputed Facts" for several reasons:

a. RPS offers no admissible evidence proving that Tethys Trading, LLC (or others) directly or indirectly "never paid the balance due and owing on the Promissory Note" because it provides no admissible evidence of what, if any, amount is due and owing on the promissory note. [redacted]. Thus, whether there is a current amount due and owing, and (if so) what that amount is, on the Promissory Note are disputed material facts.

b. The amount owed, if any, is disputed because RPS has provided three different amounts owed in three separate filings in this case. *See* Complaint (Dkt. #1 at 3) ($8,502,000.00); Resp. to Kadakia's MSJ (Dkt. #96 at 25) ($8,405,732.28); Dkt. #122, 125 at Ex. C ($8,375,189.18).[2] RPS readily concedes that its prior attempts to calculate interest (including the rendition at-

[2] These amounts are derived from three spreadsheets, all of which are entitled, "Tethys Promissory Note, Interest Accrued since April 2014."

tached as Exhibit "D" to the Complaint) were materially inaccurate and/or incomplete, resulting in the three differing amounts discussed above. *See* Dkt. #122, 125 at 10.

c. In addition to RPS's ongoing inability to correctly or consistently account for the amount allegedly owed under the promissory note, the amount owed is disputed because the interest rate depends on disputed facts. The promissory note contains two potentially applicable interest rates: (i) a six percent (6%) interest rate applied to the principal while the funds are in a "segregated account"; and (ii) a ten percent (10%) rate applied to the principal when funds are removed from a "segregated account *and* used with any margin requirement." Dkt. #125 at 17 (emphasis added). Whether some or all of the funds were in a segregated account or removed and used with any margin requirement, and when, is disputed. Indeed, RPS does not even allege that these facts are undisputed.

d. The amount owed is disputed because RPS has not credited all payments and value received from Tethys Trading LLC and the other Third-Party Defendants, and/or non-party Tethys affiliates. For example, [redacted]

[redacted] Ex. 1, [redacted]; Ex 2., [redacted] Ex. 3, [redacted] Ex. 4, [redacted]; Ex. 5, [redacted]. These additional exchanges (worth at least hundreds of thousands of dollars) are (with the exception of a single 2015 tax benefit set forth on line 29 of the spreadsheet attached to the Klingenberg Affidavit) not included in any of RPS's conflicting spreadsheets and would reduce any amount owed by Tethys Trading, LLC on the promissory note.[3]

7. Disputed. RPS's statement is a legal conclusion. Kadakia's obligation is secondary and depends on RPS proving the underlying Promissory Note is in default and the amount owed is accurate, among other things. Because these conditions precedent are disputed, RPS's legal conclusion is disputed as well.

8. Disputed. The Guaranty Agreement speaks for itself and the remaining allegations are legal conclusions.

## ADDITIONAL MATERIAL FACT DISPUTES

RPS relies on numerous material facts throughout its brief which even RPS effectively acknowledges are disputed (or does not claim as undisputed). Additionally, RPS does not support its statement of facts with admissible evidence, particularly facts that are material to liability (*e.g.*, whether a default exists under the promissory note) and damages ques-

[3] RPS will likely characterize the evidence of these additional exchanges of value as part of "Kadakia's conspiracy theory." Dkt. #122, 125 at 3-4. Of note, RPS did not produce these particular exchanges between Meyer and Small until 16 July 2020—a mere six days before it filed its motion for summary judgment. The exchanges are one of several categories of documents demanded by Kadakia's counsel in a deficiency letter of 4 June 2020. *See* Ex. 9, Kelly Ltr., 6/4/2020. RPS failed to produce the remaining documents identified in the deficiency letter, which likely will necessitate a motion to compel RPS's production of them.

tions. These facts must be taken in the light most favorable to Kadakia in considering RPS's motion. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

**Material Facts Dispute as to Default**

For example, the question of whether the note is in default is a disputed material fact. In its brief, RPS states without listing as undisputed that "RPS declared the Note in default in March 2017." Dkt. #122, 125 at 8. RPS provides no evidentiary support for this statement and does not allege any default of the note in its pleading. The purported event of default is material to RPS's request for summary relief. The disputed default issue must be viewed in favor of Kadakia—the note is not in default.

First, [redacted] Nowhere is there an allegation by RPS of breach —material or otherwise —by Meyer and Finnegan of these obligations. Accordingly, all of the evidence before the Court demonstrates that the promissory note is not in default. In any event, RPS cannot seem to decide whether the note or the [redacted] is or is not in default. *See*, *e.g.*, [redacted]; Dkt. #122,125 at 8 (the note is in default); Dkt. #120 at 6 (the Workout Agreement (and the note) "probably has been breached"); Dkt. #126 at 2 (claiming need for discovery to determine whether Third Party Defendants "are in breach of the Workout Agreement with Plaintiff"). In any event, RPS's current factual position that the note is in default is disputed and must be viewed in the light most favorable to Kadakia.

Second, the note allows RPS to extend the maturity date of the note. Dkt. #125 at 18. [redacted]

[redacted] The extended maturity date is a fact that must be viewed in the light most favorable to Kadakia—the note is not in default because the maturity date has been extended and RPS has not produced notice of default to Tethys Trading as required under the Tethys Trading promissory note.

**Material Fact Dispute as to Damages**

By way of further example, the damages issue is in dispute. First, RPS has made at least three different interest calculations, beginning with the calculation included in its Complaint (Dkt. #1 at 3). RPS demanded Kadakia "[a]dmit that **Exhibit D** to the Complaint [the $8,502,000.00 calculation] is a true and accurate computation of the Accrued Interest on the Tethys Promissory Note since April 2014," which Kadakia denied. Ex. 6, Responses of Defendant Kadakia to Plaintiff's First Set of Discovery Requests at 20 (RFA 19). Then, in response to Kadakia's contention that RPS's claim was time-barred, RPS produced a second interest calculation never before produced in this lawsuit, showing previously unaccounted-for interest payments on the note. *See* Dkt. #96 at 25. RPS's third (and latest) presented accounting is that the calculation attached in opposition to Kadakia's motion for summary judgment contained additional errors (without explanation of the nature or scope of the errors) is corrected by the most recent rendition of an accounting put forth by RPS's newly proffered expert witness. Dkt. #122, 125 at 10 & Ex.C.[4]

---

[4] The expert witness's damages calculation is not supported by the materials required by Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi), including without limitation the bank statements and other records on which the expert relied, thus rendering his opinion deficient summary judgement evidence. *See Fuciarelli v. Good*, No. CV-14-01078-PHX-GMS, 2016 WL 4529822, at*6 (D. Ariz. Aug. 30, 2016) ("Where an expert report contains only 'naked conclusion unsupported by specific facts,' the report 'has little evidentiary weight and is inadmissible' ...."). RPS is believed to have obtained the bank statements used in its expert report through a subpoena issued in this matter, but RPS has not provided Kadakia with a copy of the subpoenaed documents, notwithstanding Kadakia's repeated requests inclusive of the June 4 deficiency letter. *See* Ex. 9; *St. John Med. Ctr., Inc. v. Hodges*, Case No. 12-CV-523-GKF-PJC, 2013 WL 12145961, at *3 (noting "all parties are entitled to review the documents produced at the time and place specified in the subpoena"). Similarly, Third

Second, the interest rate used by RPS to calculate its damages is in dispute. From the evidence submitted by RPS, it is unclear whether RPS used the correct interest rate in calculating its three interest calculations. Under the terms of the note, interest accrues at a rate of either 6% or 10% depending on the location and use of the money. The 6% rate applies if the principal is kept in a "segregated account." Dkt. #125 at 17. The 10% rate is not triggered until the funds are removed from a segregated account and "used with any margin requirement." *Id*. RPS has not offered any admissible evidence in support of its motion to prove when, or whether, the funds were removed from a segregated account and used for the specific purpose triggering the higher interest rate. Without such evidence, RPS cannot prove the proper interest rate was used in its admittedly the admittedly erroneous versions of its calculations to date.

Third, the omitted exchanges between RPS and Third-Party Defendants of financial/economic interests in the Tethys Entities, which are of value and wholly unaccounted for by RPS, are in dispute. The emails to and from RPS reflect that during periods prior to this action (*see* Ex. 1- Ex. 5, *supra*, and Ex. 7, *infra*), and during this dispute (as evidenced by the Workout Agreement), RPS received financial or ownership interests of value in Tethys affiliates on account of obligations under the promissory note.[5] However, RPS offers no evidence of the value of those ownership interests, and RPS and Third-Party Defendants have failed to produce documents material to valuation of these transferred interests.

Finally, Third Party Defendants' records show they made cash payments of [redacted] Ex. 7, [redacted]

---

Party Defendants have refused to produce bank statements for any period after January 2016.

[5] Materials related to the equity and debt financing of Tethys Holding are likely relevant to the value of these transfers, but to date RPS's and Third-Party Defendants' production regarding the financing has been incomplete. Kadakia is entitled to full and complete discovery of the Tethys Holding financing and other valuation discovery.

[redacted]. These numbers differ from RPS's thrice calculated damages amount. *Compare* Dkt. #122, 125 at Ex.C, *with* Ex. 8, [redacted]

RPS has placed before the Court three inconsistent and conflicting versions of an accounting of principal and interest due; there is no admissible evidence supporting even the most recent version. Kadakia and Third-Party Defendants dispute RPS's damages calculations. RPS has not offered admissible, undisputed evidence to resolve any of these disputes under the summary judgment standard.[6] Accordingly, its motion should be denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment proceedings do not lessen RPS's burden of proof and/or persuasion on its claim against Kadakia. Before the Court may grant summary judgment in favor of RPS on its breach of guaranty claim, RPS must prove each element of its claim, including without limitation applicable conditions precedent and specific damages.

RPS, who bears the burden at trial, must satisfy a "stringent" standard to be granted summary judgment. *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). RPS must demonstrate "'beyond a reasonable doubt that it is entitled to summary judgment.'" *Hicks v. City of Watonga*, 942 F.2d 737, 742 (10th Cir. 1991) (quoting *Ewing v. Amoco Oil Co.*, 823 F.2d 1432, 1437 (10th Cir. 1987)). RPS "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts

---

[6] Not only has RPS not offered these materials in support of its motion for summary judgment, RPS has not produced the information to Kadakia. Information about RPS's purported damages was requested in the 4 June 2020 deficiency letter, including bank statements, transactions credited against principal and interest obligations, tax returns for RPS, RPS's financial statements, financial statements for the Tethys entities, among other document, which are necessary to properly account for and calculate amounts purportedly owed under the note. Ex. 9, Kelly Ltr., 6/24/2020. Kadakia is entitled to discovery of the documents identified in the deficiency letter and of other materials relevant to RPS's alleged damages. RPS's failure to produce this information to Kadakia is alone sufficient reason to deny RPS's motion for summary judgment. *See* Fed. R. Civ. P. 56(d)(1).

alleged to rebut the movant's case." *Pelt*, 539 F.3d at 1280. RPS may not merely "point[] to parts of the record that it believes illustrate the absence of a genuine issue of material fact." *Id*. The Court may only grant summary judgment, if the essential elements of RPS's claims are supported by admissible evidence. *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1204 (10th Cir. 2011); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1203 n.1 (10th Cir. 2000); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The Court must construe the record in the light most favorable to Kadakia, the party opposing the motion. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

RPS is also obligated to comply with the local rules applicable to its motion. This Court's local rule, LCvR56.1(b), mandates as follows:

> The brief in support of a motion for summary judgment (or partial summary judgment) shall begin with a section that contains a concise statement of material facts to which the moving party contends no genuine issue of fact exists. **The facts shall be numbered and shall refer with particularity of those portions of the record upon which the movant relies** [emphasis added].

LCvR56.1(b). The Court may deny or strike a motion for summary judgment failing to comply with the obligations of LCvR56.1. *See*, *e.g.*, *Murphy v. City of Tulsa*, Case No. 15-CV-528-GKF-FHM, 2018 WL 9490353, at *2 (N.D. Okla. Aug. 8, 2018) (dismissing response brief for failure to comply with LCVR56.1(c)); *Terry v. JLG Indus., Inc.*, No. CIV-07-1308-HE, 2009 WL 10672460, at *2 n.3. (W.D. Okla. Apr. 22, 2009) ("Such failure [to comply with LCvR56.1(b)] in and of itself is sufficient to deny or strike defendant's motion.").[7]

Because RPS has not proven each element of its claim and because disputed facts remain regarding default and damages, Kadakia asks this Court to deny RPS's motion

[7] The Western District of Oklahoma's LCvR56.1(b) is substantially similar to, but not as demanding as, this Court's rule. *See* W.D. Okla. LCvR56.1(b).

## ARGUMENT AND AUTHORITIES

RPS moves the Court for summary judgment on its breach of guaranty claim against Kadakia. In order to obtain summary adjudication on its claim, RPS must sustain the same burden it would have at trial. Among other things, RPS must affirmatively prove, with admissible evidence, that Tethys Trading, LLC defaulted on the promissory note, and it must further prove the amount purportedly owed by Tethys Trading, LLC under the note. However, in support of its motion, RPS's evidence is limited to the Guaranty Agreement, the Promissory Note, an expert affidavit with an unauthenticated spreadsheet (relying upon bank statements not in evidence or produced in discovery), and the Workout Agreement. This evidence is insufficient to sustain RPS's burden at trial and, consequently, its burden under Rule 56, when seeking summary relief on its own claim.

### RPS Has Not Proven Default on the Note

RPS has not offered any evidence that Tethys Trading, LLC defaulted on the promissory note referenced in the Kadakia Guaranty Agreement. Despite a section titled "Tethys is Undisputably in Default," RPS does not even list as an undisputed fact that Tethys is in default on the Promissory Note. (Dkt. #122, 125 at 7-9). In that argument section, RPS cites only certain provisions of the promissory note and the Workout Agreement. The latter document [redacted]

RPS recognizes that this evidence creates a material dispute about default. To avoid this factual dispute, RPS contends the Workout Agreement language must be disregarded by the Court because the Workout Agreement is "parole evidence [sic]" and Kadakia has purportedly waived all of his defenses under paragraph 2 of the Guaranty Agreement. This is wrong.

First, the Workout Agreement is not parol evidence. "Parol" means "[a] word; speech; hence, oral or verbal. Expressed or evidenced by speech only; as opposed to by

writing or by sealed instrument." BLACK'S LAW DICTIONARY 1116 (6th ed. 1990). The *written* Workout Agreement is neither oral nor verbal evidence. If RPS intended to reference the Parol Evidence Rule, that contract interpretation tool is also irrelevant: "This evidence rule seeks to preserve integrity of written agreements by refusing to permit contracting parties to attempt to alter import of their contract through use of contemporaneous oral declarations." BLACK'S LAW DICTIONARY 1117 (6th ed. 1990). Whatever RPS meant, the written Workout Agreement is neither parol nor an effort to alter the terms of any written agreement involved in this dispute. Instead, the Workout Agreement contains an admission by RPS [redacted]. Fed. R. Evid. 801(d)(2).

RPS's admission that the promissory note is not in default is competent evidence that RPS has not satisfied a condition precedent necessary to pursue its claim against Kadakia under the Guaranty Agreement. Default of the underlying obligation—here, the promissory note—is a condition precedent to enforcing a guaranty agreement. *American Bank & Trust Co. v. Bond Int'l Ltd.*, No. 06-CV-0317-CVE-FHM, 2007 WL 724642, at *5 (N.D. Okla. Mar. 5, 2007). RPS concedes this point in its motion: "Under Oklahoma law a guarantor is secondarily liable. His obligation is conditioned upon default by the principal debtor or obligor." *Lum v. Lee Way Motor Freight, Inc.*, 757 P.2d 810, 814 (Okla. 1987); *see also Goatcher v. United States*, 944 F.2d 747, 750 (10th Cir. 1991) ("In Oklahoma, a loan guarantor is not required to repay a loan unless the principal debtor defaults."); *Borges v. Waller*, 270 P.3d 202, 204 (Okla. Ct. App. 2011) ("The mechanism under which Guarantors become responsible for the underlying obligations of the principal obligor is default."). At the least, the Workout Agreement creates a dispute about whether the Note is currently in default.

Second, Kadakia did not waive a condition precedent under paragraph 2 of the Guaranty Agreement. Satisfaction of a condition precedent is an element of a plaintiff's claim,

and not a defendant's affirmative defense. *See Youren v. Tintic School Dist.*, 343 F.3d 1296, 1303 (10th Cir. 2003); *Arabalo v. City of Denver*, 625 Fed.Appx. 851, 860 (10th Cir. 2015) (citing *Gad v. Kansas State University*, 787 F.3d 1032, 1041-42 (10th Cir. 2015)); *see* BLACK'S LAW DICTIONARY 293 (6th ed. 1990) ("A 'condition precedent' is one that is to be performed before the agreement becomes effective, and which calls for the happening of some event or the performance of some act after the terms of the contract have been arrested on, before the contract shall be binding on the parties."). RPS may not obtain summary judgment against Kadakia by attempting to mischaracterize a condition precedent to its breach of guaranty agreement as Kadakia's affirmative defense purportedly waived under the Guaranty Agreement.

RPS has not sustained its "stringent" burden of establishing each element of its breach of guaranty claim with admissible evidence. RPS failed to enumerate all facts material to its claim against Kadakia, and it failed to cite record evidence supporting those facts, both required by LCvr56.1(b). RPS's burden under the summary judgment standard, like its burden at trial, requires RPS to first prove Tethys Trading, LLC's default on the note. RPS's "Statement of Undisputed Facts" does not contain any allegation that Tethys Trading, LLC defaulted on the promissory note. The statement in the body of RPS's brief regarding a purported default of the note is not supported by the evidentiary materials submitted with the motion. Further, RPS has not offered any evidence to controvert [redacted]. *See* Dkt. #120 at 6; Dkt. #126 at 2.

Even if RPS had provided sufficient admissible evidence of default (and it has not), the issue would be disputed because of RPS's admission [redacted]. RPS could not prevail against Kadakia at trial based on the unsupported statement of its counsel that "RPS declared the Note in default in March 2017," Dkt. #122, 125 at 8, and RPS cannot now prevail on a motion seeking summary relief.

Where default of the underlying obligation is disputed between the parties, the question is generally one of material fact, precluding entry of summary judgment. *First Tech. Capital, Inc. v JPMorgan Chase Bank, N.A.*, 53 F.Supp.3d 972, 1001 (E.D. Ky. 2014); *AM Cosmetics, Inc. v. Solomon*, 67 F.Supp.2d 312, 324 (S.D.N.Y. 1999); *Commerica Bank v. Esshaki*, Case No. 17-11019, 2017 WL 4073793, at *2 (E.D. Mich. Sep. 14, 2017); *County of Greene v. Chalifoux*, 127 A.D.3d 1316, 1319 (N.Y. App. Div. 2015). Therefore, RPS's motion for summary judgment must be denied.[8]

**The Amount Owed on the Note Is Disputed**

Had RPS proven that Tethys Trading, LLC defaulted on the note, RPS's motion for summary judgment against Kadakia on the Guaranty Agreement would still fail. During this lawsuit, RPS has claimed that it is owed at least three different amounts under the note and/or Guaranty Agreement, and these ever-evolving amounts omit numerous other assignments or exchanges of value made among RPS, Tethys Trading, LLC, their principals, and affiliates. Simply put, RPS has not proven its damages "beyond a reasonable doubt," were the note in default. *Hicks v. City of Watonga*, 942 F.2d 737, 742 (10th Cir. 1991)

Disputes as to the amount purportedly owed under a promissory note give rise to questions of material fact, precluding summary judgment. *Porter v. Bull Mountain Dev. Co.*, No. 3:06-CV-1, 2007 WL 128327, at *4 (E.D. Tenn. Jan. 11, 2007) ("determining the amount of principal and interest properly due on the … notes involves disputed questions of fact, and a trial will be necessary for plaintiffs to prove the amount of their loans and the lawful interest thereon"); *F.D.I.C. v. Ambika Inv.*, No. 94-10287, 1994 WL 708818, at *2-3 (5th Cir. Dec. 1, 1994) (question as to applicable interest rate precluded summary judgment); *Hamilton State Bank v. Kelly Capital Invs.*, LLC, 779 S.E.2d 757, 766 (Ga. Ct. App. 2015) ("Be-

---

[8] Although RPS has not proven that the note is in default, Kadakia has demonstrated that the note is not in default, thereby entitling him to entry of an order of dismissal of the Complaint on Kadakia's pending motion to dismiss. *See* Dkt. #88, 90.

cause this discrepancy [regarding the amount of interest owed] is material to the amount owed under the Note, we must conclude that material issues of fact exist as to the amount of damages ....”); *Landmark Sav. Bank, S.S.B. v. Bott*, 583 So.2d 586, 589 (La. Ct. App. 1991) (reversing summary judgment based on disputed amount paid by defendants on a note).

RPS's damages calculations suffer from the same defects found in the cited authorities. RPS proffered no evidence from which it can calculate the amounts of interest owed on the note, whether the interest is $2,502,000.00, $2,405,732.28, or $2,375,189.19, as asserted in RPS's competing spreadsheets, or some other amount yet to be offered to the Court. RPS has not offered any evidence of when, or if, the principal was removed from a “segregated account” and used for a purpose triggering the higher, ten percent interest rate. RPS's various interest calculations contain material discrepancies regarding the amount of interest purportedly owed under the note. RPS's calculations of its damages omit thousands of dollars [redacted]—all reducing the amount owed under the note. Any of these factual defects, standing alone, is sufficient reason to deny RPS's motion for summary relief. Here, all of these questions of material fact are present in RPS's motion. Accordingly, RPS's motion should be denied and Kadakia should be allowed to continue discovery in defense of RPS's claim and prosecution his claims.

## CONCLUSION

Plaintiff/Counterclaim Defendant R.P. Small Corp. has not sustained its burden under Fed. R. Civ. P. 56 or LCvR 56.1(b) to obtain relief on its breach of guaranty claim against Ruchir Kadakia. Plaintiff has not proffered any evidence of a default on the underlying note executed by Tethys Trading, LLC. Plaintiff's proof of damages is incomplete and controverted by its other competing damages calculations. Accordingly, Plaintiff's motion for summary judgment (Dkt. #122, 125) must be denied.

DATED: 12 August 2020

Respectfully submitted,

*/s/ John D. Russell*

John D. Russell, OBA No. 13343
Philip D. Hixon, OBA No. 19121
Adam C. Doverspike, OBA No. 22548
GableGotwals
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
T: (918) 595-4800
F: (918) 595-4990
E: *jrussell@gablelaw.com*
*phixon@gablelaw.com*
*adoverspike@gablelaw.com*

Counsel for Defendant, Third-Party Plaintiff, Counter Claimant, and Counter Defendant Ruchir A. Kadakia

## CERTIFICATE OF SERVICE

I hereby certify that on 12 August 2020, I electronically transmitted the foregoing to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Lacey L. Shirley - *lacey@brentblackstock.com*
Roger B. Blackstock - *brent@brentblackstock.com*

Counsel for Plaintiff/Counter Defendant
R.P. Small Corp.

Austin Birnie - *abirnie@cwlaw.com*
Madison Mosier - *mmosier@cwlaw.com*
R. Richard Love - *rlove@cwlaw.com*

Counsel for Third-Party Defendants
John E. Myer; Jr., Robert Finnegan;
Tethys Supply and Marketing, LLC;
Tethys Capital, LLC; Tethys Energy, LLC;
Tethys Biofuels, LLC; Tethys Latin America, LLC;
Tethys Derivatives, LLC; and Tethys Shipping, LLC;

*and*

Counsel for Third Party Defendants/Counter Claimants
Tethys Trading, LLC; and Tethys Partners, LLC

*/s/ John D. Russell*
John D. Russell