IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **R.P. SMALL CORP.**<br>Plaintiff,<br>v.<br>**RUCHIR A. KADAKIA**,<br>Defendant.<br>and<br>**RUCHIR A. KADAKIA**,<br>Counterclaimant<br>and Third-Party Plaintiff,<br>v.<br>**R.P. SMALL CORP.**,<br>an Illinois corporation,<br>Counterclaim Defendant,<br>and<br>**JOHN E. MEYER, JR.**, et al.;<br>Third-Party Defendants. | Case No. 19-CV-271-SEH-SH |

**RUCHIR A. KADAKIA'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AGAINST PLAINTIFF R.P. SMALL CORP. (DKT. #173)**

The term "principal" is synonymous with "main," "primary," "greatest," "predominant," "foremost," and "chief," among other words denoting "a matter or thing of primary importance."[1] In its Response brief (Dkt. #175), Plaintiff readily concedes that it maintains "*its Principal* [a/k/a its main, primary, greatest, predominant, foremost, and chief] *Place of Business in Oklahoma*." Dkt. #175 at 3 (emphasis added); *see also* Dkt. #1 at 1, ¶ 1 ("principal place of business located in Tulsa, Oklahoma"). Plaintiff does not, and

[1] MERRIAM-WEBSTER DICTIONARY, PRINCIPAL Definition & Meaning - Merriam-Webster <visited July 6, 2026>. *Cf. Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010) ("The word 'principal' requires us to pick out the 'main, prominent' or 'leading' place. 12 Oxford English Dictionary 495 (2d ed. 1989).").

cannot, dispute that the transaction that is the subject of this action also occurred at "its Principal Place of Business in Oklahoma" in Tulsa, Oklahoma.[2]

Together, these allegations in Plaintiff's Complaint (Dkt. #1) are an admission that Plaintiff is and has been transacting business in Oklahoma—performing "nerve center" control functions related to "its Principal Place of Business in Oklahoma" and engaging in the separate loan transactions that are the subject matter of this lawsuit—without registering to do business as a foreign corporation as required by 18 O.S. § 1130. Plaintiff's registration failure denies it access to the state and federal courts of Oklahoma. Plaintiff does not cite a single authority suggesting that the admitted primacy of its Oklahoma "Principal Place of Business" is erased by any of the statutory or other exceptions on which it relies in its response brief; that the statutory prohibition in 18 O.S. § 1137 is subject to waiver; or that its sole claim against Kadakia relates back to the date of filing of this lawsuit or otherwise survives expiration of the statute of limitations. Kadakia is therefore entitled to judgment on the pleadings in his favor and against Plaintiff pursuant to Fed. R. Civ. P. 12(c).

## "Nerve Center" Activity + Loan Activity = Doing Business

In its Complaint, Plaintiff alleges that it has been engaged in a series of business activities and transaction in the State of Oklahoma—consisting of the ongoing "nerve center" activities in "its Principal Place of Business in Oklahoma" and the loan

[2] *See* Dkt. #1 at 1, ¶ 3 ("The acts, events, and transactions complained of herein occurred by virtue of the execution of promissory notes, deemed executed in Tulsa County, Oklahoma, and the damages suffered by RPS as a result of Defendant's breach of contract, and non-payment of the notes, occurred in Tulsa County, Oklahoma.").

transactions that are the subject of this lawsuit—while simultaneously asserting the illogical contention that Plaintiff does not do business in "its Principal Place of Business in Oklahoma," apart from the loan transactions. Together, these are continuous business activities in Oklahoma, reaching back to at least 2014 when the promissory note was executed in Tulsa and bringing Plaintiff within the scope of the registration obligations of 18 O.S. § 1130. *See* Dkt. #1 at 2, ¶ 7.

By definition, a corporation irrefutably does business at its principal place of business. *See* definition of "principal," *supra*, note 1. Plaintiff "is charged with knowing its corporate status in Oklahoma, and Oklahoma law." *Century Inv. Group, Inc. v. Bake Rite Foods, Inc.*, 7 P.3d 510, 513 (Okla. Ct. App. 2000). When Plaintiff alleged in its Complaint, and conceded in its response brief, that it maintained "its Principal Place of Business in Oklahoma," Dkt. #175 at 3, Plaintiff knew it was telling the Court that Tulsa, Oklahoma was "the place where [the] corporation's officers direct, control, and coordinate the corporation's activities.... [a]nd ... where the corporation maintains its headquarters," because that is what a "principal place of business" is under extant federal authority. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). The principal place of business is the "nerve center" of the corporation, acting as its "corporate 'brain'." *Id.* at 93. Plaintiff's "nerve center" activities at "its Principal Place of Business" in Tulsa, Oklahoma are business activities, in addition to the loan transactions being litigated in this matter.

Long-standing Oklahoma precedent is consistent with the federal authority: a foreign corporation with its principal place of business in Oklahoma is, in fact, doing business in Oklahoma and is required to comply with the applicable registration obligations.

*See State* ex rel. *Read v. Mid-West Mut. Ben. Co.*, 73 P.3d 1138, 1138-39 (Okla. 1937) (holding an unregistered foreign insurance company that maintained its principal place of business in Oklahoma was engaged in unlawful business in Oklahoma).[3] Like Plaintiff in this case, the foreign insurance company in *Mid-West Mutual* claimed it was not subject to any registration obligations because its business was conducted with non-residents, notwithstanding that it maintained its principal place of business in Tulsa. *See id.* at 1138. The Oklahoma Supreme Court rejected the argument: "Although the defendant is not an Oklahoma corporation, and its domicile, if any, as designated in its charter, may be elsewhere, *its principal place of business is here*, and the above rule [regarding acceptance of the insurance policy in the principal place of business] would well apply." *Id.* at 1139 (emphasis added). Similarly, as noted in the *Denison* case cited by Plaintiff (Dkt. #175 at 7),

> The statutes requiring foreign corporations to qualify before doing business in Oklahoma were passed for the purpose of requiring foreign corporations to put themselves in a position in the transaction of business in this state whereby citizens of this state could bring actions against them, and thereby declared a public theory of the state; and, *where it is shown by the facts and circumstances in a case that foreign corporation is transacting business in this state, directly or indirectly, for the purpose of evading the statute, their contract should not be enforced.*

*Denison v. Phipps*, 211 P. 83, 86-87 (Okla. 1922) (emphasis added).

Plaintiff's contention that its failure to register in Oklahoma is excused by one or more of the exceptions in 18 O.S. § 1132 is unavailing. Although not expressly stated in the statute, the Section 1132 exceptions contemplate that the foreign corporation remains *outside* Oklahoma and directs the excepted activities to Oklahoma citizens. However,

---

[3] Oklahoma has a special venue statute for foreign corporations whose principal place of business is in the state. *See* 18 O.S. § 471.

Plaintiff claims that, while it maintains "its Principal Place of Business in Oklahoma," Dkt. #175 at 3, "its business operations within this state are wholly interstate in character." 18 O.S. § 1132(A)(4). Plaintiff also contends that "it creates, as borrower or lender, or acquires, evidences of debt, mortgages or liens on real property; or [] it secures or collects debts or enforces any rights in property securing the same." 18 O.S. § 1132(6)-(7). Plaintiff appears to be conducting these activities, but Plaintiff is conducting them from "its Principal Place of Business in Oklahoma" on an instrument made and performed in Tulsa, Oklahoma and in addition to the "nerve center" activities also conducted in Tulsa, Oklahoma. None of the cited exceptions can possibly apply to Plaintiff so long as it maintains "its Principal Place of Business in Oklahoma." *See Mid-West Mut.*, 73 P.3d at 1139.

Furthermore, none of the cases cited by Plaintiff support application of the cited exceptions to Plaintiff and "its Principal Place of Business in Oklahoma." In each case relied upon by Plaintiff, the corporation was located *outside* Oklahoma and directed interstate commerce at Oklahoma from another state: none of the corporations in the cited cases maintained their "Principal Place of Business in Oklahoma," like the foreign corporation in *Mid-West Mutal* did and like Plaintiff admittedly does. *See*, *e.g.*, *Wilson v. Williams*, 222 F.2d 692, 697 (10th Cir. 1955) (New Mexico corporation acquired passive ownership of Oklahoma property not doing business in Oklahoma); *Consolidated Pipe Line Co. v. British American Oil Co.*, 21 P.2d 762, 765 (Okla. 1933) (Canadian corporation with principal place of business in Toronto purchased oil in Oklahoma delivered to Canadian refinery not doing business in Oklahoma); *Denison v. Phipps*, 211 P. 83, 84-86 (Okla. 1922)

(foreign corporation contracting with Oklahoma resident in Chicago, Illinois not doing business in Oklahoma);[4] *SCS/Compute, Inc. v. Meredith*, 864 P.2d 1292, 1294-94 (Okla. Ct. App. 1993) (trial court erred in denying cross examination foreign corporation with headquarters in Atlanta regarding activities in Oklahoma).

Unlike the cases relied upon by Plaintiff, Plaintiff concedes that its principal place of business is in Tulsa, Oklahoma, where it directs and coordinates the overall business activities of the corporation. Dkt. #1 at 1, ¶ 1. Plaintiff further concedes that it entered a promissory note in Tulsa, and allegedly suffered damages in Tulsa. Dkt. #1 at 1, ¶ 3. As noted in Kadakia's motion, Plaintiff's officers are located in Tulsa, Oklahoma, as would be expected. Dkt. #173 at 7 n.2. Plaintiff maintains a corporate bank account in Tulsa, Oklahoma from which it writes checks to other companies in Oklahoma and elsewhere. *See* Dkt. #98 at 26-188 (bank statements). Elsewhere in the Court's docket, Plaintiff is alleged to be a 10% owner in Tethys Trading, LLC, an Oklahoma limited liability company. *See* Dkt. #66 at 5, 8-9. Plaintiff is doing business in Oklahoma and is required to register as a foreign corporation under 18 O.S. § 1130 before it may maintain any action on its promissory note or the Kadakia guaranty in the state or federal courts in Oklahoma. *See* 18 O.S. § 1137(A); *Denison*, 211 P. at 86-87.

---

[4] The *Denison* court did not apply the door-closing statute because the subject contract was made and performed outside Oklahoma, unlike Plaintiff's promissory note or personal guarantees which were made and performed in Oklahoma along with Plaintiff's "nerve center" activities. *See Denison*, 211 P. at 85-86.

## SECTION 1137 MAY BE RAISED AT ANY TIME

Plaintiff contends that Kadakia has waived the Section 1137 issue because it was not raised earlier in the proceedings. Where the statutory prohibition of 18 O.S. § 1137 applies, the question has been characterized as one of "standing to sue." *Mortgage Elctronic Registration Sys., Inc. v. Crutchfield*, 144 P.3d 196, 202 (Okla. Ct. App. 2006). In other words, the issue is not one necessarily subject to the Rule 17 waiver arguments suggested by Plaintiff. *See Steed v. Warrior Capital, LLC*, No. CIV-06-348-F, 2007 WL 3357415, at *2 (W.D. Okla. Nov. 7, 2007) (discussing the analogous "state door-closing statutes" at 18 O.S. § 1137 and 68 O.S. § 1212 in connection with Fed. R. Civ. P. 17).

Interpreting a "door-closing statute" analogous to 18 O.S. § 1137, Oklahoma courts have consistently determined that a statutory prohibition on prosecuting claims is not waived, if not asserted in a responsive pleading or motion made before pleading. *See Moncrieff-Yeates v. Kane*, 323 P.3d 215, 221 (Okla. 2013); *Century Inv. Group, Inc. v. Bake Rite Foods, Inc.*, 7 P.3d 510, 512-13 (Okla. Ct. App. 2000). The *Moncrieff-Yeates* court explained preservation of the issue beyond the preliminary pleading stage:

> It is axiomatic that a corporation forfeiting the right to sue or defend cannot be granted affirmative relief. *This* [statutory] *provision is mandatory and is a directive to the court, not a defendant, to dismiss any action or suit in which a suspended corporation is the plaintiff.* The clear language of [the door closing statute] is indicative of the Legislature's intent that its penalties not be subject to the requirements of [the pleading rules].
>
> … To allow a suspended corporation … to bring suit merely because the defendant failed to timely raise the issue would allow a suspended corporation to avoid the penalties imposed on it by the Legislature.

*Moncrieff-Yeates*, 323 P.3d at 221 (emphasis added); *see Century Inv. Group*, 7 P.3d at 513 (noting that a door-closing statute "is more than an affirmative defense which must be plead and proven. It is a decision by the Legislature that a corporation which has been suspended 'shall be denied the right to sue or defend in any court of this state'").

Contrary to Plaintiff's contention that the Section 1137 issue has been waived, the *Moncrieff-Yeates* and *Century Investment* Courts determined that the door-closing issue may be "raised and considered *at any time during the proceedings*." *Moncrieff-Yeates*, 323 P.3d at 222 (emphasis added); *see also Century Inv. Group*, 7 P.3d at 513 (noting that the door-closing statute "expresses the public policy of this state that when proper evidence is presented to a court, *during any stage of the proceeding*, that a corporate party has been suspended …, then that party may no longer sue or defend the action" [emphasis added]).[5]

In this case, Kadakia promptly raised the Section 1137 issue upon discovering it while preparing for the motion hearing originally scheduled for June 29, 2026 (Dkt. #171). While this matter has been pending since 2019, the case has been mostly dormant since Kadakia's current counsel of record became involved in the matter in July 2020.[6] As part of hearing preparation in May 2026, counsel checked the Secretary of State websites for Plaintiff's state of incorporation, Illinois, and "its Principal Place of Business," Oklahoma.

[5] In *Corman v. H-30 Drilling, Inc.*, 40 P.3d 1051 (Okla. 2001), the door-closing statute was invoked initially on the morning of trial. *See Corman*, 40 P.3d at 1052. The *Corman* court determined that, because the party asserting the door-closing statute knew of the issue before the pretrial conference, the party was obligated to include the door-closing statute issue in the pretrial order. *See id.* at 1055. According to the OSCN docket for the case, the lawsuit was filed in May 1994; the pretrial conference was held in May 1997; and trial commenced in April 1998. *See Corman v. H-30 Drilling, Inc.*, Okla. Co. Case No. CJ-1994-3696: OSCN Case Details.

[6] Notably, each of the motions and related briefs set for hearing on June 29, 2026, were filed between April 2020 and August 2020.

While Plaintiff was found on the Illinois website (where it reported its office reside in Tulsa, Oklahoma), it was completely absent from the Oklahoma website. Following that discovery, the issue was raised quickly in Kadakia's motion filed June 5, 2026 (Dkt. #175). The pleadings in this matter remain unsettled.[7] No Scheduling Order is in place. No Pretrial Conference has been set. Accordingly, under the extant authority, Kadakia's assertion of the Section 1137 issue is timely.

## Cure Does Not Relate Back

Plaintiff's response brief does not substantively respond to Kadakia's contention that any purported cure will not relate-back to the 2019 filing of Plaintiff's lawsuit, and thus will not save the claim from expiration of the statute of limitations. *See* Dkt. #173 at 8-9 ("Small Corp.'s Claim Is Time Barred" proposition). As such, Plaintiff concedes this statute of limitations issues, if it was required to register in Oklahoma. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1161 (10th Cir. 2000); *Robinson v. Vinke*, 35 Fed. Appx. 734, 737 (10th Cir. 2002); *Hinsdale v. City of Liberal, Kan.*, 19 Fed Appx. 749, 769 (10th Cir. 2001).

Nonetheless, to recap the original argument, Plaintiff lacked the capacity to sue Kadakia in this Court or any other court in Oklahoma when it initiated this action against Kadakia in 2019. *See* 18 O.S. § 1137(A). The single claim against Kadakia is alleged to have accrued on March 27, 2016, *see* Dkt. #1 at 3, ¶ 14, and has a five-year limitation period that expired on March 27, 2021. *See* 12 O.S. § 95(A)(1). The relation-back statute in the

[7] Two of the pending motions are challenges to Kadakia's Verified Amended Counterclaim and Third-Party Complaint (Dkt. #66).

Oklahoma General Corporation Act, 18 O.S. § 1120(E), does not apply to Plaintiff's registration failure, and there is no other revival statute applicable to circumstances where a foreign corporation failed to perform its initial registration obligation under 18 O.S. § 1130. Thus, Plaintiff's claim against Kadakia expired before Plaintiff purportedly cured the registration defect, if Plaintiff has cured the registration defect.[8]

WHEREFORE, premises considered, Defendant, Counterclaimant, and Third-Party Plaintiff and Defendant, Ruchir A. Kadakia requests the Court to enter judgment on the pleadings in his favor and against Plaintiff R.P. Small Corp., pursuant to Fed. R. Civ. P. 12(c), and for all other legal or equitable relief to which he may be entitled.

DATED: 10 July 2026

Respectfully submitted,

*/s/ Philip D. Hixon*

Philip D. Hixon, OBA No. 19121
Adam C. Doverspike, OBA No. 22548
GableGotwals
110 North Elgin Avenue, Suite 200
Tulsa, Oklahoma 74120-1495
T: (918) 595-4800
F: (918) 595-4990
E: *phixon@gablelaw.com*
*adoverspike@gablelaw.com*

Counsel for Defendant, Third-Party Plaintiff, Counter Claimant, and Counter Defendant Ruchir A. Kadakia

[8] As of the filing of this reply, Plaintiff is still not listed on the Oklahoma Secretary of State website as being registered in Oklahoma.

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Roger B. Blackstock - *brent@brentblackstock.com*
Kelsey M. Harrison – *kelsey@brentblackstock.com*
Cheryl Minnix Thigpen - *cheryl@thigpenlaw.net*
Jourdan Johnson - *jourdanj.law@gmail.com*
BRENT BLACKSTOCK PLC
401 S Boston Ave, Ste 500
Tulsa, OK 74104

COUNSEL FOR PLAINTIFF/COUNTER DEFENDANT
R.P. SMALL CORP.

Ryan R. Ray – *Rray@NWLawOK.com*
NORMAN WOHLGEMUTH LLP
401 S. Boston Ave., Suite 3200
Tulsa, OK 74103

COUNSEL FOR THIRD-PARTY DEFENDANTS
JOHN E. MYER, JR.; TETHYS SUPPLY AND MARKETING, LLC;
TETHYS CAPITAL, LLC; TETHYS ENERGY, LLC;
TETHYS BIOFUELS, LLC; TETHYS LATIN AMERICA, LLC;
TETHYS DERIVATIVES, LLC; and TETHYS SHIPPING, LLC;
*and*
COUNSEL FOR THIRD PARTY DEFENDANTS/COUNTER CLAIMANTS
TETHYS TRADING, LLC; and TETHYS PARTNERS, LLC

Brian L. Mitchell - *bmitchell@mitchelllegalpllc.com*
MITCHELL LEGAL PLLC
203 E. Hobson Ave
Sapulpa, OK 74066

COUNSEL FOR THIRD-PARTY DEFENDANT
ROBERT FINNEGAN

*/s/ Philip D. Hixon*
Philip D. Hixon